**VENABLE, BAETJER AND HOWARD, LLP**
*Including professional corporations*

Two Hopkins Plaza, Suite 1800
Baltimore, Maryland 21201-2978
(410) 244-7400, Fax (410) 244-7742
www.venable.com

OFFICES IN

MARYLAND
WASHINGTON, D.C.
VIRGINIA



Paul F. Strain P.C.
(410) 244-7717
pstrain@venable.com

June 20, 2003

**VIA ELECTRONIC FILING**
**AND HAND DELIVERED**

The Honorable Catherine C. Blake
United States District Court
 for the District of Maryland
101 West Lombard Street, Room 110
Baltimore, MD  21201

   *Re: MDL-1421 Transfer Cases – In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation*

     *Gibb Brower v. Motorola, Inc., et al.,* CCB-02-2089;
     *Sarah Dahlgren v. Audiovox Communications Corp., et al.,* CCB-02-4001;
     *Brian Lane Barrett, et al. v. Nokia Corp., et al.,* CCB-02-4053;
     *Michael Murray, et al. v. Motorola, Inc. et al.,* CCB-02-4047;
     *Dino Schofield v. Matsushita Electric Corp., et al.,* CCB-02-4048;
     *Pamela A. Cochran, et al. v. Audiovox Corp., et al.,* CCB-02-4049;
     *David C. Keller, et al. v. Nokia, Inc., et al.,* CCB-02-4050;
     *Richard Schwamb, et al. v. Qualcomm, Inc., et al.,* CCB-02-4051;
     *Baldassare S. Agro, et al. v. Motorola, Inc., et al.,* CCB-02-4052

Dear Judge Blake,

  We write to provide comments on behalf of all Defendants in the above-referenced cases (the "Consolidated Actions") in response to the Court's letter of June 6, 2003. In that letter, Your Honor offered the parties the opportunity to provide comment concerning the effect of the recent Supreme Court ruling in *Beneficial Nat'l Bank v. Anderson*, 123 S. Ct. 2058 (2003), and the advisability of a stay of decision on the pending motions in the Consolidated Actions pending the Fourth Circuit's ruling in the *Pinney* appeal. We begin with the *Beneficial* decision.



### The *Beneficial* Decision Supports Jurisdiction in the Consolidated Actions

The Defendants believe that *Beneficial* supports our position on jurisdiction in the Consolidated Actions. In addition to the "substantial federal question" doctrine (which the Court agreed in the *Pinney* cases supports a finding of federal jurisdiction, *see In re Wireless Telephone Radio Frequency Prods. Liab. Litig.*, 216 F. Supp. 2d 474 (D. Md. 2002)), the defendants argued in the *Pinney* cases that federal jurisdiction extends to the consolidated actions under the doctrine of complete preemption. While the Court declined to adopt this complete-preemption rationale in the *Pinney* cases, its decision on that issue was based in part on the fact that "[t]he complete preemption doctrine ha[d] been invoked by the Supreme Court in only three contexts since its inception" – claims under the Labor Management Relations Act, claims under the Employee Retirement Income Security Act, and claims regarding certain Indian land grant rights. *Wireless Telephone*, 216 F. Supp. 2d at 494. *Beneficial* demonstrates that the Supreme Court does not regard removal based on complete preemption as limited to those narrow areas.

On the contrary, the Court has now expressly recognized the "special nature" of firms licensed by the federal government to carry out business operations that relate to important national policies, and the need for "uniform rules limiting the liability" of such companies – rules that can only be enforced on a uniform basis if they are policed by federal rather than state courts. *Beneficial*, 123 S. Ct. at 2064. This Court has recognized both that defendants are licensed by the federal government to provide wireless telecommunications services subject to specified radio frequency emissions limits, *see Wireless Telephone*, 216 F. Supp. 2d at 483, and that national uniformity in the regulation of wireless services was one of Congress's foremost objectives in enacting the Telecommunications Act of 1996 and related laws. *See id.* at 484-85. Given the regulatory similarities between the national banking regime and the wireless telecommunications regime, *Beneficial* thus demonstrates that removal based on complete preemption is available in these consolidated cases.

*Beneficial* also clarifies the complete preemption test. Specifically, *Beneficial* establishes that the "proper inquiry" for determining complete preemption is not whether Congress indicated a specific intent to permit removal of state court actions,[1] but rather whether Congress intended that federal jurisdiction be "exclusive" as to the matters at issue in the case. *Beneficial*, 123 S. Ct. at __ n. 5, slip op. at 7. This Court has recognized that Congress established exclusive federal authority over "the technical aspects of radio communications" in the Communications Act, and that the RF emissions regulations were promulgated under that authority. *Wireless*

---

[1] Before *Beneficial* many courts, including this Court in the *Pinney* cases, *Wireless Telephone*, 216 F. Supp. 498-99, analyzed complete preemption under a standard that required a finding of specific Congressional intent to permit removal. Indeed, the "specific intent to permit removal" test was the basis for many courts' rejection of "complete preemption" as a basis for jurisdiction over claims against wireless carriers in the removal context. *See, e.g., Bryceland v. AT&T Corp.*, 122 F. Supp. 2d 703, 709-10 (N.D. Tex. 2000).



