### MORGANROTH & MORGANROTH, PLLC
*ATTORNEYS AT LAW*
*3000 TOWN CENTER*
*SUITE 1500*
*SOUTHFIELD, MICHIGAN 48075*

*(248) 355-3084*
*FAX (248) 355-3017*

*MAYER MORGANROTH\**
*JEFFREY B. MORGANROTH\*\**
*CHERIE MORGANROTH*
*JASON R. HIRSCH*
*DANIEL E. HAROLD*
*JILL A. GURFINKEL*

*\* ADMITTED IN MICH. AND N.Y.*
*\*\*ADMITTED IN MICH., N.Y. AND D.C.*

*NEW YORK OFFICE*
*156 W. 56 STREET*
*SUITE 1101*
*NEW YORK, NY 10019-3800*
*(212) 586-5905*
*FAX (212)586-7302*

July 11, 2003

**VIA ELECTRONIC FILING AND AIRBORNE EXPRESS**

The Honorable Catherine C. Blake
United States District Court
 for the District of Maryland
101 West Lombard Street, Room 110
Baltimore, MD 21201

**In Re: Wireless Telephone Radio Frequency Emissions Products Liability Litigation
MDL Docket No. 1421**

> *Gibb Brower v. Motorola, Inc., et. al.,* CCB-02-2089
> *Sarah Dahlgren v. Audiovox Communications Corp., et. al.* CCB-02-4001
> *Brian Lane Barrett, et. al., v. Nokia Corp., et. al.,* CCB-02-4053
> *Michael Murray, et. al., v. Motorola Inc., et. al.,* CCB-02-4047
> *Dino Schofield v. Matsushita Electric Corp., et. al.,* CCB-02-4048
> *Pamela A. Cochran, et. al., v. Audiovox Corp., et. al.,* CCB-02-4049
> *David C. Keller, et. al., v. Nokia Corp., et. al.,* CCB-02-4050
> *Richard Schwamb, et. al., v. Qualcomm Inc., et. al.,* CCB-02-4051
> *Baldassare S. Agro, et. al., v. Motorola Inc., et. al.,* CCB-02-4052

Dear Judge Blake:

I am in receipt of the Defendants' letter dated June 20, 2002, in the above-referenced actions, and I write in response thereto on behalf of Plaintiffs, Murray, Schofield, Cochran, Keller, Schwamb and Agro (hereinafter referred to as the "D.C. Plaintiffs"). While the Court graciously offered the parties an opportunity to provide comment with respect to the recent Supreme Court decision in Beneficial Nat'l Bank v. Anderson, 123 S. Ct. 2058 (2003) (the "Beneficial Case"), Defendants used such opportunity to grossly mischaracterize and distort the holding and application of the Beneficial Case in a transparent attempt to argue that the 1996 Telecommunications Act (the "1996 Act") federally preempts The D.C. Plaintiffs' inherently state law claims. As shown below, Defendants' argument clearly misses the legal mark inasmuch as there are fundamental differences between the National Bank Act ("NBA") as it applies to the plaintiffs' claims in the Beneficial Case, and the Telecommunications Act as it applies to The D.C. Plaintiffs' personal injuries as a result of their use of Defendants' product.

Hon. Catherine C. Blake
July 11, 2003
-Page 2-

1.    **The Supreme Court's Decision in the Beneficial Case Actually Precludes the Application of the Federal Preemption Doctrine to the Instant Cases.**

The United States Supreme Court decision in <u>Beneficial,</u> held that "a state claim may be removed to federal court in only two circumstances- - when Congress expressly so provides.. or when a federal statute wholly displaces the state-law cause of action through complete pre-emption." <u>Beneficial,</u> 123 S. Ct. at 2063. The plaintiffs in <u>Beneficial</u> sought relief for "usury violations" and claimed that the defendants charged excessive interest in violation of Alabama's common law usury doctrine and statutes. However, the plaintiffs' claims in <u>Beneficial</u> directly implicated Sections 85 and 86 of the NBA, which specifically set the permissible rate of interest charged by a national bank and further provide a exclusive federal remedy for usury violations against national banks.

