25may05mdl

1

1              IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF MARYLAND

3

4

5    IN RE WIRELESS TELEPHONE
     RADIO FREQUENCY EMISSIONS    MDL-01-1421
6    PRODUCTS LIABILITY LITIGATION

7

8

9                                    May 25, 2005
10                                   Baltimore, Maryland

11

12        The above-entitled case came on for a status

13   conference before the Honorable Catherine C. Blake,

14   United States District Judge

15

16                    A P P E A R A N C E S

17

18   FOR THE PLAINTIFFS:

19        Richard M. Volin, Esquire
          Karen Marcus, Esquire
20        Kenneth A. Jacobsen, Esquire
          Michael R. Allweis, Esquire
21        Adam Gonnelli, Esquire (By telephone)

22

     (NOTE:  Not all counsel who were present have been
23        listed.)

24

25   Gail A. Simpkins, RPR
     Official Court Reporter

2

1    FOR THE DEFENDANTS:

2         Paul F. Strain, Esquire

Page 1

25may05mdl

Seamus C. Duffy, Esquire
3    Terrence J. Dee, Esquire
Jane Fugate Thorpe, Esquire
4    John H. Beisner, Esquire

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                P R O C E E D I N G S

2        THE CLERK:  The matter now pending before this

3    Court is Docket Number MDL-01-1421, In Re: Wireless

4    Telephone Radio Frequency Emissions Products Liability

5    Litigation.  This matter now comes before the Court

6    for the purpose of a status hearing.

Page 2

25may05mdl

7          THE COURT:  This is Judge Blake.  Do we have

8     people on the phone?

9          MR. GONNELLI:  Yes, ma'am.

10          THE COURT:  All right.  I hope we have everybody

11     we are supposed to.  I apologize again on behalf of

12     the Court that this was not set up the way we thought

13     it was and that it delayed getting us all together

14     either by phone or in person.

15          We are here I guess at the request of

16     particularly or initially Mr. Strain, joined then by

17     other counsel.

18          It certainly makes sense.  Obviously the Pinney

19     decision has been issued.  I believe a request for

20     rehearing was denied.  The mandate is issued.  So

21     there are decisions to be made about what to do with

22     the remaining cases in this MDL.

23          I know people want to be heard about that.  I've

24     gotten a couple of letters, and different cases are in

25     different procedural postures.  So I am happy to hear

4

1     what anybody wants to say about it.

2          My guess, since you requested it, Mr. Strain,

3     you go first.

4          MR. STRAIN:  Thanks very much, Your Honor.  We

5     thank you, we all thank you for having us in today.

6     Despite our numbers, we hope to make this an efficient

7     proceeding.

8          Defense counsel have conferred on issues that we

9     anticipate being pertinent for this afternoon, and

10     I've got Seamus Duffy to my left who the Court will

11     remember to address those issues.  Others at counsel

25may05md1

12    table may need to address specific issues as and if
13    they arise, Your Honor.
14        I believe the Court will remember to Mr. Duffy's
15    left Terrence Dee, to his left Jane Thorpe, and to her
16    left John Beisner.  So if it's all right with the
17    Court, Mr. Duffy will address the Court now.
18        THE COURT:  Sure.
19        MR. DUFFY:  Good afternoon, Your Honor.
20        THE COURT:  Good afternoon.
21        MR. DUFFY:  Let me begin just by way of
22    informational point to advise the Court that we do
23    intend to seek review in the Supreme Court of the
24    Fourth Circuit's decision in the Pinney case.
25        THE COURT:  All right.

5

1        MR. DUFFY:  In light of that, we thought it
2    appropriate to ask for this status conference to take
3    stock of the cases that remain pending before you.
4    Those cases include the Naquin case, the Brower case,
5    and the Dahlgren case.  Let me begin, if I might, with
6    the Naquin case.
7        Naquin, as Your Honor may recall, is a purported
8    nationwide class action case.  It was filed before the
9    additional Pinney follow-on cases.  It's the only one
10    of the class action cases that asserts a nationwide
11    class, a class defined, just like the other cases, to
12    include wireless telephone users not diagnosed with
13    brain cancer.  So in that sense, the Naquin case
14    overlaps the remanded now Pinney cases.  Your
15    jurisdiction is not challenged in the Naquin case, and

Page 4

                                25may05mdl
16    so that case is before you.

17         Let me first take up, if I might, Your Honor,

18    the suggestion that Mr. Allweis's letter to you of May

19    9, questioning the venue of the Naquin case and I

20    guess, as I read it, suggesting that Your Honor ought

21    to suggest to the Panel, to the JPML that the Naquin

22    case be remanded back to the Eastern District of

23    Louisiana with Judge Lemelle.  We disagree with that

24    suggestion, and let me say why.

25         THE COURT:  Sure.  I don't mean to cut you off,

                                                        6


1     but I will also say I did receive and read a letter

2     dated May 20th over Mr. Strain's and Mr. Yaggy's

3     signature, in which you certainly have stated some of

4     those reasons.

