

Two Hopkins Plaza, Suite 1800
Baltimore, Maryland 21201-2978

Telephone 410-244-7400
Facsimile 410-244-7742

www.venable.com

Paul F. Strain          (410) 244-7717          pfstrain@venable.com

December 16, 2005

*Via Hand Delivery*

The Honorable Catherine Blake
U.S. District Court for the District of Maryland
101 W. Lombard
Baltimore, MD 21201

      Re:    In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation, MDL No. 1421

             *Brower v. Motorola, Inc., et al.* (S.D. Cal.)
             *Louther v. AT&T Corp.* (M.D. Fla.)

Dear Judge Blake:

      We write on behalf of the *Louther* and *Brower* Defendants, respectively, to reply to: (1) the *Louther* plaintiff's December 9, 2005 letter requesting remand to the United States District Court for the Middle District of Florida and (2) the *Brower* plaintiffs' December 2, 2005 submission in support of their remand motion.

### LOUTHER

      Plaintiff in the *Louther* action has requested that the Court remand *Louther* to the United States District Court for the Middle District of Florida.[1] The letter does not explain why remanding the *Louther* action is appropriate at this time. Because plaintiff in *Louther* has not made the necessary showing of "good cause," the Court should deny Plaintiff's request for a suggestion of remand.

---

[1] *See* Letter dated December 9, 2005. The *Louther* Plaintiff's December 9 Letter describes the Middle District of Florida as the jurisdiction "in which she originally filed her lawsuit." Defendants note that the *Louther* action was originally filed in state court in Seminole County, Florida. Defendants timely removed *Louther* to the Middle District of Florida on the basis of diversity of citizenship. Ms. Louther resides in Westmoreland County, Pennsylvania, and her counsel is located in Washington, DC.

VENABLE LLP

The Honorable Catherine Blake
December 16, 2005
Page 2

As Defendants previously explained in letters to the Court dated May 20 and June 21, 2005, a suggestion of remand is appropriate only upon a showing of "good cause."[2] Absent extraordinary circumstances, "good cause" sufficient to justify a suggestion of remand has generally been found to be lacking when sought prior to the completion of pretrial proceedings.[3] There are no extraordinary circumstances warranting remand in this case.

Most important, many common issues remain in the case, including the critical science issues addressed in Defendants' November 18, 2005 submission to the Court. These are issues which this Court has examined thoroughly in the past and which formed part of the basis for the JPML's decision to assign these cases to this district. The *Louther* complaint alleges that plaintiff's decedent died of a brain tumor allegedly caused by the decedent's use of a wireless telephone.[4] For that reason, the *Louther* complaint raises the critical threshold issue whether these plaintiffs have sufficient expert evidence showing that there is a reliable scientific basis for their theory that exposure to radio frequency emissions from wireless telephones can and did cause or aggravate brain cancer.[5] The Defendants have previously explained in their June 21, 2005 and November 18, 2005 submissions to the Court that the common threshold science questions alone preclude plaintiffs from showing that "extraordinary circumstances" warrant remand now, prior to the conclusion of pretrial proceedings. Plaintiffs' position that the issues of federal preemption are

---

[2] May 20 Letter at 1, citing *In re South Cent. States Bakery Prods. Antitrust Litig.*, 462 F. Supp. 388, 390 (J.P.M.L. 1978).

[3] *See, e.g., In re South Cent. States Bakery Prods. Antitrust Litig.*, 462 F. Supp. 388, 390 (explaining that remand is appropriate when "the transferee court has reached the completion of consolidated pretrial proceedings."); *In re National Century Financial Enterprises, Inc. Financial Investment Litig.*, No. 2:03-MD-1565, 2004 U.S. Dist. LEXIS 10605, at *9-10 (S.D. Ohio 2004); *In re Integrated Resources, Inc., Real Estate Limited Partnerships Secs. Litig.*, MDL No. 987, 1995 U.S. Dist. LEXIS 5181, *10 (S.D.N.Y. 1995) ("Remand is appropriate when the discreet function performed by the transferee court has been completed.").

