## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **IN RE WIRELESS TELEPHONE** | ) | |
| **RADIO FREQUENCY** | ) | **MDL Docket No. 1421** |
| **LITIGATION** | ) | **Civil Action No. 01-MD-1421** |

This Document Relates To:

    *Farina v. Nokia, Inc.*, Civil Action No. 2:06-724 (E.D. Pa.).

### PLAINTIFF'S  AMENDED JOINT MOTION AND MEMORANDUM FOR REMAND

    Plaintiff, by and through his undersigned counsel, pursuant to 28 U.S.C. § 1447(c) and

the Stipulated Scheduling Order submitted to the Court on October 16, 2006, hereby moves for

entry of an Order remanding of *Farina v. Nokia, Inc.,* Civil Action No. 2:06-724 (E.D. Pa.) to the

Pennsylvania state court from which it was improperly removed by defendants a second time. In

support hereof, plaintiff states the following:

### I. BACKGROUND FACTS AND PROCEDURAL HISTORY RELEVANT TO
### PLAINTIFF'S MOTION

    1. This class action was brought by a *Pennsylvania* plaintiff in *Pennsylvania* state court

alleging claims solely on behalf of residents of *Pennsylvania* exclusively under *Pennsylvania*

state law against manufacturers and sellers of cell phones who conduct substantial business in

*Pennsylvania.*[1]

    2. This is the second time that defendants have improperly removed this case from its

proper state forum to the federal courts, where it does not belong. The first time, the United

States Court of Appeals for the Fourth Circuit (and a failed petition for *certiorari* by defendants

---

[1] *See* Plaintiff's Third Amended Complaint.

to the United States Supreme Court) reaffirmed that the federal court's lack jurisdiction over this case, and it was returned to Pennsylvania state court where it was commenced more than five years ago in April 2001. *See Pinney v. Cellco Partnership,* 402 F.3d 430 (4th Cir. 2005), *cert. denied*, Nos. 05-207 and 05-198 (October 24, 2005).

3. But proceedings in that forum had barely resumed when defendants once again removed the action to federal court, and successfully had it transferred to this District for coordinated pretrial proceedings in the *Wireless Telephone* Multidistrict Litigation proceedings pending here.

4. Respectfully, enough is enough. Through their machinations, defendants have forestalled any forward progress in this case for half a decade. Plaintiff and the class he seeks to represent have suffered severe prejudice from these interminable delays. The time has come once and for all to return this case to its proper venue—Pennsylvania state court—so that the proceedings there can be allowed to run their course without further interference or disruption by defendants in a case over which federal jurisdiction is manifestly lacking. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *In Re New England Mutual Life Ins. Co. Sales Practices Lit.*, 324 F. Supp.2d 288 (D. Mass. 2004) (MDL transferee court has authority to remand cases directly to their originating state courts).

5. Alternatively, and as discussed in the separate Joint Motion and Memorandum filed simultaneously herewith, plaintiff requests that this Court file a suggestion of remand with the Judicial Panel on Multidistrict Litigation ("MDL"), as there is no longer any need for coordinated MDL proceedings, and the convenience of the parties and witnesses would be better served by returning this case to the Transferor Court. *See* 28 U.S.C. § 1407 (transfer should not be made unless it will "be for the convenience of the parties and witnesses and will promote the

just and efficient conduct of such actions."). There is nothing "just and efficient" in retaining a case over which there is a lack of federal jurisdiction. And there certainly is no "convenience" to plaintiff and the class he seeks to represent from any further delay in a case which, because of defendants' procedural maneuvering, is five years old yet has not progressed beyond the pleading stage.

## II. DEFENDANTS' CONTRIVED BASIS FOR REMOVAL AND THE LACK OF FEDERAL JURISDICTION

6. Plaintiff's initial Complaint in this case, scrutinized by the Fourth Circuit in deciding that the federal courts lacked jurisdiction over plaintiff's entirely state law claims, named as defendants 24 separate business entities involved in the manufacture, sale and distribution of cell phones and companies involved in the transmission of wireless signals from those cell phones (called radio frequency radiation or "RFR"), together with two trade associations to which defendants belong.

