**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

IN RE WIRELESS TELPHONE RADIO
FREQUENCY EMISSIONS PRODUCTS        **MDL NO.  1421**
LIABILITY LITIGATION

This Memorandum relates to:                    **Civil Action No. 01-MD-1421**

*Farina v. Nokia, Inc. et al.* (E.D. Pa), CCB-06-1577

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS'  MOTION TO REFER QUESTIONS TO THE FCC**

H. Russell Smouse                          Kenneth A. Jacobsen
Glenn E. Mintzer                           **JACOBSEN LAW OFFICES**
**LAW OFFICES OF**                          12 Orchard Lane
PETER G. ANGELOS, P.C.                     Wallingford, PA 19086
One Charles Center                         (610) 566-7930
100 North Charles Street
Baltimore, MD 21201
(410) 649-2000


Michael R. Allweiss                        Joseph A. O'Keefe
**LOWE, STEIN, HOFFMAN, ALLWEISS**          **O'KEEFE & SHER, P.C.**
**& HAUVER, LLP**                           15019 Kutztown Road
701 Poydas Street                          Kutztown, PA 19530
One Shell Square                            (610) 683-0771
Suite 3600
New Orleans, LA  70139
(504) 581-2450


Michael D. Donovan
**DONOVAN SEARLES, LLC**
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103
(215) 732-6067

INTRODUCTION ……………………………………………………………..1

I.  There Have Been No
"Significant Legal Developments" To Justify This Motion …………………………2

II.  The Court of Appeals' Mandate Forbids Defendants' Motion …………………4

III.  The Supreme Court Did Not Instruct Courts
     To Defer To An Agency Argument Instead
     Of Following Binding Rulings From A Higher Court …………………………9

IV.  Defendants Are Not Seeking To Resolve A Conflict
     Between The Court Of Appeals And The FCC But To Create One ……………17

CONCLUSION …………………………………………………………………...19

.

## <u>INTRODUCTION</u>

Defendants already have failed once in their attempt to derail this litigation by arguing that plaintiff's claims are preempted by the Federal Communications Act. The United States Court of Appeals for the Fourth Circuit held the claims made *in this very litigation* are *not* expressly preempted nor are they impliedly preempted by federal law under either the doctrine of field preemption or conflict preemption. The Supreme Court of the United States thereafter refused to entertain defendants' petition for certiorari, and therefore refused to second-guess the Fourth Circuit's express rulings in this very case. *Pinney v. Nokia, Inc.,* 402 F.3d 430 (4th Cir. 2005), *cert. denied sub noms. Nokia, Inc. v. Naquin*, 126 S.Ct. 551, *Cellco Partnership v. Pinney*, 126 S.Ct. 552 (2005). Despite these binding instructions from a higher court, defendants are now asking this Court to refuse to follow the directives given to it by the Fourth Circuit, ignore the law of the case, and "reverse" the Court of Appeals.

As if more than five years of delay wasn't enough, defendants want this Court to delay this case further and allow the FCC to decide whether the plaintiffs' claims are preempted—even though that very question already has been resolved in the Fourth Circuit's earlier decision in this case. Defendants' excuse for this extraordinary request is their claim that there is a conflict between the FCC and the Fourth Circuit's views on what law controls this case, and they seek to have this Court act as the referee in that dispute. Not only that, but defendants seek to tell this Court what its decision in resolving that dispute should be. They want this Court to ignore the Fourth Circuit's ruling on the law and let the FCC decide what the law is instead. There are only two possible types of decisions the FCC can make; either it agrees with the Fourth Circuit and

this entire affair was just another delay in a case that is more than five years old, or the FCC disagrees with the Fourth Circuit.  If that were to happen, though, this Court still would be bound by the Fourth Circuit's prior ruling in this very case, and the FCC's decision would remain irrelevant.