*Telephone*, 216 F. Supp. at 483; *see also Head v. New Mexico Bd. of Examiners in Optometry*, 374 U.S. 424, 430 n.6 (1963); *Broyde v. Gotham Tower, Inc.*, 13 F. 3d 994, 997 (6th Cir. 1994)); *Goforth v. Smith*, 991 S.W.2d 579, 584-85 (Ark. 1999)(noting with approval Sixth Circuit's conclusion in *Broyde* that "the FCC clearly has exclusive jurisdiction over technical matters associated with radio transmission" and finding state law nuisance claims based on alleged adverse health effects of RF emissions preempted by federal law). Although the Communications Act, like the National Bank Act, has been construed to permit the application of state laws to the general commercial activities of licensed entities,[2] certain conduct -- the level of interest charged by national banks or the level of RF emitted from wireless phones -- is exclusively governed by federal law and is thus subject to complete preemption.

The Complaints in these actions thus not only conflict with federal law, but also intrude directly on a limited field -- the technical aspects of radio transmission and the regulation of RF emissions from licensed radio equipment -- governed exclusively and preempted completely by federal law.[3] The Complaints thus trigger not only the blocking effect of ordinary preemption, but also the displacing effect that the *Beneficial* Court recognized is the essence of complete preemption. Federal law alone must govern the adequacy of the FCC's RF testing regime for wireless phones, which the plaintiffs challenge (*see, e.g. Schwamb Complaint*, ¶¶ 40-45), and only federal law can govern the plaintiffs' claims that the wireless phone industry conspired to defraud the federal agencies that jointly formulated the existing RF emissions standard (*see, e.g. Schwamb Complaint*, ¶ 39). Moreover, and more fundamentally, federal law alone, and not state tort or warranty law, governs the question whether wireless phones are "defective" or "unfit for their intended purpose." And, for claims that survive conflict preemption principles, the Communications Act provides a sufficiently broad and flexible remedial scheme to address these claims, s*ee, e.g.*, 47 U.S.C. §§ 201 (broadly prohibiting "unreasonable practices"); 206 (providing damages remedy for violations of Act), and provides for *exclusive* jurisdiction in the federal courts and the FCC. 47 U.S.C. § 207; *AT&T Corp. v. Coeur D'Alene Tribe*, 295 F.3d 899, 905 (9th Cir. 2002).

---

[2]   It is significant that the federal banking laws were found to completely preempt state unfair business practice and other claims in *Beneficial* even though federal banking regulators do not construe the banking statutes as broadly preempting state "contract and commercial law" and "tort law." *See, e.g.*, 12 C.F.R. § 557.13(a). In this respect, there is a striking parallel between the banking laws and the Communications Act, including the general savings clauses in the latter. Both carve out areas for exclusive federal control and vest the federal courts with exclusive jurisdiction over those areas, while preserving other areas of state law. The Supreme Court did not find this approach to be a barrier to complete preemption in *Beneficial*, and it should not be a barrier here.

[3]   This limited field preemption is buttressed by the express preemption of state "entry" regulation and environmentally-based RF emissions regulation in section 332 of the Communications Act, as discussed more fully in prior briefing.



*Beneficial* thus provides grounds for this Court to revisit in the context of the Consolidated Actions, if necessary,[4] its analysis of complete preemption as expressed in the *Pinney* cases.

### The *Beneficial* Decision Supports Dismissal of the Consolidated Actions

We further note that *Beneficial* supports dismissal of the Consolidated Actions on their merits. In reaching its conclusion that the state unfair business practice claims alleging usury against national banks may be removed to federal court, the Supreme Court noted that:

> Sections 85 and 86 [of the National Bank Act] serve distinct purposes. The former sets forth the substantive limits on the rates of interest that national banks may charge. The latter sets forth the elements of a usury claim against a national bank, provides for a 2-year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim. If, as petitioners asserted in their notice of removal, the interest that the bank charged to respondents did not violate [Section] 85 limits, the statute unquestionably pre-empts any common-law or Alabama statutory rule that would treat those rates as usurious.

*Beneficial*, 123 S. Ct. at 2063. This analysis demands dismissal in the Consolidated Actions before this Court. Regulations of the Federal Communications Commission set substantive limits on the level of radio frequency energy that may be emitted by wireless telephones, as this Court has recognized. *See Wireless Telephone*, 216 F. Supp. 2d at 484-85. Under *Beneficial*, these federal regulations therefore "unquestionably pre-empt[]" any state laws that would treat compliant phones as unreasonably dangerous.

### A Stay of The Actions is Advisable

On the question of the advisability of a stay, the Defendants believe that a stay of decision on the pending motions to remand is advisable so that the Court can have the benefit of the Fourth Circuit's decision in the *Pinney* appeal in addressing the motions. For the same reason, the Defendants believe that a continued stay of briefing and decision on Defendants' anticipated motions to dismiss is advisable as well.

---

[4] The Defendants continue to believe, of course, that the Court's "substantial federal question" rationale as expressed in the *Pinney* cases supports removal of the currently pending actions.



The Honorable Catherine C. Blake
June 20, 2003
Page 5

     In the interim, if the Court desires to move forward, the Defendants would have no objection to the entry of a scheduling order like that entered in the *Newman* case to address the medical causation issues. Should the Court conclude that this approach is advisable, the Defendants suggest that the Court allow the parties the opportunity to meet and confer in order to seek agreement on a proposed schedule.

     We thank the Court for the opportunity to comment on these matters.

Very truly yours,

Paul F. Strain

Michael E. Yaggy
Piper Rudnick

PFS/MEY/
BA2DOCS1/219028

cc:    All Plaintiff's Counsel (via first class mail)
       All Defense Counsel (via email)