The Supreme Court confirmed in <u>Beneficial</u> that the "proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." <u>Id.</u> at 2064, n. 5. The Supreme Court then determined that although such sections would provide a complete federal defense, such a defense would not justify removal. <u>Id.</u> Rather, the determining factor would be if Congress <u>intended</u> Section 86 of the NBA to provide the exclusive cause of action for usury claims against national banks. If such an intent existed then the statute would be comparable to the provisions of the LMRA and ERISA, which were previously held to completely preempt state causes of action in <u>Avco Corp.,</u> v. <u>Machinists,</u> 390 U.S. 557 (1968) and <u>Metropolitan Life Inc. Co.</u> V <u>Taylor,</u> 481 U.S. 58 (1987). <u>Beneficial,</u> 123 S. Ct. at 2064. The Supreme Court then explained that the federal statutes at issue in the LMRA and ERISA provided the exclusive cause of action for the claim asserted by the plaintiffs and also set forth the procedures and remedies governing that cause of action. <u>Id.</u> at 2063, <u>citing,</u> 29 U.S.C. § 1132 (setting forth the procedures and remedies for civil claims under ERISA); 29 U.S.C. § 185 (describing procedures and remedies for suits under the LMRA). The Supreme Court further explained that Sections 85 and 86 of the NBA serve a distinct purpose in setting substantive limits for rates of interest allowable and further sets forth the elements of a usury claim against a national bank. <u>Id.</u> at 2063. Inasmuch as the as the NBA not only provides an exclusive provision governing the rate of interest a national bank may lawfully charge, but also provides an exclusive remedy against a national bank charging excessive interest, the Supreme Court held the plaintiff's claims arose under federal law. <u>Id.</u> NBA, Rev. State. § 5917, as amended, 12 U.S.C. § 85. The Supreme Court explained that the various provisions of the NBA form a system of regulations which completely defines what constitutes the taking of usury by a national bank, and thus State law would have no bearing on such claims. <u>Id.</u> at 2064. Moreover, the NBA neither expressly nor by implication invites States to supplement Section 86 of the NBA. <u>Id.</u> In addition to longstanding construction that the NBA provided an exclusive federal cause of action for usury against national banks, the Court recognized the special nature of federally chartered banks. <u>Id.</u> "Uniform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that needed protection from possible unfriendly State litigation." <u>Id.</u> However, the Supreme Court did not hold that every state claim would be preempted by the NBA, but rather only "in actions against national banks for usury, these provisions

Hon. Catherine C. Blake
July 11, 2003
-Page 3-

[Section 85 and 86 of the NBA] supersede both the substantive and the remedial provisions of <u>state usury laws</u> and <u>create a federal remedy for overcharges that is exclusive</u>, even when a state complainant, as here, relies entirely on state law." <u>Id.</u> (Emphasis added).

In sharp contrast to the NBA, the FCA and 1996 Act do not provide an exclusive provision governing or an exclusive remedy against cell phone manufacturers for fraud and misrepresentation or personal injuries caused by use of cell phones. Rather, Congress left the door open for the States to regulate and prohibit such conduct in the interest of the public welfare.

Defendants' inability to cite a single provision of the FCA which specifically applies to the D.C. Plaintiffs' claims confirms that FCA does not provide an exclusive remedy or cause of action to redress the D.C. Plaintiffs' injuries. Rather, Defendants suggest that Sections 201 and 206 of the FCA somehow provide the D.C. Plaintiffs with a federal remedy. In so doing, Defendants blatantly misconstrue these provisions in order to bolster their untenable position. For instance, Section 201 of the FCA does not broadly prohibit unreasonable practices, but rather is limited to unlawful billing practices. Specifically, Section 201 only prohibits the unreasonable denial of service and billing practices by common carriers. 47 U.S.C. § 201(b). Furthermore, Section 206 is merely a general provision for damages sustained from a common carrier's violation of the 1996 Act. Section 206 does not apply because there are no provisions contained in the FCA which redress the D.C. Plaintiffs' personal injuries suffered as a result of Defendants' intentional misrepresentations and warranties regarding the safety of cell phones which the D.C. Plaintiffs relied upon in purchasing and using such cell phones. Furthermore, Section 207 of the FCA merely provides a remedy to recover damages for unreasonable billing practices and/or rates. 47 U.S.C. § 207. In addition, Section 332(c)(7) of the FCA merely preempts "state and local governments from regulating the placement, construction or modification of personal wireless service <u>facilities</u> on the basis of health effects of RF radiation" where the facilities would operate within levels determined by the FCC to be safe. 47 U.S.C. §332(c)(7) (Emphasis added). <u>See also</u>, <u>Cellular Phone Taskforce</u> v. <u>FCC</u>, 205 F. 3d 82, 88 (2nd Cir. 2000).[1] Thus, this Section applies to the placement, construction, modification of <u>cell phone towers</u>, not cell phone devices. Furthermore, state and local governments retain regulatory powers subject to the limitations set forth in Section 332(c)(7). 47 U.S.C. §332(c)(7). Inasmuch as the D.C. Plaintiffs' cases do not challenge Defendants' billing practices or rates, these sections of the FCA do not and cannot supplant the D.C. Plaintiffs' state law tort remedies to redress the D.C. Plaintiffs' personal injuries.