5          MR. DUFFY:  Your Honor, I don't have much to add

6     to that on the point, frankly.  As to the question of

7     remand of a previously transferred action in the MDL

8     context, the issue is is there good cause to remand

9     it, and that's the movant's burden.  As a general

10    matter, that only really exists where the transferee

11    court has completed pretrial proceedings in the case.

12         As we pointed out to the Court, the JPML itself

13    has rejected the argument that in a case where the

14    bulk of the actions have been resolved by some means,

15    and there are a few remaining actions in the MDL, the

16    idea that at that point the MDL transferee judge ought

17    to jettison those cases or send them back to the

18    transferor courts is really inconsistent with the

19    fundamental idea behind the MDL because at that point,

20    all of the experience that Your Honor has gained

25may05mdl

21    managing the cases is essentially wasted by sending

22    the remaining case back to the transferor court.

23         So under the law --

24         And I think, Your Honor, in this particular

25    case, the argument that I understand or that I

7

1    anticipate will be advanced is particularly I think

2    inconsistent with the record in the following sense.

3         The argument that the case belonged in New

4    Orleans was advanced to the JPML in San Diego when the

5    decision was first made to send it to Your Honor.  The

6    reason it was sent to Your Honor, as the JPML said,

7    was Your Honor's experience in this litigation and in

8    particular, your experience with complex science

9    issues that are at the core of this litigation.  That

10    rationale for Your Honor continuing to manage the

11    litigation I would argue increased in force since the

12    time of the JPML's original decision.

13         So the notion that the case ought to go back to

14    Louisiana, I guess what I would suggest to the Court

15    is that's an argument that really was made in the

16    first instance, and far from being the case where

17    there is good cause to remand the case back to

18    Louisiana, this is a case, I would suggest to the

19    Court, where there are compelling reasons not to do

20    that, because it would be tremendously wasteful of

21    Your Honor's experience in these cases and a

22    tremendous burden on Judge Lemelle to have to

23    replicate all the work that Your Honor did, and has

24    done in these cases in learning not only, and

25may05mdl

25    educating yourself and learning through the

8

1    proceedings not only the science, but also the

2    regulatory framework and the legal framework involved.

3         On the remaining actions, Your Honor, as to

4    Brower -- I'm sorry.  Your Honor had a question?

5         THE COURT:  No, no.  That's fine.

6         MR. DUFFY:  If you would like, Your Honor, we

7    can just do Naquin first.  Let me just summarize

8    because there is not, I don't think, much to it.

9         On the Dahlgren case, we've analyzed that case

10    in light of the Pinney opinion and we don't see a

11    basis to continue to resist the motion to remand that

12    case.

13         THE COURT:  Okay.

14         MR. DUFFY:  Brower is different, Your Honor.  We

15    think there are -- we would like to make arguments to

16    Your Honor that Brower continues to be a case that you

17    should keep.  We've suggested to Mr. Gonnelli, who is

18    counsel for the plaintiffs in that case, a two-week

19    briefing schedule.  We would give Your Honor

20    simultaneous briefs in two weeks addressing the impact

21    of Pinney on the Brower case.

22         MR. GONNELLI:  Excuse me, Your Honor, if I might

23    be heard.  This is Mr. Gonnelli.

24         We're not taking a position on the propriety of

25    additional briefing on this issue, but we would like

9

1    to, if Your Honor entertains additional briefing, have

2    a chance to respond to anything defense submits rather

25may05mdl

3      than do simultaneous briefing.

4             THE COURT:  Okay.  Is that acceptable, Mr.

5      Duffy, if you go first, if you wanted two weeks?

6             MR. DUFFY:  That's fine with me, Your Honor.

7      Two weeks to go first and maybe two weeks to respond

8      is fine, if that's the preference.  If Your Honor

9      would like it sooner, I think we could probably do it.

10            THE COURT:  Two weeks is fine with me.

11            And two weeks to reply, Mr. Gonnelli?

12            MR. GONNELLI:  That's fine, Your Honor.

13            MR. DUFFY:  Your Honor, the last remaining case

14     is a case called Louther that was transferred to Your

15     Honor.  It was removed.  It's a personal injury case

16     that was filed in Florida, removed and transferred to

17     this court.

18            Nothing has happened in that case since the time

19     of the transfer in late 2003.  I think what I would

20     suggest with respect to that case is that -- it is a

21     pro se plaintiff, and we will make contact with her

22     and see if she is inclined to proceed, and if so,

23     track that case in with the case management schedule

24     in at least the Naquin case and then if Brower

25     remains, as well.

                                                        10

1             On the question of Naquin --

2             THE COURT:  Before you leave Louther, then could

3      I expect -- would again that same two weeks perhaps be

4      reasonable for you to at least give me a status report

5      on your discussions with plaintiff?

6             MR. DUFFY:  Yes, Your Honor.  Yes, Your Honor.

25may05mdl

 7          THE COURT:  Okay.

 8          MR. DUFFY:  Then also in the same two weeks our

 9     thought was that we could spend that time speaking

10     with plaintiff's counsel in the Naquin case and

11     present either a joint or competing case management

12     orders for Your Honor's consideration.