[4] *Louther Compl.* ¶ 4.

[5] *See Newman v. Motorola*, 218 F. Supp. 2d 769 (D. Md. 2002), *aff'd* 78 Fed Appx. 292, 2003 U.S. App. Lexis 21367 (4th Cir. 2003); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

# VENABLE LLP

The Honorable Catherine Blake
December 16, 2005
Page 3

the only common issues in the case and the only reason for consolidated pretrial proceedings before this Court is untenable.[6]

For the foregoing reasons, Defendants oppose the *Louther* plaintiff's request for remand to the Middle District of Florida.

## BROWER

In their December 2, 2005 submission, the *Brower* plaintiffs assert that: (1) the Fourth Circuit has "effectively held" that the *Brower* complaint does not present federal questions; (2) in *In re Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. at 17022 (¶ 2) (August 14, 2000), the FCC rejected the jurisdictional arguments Defendants make here; and (3) the Supreme Court's recent decision in *Grable & Sons Metal Prods. Inc. v. Daure Eng'g and Mfg.*, 125 S. Ct. 2363 (2005), does not apply to the *Brower* complaint. None of these arguments has merit.

*First*, the *Brower* plaintiffs are incorrect that the Fourth Circuit's jurisdictional decision in *Pinney v. Nokia*[7] warrants remand here because their complaint is "virtually identical" to the *Pinney* complaints.[8] As Defendants explained in their June 8 Letter, the Fourth Circuit found no federal jurisdiction in *Pinney* because, in the panel majority's opinion, the *Pinney* plaintiffs' complaints: (1) did not have allegations "attacking the federal RF radiation standards," and (2) did not allege that defendants "fraudulently misrepresented the RF radiation standards."[9] In contrast, the *Brower* complaint alleges that the federal RF standard is flawed as a result of Defendants' negligence, which has purportedly resulted in a "sham" SAR standard. The *Brower* plaintiffs also allege that Defendants misrepresented the federal SAR standard. The *Brower* plaintiffs even seek

---

[6] In addition, although the party and case-specific convenience considerations relevant in more traditional venue inquiries are not controlling in the MDL context, Defendants note that the District of Maryland is a more convenient forum than the Middle District of Florida for the parties to the *Louther* case in light of Ms. Louther's state of residence (Pennsylvania) and the location of her counsel (Washington, DC).

[7] 402 F.3d 430 (4th Cir. 2005) (hereinafter "Pinney").

[8] *Brower* Pltfs' Dec. 2 Letter at 3.

[9] Defs' June 8 Letter at 2.

VENABLE LLP

The Honorable Catherine Blake
December 16, 2005
Page 4

an injunction barring Defendants from representing that the federal RF standards "have any validity."[10]

Critically, the *Brower* plaintiffs do not dispute that their fraud claims include allegations that Defendants misrepresented the federal SAR standards as "true and accurate" and failed to disclose that the standards are "wholly inadequate and ineffective." Nor do the *Brower* plaintiffs dispute or address the fact that they have asked the Court to permanently enjoin Defendants from "continuing to advertise the public that the SAR standard and/or test methods have any validity."[11] As Defendants explained in their June 8 Letter, no court can resolve claims asserting that Defendants failed to disclose that the federal SAR standard is inadequate without first determining whether it is, indeed, "inadequate." And no court can either grant or deny a claim for injunctive relief forbidding Defendants from representing that the federal standard is valid without first determining whether the SAR standard has "any validity."[12] In essence, the *Brower* plaintiffs have pled exactly the substantial federal question that the Fourth Circuit found was not raised in the *Pinney* complaints. On these grounds alone, the Court should deny the *Brower* plaintiffs' remand motion.

The *Brower* plaintiffs try to avoid federal jurisdiction by asserting that their claims are not pled against the FCC or any government agencies, but against IEEE and ANSI, who "established" the SAR standards, and manufacturers who they claim "designed and implemented their own testing." For example, the *Brower* plaintiffs disavow any allegation that the FCC was negligent in "setting the SAR standard," arguing that they only contend ANSI and IEEE were negligent.[13] This argument is meritless.