7. After remand of this case to Pennsylvania state court by the Fourth Circuit Court of Appeals, plaintiff added as a defendants in his Second Amended Complaint[2] a Korean manufacturer of cell phones, LG Electronics, Inc. and its American subsidiary, LG Electronics U.S.A., Inc. (jointly, "LG" or the "LG defendants"), since LG had manufactured one of the cell phones used by plaintiff. Plaintiff filed his Second Amended Complaint on December 23, 2005 pursuant to a schedule stipulated by the parties, and served that pleading on LG two days later on December 27, 2005, an evidenced by the proof of service attached hereto as Exhibit A. Significantly for purposes of this Motion, *LG did nothing to remove this case or otherwise invoke federal jurisdiction under 28 U.S.C. § 1446 within the thirty (30) day deadline for removal under subsection (b) of Section 1446*. To the contrary, *all* defendants—including

_____
2 Plaintiff had amended his Complaint once in September 2002 while this *Farina* action was part of the prior MDL proceedings before this Court.

3

specifically the LG defendants—requested and received from plaintiff's counsel an extension of time to file preliminary objections (the Pennsylvania state procedure equivalent to a Rule 12(b)(6) motion to dismiss) to plaintiff's Second Amended Complaint.[3]

8. In the interim, at defendants' specific request, undersigned plaintiffs' counsel and liaison counsel for all defendants, Seamus C. Duffy, Esquire, participated in discussions to drop some defendants from the as yet unfiled Second Amended Complaint (typically, holding companies of wireless subsidiaries) who were not involved in violations of law alleged by plaintiff, to substitute correct defendants for entities which had been incorrectly named in plaintiff's initial and amended pleading, and to reflect changes in the corporate structures of the named defendants—including those arising from mergers and other corporate reorganizations— during the 3 ½ years that this case was part of the prior MDL proceedings.[4] The parties worked cooperatively to add some defendants, to dismiss others, and to substitute still others to name the right parties and to reflect current relationships and affiliations among them.[5]

9. As part of that same effort, LG's counsel prevailed upon plaintiff's counsel not only to drop the Korean holding company of LG as a defendant but also to substitute as a defendant a different American subsidiary of LG for one which, according to LG's counsel, had been mistakenly named by plaintiff as a defendant in plaintiff's Second Amended Complaint. LG's counsel indicated that the substitution could be accomplished through "amending the complaint *or some similar action*."[6] Since plaintiff had just filed his Second Amended Complaint less than three weeks earlier, plaintiff opposed amending the pleading again just to substitute a party,

_____

3 *See* Exhibit B hereto. The LG defendants requested, and received, independent written confirmation from plaintiff's counsel that they were covered by the same stipulation extending the time for filing preliminary objections—the Pennsylvania state court equivalent to a motion to dismiss--to plaintiffs' Second Amended Complaint as all other defendants. *See* Exhibit C.
4 *See* Exhibit D.
5 *See* Exhibits E, F, G, H, I, J and K.
6 *See* Exhibit L.

particularly in light of the parties' recent efforts, *at defendants' specific request*, to drop, add and substitute several other defendants to name the proper parties and to correct other misnamed defendants. Instead, plaintiff proposed filing a "Praecipe to Amend Caption and Substitute Party" which plaintiff sent to both LG's counsel and to liaison counsel for all other defendants, Mr. Duffy.[7] LG's counsel did not object to the concept of a Praecipe to substitute a different American subsidiary of LG as the proper defendant. To the contrary, he specifically proposed to plaintiff's counsel that the parties "discuss the draft [of the Praecipe] to make sure we're on the same page."[8]

10. Several days later, counsel for LG and Mr. Duffy, liaison counsel for defendants, apparently had a change of heart. They now insisted that the substitution be made via another amendment to the Complaint. Plaintiff's counsel opposed that procedure as being unnecessary and unduly cumbersome. Both LG's counsel and defendants' liaison counsel, Mr. Duffy, affirmatively represented to plaintiff's counsel that any new amendment would be nothing more than merely a formality and technicality, like the many other dismissals and substitutions of defendants which had occurred just weeks before. However, they now insisted that the substitution of LG had to take place by way of a formal amendment to plaintiff's pleading, rather than through the filing of a simple Praecipe to substitute a party, purportedly because of the requirements of Rule 1714(b) of the Pennsylvania Rules of Civil Procedure, which requires court approval prior to the dismissal of any defendant in any class action (a condition which defendants had never previously insisted upon while prevailing on plaintiff to dismiss several other defendants from the case just weeks earlier). On the strength of defense counsel's express representations, and not wanting to delay this case any further, plaintiff agreed to effect the

---

7 *See* Exhibit M.
8 *See* Exhibit N.

substitution of the American LG subsidiary by way of a purely technical amendment to the

Second Amended Complaint (which had never been timely removed by the LG defendants) and

executed a Stipulation to file a Third Amended Complaint with the Pennsylvania state court.[9] No

other changes were made to this pleading--no new claims were added, no new parties were added