Defendant's motion defies the doctrine of the law of the case and ignores the fundamental nature of our judicial system.  Given the brashness of those requests, it is not surprising that defendants also continue to misrepresent the very nature of plaintiff's claims, acting as if those claims are personal injury claims sounding in products liability, instead of the consumer protection claims for solely economic harm that plaintiff has actually brought.  It was defendants' misleading representations of the nature of plaintiff's claims that contributed to the earlier decision of this Court, since reversed by the Fourth Circuit, that those claims were preempted.  The Court should not be misled by defendants' mischaracterization of the claims in this case, simply to buy time and delay this litigation further.  This Court should deny defendants' "preemption redux" motion.

## I.  There Have Been No "Significant Legal Developments" To Justify This Motion

Defendants contend that there are "[t]wo significant legal developments" that justify the extraordinary action they want the Court to take.  Def. Memo. at 1.  Neither of these "significant" developments, however, repeal the doctrine of the law of the case or render District Courts free to ignore express instructions from the Courts of Appeals.

The first supposedly "significant" development is a Supreme Court decision that did nothing more than reiterate the doctrine of deference to a formal agency interpretation of a statute it is charged with enforcing when made as part of the rulemaking process. There is nothing new about that doctrine, of course, and it was in place when the Fourth

Circuit ruled last year that the kinds of claims plaintiff is bringing here are not preempted. It remains the law, as the Supreme Court's even more recent decision in *Gonzales v. Oregon*, 126 S.Ct. 904, 914-915 (2006) teaches, that, "Deference … is warranted only when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." The FCC's views on preemption which are not even expressed in rulemaking activity still do not meet this standard.

The second alleged "significant" development is that the cell phone industry successfully lobbied the FCC to file an *amicus curie* brief in some other case somewhere, arguing that the Federal Communications Act and its own regulations preempt other claims (not identical to those in this case) in those other cases. Defendants do not explain, nor could they explain, how a brief in another case that disagrees with the rulings of the Fourth Circuit in this case frees this Court to ignore the binding mandate of the Court of Appeals.

Notably, the FCC brief on which defendants rely does not discuss the same sort of claims as alleged in the Complaint here.  The *amicus* brief the FCC filed in *Murray v. Motorola, Inc.*, Nos. 01-8479, etc. (D.C. Super. Ct. November 21, 2005), which defendants attached, states in its very first sentence, on the very first line, that "[t]he plaintiffs in this case are wireless phone users *who have developed various medical afflictions,* which they alleged were caused by the radiofrequency (RF) emissions from their wireless phones."  (Emphasis supplied).  In other words, the plaintiffs in that case were personal injury plaintiffs making claims sounding in strict products liability.  As further explained in the *Farina* plaintiff's response to the motion to dismiss his Third

Amended Complaint in this case, as much as defendants want to argue that this is a products liability personal injury case, that is *not* the one that plaintiff has brought. The plaintiff and the class he will represent have not developed "various medical afflictions" and do not seek damages for personal injury, present or future, or for any increased risk of harm they suffer. Plaintiff's claims are purely economic harm consumer protection claims, alleging breaches of warranty and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, a state law that does not in any way conflict with federal law and which the FCC is not competent or authorized to interpret or enforce.

There is another telling sentence in the FCC brief from the *Murray* litigation which highlights the central reason why this Court should not even entertain this motion to refer questions to the FCC, let alone grant it. On page 12 of that brief, the FCC wrote to the District of Columbia court that it "is not bound to follow decisions of the Fourth Circuit." The FCC was talking, of course, about the Fourth Circuit's decisions in this very case. That may be true for the *Murray* court, but it surely is false for this Court. This Court is bound to follow decisions of the Fourth Circuit, particularly decisions by that Court of Appeals in this very litigation.

## II.  The Court of Appeals' Mandate Forbids Defendants' Motion

Defendants argue that this referral will allow the FCC to make decisions on a "critical component of the preemption inquiry…." Def. Memo. at 1. That inquiry, however, is already finished in this case. The Fourth Circuit has ruled there is no preemption of the claims plaintiff has made.