Furthermore, unlike LMRA and ERISA which both contain an express broad preemption provision and a specific grant of jurisdiction to the district courts, there is nothing in the FCA to indicate that Congress intended the FCA to be given complete preemptive effect. Rather, a strong

---

[1]    Defendants erroneously assert that the claims in <u>Cellular Phone Taskforce</u> are the same as those presented in the D.C. Plaintiffs' Complaints. This premise is blatantly false. In <u>Cellular Phone Taskforce</u>, the plaintiffs sought to regulate the operations of radio facilities. Here, the D.C. Plaintiffs seek redress for their personal injuries suffered as a result of Defendants' products, which were sold and marketed through Defendants' misrepresentations and warranties that the cell phones were safe and non-dangerous.

Hon. Catherine C. Blake
July 11, 2003
-Page 4-

indication that Congress did not intend that the FCA preempt all claims within the telecommunications area is the FCA's survival clause (the "Savings Clause"):

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies. 47 U.S.C. §414.

The Savings Clause can "only be read to preserve independent state law causes of action." In re Comcast Cellular Telecommunication Litigation, 949 F. Supp.1193, 1205 (E.D. Pa. 1996). No such savings clause is found in the preemptive provisions of the LMRA and ERISA. DeCastro v. AWACS, Inc., 935 F. Supp. 541, 548-55 (D.N.J. 1996).

The case of Bell v. Illinois Central Railroad Co., 2001 WL 722099 (N.D. Ill. 2001) is instructive. There, the Court analyzed the preemptive effect of the Locomotive Inspection Act ("LIA") by comparing it to the FCA. The Court held that while the LIA expressed a clear manifestation or intent for complete preemption, the FCA does not. In fact, in Bell, the Court actually distinguishes the preemptive force of the LIA from the FCA:

> Here, by contrast, the Supreme Court has held that Congress intended to completely occupy the field of railroad manufacture and design with the LIA, the statute applicable to these cases. Additionally, the LIA does not contain a savings clause like that in the FCA.[2] Id. at *6 (Emphasis added).

Thus, by incorporating a Savings Clause into the FCA, Congress did not express a "clear manifestation" or intent for the FCA to completely preempt any state law claims. Rather, by including the Savings Clause, Congress specifically provided for the preservation of existing statutory and common law claims, such as the D.C. Plaintiffs' claims here. See, Heichman v. AT&T Co., 943 F. Supp. 1212, 1219-22 (C.D. Cal. 1995). Without a federal remedy to redress Plaintiffs' injuries and absent a clear manifestation by Congress to completely preempt any state law causes of action, the FCA does not have the preemptive effect necessary to confer federal question jurisdiction over any of the claims asserted in the D.C. Plaintiffs' Complaint.

In fact, Defendants' entire argument that the D.C. Plaintiffs' state law causes of action are somehow preempted by the FCC's purported broad preemptive authority has been flatly rejected by the FCC. Recently, in the FCC's Second Memorandum Opinion and Order (the "Second Order"),

---

[2] The mere incorporation of a savings clause, such as the one in the FCA, demonstrates that Congress did not intend to completely occupy the entire field of law. Rather, a savings clause explicitly provided for the preservation of existing statutory and common law claims in addition to any federal causes of action provided within the specific act. Thus, inasmuch as the LIA did not contain such a savings clause, the Court was free to find a clear manifestation by Congress to completely occupy the field of railroad manufacture and design. It is also worth noting that United States Supreme Court decision in Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 671 (1926), was directly on point and set the precedent that the LIA was intended to occupy the field.

Hon. Catherine C. Blake
July 11, 2003
-Page 5-

the FCC declined to preempt state law tort remedies regarding RF emissions. The FCC specifically explained:

> Regarding Ameritech's argument that the Commission should specify a federal rule of liability for torts related to RF emissions, we believe that such action is beyond the scope of this proceeding and we question whether such action, which would preempt too broad a scope of legal actions, would otherwise be appropriate. In the Matter of Procedures for Reviewing Requests for Relief from State and Local Regulations Pursuant to Section 332 (c)(7)(B)(v) of the Communications Act of 1934, Report and Order. 15 F.C.C.R. 22,821 at ¶90 (2000)(Emphasis added).

Thus, Defendants' contention that the FCC completely preempts the D.C. Plaintiffs' state law causes of action is completely belied by the FCC's own pronouncement which clearly demonstrates the FCC's intention that potential plaintiffs be able to pursue their state law tort remedies for injuries related to RF emissions.

Moreover, in July of 1999, the Wireless Consumers Alliance filed a petition asking for a declaratory ruling from the FCC that, as a matter of law, the FCA does not preempt state courts from awarding monetary relief against Commercial Mobile Radio Service ("CMRS") providers for violating state consumer protection, tort or contract laws.[3] The issue there was whether or not the statutory prohibition in the 1996 Act against states setting CMRS rates precluded state court awards of damages. In granting the petition, the FCC found that neither the language nor the legislative history of the FCA supported preemption of state contract, fraud or consumer protection laws. The FCC's decision is instructive inasmuch as it is "well settled that [courts] review deferentially an agency's construction of the statute which it is charged with administering." Chevron U.S.A., Inc., v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n. 11, 844 (1984).