13          THE COURT:  Sure, and I will hear further from

14     Naquin counsel about whether they wanted to go back to

15     Louisiana too.

16          MR. DUFFY:  Yes, Your Honor.

17          THE COURT:  But that's something that some

18     additional time to hear from both sides would be

19     helpful.

20          MR. DUFFY:  I think that covers it, Your Honor,

21     from our side.

22          THE COURT:  All right.  Well, let's see.

23     Dahlgren counsel perhaps don't feel the need to say

24     very much at this point, but --

25          MR. VOLIN:  I will not feel that need, Your

                                                      11

 1     Honor.  I will make a quick appearance.  This is

 2     Richard Volin from Finkelstein, Thompson and Loughran.

 3     I'm here with Karen Marcus from my firm as well.

 4          We obviously concur that in light of Pinney, the

 5     opposition to our remand motion can't be supported.

 6     So we would reiterate our request for remand and we

 7     would be happy to submit anything additional;

 8     although, it is fully briefed and I don't think there

 9     are any issues that really need to be addressed, with

10     the exception of anything Your Honor would like to

11     hear about.

25may05mdl

12    THE COURT:  It would seem to me if it's agreed

13  upon, that perhaps if you could just submit an agreed

14  upon form of order for me to consider, that's really

15  all that would be necessary.

16    MR. VOLIN:  Absolutely.  We'll confer with

17  defense.

18    THE COURT:  Let me just ask, the first thing Mr.

19  Duffy mentioned was seeking a review in the Supreme

20  Court.  Does that in any way affect timing or people's

21  positions on these issues?  I gather not, but --

22    MR. VOLIN:  I would submit on behalf of Ms.

23  Dahlgren that we don't think it's appropriate for us

24  to wait for that to be accepted or certainly ruled

25  upon.  I understand defendants will likely want to

12

1  reserve whatever rights they have to take that

2  decision as it affects jurisdiction.  I think whatever

3  rights they have are under the rules, so I wouldn't

4  have a position or we wouldn't have a position to

5  interrupt that until we see what they are asserting.

6    THE COURT:  Okay.  Thank you.

7    MR. VOLIN:  Thank you, Your Honor.

8    THE COURT:  Also on the Pinney cases, Mr. Smouse

9  I think had communicated on that.

10    MR. JACOBSEN:  Your Honor, Kenneth Jacobsen.

11  I'm counsel for Farina --

12    THE COURT:  Farina.

13    MR. JACOBSEN:  --  which is among the members of

14  what I will call the Pinney cases.  I think I speak on

15  behalf of all of those cases when we asked that they

Page 10

25may05mdl

16   would be remanded.  We would be happy to prepare a

17   form of order.

18        There has been a mandate issued by the Fourth

19   Circuit.  There was a request to stay that mandate.

20   That was denied.  We don't know whether the Fourth

21   Circuit's decision is self-executing.  It seems like

22   we need an order from this Court in order to get

23   remand of those cases, and I would be happy to meet

24   with counsel for defendant and see if we can't agree

25   on a form of order to submit to the Court to effect

13

1   that.

2        THE COURT:  That would be fine.

3        MR. JACOBSEN:  Very good.  Thank you, Your

4   Honor.

5        THE COURT:  Thank you.

6        All right.  Let's see.  Regarding the Brower

7   case, I think we've discussed.  Mr. Gonnelli has been

8   heard from.  We'll get the briefing on that.

9        Let's see.  Mr. Allweis.

10       MR. ALLWEIS:  Yes, Your Honor.

11       THE COURT:  There you are.

12       MR. ALLWEIS:  Good afternoon, Michael Allweis

13   for the Naquin plaintiffs.

14       Your Honor, I guess it comes as no surprise, we

15   disagree and think it should be sent back.

16       The letter that was submitted I think strains

17   the situation and the law.  I think both the letter

18   and counsel's arguments suggest that there is some

19   sort of hard and fast rule about last case -- one case

20   is not sufficient to send it back, Your Honor

25may05mdl

21    shouldn't be constrained to send it back.

22        I think the rules of the Multidistrict Panel

23    suggest that Rule 7.6, you can do it on your own.

24    Then, of course, we have the right to file a motion if

25    that doesn't occur.

14

1        The point with regard to Naquin and the

2    suggestion of Your Honor's long developed expertise,

3    and you certainly do have significant history with

4    this, I think that counsel has again failed to

5    articulate everything that is germane.

6        It is somewhat unfortunate I think slighting the

7    experience that Judge Lemelle has.  Remember, Judge

8    Lemelle has already in his own right addressed the

9    issue of preemption.  He did have before him some

10    significant references to science, and I think most

11    importantly, and completely overlooked in both the

12    letter and during the course of argument, is that on

13    August 22, 2001, shortly before the matter was taken

14    by the Multidistrict Panel, we actually argued a

15    merits motion which would resolve the case in very

16    good measure.  It was fully briefed.

17        And we are not talking about preemption, Your

18    Honor, because as you will recall again, Judge Lemelle

19    had addressed preemption.