As an initial matter, the argument is factually incorrect. As this Court is aware, ANSI and IEEE did not "establish" or "set" the federal SAR standard. Rather, it was the FCC that issued the regulations that set the RF exposure standard for wireless phones.[14] In doing so the FCC

---

[10] *Id.* at 2-3.

[11] Brower FAC at ¶ 69, pp. 46-47.

[12] Def's June 8 Letter at 4.

[13] Brower 12/2/05 Letter, at 3.

[14] *In re Wireless Tel. Radio Frequency Radiation Liab. Litig.*, 240 F. Supp. 2d 452, 459-60 (D. Md. 2003). ANSI does not develop standards, but approves standards that meet its procedural requirements.

# VENABLE LLP

The Honorable Catherine Blake
December 16, 2005
Page 5

considered work done by ANSI, IEEE, and others, but the final, enforceable standard is that of the FCC.[15]

In any event, the *Brower* plaintiffs' argument that their claims are asserted against ANSI and IEEE rather than the FCC is a distinction without a difference. Regardless of who they claim is culpable (and defendants deny that any were), the *Brower* plaintiffs' bottom line allegation is that the federal SAR standard -- the only standard with any legal effect -- is a "sham." The point that the *Brower* plaintiffs fail to address is that no court can resolve questions of whether ANSI, IEEE, or any other defendant was negligent in "establishing" or "setting" a "sham" federal SAR standard, as the *Brower* plaintiffs allege, without passing judgment on the validity of the federal standard itself. This question intimately involves the "substantive content of the federal regulations" and thus plainly raises a federal question.[16]

**Second**, *Wireless Consumers Alliance, Inc.*, is irrelevant to the jurisdictional issues before this Court. The *Brower* plaintiffs assert that the FCC took the position in *Wireless Consumers Alliance* that the Telecommunications Act does not generally preempt damages actions based on consumer protection, tort or contract claims. Based on this reading of *Wireless Consumers Alliance*, the *Brower* plaintiffs assert that the FCC has "effectively held" that the *Brower* complaint alleges only state-law claims that do not present a federal question. The *Brower* plaintiffs are wrong for a number of reasons.

As an initial matter, nowhere in *Wireless Consumers Alliance* did the FCC address or discuss its RF emissions standards, let alone the preemptive effect of claims challenging those standards. *Wireless Consumers Alliance* involved only the narrow question whether Section 332(c)(3) of the Telecommunications Act, which prohibits state rate and entry regulation, expressly preempts all damages awards against wireless service providers as a form of rate regulation. Although the FCC held that awarding monetary relief does not constitute "rate" regulation *per se* and therefore that Section 332 (c)(3) does not ***categorically*** preempt lawsuits seeking the award of monetary relief, the FCC also made clear that it was ***not*** adopting a position that Section 332(c)(3) could never expressly preempt damages awards in state tort or contract claims as rate or entry regulation. To the contrary, relying on the Seventh Circuit's decision in *Bastien v. AT&T Wireless*

---

[15] *In re Wireless Tel. Radio Frequency Radiation Liab. Litig.*, 216 F. Supp. 2d 474, 484 (D. Md. 2002) ("*In re Wireless I*") (in setting its standards, the FCC "recognize[d] technically sound standards promulgated by reputable and competent organizations such as ANSI.").

[16] *Pinney*, 402 F.3d at 447.