(except the substitution of the proper LG subsidiary agreed to by all parties), and no other

changes of any sort were made in the Third Amended Complaint.[10]

        11. As the docket entries attached to defendants' removal papers themselves confirm,

neither plaintiffs' Third Amended Complaint nor the Stipulation authorizing its filing was

entered by the Pennsylvania state court until February 9, 2006[11]—more than thirty days after the

LG defendants had been served with plaintiff's Second Amended Complaint on December 27,

2005. LG failed to timely remove this action within the thirty day period mandated by Section

1446(b). That is no doubt why defendants concocted this scheme—after repeatedly dropping

some defendants and substituting others in the past—to sandbag plaintiff into filing a Third

Amended Complaint. But this purely technical amendment to plaintiff's pleading—consented to

by LG and all other defendants—to substitute the proper American subsidiary at LG's specific

request, did nothing to extend that blown deadline. And defendants' attempt to manufacture

jurisdiction where none exists to avoid the consequences of LG's failure to timely remove this

action is fatal to any exercise of jurisdiction over this case by the federal courts.

---

[9] *See* Exhibits O and P hereto. Of course, plaintiff's counsel did not know at the time that plaintiff's counsel were being "set up" by these representations for defendants' eventual removal petition to circumvent LG's failure to file a timely petition to plaintiff's Second Amended Complaint.

[10] *See* Exhibit Q hereto.

[11] *See* Exhibit R hereto.

**III. THIS ACTION IS EXPRESSLY EXCLUDED FROM REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT, UNDER WHICH IT WAS IMPROPERLY <u>REMOVED BY DEFENDANTS</u>**

12. Apart from this patent procedural defect, which totally undermines any conceivable basis for federal jurisdiction, the express language of the Class Action Fairness Act ("CAFA")[12] itself underscores the absence of federal jurisdiction in this case and exposes defendants' failed attempt to manufacture jurisdiction where none exists.

13. CAFA applies only to "civil actions" commenced after February 18, 2005.[13] Under Section 1332(d)(1) added by CAFA, a federal district court "***shall decline to exercise jurisdiction***" (*i.e.*, a mandatory prohibition) over any class action in which:

(1) greater than two thirds of the members of the proposed class are citizens of the State in which the action was originally filed;

(2) at least one defendant from whom significant relief is sought is a citizen of the state in which the action originally was filed;

(3) during the previous three year period before the action was commenced, no similar action was filed on behalf of the same class of Pennsylvania purchasers and users of cell phones; and

(4) two thirds of the members of the proposed class in the aggregate, and the primary defendants, are citizens of the state in which the action originally was filed.

28 U.S.C. § 1332(d)(4).

14. In this case, ***all*** of the putative class members are from Pennsylvania, thereby easily satisfying the requirement of Section 1332(d)(4) mandating that the federal district courts "decline to exercise jurisdiction" over this case under CAFA.

---

12 Pub. L. 109-2, 119 Stat. 4 (2005), codified, *inter alia*, at 28 U.S.C. §§ 1332(d) and 1453.
13 *Id*. § 9.

15. Furthermore, no similar actions have been initiated on behalf of the same Pennsylvania class, thereby fulfilling the second requirement under which the district courts must, under the express statutory mandate of CAFA, "decline to exercise jurisdiction." 28 U.S.C. § 1332(d)(4).[14]

16. The third requirement confirming the absence of federal jurisdiction also appears to be satisfied, in that at least one of the defendants from whom significant relief is sought may be a citizen of Pennsylvania. Under Section 1332(d)(10) added by CAFA, unincorporated associations such as partnerships, trade associations, joint ventures, labor unions and joint stock companies are treated like corporations under Section 1332(c)(1), and are deemed to be citizens of the states in which they have their principal places of business and under whose laws they are organized. 28 U.S.C. § 1332(d)(10).

17. Plaintiff's Third Amended Complaint names as defendants two wireless industry trade associations—Cellular Telecommunications Internet Association ("CTIA") and Telecommunications Industry Association ("TIA")—to which virtually all of the other defendants belong, and which were actively involved in the misconduct alleged by plaintiff in this action. (*See* Third Amended Complaint ¶¶ 25, 26, 67-86) (detailing in more than 20 paragraphs CTIA's and TIA's active role in the unlawful conduct alleged by plaintiff in this case). TIA'a own website indicates that at least 19 of its members are headquartered in Pennsylvania.[15] Similarly, CTIA's website lists among its membership companies whose primary—and in some instances sole—business location is in Pennsylvania.[16]

18. There is evidence that some of the other defendants—in addition to being active members of TIA and CTIA, through which much of the concerted activity alleged in this case