As noted below, it is far from clear there is the conflict between the FCC and the Fourth Circuit that defendants want the Court to believe exists, but it is not this Court's position to resolve one if it were to exist. Defendants argue that "[t]he most responsible way to address these [supposed] conflicts—consistent with proper respect for both the agency's regulatory expertise and circuit precedent…" is to grant their motion. Def. Memo. at 3. What defendants never explain—because they are unable to do so--is how ignoring the explicit instructions and rulings of the United States Court of Appeals for the Fourth Circuit would in any way "respect circuit precedent."

As the Court will recall, five different class action complaints brought under five different state's laws originally were consolidated in this Multidistrict Litigation. Of those five cases, only the *Farina* case remains before this Court and is the subject of this motion. In *Pinney*, the Court of Appeals for the Fourth Circuit reversed this Court's holding that the claims in all five cases were preempted and remanded the cases to this Court for these further proceedings.

Specifically, the Court of Appeals held that

> "we reverse the district court's order denying the consolidated motion to remand made by the plaintiffs in the *Pinney, Farina, Gilliam,* and *Gimpelson* cases. Because federal subject matter jurisdiction does not exist over these four cases, we return them to the district court for remand to the state courts in which they originated. We also reverse the district court's order dismissing the *Naquin* plaintiffs' case as preempted by the FCA. That case is remanded to the district court for further proceedings."

402 F.3d at 459. The basis of the decision was that 1) as there was no preemption of any of the five cases, there was no federal question for four of the five cases sufficient to maintain jurisdiction in this Court,[1] but 2) since this Court had diversity jurisdiction over

---

[1] In keeping with that mandate, this Court remanded both the *Farina* and *Louther* cases to state courts. Almost immediately after the cases were remanded, defendants concocted new excuses to remove these

one of the five (*Naquin*), it could not be remanded to state court, and 3) none of the claims raised in *Naquin* were preempted.

The Fourth Circuit's holding on preemption was clear and unambiguous. The Court began with the fundamental principle that there is a presumption against finding federal preemption of state law. "This presumption against preemption is particularly strong when Congress legislates 'in a field which the States have traditionally occupied,' such as health and safety." *Id*. at 454, quoting *Medtronic,* 518 U.S. at 485, 116 S.Ct. 2240 (in turn quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). After analyzing the FCA's scope and purpose as well as the claims in the complaints, the Court of Appeals concluded that the Act "does not expressly preempt the claims of the *Naquin* plaintiffs. That is to say, the Court of Appeals in this very litigation has held that claims for breach of warranty, breach of the Magnuson-Moss Act, breach of state consumer protection law through the use of deceptive practices and civil conspiracy – the same claims made in *Farina*—are not preempted, expressly or under either variety of implied preemption.

The foundations of our judicial system include the fundamental rule that lower courts are bound by their appellate court's directions. As the United States Supreme Court has said: "When matters are decided by an appellate court, its rulings, unless reversed by it or by a superior court, bind the lower court." I*nsurance Group Comm. v. Denver & R.G.W.R.R*., 329 U.S. 607 (1947). That is because "[a] rule requiring a trial court to follow an appellate court's directives that establish the law of a particular case is

---

cases yet again. Therefore, once again, these cases are subject to motions to remand, also now pending before this Court.

necessary to the operation of a hierarchical judicial system." *Mirchandani v. United States*, 836 F.2d 1223, 1225 (9th Cir. 1988).

The clear instruction of the Fourth Circuit in this case is that neither the FCA nor the regulations the FCC may have promulgated under it preempts any of the claims plaintiffs have raised. There is no express preemption. There is no "conflict" preemption. There is no "field" preemption. There is, in short, no preemption at all. 402 F.3d at 458-59.

As the Fourth Circuit explained recently, "when we remand a case, the lower court must "implement both the letter and spirit of the ... mandate." *Scott v. Mason Coal Co.*, 289 F.3d 263, 267 (4th Cir. 2002), quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir.1993). While after a remand, matters are left open to decide, "[o]n remand, a lower court may decide matters left open only insofar as they reflect proceedings consistent with the appellate court's mandate." *Molinary v. Powell Mountain Coal Co.*, 173 F.3d 920, 923 (4th Cir. 1999).