The FCC's decision is in harmony with the large number of courts which have concluded that the FCA does not have the extraordinary preemptive force required for complete preemption. See, e.g., Smith v. GTE Corp., 236 F.3d 1292, 1312-13 (11th Cir. 2001) (a review of the [FCA], pursuant to which the FCC was acting in deregulating CPE activity, reveals that Congress also did not intend to preempt completely causes of action or remedies concerning the subject matter of the Act."); Fax Telecommunications, Inc., v. AT&T, 38 F.3d 479, 486 (2nd Cir. 1998) (complete preemption removal was not available to AT&T under the FCA); Marcus v. AT&T, 138 F.3d 46, 54 (2nd Cir. 1998) (the FCA does not itself provide a basis for removal pursuant to the complete preemption doctrine); In

---

3    In the Matter of *Wireless Consumers Alliance, Inc.,* Petition for Declaratory Ruling Concerning Whether the Provisions of the Communications Act of 1934, as Amended, or the Jurisdiction of the Federal Communications Commission Thereunder, Serve to Preempt State Courts from Awarding Monetary Relief Against CMRS Providers: (a) for Violating State Consumer Protection Laws Prohibiting False Advertising and Other Fraudulent Business Practices, and/or (b) in the Context of Contractual Disputes and Tort Actions Adjudicated Under State Contract and Tort Laws. FCC 00-292, WT Docket No. 99-263, 15 FCC Rcd. 17021 (2000). It should be noted that some of the Defendants participated in this proceeding and may be precluded from re-arguing these issues under the doctrine of collateral estoppel.

Hon. Catherine C. Blake
July 11, 2003
-Page 6-

re Long Distance Telecommunications Litigation v. Western Union Telegraph Co., 831 F.2d 627 (6th Cir. 1987) (FCA does not preempt state common law claims of fraud and deceit); Shaw v. AT&T Wireless Services, Inc., 2001 U.S. Dist. LEXIS 6589, *11-14 (N.D. Texas 2001) (no complete preemption removal jurisdiction under FCA of cell phone customer claims under the Texas Deceptive Trade Practices and Consumer Protection Act); Braco v. MCI Worldcom Communications Inc., 2001 U.S. Dist LEXIS 5461, *20-23 (C.D. Cal. 2001) (no removal based on FCA "complete preemption" theory or "artful pleading doctrine"); Crump v. Worldcom, Inc., 128 F. Supp. 549, 556-60 (W.D. Tenn. 2001) (same); State of Minnesota v. Worldcom, Inc., 125 F. Supp. 2d 365, 369-73 (D. Minn. 2000) (same); Bryceland v. AT&T Corp., 122 F. Supp. 2d 703, 709-10 (N.D. Texas 2000) (no removal based on theory of complete preemption under FCA or Section 332 of the Telecommunications Act); Brown v. Washington/Baltimore Cellular Inc., 109 F. Supp. 2d 421, 423 (D. Md. 2000) (same); Guglielmo v. WorldCom, Inc., 2000 U.S. Dist. LEXIS 10923, *8-22 (D.N.H. 2000) (no removal based on FCA complete preemption theory or artful pleading doctrine); Aronson v. Sprint Spectrum, L.P., 90 F. Supp. 2d 662, 667-69 (W.D. Pa. 2000) (no removal based on FCA complete preemption theory); Bauchelle v. AT&T Corp., 989 F. Supp. 636, 642-49 (D.N.J. 1997) (no removal based on "artful pleading" or FCA complete preemption theory); Sanderson, Thompson, Rutledge & Zimmy v. AWACS, Inc., 958 F. Supp. 947, 954-58 (D. Del. 1997) (no removal based on FCA complete preemption theory); Weinberg v. Sprint Corp., 165 F.R.D. 431, 436 n. 1 and 437-40 (D.N.J. 1996) (no removal based on "artful pleading" doctrine or FCA complete preemption theory); Heichman v. AT&T Co., 943 F. Supp. 1212, 1219-22 (C.D. Cal. 1995) (same); DeCastro v. AWACS, Inc., 935 F. Supp. 541, 548-55 (D.N.J. 1996) (no removal based on FCA complete preemption theory); Castellanos v. U.S. Long Distance Corp., 928 F. Supp. 753, 756 (N.D. Ill. 1996) (no removal based on theory of complete preemption under the FCA and Telecommunications Act of 1996); Esquivel v. Southwestern Bell Mobile Systems, Inc., 920 F. Supp. 713, 715-16 (S.D. Texas 1996) (no removal based on FCA complete preemption theory); KVHP TV Partners, Ltd. v. Channel 12 of Beaumont, Inc., 874 F. Supp. 756, 761-62 (E.D. Texas 1995) (same); American Inmate Phone Systems, Inc., v. U.S. Sprint Communications Co., 787 F. Supp. 852, 856-57 (N.D. Ill. 1992) (same); Financial Planning Institute Inc., v. AT&T Co., 788 F. Supp. 75, 77 (D. Mass. 1992) (same).