20        THE COURT:  Right, right.

21        MR. ALLWEIS:  The defendants had filed a motion

22    suggesting that my claims be dismissed because, the

23    Louisiana claim certainly be dismissed because, one,

24    it's really, my claims are a disguised attack under

Page 12

25may05mdl

25      the Louisiana Products Liability Act, and since I

15

1      didn't make a claim for present damages due to injury,
2      I didn't have a right to seek that kind of remedy.
3          I agree that I was not making a claim under that
4      Act and, therefore, any substitution that such a claim
5      was made didn't trouble me because there is no claim.
6          They then said I did not have a right to pursue
7      redhibition claims, which is a peculiar Louisiana
8      entity, which I would suggest that Judge Lemelle has a
9      great deal of experience with.  In fact, the principal
10      case that the defendants relied upon in that case was
11      a Judge Lemelle decided case.  They made no -- they
12      weren't hesitant to attach his opinion to their
13      papers.
14          So we argued that, and it's about a 55-page
15      transcript, and he was prepared to rule.  He indicated
16      that he had some concern about my position, that he
17      thought that arguments I made on that day gave him
18      pause to think, that the defendants made arguments
19      which gave him pause to think, and he didn't get
20      around to ruling.  But there is a host of
21      jurisprudence and information before him that pertains
22      exclusively to redhibition and that issue.
23          I suspect that if I fail with regard to
24      redhibition, the industry, the defendants will then
25      before Judge Lemelle have that nationwide class and

16

1      have certain arguments they are going to want to make.
2          But the pure expertise with regard to that is

25may05mdl

3      clearly before Judge Lemelle.  So I think that argues
4      very much in favor of your exercising your discretion
5      and suggesting to the Panel that they send it back to
6      the transfer court.

7           Additionally, the history that brought Naquin
8      with the Pinney cases was that -- and this is my
9      recollection, Your Honor.

10          We went to San Diego, we argued, and the five
11     cases that were moved at that time were all of the
12     so-called headset cases.  The issues that guided the
13     Court more than as suggested by the letter you
14     received were the issues of federal jurisdiction, was
15     there truly federal jurisdiction on the federal
16     question types cases -- obviously not on Naquin -- and
17     then the issue of preemption.

18          Well, now that those have been resolved, Your
19     Honor, I think what you have in front of you is a case
20     filed in Louisiana that has been argued on a
21     substantive basis to a federal court sitting in
22     Louisiana, and I think the greater, the more prudent
23     decision by Your Honor would be to send it back where
24     it started.

25          In the letter that the industry filed, they made

17

1      a suggestion that your long experience in the Daubert
2      hearings on the brain cancer case, and I suspect they
3      are referencing the Newman matter, was important, and
4      they seem to suggest that brain tumors or brain cancer
5      is a vital part of the Naquin claim.  I am here to
6      tell the Court that is not the case, that is not how

25may05mdl
7      we framed it.

8           It is not a brain tumor case.  It is a

9      biological impact case, and the science on that, Your

10     Honor, is materially different.  There are other

11     sources.  There are other expertise.  So, therefore,

12     we are not in the same position that Your Honor spent

13     that time with with regard to Newman.

14          Moreover, since discovery never began in front

15     of Your Honor, there is no history of controlling

16     discovery, of guiding discovery that is going to

17     affect anyone.  The first discovery that will be

18     undertaken will be that which is propounded should you

19     send it back or should you keep it.

20          But in any event, I don't think it's appropriate

21     to say there is any significant history in guiding the

22     issue of discovery and that Naquin stands alone in

23     this posture at this time, having already been argued

24     substantively before Judge Lemelle.

25          I think perhaps the most important point is that

18

1      should you send this back, I suspect the first order

2      of business with regard to Judge Lemelle will be to do

3      something that he has already done, which you would

4      have to do ab initio.  You would have to begin at the

5      beginning to learn redhibition; whereas he already has

6      the briefs, has the transcript, has the argument, and

7      I suspect each side will supplement over the years

8      with more information to him.

9           That's basically it, Your Honor.  I think I've

10     addressed it.

11          THE COURT:  Do you think it makes any difference

25may05mdl

12    what the outcome is on the dispute about the Brower
13    case?
14        MR. ALLWEIS:  Your Honor, I would like to say
15    that I don't think it does.  I'm concerned that it
16    may, that it may allow Your Honor to say look, if I've
17    got one case, if I've got the Brower case, I also have
18    this case.  That would be a decision I would leave to
19    you.  I don't think it should, but I understand how,
20    if you have two cases --
21        You know, I would rather be alone at the party
22    to make my argument than have the company of Brower.
23        I'm a bit troubled that a letter was submitted
24    to Your Honor -- we flew in a long distance to be here
25    today -- that there is nothing about Brower or other

19

1    reasons needing briefing, and we're hearing it for the
2    first time today that that would be the situation.
3        So I would have to see what they have to say.
4    My understanding is that there is nothing new under
5    the sun.  But if Your Honor is inclined to think that
6    there is a difference, I would like some time to think
7    about it and to address it.
8        THE COURT:  Sure.  Well, it would be helpful,
9    and I certainly appreciate your being here today, and
10    it is helpful, it is helpful to hear from your in
11    person, but I would also --
12        Frankly, I assumed you would like an opportunity
13    even just to briefly reiterate what you've told me.
14    But if you would like to respond in writing to the May
15    20th letter, you are certainly welcomed to or if you

25may05mdl

16    want to wait a couple of weeks till you see the Brower

17    briefing and then decide whether there are any

18    additional comments you want to make.