# VENABLE LLP

The Honorable Catherine Blake
December 16, 2005
Page 6



*Servs.*, 205 F.3d 983 (7th Cir. 2000), the FCC explicitly recognized that state law damages claims *can*, for example, constitute forbidden rate or entry regulation under Section 332(c)(3):

> [W]e read *Bastien* as standing for the more general proposition, with which we agree, that state law claims may, in specific cases, be preempted by Section 332. We also read *Bastien* as standing for the proposition that it is the substance, not merely the form of the state claim or remedy, that determines whether it is preempted under Section 332.[17]

Thus, even under Section 332(c)(3), whether claims are expressly preempted as rate or entry regulation depends on the "specific details" of each "particular case."[18]

Moreover, to the extent that plaintiffs assert that the FCC's views on the preemptive force of its RF regulations are relevant to the substantial federal question analysis, the FCC has publicly taken the position that its RF emissions standards *do* preempt claims that handheld wireless phones are unreasonably dangerous. On November 21, 2005, the FCC sought leave to file an amicus brief in the "Morganroth Cases," which were previously before this Court and then remanded to the D.C. Superior Court.[19] While the motion has not yet been granted, the brief, attached to this submission as Exhibit A, publicly expresses the Commission's position on the preemptive force of its own RF regulations -- that "there are compelling reasons for this Court to reject the Fourth Circuit's preemption analysis" in *Pinney*.[20] The FCC specifically confirmed its agreement with this Court's holding that "a judicial determination of plaintiffs' claims under state law would 'necessarily require a judge and jury to usurp the regulatory function entrusted by Congress to the expertise and discretion of federal agencies.'"[21] The FCC further stated that "the Fourth Circuit in *Pinney* erred in failing to recognize that the FCC's establishment of national RF exposure standards, and its determination that wireless phones that comply with those standards are safe for sale to the general public, preempted the *Pinney* plaintiffs' attempt to obtain a contrary judicial ruling under state law." While the issue of federal preemption is not before this Court, the FCC's

---

[17] 15 F.C.C.R. 17021 at ¶ 28.

[18] *Id.* ¶ 9.

[19] *In re Wireless Tel. Radio Frequency Emissions Products Liab. Litig.*, 327 F. Supp. 2d 554 (D. Md. 2004).

[20] Ex. A at 3.

[21] *Id.* (quoting from *In re Wireless*, 248 F. Supp. 2d 452, 463 (D.Md. 2003).

# VENABLE LLP

The Honorable Catherine Blake
December 16, 2005
Page 7

filing highlights the substantial federal interests at stake, and certainly means that any federal question presented by the complaint should be deemed substantial by this Court under *Grable*.

Under *Grable*, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[22] The FCC's brief confirms the agency's views that *any* attack on its RF regulations threatens a substantial federal interest in an area where, according to the FCC, "the federal presence is not just 'significant,' it is exclusive."[23] For example, the FCC stated that:

- "The Communications Act vests in the FCC *exclusive federal authority* to regulate the use of radio communications in the United States and grants the FCC broad regulatory powers over the technical aspects of RF transmissions."[24]

- "Congress granted the FCC *expansive* authority over radio transmissions . . . It has long been settled that the FCC's regulation of 'technical matters' concerning frequency allocation is '*clearly exclusive' of state and local regulation* . . . More recently, Congress expressly adopted the principle of federal primacy in the emerging area of wireless communications."[25]

- "The FCC's standards also preserve the *important federal policy* of facilitating the development of wireless communications services."[26]

- Any challenge to the validity of the RF standard "cannot be squared with the federal government's longstanding *primacy* over the regulation of RF transmissions, or

---

[22] 125 S.Ct. at 2368.

[23] Ex. A, at 20.

[24] *Id* at 14 (emphasis added).

[25] *Id*. at 6-7 (emphasis added).

[26] *Id* at 3 (emphasis added).

VENABLE LLP

The Honorable Catherine Blake
December 16, 2005
Page 8

with the ***significant federal interest*** in implementing a uniform national communications policy."[27]

Here, the *Brower* plaintiffs' claims that the FCC SAR standards are a "sham" and that it is fraud to describe them as "valid" raises "important," "significant," and "exclusive" (and thereby substantial) federal issues. The FCC's position on the federal importance of its RF emission standards is clear, and it decisively favors Defendants.[28]

***Third***, the *Brower* plaintiffs' attempts to distinguish the Supreme Court's decision in *Grable* is without merit. The *Brower* plaintiffs assert that *Grable* does not apply because their complaint "does not require this Court to either interpret or apply any federal statute." They also claim that Congress and the FCC expressly preserved state law claims, and therefore the "welcome mat is not out" for federal jurisdiction. Finally, plaintiffs assert that not every case that implicates goods or services subject to federal regulation are removable.[29] Each of these arguments is incorrect.