___

14 To the extent that the *Naquin* action purported to assert claims on behalf of a national class which includes the Pennsylvania class alleged in Farina, that *Naquin* action has been dismissed.
15 *See* Exhibit S.
16 *See* Exhibits T and U.

was conducted--may be citizens of Pennsylvania for purposes of the Section 1332(d)(4)(A)(II)

analysis. At least six of the named defendants in this case are partnerships. (*See* Third Amended

Complaint ¶¶ 10, 12, 16, 20, 22, 23). Other defendants are corporations. (*Id.* ¶¶ 6, 7, 8, 9, 11, 12,

13, 14, 15, 17, 18, 19, 21). It is well settled that the headquarters or home office of a corporate

defendant (and now, under CAFA, a partnership or other unincorporated association as well) is

not determinative of where that entity has its "principal place of business" for purposes of

Section 1332. *See, e.g., Delome v. Union Barge Line Co.*, 444 F.2d 225 (5th Cir.), *cert. denied*,

404 U.S. 995 (1971); *Neat-N-Tidy Co. v. Tradepower Holdings Ltd.*, 777 F. Supp. 1153

(S.D.N.Y. 1991); *Gavin v. Read Corp.*, 356 F. Supp. 483 (E.D. Pa. 1973).  Rather, a court must

look to the total activity of a corporation in determining its principal place of business. *See, e.g.,*

*Capitol Indem. Corp. v. Russellville Steel Co.*, 367 F.3d 831 (8th Cir. 2004); *Vareka Investments,*

*N.V. v. American Inv. Properties, Inc.*, 724 F.2d 907 (11th Cir. 1984), *cert. denied*, 469 U.S. 826

(1985); *Toms v. Country Quality Meats*, 610 F.2d 313 (5th Cir.. 1980). [17] Furthermore, as the

Second Circuit observed in *Herrick Co. v. SCS Communications, Inc.*, 251 F.3d 315 (2d Cir.

2001):

> "Furthermore, it is well established that '[t]he party seeking to invoke
> jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the
> grounds for diversity exist and that diversity is complete.'"

*Id.* at 322-23, *quoting Advani Enter., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir.

1998), *citing McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936);

*Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806).

---

17 Although plaintiff's Third Amended Complaint admittedly includes certain allegations about the state of
incorporation and principal places of business of the defendants, those allegations may not be entirely correct, and
certainly are not dispositive for purposes of the jurisdictional analysis. For example, although defendants themselves
provided the information to plaintiff which resulted in the substitutions and other changes to the parties made in
plaintiffs' Second Amended Complaint, at least two defendants asserted in defendants' removal and transfer papers
that they are "incorrectly identified" in plaintiff's amended pleadings. The burden is on *defendants*, who have
invoked this Court's jurisdiction, to prove that such jurisdiction exists, and they have failed to do so on this record.

19. In this case, the corporate, partnership and associational defendants have failed to demonstrate that none of them are citizens of Pennsylvania, as is their burden under *Herrick*. If any defendant is a citizen of Pennsylvania, that would satisfy the third requirement of Section 1332(d)(4)(A)(III), and separately mandate that the federal courts "decline to exercise jurisdiction" over this case.

20. Because this case may fit squarely into the provisions of CAFA under which the federal courts must "decline to exercise jurisdiction," and because defendants have failed to sustain their affirmative burden of proving that jurisdiction exists, remand is appropriate.

## IV. THIS ACTION FAILS OTHER REQUIREMENTS OF CAFA NECESSARY FOR FEDERAL JURISDICTION

21. In addition to the procedural defects and express prohibitions of CAFA under which the federal courts must "decline to exercise jurisdiction" over this action, other provisions of CAFA similarly reaffirm the absence of federal jurisdiction over this case.

22. As noted above, this case was originally filed more than five years ago against 24 corporations and limited partnerships involved in the manufacture and sale of cell phones and the transmission of wireless signals from those cell phones, together with two trade associations to which those companies belong. This action is—and always has been—grounded solely and exclusively on provisions of Pennsylvania state statutory and common law which protect Pennsylvania consumers from deceptive practices and provide remedies for breaches of product warranties. The case does not involve any claims for personal injury or constitute a "mass tort" or "mass action" under either 28 U.S.C. § 1332(d)(11)((B)(i) or any previously understood meaning of those terms prior to their codification in CAFA.