Presumably, although they have chosen to ignore altogether the issue of the Fourth Circuit's mandate and the binding law of the case, when pressed defendants would argue that the mandate only requires that this Court hold that the *Naquin* litigation is free from preemption, but not the nearly identical claims made in the other four cases (including those subject to this motion), because those four cases were found to be beyond this Court's jurisidiction. That of course ignores that the Fourth Circuit's ruling that the other four cases be remanded to state court depends entirely on a finding that the other cases are not preempted either. For this *Farina* case, preemption is a settled issue. 402 F.3d at 459. Ignoring the Fourth Circuit's holdings that there is no preemption of

the *Naquin* claims would surely violate not only the letter but the "spirit" of the Fourth Circuit's mandate.  *Scott*, 289 F.3d at 267.

As the Fourth Circuit explained, "it is indisputable that a lower court generally …"[may] not consider the questions which the mandate laid at rest."  *United States v. Bell,* 5 F.3d 64, 66 (4th Cir.1993), quoting *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 168 (1939).  As the *Bell* court further explained, this "specific application of the law of the case doctrine," 5 F.3d at 66, "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court."  *Id.* (emphasis supplied).  Indeed, the Fourth Circuit repeatedly has emphasized that a district court must "…implement both the letter and the *spirit* of the … mandate, taking into account [our] opinion and the circumstances it embraces."  *South Atlantic Limited Partnership of Tennessee v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004)(emphasis supplied, but ellipses and bracketing in the original).  *Accord*, *United States v. Collins*, 162 Fed. Appx. 230, 231 (4th Cir. 2006) (courts must follow "both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces"); *Delgrasso v. Spang & Co.*, 903 F.2d 234, 240 (3d Cir. 1990) (same).

It is impossible to argue with any credibility that the Fourth Circuit's prior rulings in this very litigation did not decide that there can be no preemption of any of the claims presented in the cases that are the subject of this motion.  Therefore, defendants would need to establish truly exceptional circumstances before this Court could take the extraordinary step of defying its own Court of Appeals.  Yet defendants have established no such exceptional circumstances.  To the contrary, they have based their entire

argument that this Court can and should ignore the Court of Appeals' prior ruling on a totally inapplicable and unremarkable Supreme Court decision.  In other words, not only have defendants ignored the fundamental issue of the appellate mandate and the law of the case that binds this Court, they have based their argument on a gross mischaracterization of what the Supreme Court ruled last year.

### III.  The Supreme Court Did Not Instruct Courts To Defer To An Agency Argument Instead Of Following Binding Rulings From A Higher Court

Defendants have read entirely too much into the recent decision in *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 125 S.Ct. 2688 (2005).  In fact, it is surprising how irrelevant the holding in *Brand X* is to defendants' present motion, and certainly provides no support for it. That decision concerned a very different sort of question of agency statutory interpretation and a very different sort of agency action than is at involved here.  The Supreme Court considered whether a court of could ignore an agency's own decision made as part of a formal rulemaking process and instead follow the court's own precedent.

In *Brand X*, the Court did not consider a question of whether a state law was preempted or anything similar.  Instead, it dealt with a decision by the Ninth Circuit to vacate the FCC's own Declaratory Ruling that cable companies providing broadband Internet access did not provide "telecommunications service" and therefore were not subject to mandatory regulation under the FCA.  As Justice Thomas stated in his opinion for the Court: "At issue in these cases is the proper regulatory classification under the Communications Act of broadband cable Internet service." 125 S.Ct. at 2696. [2]  In other

---

[2] Justice Thomas wrote the opinion of the Court, from which Justices Scalia, Souter and Ginzburg dissented.

words, the FCC acted in aid of promulgating a regulation, and the Ninth Circuit vacated the FCC's own regulatory action.