The FCA and the 1996 Act clearly do not preempt the D.C. Plaintiffs' state law claims as confirmed by clear legal precedent. In fact, the United States Court of Appeals for the District of Columbia Circuit recently held that the 1996 Act specifically sets aside large regulatory authority to the states. City of Abilene, 164 F.3d at 53. In determining the preemptive scope of the 1996 Act on state regulatory authority over telecommunications services, the District of Columbia Circuit Court of Appeals explained:

> States may act to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, safeguard the rights of consumers, manage the public rights-of-way, and require fair and reasonable compensation from telecommunications providers for use of public rights-of-way. Id. at 53. (Emphasis added).

Hon. Catherine C. Blake
July 11, 2003
-Page 7-

Defendants have failed to point to any language, either in the FCA or in the various orders of the FCC, which confers exclusive jurisdiction upon the federal court over the D.C. Plaintiffs' state law claims. Defendants simply argue that federal courts should have exclusive jurisdiction because allowing the Superior Court for the District of Columbia to resolve the D.C. Plaintiffs' claims will purportedly undermine the entire federal regulatory scheme. Not only has the Supreme Court in Merrell Dow rejected this very argument on the basis that the FCA does not establish sufficient grounds to confer federal jurisdiction, but the clear language of the FCA and the FCC's Second Order explicitly provide that such state intervention is indeed permissible. Merrell Dow, 478 U.S. at 814. See, Brock, 144 F. Supp. 2d at 658. Furthermore, state resolution of the D.C. Plaintiffs' claims will simply not jeopardize any authority of the FCC to set the technical standards for cell phones, such as radio frequency, height, power, and other operating standards to ensure network compatibility and to prevent interference. Thus, state intervention will not be inconsistent with any issue for which the FCC has authority. In any event, without a clear manifestation by Congress that state causes of actions are explicitly preempted by federal law, federal jurisdiction cannot be premised upon the complete preemption doctrine. See, City of Abilene, Texas, et. al. v. FCC, 164 F.3d 49, 52 (D.C. Cir. 1999)(holding that the Telecommunications Act of 1996 specifically sets aside large regulatory authority to the states.) Indeed, without an express mandate by Congress preempting the D.C. Plaintiffs' claims, the D.C. Plaintiffs remain the master of their Complaints, free to avoid federal jurisdiction by pleading only state law claims even where a federal claim is also available. Caterpillar, 482 U.S. at 392.

Notwithstanding the clear rejection of Defendants' position by the federal courts, Defendants yet again contend that the D.C. Plaintiffs' claims are preempted by federal law in the case at bar. In so doing, Defendants not only completely ignore the clear pronouncements of the federal courts, but Defendants also erroneously argue that the FCA preempts the D.C. Plaintiffs' state law claims based upon Wireless Telephone, 216 F Supp at 483; Head v. New Mexico Bd. of Examiners in Optometry, 373 U.S. 424 (1963); Broyde v. Gotham Tower Inc., 13 F3d 994 (6th Cir. 1994) and Goforth v. Smith, 991 S.W.2d 579 (Ark. 1999). These cases, however, actually contravene Defendants' position inasmuch as they are limited to technical based challenges expressly prohibited by the FCA.

The case of Head v. New Mexico Bd. of Examiners in Optometry, 373 U.S. 424 (1963) involved a newspaper and radio station that were enjoined from accepting or publishing a Texas optometrist's advertisement found to be in violation of a New Mexico statute. The Court held that the constitutionality of a state law cannot be struck down on the grounds of preemption by reference to broad statements about the "comprehensive" nature of federal regulation under the FCA. Id. at 430. The Court further stated that such statements concerning the "exclusive jurisdiction" of Congress begs the question: whether Congress intended to make its jurisdiction exclusive. Id. at 430. Inasmuch as there was no conflict between the state statute and the federal regulatory scheme, the state statute was upheld. Id. at 432.

Hon. Catherine C. Blake
July 11, 2003
-Page 8-

The Sixth Circuit's decision in <u>Broyde</u> v. <u>Gotham Tower Inc.</u>, merely stands for the proposition that radio signal interference falls within the FCC's exclusive technical domain. <u>Id.</u> at 997. In fact, <u>Broyde</u> actually cites <u>In re Long Distance Telecommunications Litigation</u>, 831 F.2d 627, 633 (6th Cir. 1987), for the proposition that the FCA <u>does not</u> preempt state law claims for fraud and deceit because such claims fall within the conventional experience of judges and do not require agency expertise for treatment of such claims. <u>Id.</u> at 997[4]. Inasmuch as radio signal interference falls within the FCC's technical domain, the FCC had exclusive jurisdiction over the plaintiff's claims in that case.