19         I'm not going to decide this today.

20         MR. ALLWEIS:  My inclination -- and I apologize,

21    Your Honor.

22         THE COURT:  No.  Go ahead.

23         MR. ALLWEIS:  My inclination is to wait to see

24    if anything new comes under the sun in what they say.

25    I can speak to Brower counsel, see what their response

                                                          20


1    is and get a feeling in that regard.

2         So I don't see there is a benefit to me filing a

3    piecemeal response to the letter.  If there is

4    something I have omitted that I think is material or

5    germane, I will put it in whatever I file once the

6    industry files its briefing with regard to Brower.

7         THE COURT:  So perhaps you could on the same

8    schedule as Mr. Gonnelli.  As I recall, we are having

9    two weeks to brief Brower by the defense and then two

10    weeks to respond to that.

11         Mr. Gonnelli, am I remembering that correctly.

12         MR. GONNELLI:  Yes, Your Honor.

13         MR. ALLWEIS:  I think that --

14         THE COURT:  If you would like to respond at the

15    same time as Mr. Gonnelli is what I'm saying.

16         MR. ALLWEIS:  I think that's a more than fair

17    schedule, Your Honor.  If some problem arises, I'll

18    ask the Court for some consideration, but I think that

19    makes a lot of sense.

20         THE COURT:  Okay.

25may05mdl

21    MR. ALLWEIS:  Thank you.

22    THE COURT:  Thank you.  Yes.

23    MR. DUFFY:  May I be heard briefly by way of

24    reply, Your Honor?

25    THE COURT:  Sure.

21

1    MR. DUFFY:  First, let's be clear.  The Naquin

2    case is a purported nationwide class action case, and

3    I don't think Mr. Allweis is seriously suggesting that

4    the law of redhibition is going to be applied across

5    50 states to an entire industry.

6    That's why the operative complaint in the case

7    that was amended before Your Honor -- this is now in

8    the Naquin case -- in September 2002 includes claims

9    for breach of warranty, breach of contract, fraud,

10    civil conspiracy, and claims under the Magnuson-Moss

11    Warranty Act.

12    So just as importantly, Your Honor, the

13    foundational predicate for the Naquin complaint is the

14    same as the rest.  This idea that biological injury is

15    somehow different from what Your Honor examined in the

16    Newman case or that the claims in that case required

17    somehow less than proof of causation is, respectfully,

18    Your Honor, nonsense.  That case, just like the other

19    cases, is premised on the allegation that wireless

20    phones cause brain cancer.

21    Now even if you assume that the Naquin case is

22    redhibition only, let me just add that the law of

23    redhibition, it's not unusual for an MDL court to be

24    put in the position of having to interpret another

Page 18

25may05mdl
25    state's laws, and a state law in which you don't sit.

22

1    The law of redhibition has been significantly

2    contributed to in the MDL context by courts in New

3    Jersey, in New York, and elsewhere.

4        So that is not a basis, and I would suggest to

5    the Court, certainly not good cause to consider

6    sending the Naquin case back to Louisiana.

7        THE COURT:  All right.  Thank you.

8        Is there anyone out there on the telephone that

9    has not been heard from that has something they would

10   like to say, or anyone else sitting in the back of the

11   courtroom?  Okay.

12       All right.  Counsel, I appreciate the status

13   conference.  I have a much better idea of where

14   everything is.  I think we've set some dates, and

15   perhaps I will ask you to just coordinate that with

16   each other.  Put those dates that we have agreed to in

17   a letter for me, and I will wait for the briefing to

18   come in.

19       If I think that I need to hear further from you

20   to resolve any of that, we'll be in touch and we can

21   either get back together in person or perhaps just

22   have a smaller conference call.  But why don't I wait

23   to see the briefing to decide if that's going to be

24   necessary.

25       And those of you who are just preparing an

23

1    agreed upon form of order for me to sign to remand can

2    obviously go ahead and do that as well.  Okay?

Page 19

25may05mdl

3          MR. DUFFY:  Thank you, Your Honor.

4          MR. STRAIN:  Thank you, Your Honor.

5          THE COURT:  Thank you very much.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                    24

1                    REPORTER'S CERTIFICATE

2          I hereby certify that the foregoing transcript of

3     the proceedings in the matter of In Re: Wireless

4     Telephone Radio Frequency Emissions Products Liability

5     Litigation, Civil No. MDL-01-1421, before the

6     Honorable Catherine C. Blake, United States District

25may05mdl

7    Judge, on May 25, 2005 is true and accurate.

8

9

10              Gail A. Simpkins

11           Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

        2
2001 - 14:13
2003 - 9:19
20th - 6:2, 19:15
25 - 1:9, 24:7
        5
50 - 21:5
55-page - 15:14
        7
7.6 - 13:23
        9
9 - 5:19
        A
above-entitled -
Absolutely - 11:16
accepted - 11:24
Act - 14:25, 15:4,
action - 5:8, 5:10,
actions - 6:14, 6:15,
Adam - 1:21
additional - 5:9,
19:18 9:1, 10:18, 11:7,