The standard under *Grable* is not whether a claim requires an interpretation or application of a federal statute. Under *Grable*, the complaint must raise a "federal issue." As explained above, the *Brower* complaint on its face raises a "federal issue:" the validity of the FCC RF emissions regulations.

Similarly, the fact that the Telecommunications Act has a savings clause is irrelevant to the existence (or nonexistence) of federal question jurisdiction under the substantial federal question doctrine. The fact that the Telecommunications Act may "preserve" certain state-law claims from being preempted, or otherwise altered by federal law,[30] does not (and cannot) eliminate the existence of a federal question from an otherwise state-law claim.

---

[27] *Id.* at 4 (emphasis added).

[28] On April 12, 2005 the Solicitor General authorized the filing of an amicus brief by the United States expressing the FCC's view that the Fourth Circuit's panel decision in *Pinney* was wrong and should be reviewed by the full court. That same day, the Fourth Circuit denied rehearing *en banc* before the brief was filed, depriving the Fourth Circuit of the FCC's views on the preemptive effect of its own regulations. (*See* Exhibit B)

[29] Pltfs' December 2 Letter at 4.

[30] *See Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 868 (2000)

**VENABLE**LLP

The Honorable Catherine Blake
December 16, 2005
Page 9


Moreover, the "missing welcome mat" metaphor embraced by the *Brower* plaintiffs does not apply here. The *Grable* Court used that metaphor to help explain why in *Merrell Dow* it held that no federal jurisdiction existed. There the Court held that the lack of a federal cause of action was a "missing welcome mat" that – while not always a requirement for federal jurisdiction –was required under the circumstances of that case. That metaphor does not work for plaintiffs here because, among other things, a federal cause of action ***does*** exist for challenges to the validity of FCC regulations, as this Court previously held and the Fourth Circuit did not dispute.[31] In other words, the Telecommunications Act does provide a "welcome mat" for claims challenging the sufficiency of the FCC RF emission standards.

Finally, Defendants do not dispute that lawsuits that simply implicate goods or services subject to federal regulation are not necessarily removable. The *Brower* complaint, however, does not merely "implicate" wireless telephony: it directly, and on its face, challenges the validity of the federal regulations governing wireless telephony. As explained in the June 22 Letter, Defendants have a direct interest in the availability of a federal forum to adjudicate whether duly promulgated federal regulations are entitled to uniform national application, or whether they are truly a "sham" as alleged in the *Brower* complaint. *Grable* and its progeny make clear that a federal forum must be available for any such claims.[32]

For these reasons, as well as those described in detail in Defendants' previous submissions, the *Brower* motion to remand should be denied.

---

[31] *In re Wireless I*, 216 F.Supp. 2d 474, 481 n.4; *See also Cellular Phone Taskforce v. FCC*, 205 F.3d 82 (2d Cir. 2000); *EMR Network v. FCC*, 391 F.3d 269 (D.C. Cir. 2004).

[32] *See Grable,*, 125 S. Ct. at 2368 ("The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action . . ."); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (under rubric of *Grable*, removal proper because case "involve[s] aspects of the complex federal regulatory scheme applicable to cable television rates, as to which there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum'").

# VENABLE LLP

The Honorable Catherine Blake
December 16, 2005
Page 10

Respectfully,

*Paul F. Strain*

Paul F. Strain
VENABLE LLP

*Michael Yaggy*

Michael E. Yaggy
DLA PIPER RUDNICK GRAY CARY US LLP

Liaison Counsel For Defendants

cc: R. Smouse (by fax)
    K. Jacobson (by fax)
    A. Gonnelli (by fax)
    C. Hilliard (by fax)
    Defense Counsel

::ODMA\PCDOCS\TO1DOCS1\218544\1