23. CAFA applies only to a civil action "commenced" after its effective date of February 18, 2005.[18] LG's entire basis for removal—and therefore federal jurisdiction over this entire action against all defendants--is that the substitution of the correct LG American subsidiary as a defendant through the filing of plaintiffs' Third Amended Complaint constituted the "commencement" of a new "civil action" under CAFA. Defendants in general (who joined in LG's removal petition) and LG in particular (who removed this case to federal court on the basis of that argument) omit from their removal papers compelling authority which overwhelmingly and conclusively demonstrates that plaintiff did not "commence" any new "civil action" under CAFA merely by correcting the identity of the proper American subsidiary of LG in this case, *at defendants' specific request*, in an amended pleading.

24. In *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090 (10th Cir. 2005), the Court of Appeals, interpreting CAFA and the filing of a notice of removal after the effective date of that statute, acknowledged the "general federal rule" that a "cause of action is commenced when it is first brought in an appropriate court, which here was when it was brought in state court." *Id.* at 1094. The Tenth Circuit reaffirmed this "general federal rule" later in its opinion when, in an "analysis governed by traditional rules of statutory construction and rules pertaining to federal jurisdiction," it repeated "the general federal rule that a lawsuit is commenced at a discrete moment in time: the filing of the original complaint in a court of competent jurisdiction." *Id.*[19]

25. The Tenth Circuit noted that "[i]t is well established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." *Id*. at 1094-95. Based on this observation, the Court of Appeals concluded:

---

18 Pub. L. 109-2, 119 Stat. 9 (2005).
19 The Tenth Circuit also observed that "some states provide that service of process may commence a suit." 420 F.3d at 1094. Pennsylvania Rules provide that an "action" is "commenced" by filing either a complaint or a writ of summons. Pa.R.Civ.P. 1007.

"Thus, if there is any ambiguity as to whether the instant statute [CAFA] confers federal jurisdiction over this case, we are compelled to adopt a reasonable, narrow construction."

*Id.* at 1095. According to the Tenth Circuit, that "construction" compelled the conclusion that the "action" was "commenced" in that case when it was originally filed in state court, not when it was subsequently removed by the defendants.

26. The Court of Appeals also looked to the legislative history of CAFA, and its evolution through Congress, to conclude not only that "Congress signaled an intent to narrow the removal provisions of the Act to exclude currently pending suits" but confirming as consistent with its "construction of the Act" floor statements in Congress that "[a] case filed before the date of enactment will be unaffected by any provision of this legislation." *Id.* at 1096, *quoting and citing, inter alia,* 151 Cong. Rec. S1080 (Feb. 8, 2005); 151 Cong. Rec. H753 (Feb. 17, 2005).

27. The Tenth Circuit in *Pritchett* found additional support for its determination of when a "civil action" is "commenced" under CAFA from public policy considerations, including principles of "federal-state comity and the settled expectations of the litigants." 420 F.3d at 1097. In language particularly applicable to defendants' persistent attempts to obtain federal court jurisdiction over this case, the Court of Appeals observed that CAFA was specifically designed to "curtail jurisdictional gaming and forum shopping"—the precise conduct engaged in by defendants here. As for the "settled expectations of the litigants," certainly after one failed attempt at removal and years of wasted time, plaintiff fully and legitimately expects this case to finally be heard in a Pennsylvania state court where it was originally filed in April 2001, and where a Pennsylvania state court judge will decide unique and exclusive issues of Pennsylvania state law.[20]

---

20 As noted above, defendants here already have filed preliminary objections to plaintiff's Third Amended Complaint—the Pennsylvania state court equivalent of motion to dismiss under Fed.R.Civ.P. 12(b)(6)—challenging the sufficiency of plaintiff's allegations for violations of state statutory law under Pennsylvania's Unfair Trade

28. More recently, *Plubell v. Merck & Co.*, 434 F.3d 1070 (8th Cir. 2006) addressed the issue presented here head on, and like the Tenth Circuit in *Morgan* , affirmed the remand of a class action which had been improperly removed from state court under CAFA. In *Plubell*, the plaintiff brought a class action in Missouri state court against the manufacturer of the prescription pain reliever drug Vioxx. The plaintiff amended the state court complaint after the enactment of CAFA to substitute a class representative, and the defendants removed the case to federal court under the newly enacted statute. The Eight Circuit in *Plubell* held that the amendment did not "commence" a new action under Missouri law because the amendment related back to the original state court complaint under the Missouri Rules of Civil Procedure. Specifically addressing the issue of whether a post-CAFA amendment which added a defendant "commenced" a new action under CAFA, the Eighth Circuit held that that analysis, too, turned on whether the amendment related back to the original state court filing. Under Missouri law, an amendment relates back to the original complaint if 1) the claim against the new defendant arose out of the same conduct, transaction or occurrence set forth the original pleading; 2) the defendant received notice of the suit, so it will not be prejudiced in defending on the merits, and 3) the defendants knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been commenced against the new defendant.