The classifications arose before the new technologies like broadband, so in 2000 the FCC began a rulemaking proceeding to, among other things, apply the previously developed regulatory classifications to cable companies that offer broadband Internet service directly to consumers. 125 S.Ct. at 2697. This process included seeking comment on whether on how it should handle broadband cable Internet services. *See* Notice of Inquiry, 15 F.C.C.R. 20913, 20914 P.1 (2000). That "rulemaking culminated in the *Declaratory Ruling* under review in these cases." *Id.* (italics in the original opinion). The FCC then issued its Declaratory Ruling and a notice of proposed rulemaking. 17.C.F.R. 4798, 4798 (2002). What was at stake in *Brand X* was the FCC's own rulemaking power. In this case, by contrast, the Fourth Circuit did not tell the FCC it had abused its rulemaking power or otherwise vacate the FCC's actions as a regulator. It simply held nothing in any statutes or rules preempted plaintiff's state law claims.

In *Brand X*, in the exercise of its *rulemaking* power in its Declaratory Ruling, the FCC concluded that broadband Internet service provided by cable companies is an "information service" but not a "telecommunications service" under the Act, and therefore not subject to mandatory Title II common-carrier regulation. 125 S.Ct. at 2697. A number of parties petitioned for judicial review, challenging the FCC's conclusion that cable modem service was not telecommunications service. A judicial lottery selected the Court of Appeals for the Ninth Circuit as the venue for the challenge. 125 S.Ct. at 2698. That Court of Appeals vacated much of the FCC's rulemaking Declaratory Ruling.

The details of why the FCC ruled cable modem service was not telecommunications service, and why the Ninth Circuit disagreed, are not relevant to the question raised in defendant's motion to have this Court ignore the Fourth Circuit's instructions. What is relevant is the Supreme Court's discussion of what deference courts owe the FCC and in what circumstances. Even before looking at that discussion, however, it is obvious that whatever language it used, the only issue it had before it was the deference due to an exercise of the FCC's rulemaking power. It certainly was not issuing a decision on how much this or any other court should rely on an agency brief filed in an unrelated piece of litigation to undercut state law consumer protection claims that the Court of Appeals already has declared should be tried by a court.

The most significant thing about *Brand X* is not that the Supreme Court announced some new doctrine of deference to agencies that was not in effect when the Fourth Circuit ruled in this litigation last year. To the contrary, all the Supreme Court did was reiterate the significance of a doctrine it first stated over twenty years ago in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.* (1984). What is significant about the events in *Brand X* is that the Ninth Circuit had ignored the *Chevron* doctrine. As Justice Thomas explained:

> "Rather  than analyzing the permissibility of that construction under the deferential framework of *Chevron,* 467 U.S. 837, 104 S.Ct. 2778, however, the Court of Appeals grounded its holding in the *stare decisis* effect of *AT & T Corp. v. Portland,* 216 F.3d 871 (C.A.9 2000). See 345 F.3d, at 1128-1132. *Portland* held that cable modem service was a "telecommunications service," though the court in that case was not reviewing an administrative proceeding and the Commission was not a party to the case."

*Id*. at 2698-99.  In other words, the Ninth Circuit relied on its own precedent rather than giving any deference to the FCC's own rulemaking authority. As Justice Thomas further explained:

> "These provisions [of the Federal Communications Act] give the Commission *the authority to promulgate binding legal rules*; the Commission issued the order under review *in the exercise of that authority*; and no one questions that the order is within the Commission's jurisdiction."

*Id*. at 2699 (emphasis supplied).  Whatever else one can make of the FCC's *amicus curie* brief in a case in the District of Columbia court system, that brief is certainly not an exercise of the FCC's authority to promulgate legal rules.

If the FCC wants to promulgate new regulations, there is a lengthy process for doing so, which gives the public the opportunity to comment and challenge proposed rules, and which allows for public hearings.  The FCC's briefs in various trial courts are most definitely not written this way.  The FCC does not have hearings about its arguments in briefs and it does not issue proposed brief sections for public comment.