Finally, the case of <u>Goforth</u> v. <u>Smith</u>, 991 S.W.2d 579 (Ark. 1999) involved a suit to enjoin the construction of a telecommunications tower based upon the environmental effect of radio emissions. Inasmuch as this claim fell squarely within Section 332 (c)(7)(B)(iv) of the FCA, which specifically prohibits state laws from impeding the tower location and construction determinations, the plaintiffs' claims were preempted. Indeed, this section of the FCA is limited only to placement, construction and modification of personal wireless service facilities on the basis of RF emissions. This Section further prohibits states from even considering the effects of RF emissions when making local construction, placement and modification decisions regarding telecommunications towers. 47 USC § 332 (c)(7)(B)(iv).

Unlike the cases of <u>Head</u>, <u>Broyde</u> or <u>Goforth</u>, the D.C. Plaintiffs' claims in the instant case do not challenge the technical standards set forth by the FCC. Moreover, there is no such provision in the FCA which preempts the states' authority to regulate health care and protect public safety. In fact, not only has Congress specifically reserved the right of the states to impose such regulations, the Superior Court for the District of Columbia will not even have to interpret any of the terms or provisions of the FCC regulations or the FCA inasmuch as there is no challenge in the Complaints to such guidelines by the D.C. Plaintiffs in any event. To the contrary, any challenge to the lack of sufficient regulation of cell phones will be at issue in a <u>separate</u> and <u>distinct</u> public interest case yet to be filed. Even if the D.C. Plaintiffs' claims had challenged such guidelines in this case, which they do not, the case law makes clear that such issue would still not be substantial enough to confer federal question jurisdiction. The D.C. Plaintiffs simply allege that Defendants knowingly made false representations and warranties that cell phones are safe and non-dangerous to use when in fact, cell phones are harmful, hazardous and defective. Thus, the resolution of the D.C. Plaintiffs' claims based upon Defendants' intentional misrepresentations and warranties are solely contingent upon state tort and product liability laws.

---

4    This is in accord with <u>Crump</u> v. <u>Worldcom, Inc.</u>, 128 F Supp 2d 549 (WD Tenn. 2001) wherein the court explained that <u>In re Long Distance</u> actually stands for the proposition that the FCA did not preempt state common-law claims of fraud and deceit because an alleged failure of telephone companies to disclose the practice of charging for uncompleted calls.

Hon. Catherine C. Blake
July 11, 2003
-Page 9-


2.    **The Beneficial Case does not support dismissal of the D.C. Suits.**

Defendants cite <u>Beneficial</u> as somehow supporting their bald request to dismiss the D.C. suits without any motion ever being filed. Indeed, Defendants base this request on the erroneous grounds that the FCC's substantive limits on the level of radio frequency preempt any state law intervention.

First, Defendants' contention actually demonstrates that the Defendants' entire position is really a federal defense of preemption. Inasmuch as a federal defense of preemption is not enough to confer federal jurisdiction, Defendants' argument utterly fails as a matter of law. <u>Beneficial</u>, 123 S. Ct. at 2063 (federal defense insufficient to justify removal).

Second, unless and until this Court determines whether the D.C. Plaintiffs' cases should be remanded to the Superior Court for the District of Columbia pursuant to the pending motions for remand, the Defendants' suggestion that the D.C. Cases should be dismissed is entirely premature and disingenuous. The parties have previously stipulated and agreed to stay all action in the D.C. Cases until a decision has been issued with respect to the D.C. Plaintiffs' Motions for Remand, which were filed over fifteen (15) months ago.[5] In fact, briefing on the D.C. Plaintiffs' Motions for Remand has been complete since <u>June 18, 2002</u>. Accordingly, the D.C. Plaintiffs respectfully request this Court to issue a ruling with respect to the D.C. Plaintiffs' Motions for Remand.

3.    **This Court should not Stay the Proceedings in the D.C. Cases any further.**

There is simply no reason to stay a decision on the D.C. Plaintiffs' Motions for Remand, which will determine the proper forum for such cases. Any further action in this case should be stayed pending determination on the D.C. Plaintiffs' Motions for Remand inasmuch as the parties have already agreed and stipulated to such a stay of proceedings on two prior occasions. On or about January 7, 2002, the parties in the <u>Murray</u> case agreed that <u>all</u> proceedings in that case shall be stayed pending the outcome of Murray's anticipated Motion for Remand to be filed in that case. Thereafter, on or about January 10, 2002, the United States District Court for the District of Columbia entered the Order to Stay Proceedings pending resolution of the issue of remand. Exh. A. Pursuant to the Order, the Stay of Proceedings does not expire until <u>twenty days</u> after a final Order on the issue of remand. Exh. A. Thereafter, on or about April 23, 2002, the United States District Court for the District of Columbia entered Orders to Stay Proceedings pending resolution of the issue of remand in the five new cases. Exh. B. Pursuant to these Orders, <u>all action or proceedings</u> with respect to these cases again were stayed pending a ruling on the issue of remand. The Stay of Proceedings in these cases is also in effect until <u>twenty days</u> after the entry of the Court's Order on the issue of remand. Exh. B. Accordingly, any further action in this case prior to a determination with respect