25may05mdl

address – 4:11, 6:7
addressed – 11:9,
addressing – 8:200
advise – 4:221, 7:4
affects – 12:2, 17:17
4:19, 4:20, 13:12
agreed – 11:12, 5:3
ahead – 19:22, 23:2
allow – 18:1621:19
13:10, 13:12, 14:21,
20:13, 20:16, 20:21,
Allweis's – 5:18
amended – 21:7 18:21
anticipate – 4:9, 7:1
19:20gize – 3:11,
applied – 21:41:1
22:12ciate – 19:9,
11:23, 17:20– 5:2,


argued – 14:14,
17:23, 16:10, 16:20,
argument – 6:13,
18:6, 18:227:15, 14:12,
13:18, 15:17, 15:18,
arise – 4:13
articulate – 14:5
asserts – 5:10:5
assumed – 19:12
attack – 14:24
August – 14:13
        B
basis – 8:11, 16:21,
began – 17:14
18:4n – 4:21, 5:5,
behalf – 3:11, 11:22,
behind – 6:19
belonged – 7:3 4:16
better – 22:13
21:14gical – 17:9,
Blake – 1:13, 3:7,
brain – 5:13, 17:2,
breach – 21:91:20
briefed – 11:8, 14:16
8:25, 9:1, 9:3, 13:8,
22:17, 22:23 20:6,
20:23ly – 19:13,
brought – 16:7 18:6
8:14, 8:16, 8:21, 9:24,
18:22, 18:25, 19:16,
bulk – 6:14, 20:9
business – 18:2:22
        C
cancer – 5:13, 17:2,
case – 1:12, 4:24,
5:13, 5:15, 5:16, 5:19,
6:25, 7:3, 7:13, 7:16,
8:16, 8:18, 8:21, 9:13,
9:23, 9:24, 10:10, :20,
14:15, 15:10, 15:11,

25may05mdl

17:8, 17:9, 18:13,
21:6, 21:8, 21:16,
cases - 3:22, 3:24,
5:11, 5:14, 6:17, 6:21,
12:14, 12:15, 12:23,
16:16, 18:20, 21:19
24:6erine - 1:13,
certain - 16:1:17
11:24, 14:3, 14:23, 3,
Certificate - 24:1
challenged - 5:15
Circuit - 12:19
12:21it's - 4:24,
civil - 21:10
15:3, 15:4, 15:5, 17:5
14:24, 15:7, 21:8,
class - 5:8, 5:10,
clear - 21:1 21:2
Clerk - 3:26:3
communicated - 8
company - 18:22
competing - 10:11
21:13aint - 21:6,
completely - 14:11
concern - 15:16
concur - 11:48:15
conference - 1:13,
conferred - 4:822
22:5ider - 11:14,
10:12, 20:18n -
constrained - 13:21
context - 6:8, 22:2
continues - 8:16
contract - 21:910
controlling - 17:15
core - 7:9 - 22:15
Counsel - 22:1211
3:17, 4:8, 4:11, 8:18,
12:11, 12:24, 14:4,
counsel's - 13:18


course - 13:24, 9:16
court - 6:11, 6:22,
21:23 16:6, 16:21,
3:3, 3:5, 3:7, 3:10,
4:18, 4:20, 4:22, 4:23,
7:19, 8:5, 8:13, 9:4, ,
10:13, 10:17, 10:22,
12:6, 12:8, 12:12, ,
13:5, 13:11, 14:20,
19:8, 19:22, 20:7,
20:22, 20:25, 22:5,
courtroom - 22:11
covers - 10:20 22:2
cut - 5:25
     D
10:23, 11:23:5, 8:9,

25may05mdl

dated - 6:25:1
Daubert - 17:1 22:16
decide - 19:17,
decided - 15:11
4:24, 7:5, 7:12, 12:2,
decisions - 3:21:18
defendant - 12:24
defendants - 11:25,
15:24, 15:10, 15:18,
11:17, 20:9:2,
defined - 5:11
denied - 3:20, 12:20
developed - 14:2
Diego - 7:4, 16:10
19:6erence - 18:11,
3:25, 8:14, 17:10,
disagree - 5:23,
discovery - 17:14,
discretion - 16:422
discussions - 10:5
dismissed - 14:22,
dispute - 18:12
District - 1:1, 1:2,
Docket - 3:324:6


          1

due - 15:14, 18:3
4:17, 4:19, 4:21, 5:1,
9:6, 9:13, 10:6, 10:8,
20:23, 21:1, 23:319,
during - 14:12
       E
Eastern - 5:22
effect - 12:2525
either - 3:14, 10:11,
elsewhere - 22:3
3:4, 24:4 - 1:5,
entire - 21:59:1
entity - 15:812
1:21, 2:2, 2:3, 2:40,
event - 17:20 6:21
exception - 11:10
Excuse - 8:22 15:22
exercising - 16:4
expect - 10:3
7:7, 7:8, 7:21, 14:7,
expertise - 14:2,
16:2, 17:11
       F
fail - 15:23
fair - 20:164
Farina - 12:11, 12:12
favor - 16:4
16:15, 16:21:14,
file - 13:24, 20:5
14:21, 16:20, 16:25
filing - 20:2
9:10, 9:12, 13:2 9:8,
firm - 11:3 - 11:2
7:16, 8:7, 9:5, 9:7, 5,
19:28, 17:17, 18:1,