29. The Pennsylvania Rule on adding defendants is even more liberal than the Missouri Rule at issue in *Plubell*. Rule 1033 of the Pennsylvania Rules of Civil Procedure authorizes the amendment of a complaint "at any time" to "correct the name of a party" or even to "add a new cause of action." Pa.R.Civ.P. 1033. The Rules go on to provide:

> "At any stage of an action, the court may order the joinder of any
> additional person…who could have been joined in the action….."

---

Practices and Consumer Protection Law the Pennsylvania Declaratory Judgments Act, and plaintiff's Pennsylvania common law claims for civil conspiracy, breach of warranty and other state law violations..

Pa.R.Civ.P. 2232(c). Amendments which correct the name of a party relate back to the date of the original filing. *See, e.g.*, *Paulish v Bakaitus*, 275 A.2d 318, 321 (Pa. 1971); *Powell v. Sutcliff*, 139 A.2d 864, 865 (Pa. 1963); *Jacob's Air Conditioning and Heating v. Associated Heating and Air Conditioning*, 531 A.2d 494, 496 (Pa. Super. 1987); *Fretts v. Pavetti*, 422 A.2d 881, 883 (Pa. Super. 1980). Applying this rule, the Pennsylvania courts routinely allow the relation back for purposes of applying statutes of limitation of amendments to pleadings which change the defendants from a corporation to a partnership, which substitute individual defendants for business entities, and which make other corrections to the parties.[21] *Paulish, supra; Powell, supra*; *Jacobs Air, supra*; *Fretts, supra*. When the same "business enterprise" is involved in the case, amendments which correct parties are appropriate. *Paulish*, 275 A.2d at 321. Important to this analysis is whether different assets will be subject to liability by allowing the amendment. *Powell*, 189 A.2d at 865; *Jacob's Air*, 531 A.2d at 496; *Fretts*, 422 A.2d at 883. When no prejudice will result from allowing the amendment and if the defendant had notice of the litigation, "courts are inclined to deem the change one of name only, not of party, and will permit the amendment to allow the change." *Jacob's Air*, 531 A.2d at 496; *see id*. at 497.[22] These Pennsylvania statutory provisions and court decisions, individually and collectively, compel the conclusion that the mere technical correction of the proper LG Electronics defendant—*made at defendants' specific request* similar to previous multiple efforts with defendants "clean up" the caption in this case—did not "commence" a new action under CAFA.

---

[21] The relation back analyses of the Pennsylvania courts for purposes of applying statutes of limitations arguably are more exacting because the substantive rights of the "new" defendants added to the case after the limitations have expired are directly affected. Compare that to the situation here where the issue is not whether substantive defenses are being affected, but the appropriate venue in which the case should be litigated.

[22] Furthermore, Pennsylvania courts allow substitution of completely new defendants where the plaintiff has been misled as to the proper party. *Blaine v. York Financial Corp.*, 847 A.2d 727, 729 (Pa. Super. 2004). "The defendant's actions in misleading the plaintiff need not be intentional." *Id.* While LG did not conceal the identity of its correct subsidiary, it and other defendants certainly deceived plaintiff's counsel into filing the Third Amended Complaint which led to the removal of the entire case under CAFA.

30. LG certainly had "notice" of this suit since its own affiliate (and same counsel) were fully aware of its filing when plaintiffs filed his Second Amended Complaint on December 23, 2005. And LG certainly knew that, but for a mistake concerning the identity of the proper American LG subsidiary, the present LG defendants would have been named in plaintiffs' Second Amended Complaint *because LG's own counsel brought that alleged error to plaintiffs' attention*. The requirements for relation back of plaintiff's Third Amended Complaint are clearly met under Pennsylvania law and under the directly applicable analyses of the Eight Circuit in *Plubell* and the Tenth Circuit in *Morgan*.

31. Other federal decisions squarely reject defendants' similar attempts to manufacture federal jurisdiction where none exists, as defendants do here. For example, in *Morgan v. American Int'l Group, Inc.*, 2005 WL 2172001, *2-3 (N.D. Cal., Sept. 8, 2005), plaintiffs filed a class action in California state court against various entities accused of predatory lending. Defendants removed the case to federal court on grounds of both diversity of citizenship and federal question jurisdiction. Plaintiffs moved for remand and, as part of those proceedings, it was discovered that plaintiffs had named as defendants two entities which, although appearing on certain legal documents, actually did not exist. The federal court remanded the case to state court and after remand (and after the adoption of CAFA effective February 18, 2005), plaintiffs filed an amended complaint to replace the "non-existent" defendants with the correct entity. Defendants removed the case again—this time under CAFA—arguing that the amendment added a "new party" and that a new "civil action" was therefore "commenced" against that new party under CAFA who had a right to litigate the claims in federal court under the Act.