To put it another way, the *Chevron* doctrine holds that "ambiguities in *statutes* within an agency's jurisdiction to administer are delegations of authority to the agency to fill the *statutory* gap in reasonable fashion."  125 S.Ct. at 2699.  That means that in the case of broadband Internet the FCC had to try to decide how to fill the statutory gap which existed when a new technology came along that was not contemplated by that statute.  Nothing about the FCC's *amicus* brief in the District of Columbia court system can be considered a rulemaking action which fills any sort of "statutory" gaps.  There is no identified gap in any statute or regulations applicable to plaintiff's exclusively state law consumer protection claims brought solely under Pennsylvania law.

The *Chevron* standard expresses deference to an agency's interpretation of a statute within its jurisdiction to administer.  That standard, however, was refined in the Supreme Court's later decision in *United States v. Mead Corp*., 533 U.S. 218 (2001). In *Mead*, the Court declined to extend the *Chevron* deference to a tariff classification by the United States Custom Service.  The Court reasoned that the Customs Service does not use notice-and-comment rulemaking to issue tariff classifications, and does not treat them as binding on third parties, so they were not due the deference of rulemaking activity. 533 U.S. 231-233.  The Supreme Court therefore limited *Chevron* deference to situations when the agency's interpretation of a statute is promulgated under congressionally delegated authority to make rules carrying the force of law.  "[A]dminstrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that agency interpretation claiming deference was promulgated under that authority."  533 U.S. at 226-227.

The limitation of *Chevron* deference to agency action acting under its legitimate rulemaking authority was reiterated and reaffirmed earlier this year (and after *Brand X)* in *Gonzales v. Oregon*, 126 S.Ct. 904 (2006).  In that case, State of Oregon and others brought an action seeking to prevent federal enforcement of the United States Attorney General's interpretive rule indicating that physicians who assist suicide of terminally ill patients pursuant to Oregon Death With Dignity Act ("ODWDA") would be violating the federal Controlled Substances Act ("CSA").  The Supreme Court found that the Attorney General's "rule" was not due *Chevron* deference. The Supreme Court explained:

> "Deference in accordance with *Chevron,* however, is warranted only "when it appears that Congress delegated authority to the agency generally to make

rules carrying the force of law, and that the agency interpretation claiming
deference was promulgated in the exercise of that authority."

*Id.* at 914-915, quoting *Mead.*

The FCC *amicus* brief filed in another court carries none of this weight.  It is not a
rulemaking activity, and, moreover, it is not an interpretation of a statute but just an
opinion about the extent to which state law might or might not conflict with their
regulations.  The FCC's briefs on any topic whatsoever do not come under a
Congressionally delegated authority to make rules and never are due any sort of *Chevron*
deference.

*Brand X* did not change any of that. Nothing about the clarification which *Brand
X* brought about affected the Fourth Circuit's decision in 2005, nor should it affect this
Court's obligation to follow the Fourth Circuit's earlier rulings in this same litigation.

The defendants want this Court to defer to nothing more than an argument made
by an agency in a brief made in another court in another case. *Chevron* deference does
not even apply to such a document.  For example, in *Enterprise Mortgage Acceptance
Co., LLC, Securities Litigation v. Enterprise Mortg. Acceptance Co.*, 391 F.3d 401, 410
(2d Cir. 2004), the court rejected the SEC's position concerning the meaning of the
Sarbanes-Oxley Act, and stating that "because the SEC's position is put forth only in an
*amicus* brief, it lacks the force of law and thus does not warrant *Chevron* deference."

Nothing in *Brand X* changed that fact.  Thus, in *State of Connecticut Office of
Protection and Advocacy v. Hartford Board of Education*, 464 F.3d 229 (2d Cir. 2006),
decided after *Brand X*, the court reviewed a suit by the Connecticut Office of Protection
and Advocacy for Persons with Disabilities ("OPA") seeking to compel access to
students and records of transitional learning academy for special needs students.  One of

the statutes implicated was the Protection and Advocacy for Individuals with Mental

Illness Act ("PAIMI"), which led the Department of Health and Human Services to file

an *amicus* brief.  The Second Circuit found that brief helpful and adopted its view, but the

court emphasized it was not bound to do so.  The court said: "Where, as here, an agency

advances a statutory interpretation in an amicus brief that has not been articulated before

in a rule or regulation, we do not apply the high level of deference due under *Chevron*."