---

5    Plaintiff, Michael Murray, originally filed his Motion for Remand on January 16, 2002, while the five additional D.C. Plaintiffs filed their Motions for Remand on April 4, 2002. Thereafter, briefing for all six D.C. Cases were consolidated for the purpose of judicial efficiency.

Hon. Catherine C. Blake
July 11, 2003
-Page 10-

to the D.C. Plaintiffs' Motions for Remand would be in direct contravention to the parties' agreement and Court Order.

Sincerely,

MORGANROTH & MORGANROTH, PLLC

*Mayer Morganroth (jag w/consent)*

Mayer Morganroth

/jag

cc:    All counsel of record (via first class mail)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL PATRICK MURRAY and )
PATRICIA ANN MURRAY, )
)
Plaintiffs, )
)
-vs- )  Case No. 01-0008479 TP.]
)
MOTOROLA INC.; QUALCOMM, INC.; )
PRIMECO PERSONAL )
COMMUNICATIONS, L.P.; CELLCO )
PARTNERSHIP d/b/a VERIZON )
WIRELESS; VERIZON )
COMMUNICATIONS, INC.; VODAFONE )
AIRTOUCH PLC; CELLULAR ONE )
GROUP; SBC WIRELESS INC.; )
WESTERN WIRELESS CORP.; )
CINGULAR WIRELESS, L.L.C.; SBC )
COMMUNICATIONS L.L.C.; )
BELLSOUTH CORP.; AMERICAN )
NATIONAL STANDARDS INSTITUTE; )
INSTITUTE OF ELECTRICAL AND )
ELECTRONIC ENGINEERS, INC.; )
CELLULAR TELECOMMUNICATIONS )
AND INTERNET ASSOCIATION; )
TELECOMMUNICATIONS INDUSTRY )
ASSOCIATION, )
)
Defendants. )
)

**FILED**

**JAN 1 1 2002**

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## ORDER

The Court, having reviewed the Joint Motion to Stay all Proceedings, finds the

motion is for good cause shown and should be granted. It is hereby

ORDERED that all proceedings in this action between plaintiffs and those

defendants who have been served or have agreed to accept service are stayed, except any

party may file motion(s) for pro hac vice and/or application for admission to this Court,

pending a ruling on plaintiffs' anticipated Motion to Remand. It is further

*3*

ORDERED that this stay shall expire twenty (20) days after a final Order on the

issue of remand is entered by the Clerk of Court.

SO ORDERED, this _10th_ day of _January_, 2002.


Thomas Penfield Jackson
Judge, United States District Court

-2-

Serve on:

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH
3000 Town Center, Suite 1500
Southfield, MI 48075

Michael D. Jones
Jennifer Gardner Levy
KIRKLAND & ELLIS
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005

Terrence J. Dee
Nora Shea
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, IL 60601

David E. Sellinger
VENABLE, BAETJER, HOWARD & CIVILETTI, LLP
1200 New York Avenue, Ste. 1000
Washington, D.C. 20005

Paul F. Strain
VENABLE, BAETJER, HOWARD & CIVILETTI, LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, MD 21201

M. King Hill, III
VENABLE, BAETJER, HOWARD & CIVILETTI, LLP
210 Allegheny Avenue
P.O. Box 5517
Towson, MD 21204

Jane F. Thorpe
Scott A. Elder
ALSTON & BIRD
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

-3-

Tina M. Pidgeon
Jeffrey J. Lopez
DRINKER BIDDLE & REATH LLP
1500 K Street NW
Washington, D.C. 20005-1209

Thomas C. Watson
Curtis S. Renner
WATSON & RENNER
1919 M Street, N.W., Suite 400
Washington, D.C. 20036-3307

Seamus C. Duffy
Paul H. Saint-Antoine
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

Katherine L. Rhyne
D.C. Bar No. 339010
KING & SPALDING
1730 Pennsylvania Avenue, SW
Washington, D.C. 20006-4706

Jameson B. Carroll
KING & SPALDING
191 Peachtree Street
Atlanta, Georgia 30303

Ralph A. Taylor, Jr.
DORSEY & WHITNEY LLP
Suite 300 South
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004

Stuart D. Aaron
Andrew P. Averbach
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177

-4-

Richard A. Dean
ARTER & HADDEN LLP
1801 K Street, NW
Suite 400K
Third Floor, L Street Entrance
Washington, D.C. 200