25may05mdl

```
five - 16:10
Florida - 9:16
follow-on - 5:9
force - 7:117:2
form - 11:14, 12:17,



foundational -
Fourth - 4:24, 12:18,
framed - 17:7
frankly - 6:6:2
fraud - 21:9:12
3:4, 24:4 - 1:5,
Fugate - 2:39, 17:14
fundamental - 6:196
     G
Gail - 1:25, 24:10
gather - 11:21
germane - 14:5,
Gonnelli - 1:21, 3:9,
9:12, 13:7, 20:8, 9:11,
great - 15:9, 20:15
guess - 3:15, 4:2,
guided - 16:12:14
17:21ng - 17:16,
     H
happy - 3:25, 11:7,
hard - 13:19
hear - 3:25, 10:13,
22:19, 11:11, 19:10,
13:8, 20:23, 22:93,
hearings - 17:219:1
19:8, 19:100:19,
hesitant - 15:12
17:15, 17:21:3, 16:7,
4:19, 5:7, 5:17, 5:20,
7:6, 7:10, 7:23, 8:3,
8:19, 8:22, 9:1, 9:6,
10:6, 10:16, 10:20, 5,
12:10, 13:4, 13:10,
16:9, 16:19, 16:23,
18:9, 18:14, 18:16,
20:12, 20:17, 20:24,
21:18, 23:3, 23:45,
10:12, 14:2:7, 7:21,
24:6rable - 1:13,
host - 15:20 4:6



     I
idea - 6:16, 6:19,
impact - 8:20, 17:9
17:25tant - 17:3,
21:12tantly - 14:11,
19:23nation - 19:20,
include - 5:4, 5:12:5
inconsistent - 6:18,
increased - 7:11
industry - 15:24,
```

25may05mdl

information - 15:21,
informational - 4:22
injury - 9:15, 15:1,
instance - 7:16
interpret - 21:24
involved - 8:2:5
14:9, 15:22, 16:17,
issued - 3:19, 3:20,
issues - 4:8, 4:11,
16:12, 16:141:9, 11:21,
itself - 6:12
         J
12:10, 12:13, 13:3
Jersey - 22:3:15
John - 2:4, 4:16
joint - 10:11
7:4, 7:6:21, 6:12,
judge - 6:162
5:23, 7:22, 14:7,
15:25, 16:3, 17:24,
jurisdiction - 5:15,
jurisprudence - 15
15:21
         K
keep - 8:17, 17:19
12:10th - 1:20,
kind - 15:2
         L
late - 9:19, 13:19
21:4, 21:22, 21:25,


laws - 21:25
learning - 7:24,
least - 9:24, 10:4
left - 4:10, 4:15,
legal - 8:2
14:7, 14:8, 14:18, 2,
16:3, 17:24, 18:25,
letter - 5:18, 6:1,
16:13, 16:25, 18:23,
letters - 3:242:17
14:25, 24:4 1:6, 3:4,
11:4t - 5:1, 8:10,
listed - 1:235
7:11gation - 7:7, 7:9,
24:5gation - 1:6, 3:5,
Loughran - 11:2
7:14, 7:18, 10:15,
16:20, 16:22, 22:6,
Louther - 9:14, 10:2
         M
Magnuson - 21:10
21:10son-moss -
management -
managing - 6:21
12:18, 12:1920,
Maryland - 1:2, 1:10
materially - 17:10
6:10, 14:13, 17:3,
Mdl - 3:22, 6:7,

25may05mdl

21:23, 22:2 6:19,
3:3, 24:521 - 1:5,
means - 6:14
meet - 12:23:16
mentioned - 11:19
Michael - 1:20,
might - 5:5, 5:17,
Moreover - 17:14
most - 14:10, 17:25
13:24, 14:15, 14:21,
moved - 16:119


13:22, 14:14t -
        N
Naquin - 5:4, 5:6,
5:21, 8:7, 9:24, 10:1,
14:1, 16:7, 16:16, ,
21:8, 21:13, 21:21,
nationwide - 5:8,
necessary - 11:15,
need - 4:12, 10:23,
22:19, 11:9, 12:22,
never - 17:141
22:3- 7:3, 22:2,
Newman - 17:3, 24
nonsense - 21:18
Nothing - 9:18
19:4ing - 18:25,
Number - 3:33
numbers - 4:6
        O
16:16, 23:2 11:4,
occur - 13:25:18
omitted - 20:45, 24:11
one - 5:9, 13:19,
operative - 21:6
15:12on - 8:10,
opposition - 11:512
12:17, 12:22, 12:25,
orders - 10:12
Orleans - 7:412
7:13t - 5:20, 6:16,
overlaps - 5:14
own - 13:23, 14:81
        P
Panel - 5:21, 13:22,
papers - 15:13
particular - 6:24,
particularly - 3:16,
party - 18:21
pause - 15:18,
peculiar - 15:7