32. The district court rejected defendants' argument, and remanded the case again to California state court. Looking to California state law for guidance on when a "civil action" is "commenced," the district court found that the California Rules of Procedure expressly allow an

amendment to an existing pleading to add new parties without resulting in the "commencement"

of a new "action" either under California law or under CAFA. Finding that the relevant inquiry

was whether the amendment "substantially changed" the nature of the action, the court found

that the amended complaint did not alter the claims in any way and that the substitution of the

correct defendant had no effect on date of the initial "commencement" of the action years earlier.

Accordingly, the court held that the amendment related back to the date of the original

commencement of the action, and that CAFA did not apply.

33. Like the virtually identical California procedural rules at issue in *Morgan*, the

Pennsylvania Rules of Civil Procedure in this case expressly authorize the amendment of a

complaint "at any time" to "correct the name of a party" or even to add a "new cause of action."

Pa.R.Civ.P. 1033. Of equal applicability for purposes of this Motion, Rule 2232(c) of the

Pennsylvania Rules of Civil Procedure expressly authorizes the amendment of a complaint to

add a new party:

> "At any stage of an action, the court may order the joinder of any additional
> person…who could have been joined in the action…."

Pa.R.Civ.P. 2232(c). *See Hercules v. Jones*, 609 A.2d 837, 839-40 (Pa. Super. 1992).

Amendments under either or both of these Rules do not "commence" new "civil actions;" they

merely alter to some degree the issues and parties in existing cases. As such, the amendment here

falls squarely within the decision of the Eight Circuit in *Plubell* and the Tenth Circuit in *Morgan*.

34. *Plubell* and *Morgan* are directly applicable to this case. Here, the Pennsylvania state

court formally approved the parties' Stipulation to file a Third Amended Complaint (*i.e*.,

"ordered" the joinder of LG) which the LG defendants—and all other defendants--themselves

demanded and signed. That technical amendment did nothing but correct the misnamed

American subsidiary of LG. No new claims were added, and no other changes of any kind were

made in the new pleading--filed at defendants' specific request. And the LG defendants took no

action to remove this case within the 30 day deadline of Section 1446(b). *See Anderson v. Bank of America*, No. C 06-1120 SBA (N.D. Cal., April 5, 2006 Order).[23]

35. Reaching the same result as *Plubell* and *Morgan*, the court in *New Century Health Quality Alliance, Inc. v. Blue Cross and Blue Shield of Kansas City, Inc*., 2005 WL 2219827, *4-5 (W.D. Mo., Sept. 13, 2005) held that an amendment of a complaint to name as a defendant a different subsidiary than the company named in prior pleadings did not "commence" a new "civil action" under CAFA. The *New Century* court observed that, while dicta in the initial *Knudsen* decision by the Seventh Circuit to the effect that the addition at a new defendant might trigger the removal provisions of CAFA, the Seventh Circuit in *Knudsen* "did not specifically address the relation back issue" raised by such an amendment. *Id*. *3. Citing Rule 15(c)(3) of the Federal Rules of Civil Procedure which specifically addresses the "relation back" of amendments to pleadings which change or add new parties,[24] the court in *New Century* noted that an amendment will relate back when the new defendant:

> "(A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and
> (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

*Id.* at *4, quoting Fed.R.Civ.P. 15(c)(3). The *New Century* court observed that the relation back provisions of Rule 15(c)(3) are most often applied where, as in that case and this one, the plaintiff names the wrong subsidiary or other affiliate of a corporation as a defendant. *Id*. at *4, *citing Robert v. Michaels,* 219 F.3d 775, 778 (8th Cir. 2000). The court further observed that federal courts "are required to resolve all doubts in favor of remand." *Id*. at *3, *quoting In re Business Men's Assurance Co. of America,* 992 F.2d 181, 183 (8th Cir. 1993).

---

23 *See* Exhibit V hereto.
24 The court noted that the federal rule on amendment of pleadings and its state court counterpart in Missouri are "virtually identical," so that the result would be the same under each. *Id.*3, n. 2.

36. Like *Plubell* and *Morgan*, *New Century* is on all fours with this case. No new "civil action" was "commenced" under either Pennsylvania state law or federal law by the filing of the Third Amended Complaint to correct the misnamed LG subsidiary, even if that substituted party was a separate corporate affiliate of the originally named defendant. *See also Eufaula Drugs, Inc. v. Scipsolutions,* 2005 WL 2465746, *4 (M.D. Ala. Oct. 6, 2005).