464 F.3d at 239.  Similarly, in  *Belt v. Em-Care, Inc.*, 444 F.3d 403  (5th Cir. 2006) also

decided after *Brand X*, the court reaffirmed the obvious difference between a formal

agency rulemaking and a mere *amicus* brief.  In that case, nurse practitioners and

physician assistants sued their employer under the Fair Labor Standards Act seeking

overtime pay.  The Department of Labor filed an *amicus* brief.  Again, the court found

that brief helpful, but reiterated that "[*Chevron*] deference is not appropriate for an

interpretation of a regulation found in an *amicus curiae* brief." 443 F.3d at 416. Of

course, the FCC's position an amicus brief may be entitled to respect, but only to the

extent that those interpretations have the power to persuade."  *See also Christensen v.*

*Harris County,* 529 U.S. 576, 587 (2000) (discussing an agency opinion letter; language

later cited in *Best* to describe how to treat *amicus* briefs as well).

Not only is an *amicus* brief not due *Chevron* deference, but the topic of that

brief—whether the agency's regulations preempt other laws—is not the proper subject of

deference either. The brief in question here is not even an interpretation of the FCC's

own regulations or its views about the meaning of the statute it administers.  It is about

the interaction of state and federal law, something in which the FCC has no expertise.

Although agencies like the FCC are given deference when interpreting the federal statutes

they administer, an agency's views on whether those statutes preempt state law is quite another matter. Deciding whether the effectuation of federal law requires displacement of state law is partly a matter of interpretation of federal statutory and regulatory law. But it is also a constitutional decision, having "its roots in the Supremacy Clause." *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982). Indeed, from the perspective of the states, there is little difference between a conclusion that state law is unconstitutional, and a determination that state law is pre-empted. Both types of judgments nullify otherwise duly enacted state statutes and common law rules of decision. In so doing, both type judgments subtract from the power the States otherwise enjoy as sovereign entities. Both types of claims can give rise to federal jurisdiction under 28 U.S.C. § 1331, and in some circumstances can be redressed under the federal cause of action created in 42 U.S.C. § 1983. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989).

It is a bedrock principle of our constitutional system that the judiciary has unique competence to resolve questions of constitutional law. *Marbury v. Madison*, 5 U.S. (1 Cranch.) 137 (1803). Thus, when agency decisions raise questions of constitutional law, courts uniformly decline to defer to agency interpretations of constitutional meaning. *See, e.g.*, *Public Citizen v. Burke*, 843 F.2d 1473, 1478 (D.C.Cir. 1998) ("the federal Judiciary does not ... owe deference to the Executive Branch's interpretation of the Constitution."). Indeed, this Court has refused to defer to agency views when they raised constitutional questions that otherwise can be avoided. *See, e.g.*, *Solid Waste Agency v. U.S. Army Corps of Engineers,* 531 U.S. 159, 172-73 (2000). Because the power to displace state law through preemption likewise rests on a provision of the Constitution -- the

16

Supremacy Clause -- and because from the states' perspective a judgment of preemption is tantamount to a finding of unconstitutionality, it is equally anomalous to say that federal courts must defer to agency determinations of preemption.

In any event, a brief arguing that state law ought to be preempted is not an agency's rulemaking, or an instance of filling in the statutory gaps.  It is not even an interpretation of the federal statute the agency is supposed to administer—it is an opinion about matters outside the expertise of the agency in question.

In summary, what is part of this Court's record is the decision in *Pinney*, which held that plaintiff's claims are not preempted.  That is a binding mandate.  Unlike *Brand X*, in which a court applied its own precedent and found against the FCC's formal position, here the ruling that this Court must follow is from a higher court.   Moreover, it is more than mere precedent—that ruling is the binding mandate of that higher court reached in an earlier stage in the litigation.