Michael P. Socarras
GREENBERG TRAURIG LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Francis A. Citera
GREENBERG TRAURIG LLP
77 West Wacker Drive
Suite 2500
Chicago, Illinois 60601

CELLULAR TELECOMMUNICATIONS AND INTERNET ASSOCIATION, INC.
c/o Scott Hanfling
KANE & ABBOTT, Ltd.
225 West Washington
Suite 1100
Chicago, IL  60606

BELLSOUTH CORPORATION
c/o Allen W. Nelson
1155 Peachtree St. NE
Atlanta, Georgia 30309-3610

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BALDASSARE AGRO, et al.,

          Plaintiffs,

               v.              C.A. No. 02-0610 (TPJ)

MOTOROLA, INC., et al.,

          Defendants.

**FILED**

APR 2 3 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## ORDER

Upon consideration of the Joint Motion to Stay all Proceedings, the Court finding that the motion is for good cause, it is, this 23rd day of April, 2002,

ORDERED, that the motion is granted; and it is

FURTHER ORDERED, that all proceedings in this action between the parties are stayed, except any party may file motions for admission of counsel pro hac vice and applications for admission to this Court, pending a ruling on plaintiff's anticipated Motion to Remand; and it is

FURTHER ORDERED, that this stay shall expire twenty days after the entry of this Court's Order on the issue of remand.

Thomas Penfield Jackson
U.S. District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAMELA COCHRAN, et al.,

    Plaintiffs,

        v.                C.A. No. 02-0607 (TPJ)

AUDIOVOX CORPORATION, et al.,

    Defendants.

**FILED**

APR 2 3 2002

NANCY MAYER WHITTINGTON, CLERK
U S. DISTRICT COURT

<u>ORDER</u>

    Upon consideration of the Joint Motion to Stay all Proceedings, the Court finding that the motion is for good cause, it is, this _23rd_ day of April, 2002,

    ORDERED, that the motion is granted; and it is

    FURTHER ORDERED, that all proceedings in this action between the parties are stayed, except any party may file motions for admission of counsel pro hac vice and applications for admission to this Court, pending a ruling on plaintiff's anticipated Motion to Remand; and it is

    FURTHER ORDERED, that this stay shall expire twenty days after the entry of this Court's Order on the issue of remand.

Thomas Penfield Jackson
U.S. District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID KELLER, et al.,

        Plaintiffs,

               v.                      C.A. No. 02-0608 (TPJ)

NOKIA, INC., et al.,

        Defendants.

# FILED

**APR 2 3 2002**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## ORDER

    Upon consideration of the Joint Motion to Stay all Proceedings, the Court finding that the motion is for good cause, it is, this _22nd_ day of April, 2002,

    ORDERED, that the motion is granted; and it is

    FURTHER ORDERED, that all proceedings in this action between the parties are stayed, except any party may file motions for admission of counsel pro hac vice and applications for admission to this Court, pending a ruling on plaintiff's anticipated Motion to Remand; and it is

    FURTHER ORDERED, that this stay shall expire twenty days after the entry of this Court's Order on the issue of remand.

                                      Thomas Penfield Jackson
                                      U.S. District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DINO SCHOFIELD,

    Plaintiff,

        v.                C.A. No. 02-0606 (TPJ)

MATSUSHITA ELECTRIC CORPORATION
OF AMERICA, et al.,

    Defendants.

**FILED**

APR 2 3 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

<u>ORDER</u>

Upon consideration of the Joint Motion to Stay all Proceedings, the Court finding that the motion is for good cause, it is, this ___ day of April, 2002,

ORDERED, that the motion is granted; and it is

FURTHER ORDERED, that all proceedings in this action between the parties are stayed, except any party may file motions for admission of counsel pro hac vice and applications for admission to this Court, pending a ruling on plaintiff's anticipated Motion to Remand; and it is

FURTHER ORDERED, that this stay shall expire twenty days after the entry of this Court's Order on the issue of remand.

Thomas Penfield Jackson
U.S. District Judge

#5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD SCHWAMB,

Plaintiff,

v.

QUALCOMM INCORPORATED, et al.,

Defendants.

C.A. No. 02-0609 (TPJ)

**FILED**

APR 2 3 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

_____

## ORDER

Upon consideration of the Joint Motion to Stay all Proceedings, the Court finding that the motion is for good cause, it is, this 23rd day of April, 2002,

ORDERED, that the motion is granted; and it is

FURTHER ORDERED, that all proceedings in this action between the parties are stayed, except any party may file motions for admission of counsel pro hac vice and applications for admission to this Court, pending a ruling on plaintiff's anticipated Motion to Remand; and it is

FURTHER ORDERED, that this stay shall expire twenty days after the entry of this Court's Order on the issue of remand.

Thomas Penfield Jackson
U.S. District Judge