                2

people - 3:8, 3:23
perhaps - 10:3,
20:7, 22:15, 22:215,
19:11, 22:214,

25may05mdl

pertains - 15:21
phone - 3:8, 3:14
piecemeal - 20:3
5:9, 5:14, 8:10, 8:21,
16:8, 12:8, 12:14,
plaintiff's - 10:100:5
13:13tiffs - 8:18,
point - 4:22, 6:6,
14:1, 17:25 10:24,
position - 8:24,
21:24 15:16, 17:12,
posture - 17:2321
predicate - 21:13
14:17, 14:19, 16:17
premised - 21:19
prepared - 15:15
present - 1:22, 5
pretrial - 6:11
principal - 15:9
problem - 20:17
proceed - 9:22:25
proceedings - 6:11,
Products - 1:6, 3:4,
proof - 21:17
17:18unded -
prudent - 16:224
purported - 5:7,
purpose - 3:6
Put - 22:16:6
put - 20:5, 21:24
        Q
quick - 11:1- 5:19
        R
Radio - 1:5, 3:4, 24:4
rationale - 7:10:21
read - 5:20, 6:14:3




7:15, 11:9, 11:14, ,
reason - 7:6
reasons - 6:4, 7:19,
receive - 6:1
recollection - 16:9
redhibition - 15:7,
21:4, 21:22, 21:23,
references - 14:10
regard - 14:1, 7:3
18:2, 20:1, 20:613,
regulatory - 8:2
reiterate - 11:6,
rejected - 6:13
remain - 5:310
6:15, 6:22, 8:3, 9:13
remand - 6:7, 6:8,
12:23, 23:1 11:5, 11:6,
5:22, 12:165:14,
remember - 4:11,
Remember - 14:7
20:11bering -
9:16ved - 9:15,
reply - 9:11, 20:24

25may05mdl

Reporter – 1:25,
Reporter's – 24:1
11:6, 12:19:15, 3:19,
required – 21:16
resist – 8:111
22:20ve – 14:15,
16:18ved – 6:14,
respectfully – 21:17
19:14, 20:10, 20:14
20:3onse – 19:25,
review – 4:23, 11:19
rights – 12:1, 12:32
rule – 13:19, 15:15
ruled – 11:24
ruling – 15:2013:22
        S
San – 7:4, 16:10


9:23, 20:8, 20:17
14:10, 17:9:8, 8:1,
Seamus – 2:2, 4:10
10:22, 12:5, 12:24,
19:16, 19:23, 19:25,
seek – 4:23, 15:2
seem – 11:12, 17:4
self-executing –
send – 6:17, 7:5,
16:23, 17:19, 18:1,
sense – 3:18, 5:13,
sent – 7:6, 13:15
seriously – 21:3
shortly – 14:1314
sides – 10:18 18:7
signature – 6:3
14:10, 17:21– 14:3,
Simpkins – 1:25, 2:1
simultaneous –
sit – 21:25
22:10ng – 16:21,
19:2ation – 13:17,
smaller – 22:226
so-called – 16:12
sooner – 9:94:6
sort – 13:19
speaking – 10:9
spend – 10:9:12
stands – 17:22
state – 21:2524
States – 1:1, 1:14,
states – 21:5
5:2, 10:4, 22:12:6,
stock – 5:39
4:2, 4:4, 23:43:16,
strains – 13:16
11:13, 11:22, 12:25
submitted – 13:16,
substantive – 16:21
17:24antively –

25may05md1
3

sufficient - 13:204
7:14, 7:18, 9:20,
17:4, 22:423, 15:8,
16:13sted - 8:17,
14:22, 16:5, 21:3,
5:24, 14:2, 17:18,
sun - 19:5, 19:24
supported - 11:57
Supreme - 4:23,
surprise - 13:14
17:2, 18:1, 18:7
    T
table - 4:12
3:4, 24:4 - 1:5,
5:12, 22:8- 1:21,
therefore - 15:4, 15
Thompson - 11:2
timing - 11:204:15
19:2, 19:9, 19:195,
22:21her - 3:13,
track - 9:230
18:6, 24:2 - 15:15,
transferee - 6:10, :6
transferor - 6:18,
transferred - 6:7,
tremendous - 7:22
7:20endously -
troubled - 18:23
truly - 16:15
tumors - 17:4
9:5, 9:7, 9:11, 10:3,
Two - 9:7, 9:10:9
types - 16:1618
    U
under - 6:23, 12:3,
19:24, 21:10 19:4,
unfortunate - 14:6
24:6ed - 1:1, 1:14,
up - 3:12, 5:17
users - 5:12


                3


    V
vital - 17:5
11:2, 11:16, 11:22,
12:7
    W
19:23, 22:17, 22:22,
warranty - 21:9
wasted - 6:21:11
week - 8:187:20
9:7, 9:10, 9:11, 10:3,
20:10 19:16, 20:9,
whereas - 18:515
24:3less - 1:5, 3:3,
21:19ess - 5:12,
writing - 19:14
    Y
years - 18:72

25may05mdl

yourself – 7:25