37. Other Circuit and District Courts have similarly held that a substantial expansion of the class definition or a "scrivener's error" adding a new defendant does not "commence" a case or give rise to a new "civil action" under CAFA. *See, e.g., Schillinger v. Union Pacific RR*, 425 F.3d 330 (7th Cir. 2005); *See also Lee v. Citimortgage, Inc.*, 2005 WL 2456955 (E.D. Mo., Oct. 5, 2005) (amendment of complaint to add more factual detail after dismissal of original pleading does not commence new action under CAFA). In *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748 (7th Cir. 2005), the Court of Appeals held that an amendment to the complaint which expanded the class did not constitute the "commencement" of a new "action" under CAFA, stating unequivocally:

> "*Knudsen* and *Pfizer* hold, and we reiterate, that **creative lawyering** will not be allowed to smudge the line drawn by the 2005 Act: class actions 'commenced' in state court on or before February 18, 2005, remain in state court."

417 F.3d at 751, *citing Knudsen v. Liberty Mutual Ins. Co.*, 411 F.3d 805 (7th Cir. 2005), *Pfizer, Inc. v. Lott*, 417 F.3d 725 (7th Cir. 2005) (emphasis added).[25]  *See also Plubell, supra* (an

---

25 In *Schorsch*, the Seventh Circuit's comments that the amendment to the complaint did not add new "parties" or new "claims" was in direct response to the defendants' specific argument that the amendment had done both, s*ee* 417 F.3d at 750, not some broad pronouncement about the circumstances under which such an amendment might constitute the "commencement" of a new "civil action" under CAFA. Defendant LG bases its entire removal notice on similar dicta in *Knudson*. In *Knudsen v. Liberty Mutual Ins. Co.*, 435 F.3d 755 (7th Cir. 2006) ("*Knudsen II*"), the Seventh Circuit held that a "novel claim tacked on to an existing case commences new litigation for purposes of the Class Action Fairness Act." *Id.* at 758. In *Knudsen II*, after remand of the case to state court in the first *Knudsen* decision, plaintiffs added a broad and new "distinct claim for relief ('cause of action' in the state's parlance)" against the defendant about which it had no prior notice because the original complaint "did not even hint" that plaintiffs were attempting to hold Liberty Mutual responsible for conduct involving its predecessors, subsidiaries and affiliates ("35 in all") spanning a period of more than 15 years. *Id.* at 756, 758. Compounding the problem, the state court judge in *Knudsen* had entered default judgment against Liberty Mutual for alleged discovery abuse, meaning that the addition of the new claims meant that plaintiffs were "assured of victory…without any opportunity

amendment to a complaint to replace the plaintiff/class representative related back to the date of its original filing under Rule 15(c) of the Federal Rules of Civil Procedure, and  action was therefore not removable under CAFA). As the Seventh Circuit ruled in *Schorsch*, this Court should not allow the "creative lawyering" (or worse) perpetrated by defense counsel in this case to manufacture jurisdiction where none exists.

## CONCLUSION

For the foregoing reasons, the Court should remand the *Farina* case to Pennsylvania state court from which it was improperly removed by defendants for the second time.


Dated: November 6, 2006                                          Respectfully submitted,


H. Russell Smouse                                     **JACOBSEN LAW OFFICES LLC**
Glenn E. Mintzer                                         By:_____
**LAW OFFICES OF**                                   Kenneth A. Jacobsen
**PETER G. ANGELOS, P.C.**                     12 Orchard Lane
One Charles Center                                      Wallingford, PA 19086
100 North Charles Street                              (610) 566-7930
Baltimore, MD 21201
(410) 649-2000


Michael R. Allweiss                                     Joseph A. O'Keefe
**LOWE, STEIN, HOFFMAN, ALLWEISS**     **O'KEEFE & SHER, P.C.**
**& HAUVER, LLP**                                     15019 Kutztown Road
701 Poydas Street                                        Kutztown, PA 19530
One Shell Square                                          (610) 683-0771
Suite 3600
New Orleans, LA  70139
(504) 581-2450

                              Michael D. Donovan
                              **DONOVAN SEARLES, LLC**
                              1845 Walnut Street
                              Suite 1100
                              Philadelphia, PA 19103
                              (215) 732-6067

---

[for Liberty Mutual] to defend itself on the merits…." *Id*. at 758. This is a far cry from correction of LG defendant *expressly requested and agreed to by defendants* in this case.