## IV.  Defendants Are Not Seeking To Resolve A Conflict Between The Court Of Appeals And The FCC But To Create One

Defendants assert that the Supreme Court has counseled great caution before rejecting an agency's "formal interpretation of an empowering statute." Def. Memo. at 3. The implication of their argument is that the Fourth Circuit's decision in this litigation conflicts with just such a formal interpretation.  In fact, though, the FCC has not formally interpreted its empowering statutes in a way that requires preemption. What defendants are hoping, by referring this case to the FCC, is to create such a conflict where none yet exists.  If they were to succeed, however, their victory would be useless except in creating delay, as binding law of the case would require this Court to follow the Fourth Circuit's ruling anyway.

The Court can consider, here, the logical possibilities that would flow from granting this motion. There are only two. The FCC could, after what might well be a lengthy decision-making process, concur with the already settled law of this Circuit and this case, that plaintiff's claims are not preempted. In that event, defendants would have succeeded in delaying this matter, which is already several years old, even more, although they will have lost the substantive issue. The other possibility, the one the defendants contend would happen, is that the FCC would decide that plaintiff's claims were preempted. What then, could this Court do next? It would remain bound by the rulings of the Court of Appeals in this matter.

Defendants' concern for conflicts on the preemptive effect of FCC regulations is misconceived. That misconception is highlighted by their hypothetical about the district court in *Murray*, which it notes would be "unencumbered by circuit precedent." Def. Memo. at 9. This is the defendants' supposed fear: "Should the *Murray* court, for example, afford 'substantial weight' … to the FCC's views and adopts the FCC's preemption position, a patchwork of different RF-related ruling will begin to take shape." *Id*. That paragraph reveals a great deal. First, it acknowledges that defendants are asking this Court to ignore the rulings of the Fourth Circuit, although it does not acknowledge that those rulings are the binding mandate in this case. After all, this Court is most definitely "encumbered by circuit precedent." Second, the quoted paragraph suggests that just because a possible difference between the Fourth Circuit and other courts that may arise in the future is a result so seriously to be avoided that it would justify this Court refusing to follow the Court of Appeals binding mandate.

Conflicts between Circuits do arise, of course. It is possible that one will arise on the issue of whether the FCC regulations preempt state consumer protection law claims. If other courts disagree with the Fourth Circuit, however, it is not this Court's role to resolve that dispute. It is this Court's role to follow binding precedent from a higher court until such time as that precedent changes.

Rather than defy the Court of Appeals and delay this litigation still further, the Court should deny this motion to refer questions to the FCC. The more appropriate motion to grant, and the one that would most expeditiously move this litigation to resolution, is the pending motion to remand these cases that defendants have yet again removed to this Court, despite the Fourth Circuit's prior mandate that they be remanded to state court.

## CONCLUSION

Plaintiff's state law claims are not subject to preemption under the binding law of this case. Defendant's motion is an attempt to delay resolution of these cases as well as a hope that they can mislead this Court into defying the Court of Appeals prior rulings. As this Court cannot ignore the Fourth Circuit's mandate, it must deny the motion.

Dated: December 13, 2006

H. Russell Smouse
Glenn E. Mintzer
**LAW OFFICES OF**
PETER G. ANGELOS, P.C.
One Charles Center
100 North Charles Street
Baltimore, MD 21201
(410) 649-2000

**JACOBSEN LAW OFFICES LLC**
By: /s/_____
Kenneth A. Jacobsen
12 Orchard Lane
Wallingford, PA 19086
(610) 566-7930

Michael R. Allweiss                          Joseph A. O'Keefe
**LOWE, STEIN, HOFFMAN, ALLWEISS**          **O'KEEFE & SHER, P.C.**
**& HAUVER, LLP**                            15019 Kutztown Road
701 Poydas Street                            Kutztown, PA 19530
One Shell Square                              (610) 683-0771
Suite 3600
New Orleans, LA  70139
(504) 581-2450

Michael D. Donovan

**DONOVAN SEARLES, LLC**
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103
(215) 732-6067