TAB A

ASSIGNED FOR HEARING
AT 1:00 P.M.
IN COURTROOM 7C SCHEDULED
BEFORE JUDGE HERRON (OR HIS DESIGNEE).
ALL PARTIES/COUNSEL MUST ATTEND

Kenneth A. Jacobsen
Identification No. 31208
Nancy B. Grogan
Identification No. 49483
**LAW OFFICES OF
KENNETH A. JACOBSEN**
22 West Front Street
Media, PA 19063
(610) 566-7930

Joseph A. O'Keefe
Identification No. 77068
**O'KEEFE & SHER, P.C.**
15019 Kutztown Road
Kutztown, PA 19530
(610) 683-0771

**LAW OFFICES OF PETER G. ANGELOS**
The John Wanamaker Building
100 Penn Square East
Suite 1050, 10th Floor
Philadelphia, PA 19107
(215) 963-9333

**LOWE, STEIN, HOFFMAN,
ALLWEISS & HAUVER, LLP.**
701 Poydras Street
One Shell Square, Suite 3600
New Orleans, LA 70139
(504) 581-2450

ATTEST
APR 1 9 2001
B. PLEASANT
PRO. PROTHY

Attorneys for Plaintiff

---

FRANCIS J. FARINA,
577 Gregory Lane
Devon, PA 19333

*individually and on behalf of
all those similarly situated,*
Plaintiff,

v.

NOKIA INC.
6000 Connection Drive
Irving, TX 75039

and

NEC AMERICA
8 Old Sod Farm Road
Melville, NY 11747

and

ERICSSON WIRELESS COMM., INC.
740 East Campbell Road
Richardson, Texas 75081

and

COURT OF COMMON PLEAS

PHILADELPHIA COUNTY

APRIL TERM 2001   APRIL 2001

NO. _____ 002527

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

**MOTOROLA, INC.**
5725 E. River Road
Chicago, Illinois 60631

and

**SPRINT PCS LIMITED PARTNERSHIP**
A/K/A Sprint Spectrum
A/K/A Sprint
4900 Main Street, 12th Floor
Kansas City, Missouri 64112

and

**AUDIOVOX COMMUNICATIONS
CORPORATION**
A/K/A Audiovox Corporation
150 Marcus Boulevard
Hauppauge, New York 11788

and

**NEXTEL COMMUNICATIONS, INC.**
A/K/A Nextel
A/K/A Nextel Communications of the
    Mid Atlantic, Inc.
A/K/A Nextel Partners, Inc.
2001 Edmund Halley Drive
Reston, Virginia 20191

and

**MATSUSHITA CORPORATION
OF AMERICA**
A/K/A Panasonic Corporation
9401 West Grand Avenue
Franklin Park, Illinois 60131

and

**PHILIPS ELECTRONIC NORTH
AMERICA CORP.**
100 East 42nd Street
New York, NY 10017

and

QUALCOMM INCORPORATED
A/K/A Qualcomm, Inc.
6455 Lusk Boulevard
San Diego, California 92121

and

SAMSUNG ELECTRONICS
AMERICA, INC.
A/K/A Samsung Electronics
105 Challenger Road
Ridgefield Park, NJ 07660

and

SANYO NORTH AMERICA, INC.
A/K/A Sanyo North America Group
218 State Route 17 North
Rochelle Park, New Jersey 07662

and

SONY ELECTRONICS, INC.
The Corporation Trust Incorporated
300 East Lombard Street
Baltimore, Maryland 21202

and

AT&T CORP.
A/K/A AT&T
195 Broadway
New York, New York

and

VERIZON COMMUNICATIONS, INC.
Formerly Known As:
Bell Atlantic Corporation
1 East Pratt Street
Constellation Plaza
Baltimore, MD 21202

and

VERIZON WIRELESS
A/K/A Bell Atlantic Nynex
A/K/A Nynex
A/K/A Bell Atlantic Mobile, Inc.
Formerly Known As:
Bell Atlantic Nynex Mobile, Inc.
180 Washington Valley Road
Bedminster, New Jersey  07921

and

CELLCO PARTNERSHIP
d/b/a Verizon Wireless
formerly d/b/a Bell Atlantic Mobile
formerly d/b/a Bell Atlantic NYNEX Mobile:
180 Washington Valley Road
Bedminster, New Jersey  07921

and

CINGULAR WIRELESS LLC
Formerly Known As:
Southwestern Bell Mobile Systems, Inc.
A/K/A Southwester Bell Wireless
2711 Centerville Road, Suite 400
Wilmington, DE  19808

and

SBC COMMUNICATIONS INC.
175 East Houston Street
San Antonio, Texas  78205

and

CELLULAR ONE GROUP
A/K/A Cellular One
5001 Lyndon B. Johnson Freeway
Suite 700
Dallas, Texas  75244

and

VOICESTREAM WIRELESS
CORPORATION

ATTEST

APR 1 9 2001

B. PLEASANT
PRO. PROTHY

APRIL 2001

002527

A/K/A VoiceStream Wireless
3650 131ˢᵗ Avenue SE, Suite 200
Bellvue, Washington 98006

and

COMCAST/METROPHONE
1234 Market Street
Philadelphia, PA 19090

and

JOHN DOES NOS. 1-100,

Defendants.

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

Philadelphia Bar Association
Lawyer Referral
and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

## AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparecencia escrita o en persona o.com un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociacion de Licenciados
de Filadelfia
Servicio de Referencia e
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

and distribution across the cell membrane; melatonin production;

-5-

A/K/A VoiceStream Wireless            :
3650 131ʳ Avenue SE, Suite 200        :
Bellvue, Washington  98006            :

      and          :                    APRIL 2001

COMCAST/METROPHONE                    :
1234 Market Street                    :
Philadelphia, PA  19090               :

      and          :                    002527

JOHN DOES NOS. 1-100,                 :

         Defendants.  :

## CLASS ACTION COMPLAINT

Plaintiff Francis J. Farina brings this class action pursuant to Rule 1701 *et seq.* of the Pennsylvania Rules of Civil Procedure individually and on behalf all others similarly situated, and alleges the following:

## I.  INTRODUCTION

1.     This class action seeks damages and declaratory and injunctive relief on behalf plaintiff and a class of persons who purchased or leased wireless handheld telephones ("WHHPs").

2.     Through a common and uniform course of conduct, the defendants have manufactured, supplied, promoted, sold, leased and provided wireless service for WHHPs when they knew or should have known that their products generate and emit radio frequency radiation ("RFR") that causes an adverse cellular reaction and/or cellular dysfunction ("biological injury") through its adverse health effects on: calcium and ion distribution across the cell membrane; melatonin production;

neurological function; DNA single and double strand breaks and chromosome damage; enzyme activities; cell stress and gene transcription; and the permeability of the blood brain barrier (hereinafter collectively described as "the health risk" and/or "the biological effects").

3. Through a common and uniform course of conduct, the defendants, acting individually and collectively, failed to adequately disclose to the consuming public the fact that WHHPs emit RFR that causes biological injury and a risk to the users' health.

4. The purpose of this action is to hold accountable and to obtain maximum legal and equitable relief from those corporations and entities that are responsible for producing and placing into the stream of commerce WHHPs which create a health risk to users by causing biological injury.

## II. THE PARTIES

5. Plaintiff Francis J. Farina is an adult individual who resides at 577 Gregory Lane, Devon Pennsylvania. On or about May 1, 1997 and October 1, 1988, plaintiff purchased WHHPs from defendant Verizon Communications, Inc. (then Bell Atlantic) and defendant AT&T, respectively.

6. At all times relevant to this Complaint, defendant NOKIA, Inc. a/k/a Nokia Mobile Phones, Inc. ("Nokia") was a Delaware corporation with its principal place of business at 6000 Connection Drive, Irving, Texas 75039. At all times relevant herein, Nokia, through its agents, distributors, servants and/or

employees engaged in the design, manufacture, marketing and sale of WHHPs nationally and internationally.

7.    At all times relevant to this Complaint, defendant NEC AMERICA, INC. ("NEC") was a corporation organized and existing under the laws of the State of New York, with its principal place of business at 8 Old Sod Farm Road, Melville, New York 11747. At all times relevant herein, NEC, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs nationally and internationally.

8.    At all times relevant to this Complaint, defendant ERICSSON WIRELESS COMMUNICATIONS, INC. a/k/a Ericsson, Inc. ("Ericsson") was a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 740 East Campbell Road, Richardson, Texas 75081. At all times relevant herein, Ericsson, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs nationally and internationally.

9.    At all times relevant to this Complaint, defendant Motorola, Inc. ("Motorola") was a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 5725 E. River Road, Chicago, Illinois 60631. At all times relevant herein, MotorOla, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs nationally and internationally.

10.    At all times relevant to this Complaint, defendant Sprint PCS

Limited Partnership, A/K/A Sprint Spectrum, A/K/A Sprint, formerly known as,
Bell Atlantic-Maryland, Inc. ("Sprint") was a corporation organized and existing
under the laws of the State of Delaware, having its principal place of business at
4900 Main Street, 12th Floor, Kansas City, Missouri 64112. At all times relevant
herein, Sprint, through its agents, distributors, servants and/or employees engaged
in the sale and/or promotion of WHHPs, cellular telephone equipment and
transmission services to cellular telephone owners and users throughout its service
areas.

11.    At all times relevant to this Complaint, defendant Audiovox
Communications Corporation A/K/A Audiovox Corporation. ("Audiovox") was a
corporation organized and existing under the laws of the State of Delaware having
its principal place of business in the State of New York at 150 Marcus Blvd,
Hauppauge, New York 11788. At all times relevant herein, Audiovox, through its
agents, distributors, servants and/or employees engaged in the design,
manufacture, marketing and sale of WHHPs nationally and internationally.

12.    At all times relevant to this Complaint, defendant Nextel
Communications, Inc., A/K/A Nextel, A/K/A Nextel Communications of the Mid-
Atlantic, Inc., A/K/A Nextel Partners, Inc. ("Nextel") was a corporation organized
and existing under the laws of the State of Delaware having its principal place of
business at 2001 Edmund Halley Drive, Reston, Virginia 20191. At all times
relevant herein, Nextel, through its agents, distributors, servants and/or employees
engaged in the sale and/or promotion of WHHPs, cellular telephone equipment

and transmission services, as well as to cellular telephone owners and users throughout its service areas.

13.    At all times relevant to this Complaint, defendant Matsushita Corporation of America A/K/A Panasonic Corporation ("Panasonic") was a corporation organized and existing under the laws of the State of Delaware having its principal place of business at 9401 West Grand Avenue, Frankin Park, Illinois 60131. At all times relevant herein, Panasonic, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs nationally and internationally.

14.    At all times relevant to this Complaint, defendant Philips Electronic North America Corporation ("Philips") was a corporation organized and existing under the laws of the State of Delaware having its principal place of business at 100 East 42nd Street, New York, New York 10017. At all times relevant herein, Philips, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs nationally and internationally.

15.    At all times relevant to this Complaint, defendant Qualcomm Incorporated A/K/A Qualcomm, Inc. ("Qualcomm") was a corporation organized and existing under the laws of the State of Delaware having its principal place of business at 6455 Lusk Boulevard, San Diego, California, 92121. At all times relevant herein, Qualcomm, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs and WHHP services nationally and internationally.

16.    At all times relevant to this Complaint, defendant Samsung Electronics America, Inc. A/K/A Samsung Electronics ("Samsung") was a corporation having its principal place of business at 105 Challenger Road, Ridgefield Park, NJ 07660. At all times relevant herein, Samsung, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs nationally and internationally.

17.    At all times relevant to this Complaint, defendant Sanyo North America, Inc. A/K/A Sanyo North America Group ("Sanyo") was a corporation having its principal place of business at 218 State Route 17 North, Rochelle Park, New Jersey 07662. At all times relevant herein, Sanyo, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs, and transacting business nationally and internationally.

18.    At all times relevant to this Complaint, defendant Sony Electronics, Inc. ("Sony") was a corporation organized and existing under the laws of the State of Delaware having its principal place of business at The Corporation Trust Incorporated, 300 East Lombard Street, Baltimore, Maryland 21202. At all times relevant herein, Sony, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs, and transacting business nationally and internationally.

19.    At all times relevant to this Complaint, defendant AT&T Corp., A/K/A AT&T, ("AT&T") was a corporation organized and existing under the laws

of the State of New York, having its principal place of business at 195 Broadway, New York, New York. At all times relevant herein, AT&T, through its agents, distributors, servants and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services to cellular telephone owners and users throughout its service areas.

20.    At all times relevant to this Complaint, defendant Verizon Communications, Inc. formerly known as Bell Atlantic Corporation,("Verizon") was a corporation organized and existing under the laws of the State of Delaware having its principal place of business at 1 East Pratt Street, Constellation Plaza, Baltimore, Maryland 21202. At all times relevant herein, Verizon Communications, through its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services to cellular telephone owners and users throughout its service areas.

21.    At all times relevant to this Complaint, defendant Verizon Wireless, A/K/A Bell Atlantic Nynex, A/K/A Nynex, A/K/A Bell Atlantic Mobile, Inc., formerly known as Bell Atlantic Nynex Mobile, Inc. ("Verizon Wireless") ws a corporation organized and existing under the laws of the State of Delaware having its principal place of business at 180 Washington Valley Road, Bedminister, New Jersey 07921. At all times relevant herein, Verizon Wireless, through its affiliate corporations, companies and partnerships, agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone

11

equipment and transmission services to cellular telephone owners and users throughout its service areas.

22. At all times relevant to this Complaint, defendant Cellco Partnership, d/b/a Verizon Wireless, formerly d/b/a Bell Atlantic Mobile, formerly d/b/a Bell Atlantic NYNEX Mobile ("Cellco"), was a partnership organized and existing under the laws of the State of Delaware having its principal place of business at 180 Washington Valley Road, Bedminster, New Jersey, 07921. At all times relevant herein, Cellco, through its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services to cellular telephone owners and users throughout its service areas.

23. At all times relevant to this Complaint, defendant Cingular Wireless LLC formerly known as Southwestern Bell Mobile Systems, Inc. A/K/A Southwestern Bell Wireless ("Cingular"), was a corporation organized and existing under the laws of the State of Delaware having its principal place of business at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. At all times relevant herein, Cingular, through its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services to cellular telephone owners and users throughout its service areas.

24. At all times relevant to this Complaint, defendant SBC Communications Inc. ("SBC"), was a corporation and existing under the laws of

the State of Delaware having its principal place of business at 175 East Houston Street, San Antonio, Texas 78205. At all times relevant herein, SBC was conducting its business through its affiliate corporations, companies, and partnerships, and its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services throughout its service areas.

25.    At all times relevant to this Complaint, defendant Cellular One Group, A/K/A Cellular One ("Cellular One"), was a partnership organized and existing under the laws of the State of Delaware having its principal place of business at 5001 Lyndon B Johnson Freeway, Suite 700, Dallas, Texas 75244. At all times relevant herein, Cellular One, through its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services to cellular telephone owners and users throughout its service areas.

26.    At all times relevant to this Complaint, defendant VoiceStream Wireless Corporation, A/K/A VoiceStream Wireless ("Voicestream"), was a partnership organized and existing under the laws of the State of Delaware having its principal place of business at 3650 131st Avenue SE, Suite 200, Bellvue, Washington, 98006. At all times relevant herein, Voicestream, through its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services to cellular telephone owners and users throughout its service areas.

27.    At all times relevant to this Complaint, defendant Comcast/Metrophone ("Comcast") has its corporate offices and principal place of business located at 1234 Market Street, Philadelphia, Pennsylvania. At all times relevant herein, Comcast/Metrophone was engaged in the business of owning, promoting, marketing, distributing and operating the wireless network necessary for use of the WHHPs herein.

28.    Defendants John Does 1 through 50 are as yet unidentified defendants who at all times relevant hereto were engaged in the business of manufacturing, selling, promoting, marketing and distributing the WHHPs herein.

29.    Defendants John Does 51 through 100 are as yet unnamed defendants who at all times relevant hereto were engaged in the business of owning, selling, promoting, marketing, distributing and operating the wireless networks necessary for the use and operation of the WHHPs herein.

30.    On information and belief, all defendants conduct business in Pennsylvania and in Philadelphia County.

### III.  CLASS ALLEGATIONS

31.    The class consists of:

    (a)   all persons in the Commonwealth of Pennsylvania who purchased or leased WHHPs who have not been diagnosed with a brain related tumor or cancer of the eye; and

    (b)   all future purchasers and lessees of WHHPs who have not been diagnosed with a brain related tumor or cancer of the

eye;

(collectively, the "Class").

32.   Plaintiff is a member of the Class.

33.   It is estimated that the Class consists of hundreds of thousands, if not millions, of persons throughout the Commonwealth of Pennsylvania and is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.  The exact number of Class members is presently unknown to plaintiff.

34.   There are questions of law or fact common to the members of the Class which predominate over any questions affecting only individual members and which make class certification appropriate in this case, including:

> (a)   whether defendants, acting individually or collectively, failed to conduct appropriate, reasonable and adequate testing of WHHPs to determine the association between RFR and biological effects and the risk to human health arising therefrom;

> (b)   whether the defendants, acting individually or collectively, failed to conduct appropriate, reasonable and adequate research and studies to determine the association between RFR and the biological effects and the health risk;

> (c)   whether the defendants, acting individually or collectively, failed to warn or otherwise inform plaintiff and other

15

members of the Class of the association between RFR and

biological effects and the risks to human health arising

therefrom;

(d)    whether the defendants, acting individually or collectively,

failed to provide headsets or other devices which would have

eliminated, reduced or minimized the biological effects from

RFR and the risk to human health arising therefrom;

(e)    whether defendants falsely and deceptively misrepresented,

omitted to adequately disclose and/or affirmatively concealed

in their advertisements, promotional materials and other

materials, among other things, the potential hazards

associated with the use of WHHPs;

(f)    whether the defendants made express or implied, direct or

indirect, misrepresentations of fact or omitted and concealed

material facts about the WHHPs; and

(g)    whether the defendants' conduct violated the Pennsylvania

Unfair and Deceptive Trade Practices Act, 73 Pa. C.S.A. §

201-1 et seq., and other provisions of Pennsylvania statutory

and common law.

35.    The claims asserted by the named plaintiff are typical of the claims

of the members of the Class.

36.   This class action satisfies the criteria set forth in Pa.R.Civ.P. 1709 in that plaintiff is a member of the Class; plaintiff will fairly and adequately protect the interests of the members of the Class; his interests are coincident with and not antagonistic to, those of the Class; he has retained attorneys experienced in class and complex litigation as his counsel; and he has, or through his counsel, has access to, adequate financial resources to assure that the interests of the Class are protected.

37.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a)   It is economically impractical for most members of the Class to prosecute separate, individual actions; and

(b)   After the liability of the defendants has been adjudicated, the individual and aggregate claims of all members of the Class can be determined by the Court.

38.   Litigation of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual Class members which would substantially impair or impede the ability of other Class members to protect their interests.

39.   Class certification is also appropriate because defendants have acted or refused on grounds generally applicable to the Class, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of plaintiff and the Class members.

## IV. FACTUAL BACKGROUND

40.     WHHPs are sold in the United States and throughout the world. More than 100 million Americans use WHHPs and over 400 million have been sold internationally.

41.     Service providers are an integral component of the WHHP industry, without which WHHPs could not be used. Such providers (hereinafter referred to as "Cell Phone Carriers") are granted licenses by the Federal Communication Commission ("FCC") to broadcast wireless signals on specific frequency bands to provide cellular telephone service to consumers.

42.     Each cell phone manufacturer designs and manufactures its WHHPs to fit the specifications of the Cell Phone Carriers.

43.     Each Cell Phone Carrier provides manufacturers and/or sellers of WHHPs with specifications based on its specific frequency band. The specifications for the battery and circuitry for all WHHPs in a Cell Phone Carrier's network are determined by the Cell Phone Carrier's license and frequency granted by the FCC.

44.     Each time a WHHP user makes or receives a call, a wireless signal is transmitted from the WHHP antenna to the nearest cell tower or from the nearest cell tower to the WHHP antenna, respectively, thereby exposing the WHHP user to RFR.

45.     Land lines also play a central role in the operation and use of WHHPs. Based upon the license granted by the FCC to and the frequency

specifications provided to sellers and/or manufacturers of WHHPs, the defendant

Cell Phone Carriers create a network by which the wireless signal is transferred to

land lines and the call is sent to a receiver or sent to the cell phone customer.

46.     The WHHPs purchased by plaintiff, as alleged in paragraph 5 above,

was sold without a hands free earpiece or headset ("headset").

47.     While placing calls and while receiving calls, plaintiff held the

phone in the manner for which it was designed and intended to be used by

defendants, so that the receiver was resting against the plaintiff's ear (the

"customary position"), the same manner in which other similarly situated Class

members customarily use and have used the WHHPs.

48.     Each time plaintiff used the WHHP in the customary position, the

antenna was located next to plaintiff's head.

49.     Each time plaintiff used the WHHP, he was exposed to RFR which

emanated from the antenna, thereby subjecting plaintiff to RFR and, in the absence

of a headset, to RFR's biological effects and the risks to human health arising

therefrom.

50.     The health risks created by the plaintiff's use of the WHHP is

identical to the risks to which all other Class members were exposed.

51.     Appropriately designed headsets when properly used eliminate the

WHHP user's exposure to RFR.  Headsets used in conjunction with WHHPs have

been commercially available at all relevant times.  Indeed, at all relevant times,

defendants marketed headsets as an accessory at an additional cost.

## V. HISTORY OF MEDICAL AND SCIENTIFIC RESEARCH

52.    Scientific and medical research, published in peer reviewed literature, has demonstrated biological injury from exposure to RFR within the radio frequency band of 300 megahertz to 2.4 gigahertz.

53.    Defendants were aware or should have been aware of numerous studies and experiments that demonstrated the health risks and biological effects of RFR dating back to the late 1920s.

54.    As research and studies, including animal research, evolved over the ensuing decades, it was found, among other things, that demonstrated physical injury and/or adverse biological effects resulted from exposure to varying levels of RFR.

55.    During this same period of time, research was also developed as to the risk to human health posed by exposure to RFR.

56.    By the early 1960's, it was well established in the scientific and medical communities that RFR is efficiently absorbed into human tissue and is capable of producing biological injury.

57.    It was equally well known in the scientific and medical community by the early 1960's that an antenna is the most efficient means of depositing RFR into the human body and penetrating human tissue, and that the temporal lobe of the brain was the most sensitive area of the body to this type of radiation.

58.    Medical and scientific inquiry and research into the harmful biological effects of RFR continued unabated from the 1960's to the present.

Throughout this period, dozens of peer reviewed research papers were published which, individually and collectively, raised serious and credible questions regarding whether the RFR to which WHHP users were and are exposed posed a risk or threat to their health.

59.   Throughout this entire period, the defendants, acting individually and collectively through their respective trade associations, acted affirmatively to suppress, discredit and/or minimize this emerging science.

60.   Throughout this same period, the defendants, acting individually and collectively through their respective trade associations, took steps to ensure that they would be free to manufacture and mass market WHHPs to the consuming public, free from the constraints of any reasonable and necessary safety standards regulating RFR exposure.  They accomplished this by obtaining and exercising dominance and control over the American National Standards Institute ("ANSI") Committee responsible for developing safety standards for RFR emitting devices.

61.   In 1966, long before defendants began producing WHHPs, ANSI adopted an RFR exposure limit of $10 \text{ mW/cm}^2$, which was identified as ANSI Standard C95.1-1966 ("ANSI-1966").  However, this standard was based solely on the *thermal* effects associated with RFR, and did not contemplate or consider the possibility that RFR exposure could give rise to non-thermal biological injury and subsequent adverse health effects.  Nevertheless, prior to 1989, the defendants relied upon this irrelevant ANSI Standard to make unfounded and improper representations to the consuming public that WHHPs were safe for their intended

21

use without the use of a headset.

62.    In 1989, at an ANSI meeting, representatives of the WHHP industry, including the defendants herein, sought an exclusion for WHHPs from ANSI-1966. The defendants' proposal would have exempted from ANSI-1966 all devices using less than seven (7) watts of power. Such an exclusion would have effectively exempted all WHHPs from ANSI-1966. At this initial meeting, the efforts of the defendants and others to achieve the exclusion failed, and the vote for the exclusion was defeated.

63.    Approximately one month later, a smaller group of the ANSI RFR Safety Standard Committee met and the exclusion clause was again pressed at the urging of the defendants. On this occasion, the proposal was approved, and WHHPs were exempted from ANSI-1966. As a consequence of this action, WHHPs were aggressively marketed thereafter without any safety standard to protect plaintiff and other Class members from the harmful effects of RFR exposure.

64.    In the early 1990's, after successfully contriving to exempt themselves from ANSI regulation and as credible concerns continued to surface regarding the safety of WHHPs, the defendants, individually and through their trade associations, undertook with great public fanfare to fund scientific inquiry into the potential health hazards posed by the use of WHHPs. When this industry-funded research failed to corroborate the industry's reckless and premature claims of safety, and, in fact, presented new evidence of potential health concerns, the

-22-

industry responded by terminating the research funding and publicly disparaging, suppressing and minimizing the results.

65.     Despite their knowledge of the literature, research and the industry's own studies, the defendants continued falsely and wrongfully to maintain that WHHPs posed no threat to human health despite mounting abundant evidence to the contrary.

66.     At all relevant times, the biological injury caused by low level RFR of WHHPs which, in turn, gives rise to risks to the users' health, was fully known and appreciated by the defendants.  At all relevant times, the defendants should have and easily could have minimized, reduced and or eliminated this health risk by acknowledging its existence and providing to each purchaser of WHHPs a hands free earpiece or headset with appropriate instructions for use.  The defendants failed and/or refused to take this simple step to reduce the health risks to consumers for fear that such action would inhibit their ability to mass market WHHPs to the consuming public, including to plaintiff and others members of the Class.

67.     On January 26, 1993, defendant Motorola, through one of its senior executives, announced to the news media, which subsequently reported to the public, that "thousands of studies" had shown that cellular phones were "safe." This statement was false and misleading.

68.     On July 16, 1993, in furtherance of its dishonest campaign to assure the consuming public of the purported "safety" of WHHPs, the Cellular

Telecommunications Industry Association ("CTIA"), representing many of the named defendants, held a press conference and issued a report entitled "Safety Update-Fast Facts: Portable Cell Phone Safety," which, in bold print, falsely and deceptively stated: "Rest assured. Cellular telephones are safe!" The report further stated that WHHPs fell within the safety standards of the FCC. However, the defendants fraudulently and deceitfully omitted the fact that the FCC had declared that it does *not* consider itself the "agency" responsible for evaluating the health effects of RFR and WHHPs.

69.    This industry deception prompted Elizabeth Jacobson, Deputy Director for Science at the Center for Devices and Radiological Health of the U.S. Food and Drug Administration ("FDA"), on July 19, 1993 to send a letter to CTIA president Thomas Wheeler, which clearly questioned and challenged the false and misleading statements made by the defendants to the public regarding the "safety" of WHHPs. In pertinent part, that letter stated:

> "I am writing to let you know that we were concerned about two important aspects of your press conference on July 16 concerning the safety of cellular phones, and to ask that you carefully consider the following comments when you make future statements to the press.
>
> First, both the written press statements and your verbal comments during the conference seemed to display an unwarranted confidence that these products will be found to be absolutely safe. In fact, the unremittingly upbeat tone of the press packet strongly implies that there can be no hazard, leading the reader to wonder why any further research would be needed at all. (Some readers might also wonder how impartial the

24

> research can be when its stated goal is "a determination
> to reassure consumers," and when the research
> sponsors predict in advance that 'we expect the new
> research to reach the same conclusion, that the cellular
> phones are safe."). . . .

> We are even more concerned that your press
> statements did not accurately characterize the
> relationship between CTIA and the FDA. . . . [S]ince it
> is not yet clear whether we will help to direct the
> research program, it is premature to state that we will
> credential the research.

> To sum up, Mr. Wheeler, our role as a public health
> agency is to protect health and safety, not to "reassure
> consumers." I think it is very important that the public
> understand where we stand in evaluating the
> possibility that cellular phones might pose a health
> risk. . . .

70.     In or about late 1993 or early 1994, the cell phone industry,

including the named defendants, through CTIA, organized a committee to prepare

a manual for public consumption discussing "responsible" WHHP use. After

receiving a draft of the manual, Thomas Wheeler, president of CTIA, sent a

memorandum to the drafting committee expressing his concerns over certain

language in the draft which acknowledged and/or implied that the use of WHHPs

could pose health risks. Mr. Wheeler's memorandum suggested significant

substantive deletions from the draft. The committee thereafter deleted the

offending material, set forth below in brackets and bold typeface:

> "Do not operate your transportable cellular telephone
> when holding the antenna, or when any person is
> within 4 inches (10 centimeters) of the antenna.
> **[Otherwise you may impair call quality, may cause
> your phone to operate at a higher power level than**

is necessary, and may expose that person to RF
energy in excess of the levels established by the
updated ANSI Standard.

If you want to limit RF exposure even further, you
may choose to control the duration of your calls or
maintain a distances from the antenna of more than
4 inches (10 centimeters)].

For best call quality, keep the antenna free from
obstructions and point it straight up."

71.     Subsequent to, and as a direct consequence of the filing of other

proceedings raising concerns about biological injury from RFR, the defendants (or

some of them) began to provide to purchasers and lessees of WHHPs with a copy

of the FDA's "Update on Mobile Phones" dated October 2000 (the "Update").

The Update is included by some defendants as an insert to the packaging for newly

purchased WHHPs.

72.     The FDA's "Update" informs the consuming public as follows:

The U.S. Food and Drug Administration's Center
for Devices and Radiological Health Consumer
Update on Mobile Phones.

...Why the concern?

Mobile phones emit low levels of radio frequency energy
(i.e., radio frequency radiation) in the microwave range
while being used. They also emit very low levels of radio
frequency energy (RF), considered non-significant, when
in the stand-by mode. It is well known that high levels of
RF can produce biological damage through heating effects
(this is how your microwave oven is able to cook food).
However, it is not known whether, to what extent, or
through what mechanism, lower levels of RF might cause
adverse health effects as well. Although some research
has been done to address these questions, no clear picture

26

*of the biological effects of this type of radiation has emerged to date. Thus, the available science does not allow us to conclude that mobile phones are absolutely safe, or that they are unsafe...* (Emphasis added).

**How much evidence is there that hand-held mobile phones might be harmful?**

Briefly, there is not enough evidence to know for sure, either way; however, research efforts are on-going. The existing scientific evidence is conflicting and many of the studies that have been done to date have suffered from flaws in their research methods.

**...What is FDA's role concerning the safety of mobile phones?**

Under the law, FDA does not review the safety of radiation emitting consumer products such as mobile phones before marketing, as it does with new drugs or medical devices...

Although the existing scientific data do not justify FDA regulatory actions at this time, FDA has urged the mobile phone industry to take a number of steps to assure public safety. The agency has recommended that the industry:

- support needed research into possible biological effects of RF of the type emitted by mobile phones;
- design mobile phones in a way that minimizes any RF exposure to the user that is not necessary for device function; and
- cooperate in providing mobile phone users with the best possible information on what is known about possible effects of mobile phone use on human health.

73.    In addition to furnishing this FDA Update as a package insert, some

defendants also began including headsets as part of the package of newly

purchased WHHPs.

## VI. DEFENDANTS' MISCONDUCT

74. At all relevant times, plaintiff and other members of the Class were and continue to be misinformed, misled and deceived by the defendants to the effect that WHHPs are safe and pose no threat to human health.

75. At all relevant times, defendants controlled the design, assembly, platform for usage, manufacture, marketing and sales of WHHPs, which were widely advertised by the defendants as posing no threat to human health.

76. The product warnings in effect during the period relevant to this Complaint were both substantively and graphically wholly inadequate to alert plaintiff and the Class as to the risks associated with WHHP use.

77. Defendants have never adequately informed the public about the risks of biological injury which poses a health risk to WHHP users, or of the fact that the risk of injury can differ with the amount of use and the sensitivity of the user.

78. The defendants knew or, by the application of reasonable, developed human skill and foresight, should have known of the unreasonably dangerous characteristics of WHHPs because such knowledge was, at all times relevant to the claims herein, part of the "state of the art" body of knowledge in the relevant scientific and medical communities.

79. At all times relevant to the claims herein, defendants failed to conduct adequate testing and research regarding the dangerous characteristics of WHHPs. Not only did the defendants fail to engage in pre-market testing of

28

WHHPs, but after introducing WHHPs into the marketplace, defendants continued to fail to fulfill their ongoing obligation to conduct adequate testing and research regarding the dangerous characteristics of WHHPs.

## COUNT I

### (Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S.§ 201-1 *et seq.*)

80.     Paragraphs 1 through 79 are herein incorporated by reference as though the same were set forth below at length.

81.     Plaintiff, on behalf of himself and other members of the Class, brings this Count pursuant to Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "Act"), 73 P.S. § 201-1 et seq., in that he purchased the WHHPs primarily for his personal use and thereby suffered ascertainable loss as the result of defendants' actions, in violation of the Act.

82.     Pennsylvania enacted the Act to protect consumers from unfair, deceptive and/or fraudulent business practices, and from unfair competition and false advertising.  The Act provides consumers with a private right of action.

83.     The Act defines "unfair methods of competition and unfair or deceptive acts or practices" and declares them unlawful in 73 P.S. § 201-2(4)(i)-(xxi).  Conduct prohibited by the Act includes the following, without limitation:

(v)     representing that goods have characteristics, ingredients, uses, benefits or qualities that they do not have;

(vii)   representing that goods are of a particular standard, quality

29

or grade, or that goods are of a particular style or model, if
they are not;

(ix)   advertising goods or services with intent not to sell them as
advertised; and

(xxi)  engaging in any other fraudulent or deceptive conduct which
creates a likelihood of confusion or of misunderstanding.

84.   Defendants violated these subsections of the Act by their use of false
and misleading misrepresentations or omissions of material fact in connection with
their manufacture, distribution and sale of WHHPs and the mobile networks
necessary for their operation. Defendants uniformly communicated the purported
benefits of WHHPs, while failing to adequately disclose and omitting and
concealing the potential serious and dangerous risks associated with use of the
WHHPs. Further, there is a presumption of classwide reliance upon defendants'
representations because the defects were not of the type which consumers,
including plaintiff and the Class, could discover on their own about the biological
injury, health risks and biological effects of the use of WHHPs.

85.   By the omission and concealment of the material facts alleged
above, the defendants deceived and continue to deceive consumers. This conduct
constitutes unlawful, unfair, deceptive and/or fraudulent business practices within
the meaning of the Act.

86.   Defendants violated 73 P.S. §201-2(4)(v), (vii), (ix) and (xxi) by
misleadingly, falsely and/or deceptively misrepresenting and/or omitting material

facts regarding, among other things, the utility, benefits, costs, safety and efficacy and advantages of the WHHPs, as described above.

87.    As a result of violating the Act, and pursuant to §201-9.2(a), defendants are liable to plaintiff and the Class for actual damages, or $100 for each unlawful transaction, whichever is greater, and to plaintiff and the Class for costs and reasonable attorneys' fees and court costs, and for the trebling of damages awarded, and exemplary or punitive damages.

WHEREFORE, plaintiff respectfully requests that the Court grant the following relief:

a.    enter an order pursuant to Rule 1710 of the Pennsylvania Rules of Civil Procedure permitting this Count to be maintained as a class action on behalf of the Class as specified herein, appointing plaintiff as the representative of the Class, and plaintiffs' counsel as counsel for the Class;

b.    enter judgment in favor of plaintiff and the Class against defendants, jointly and severally, and/or as may be apportioned by the Court or finder of fact, for actual damages of the plaintiff and the Class and for all other relief, in an amount to be proved at trial, including, but not limited to, the costs of purchasing headsets for the WHHPs (including reimbursing Class members who already have purchased headsets) and any other costs and expenses, with

minimum damages of $100 per Class member, together with

treble damages, interest, attorneys' fees, expert fees and the

costs of suit;

c.    providing each Class member who has not been so provided,

a WHHP which can be used with a headset;

d.    enter declaratory and injunctive relief against defendants,

requiring written instructions for the use of the headsets,

including an explanation of the reasons why the headsets

should be used; and

e.    award such further relief as provided for, under and pursuant

to the Act, 73 Pa. C.S. §201-9.2(a), and as this Court deems

necessary, just and proper.

## COUNT II
### (BREACH OF IMPLIED WARRANTY)

88.    Paragraphs 1 through 87 are incorporated herein by reference as

though the same were fully set forth below at length.

89.    Under Pennsylvania common and statutory law, a warranty of

merchantability and a warranty of fitness for particular purpose are implied in all

sales transactions where the seller has reason to know the particular purpose for

which the product is to be used and that the consuming public is relying on the

skill or judgment of the seller to furnish a suitable product. A warranty of

merchantability is a warranty implied by law that a product is fit for the ordinary

purposes for which it is used, is properly labeled and conforms to the representations made about it. See 13 P.S. § 2314. A warranty of fitness for a particular purpose is a warranty implied by law that a product is fit for its intended use. See 13 P.S. § 2315.

90. Defendants' WHHPs, in conjunction with the mobile networks, necessary for use of the WHHPs, were subject to both an implied warranty of merchantability and an implied warranty of fitness for a particular purpose.

91. Defendants breached said warranties in the manner described above.

92. Plaintiff and the Class have been damaged by defendants' breaches of warranties in the manner described above.

WHEREFORE, plaintiff respectfully requests that the Court grant the following relief:

    a. enter an order pursuant to Rule 1710 of the Pennsylvania Rules of Civil Procedure permitting this Count to be maintained as a class action on behalf of the Class as specified herein, appointing plaintiff as the representative of the Class, and plaintiff's counsel as counsel for the Class;

    b. enter judgment in favor of plaintiff and the Class against defendants, jointly and severally, and/or as may be apportioned by the Court or finder of fact, for compensatory damages consisting, among other things, of the costs of headsets, as well as interest, attorneys' fees, expert fees and

costs of suit;

    c.      providing each Class member who has not been so provided, a WHHP which can be used with a headset;

    d.      enter declaratory and injunctive relief against defendants, requiring written instructions for the use of the headsets, including an explanation of the reasons why the headsets should be used; and

    e.      award such further relief as the Court deems just and proper.

## COUNT III
## (FRAUDULENT CONCEALMENT)

93.    Paragraphs 1 through 92 are incorporated herein by reference as though the same were fully set forth below at length.

94.    Under Pennsylvania common law, one party to a transaction, who by concealment or other action, intentionally prevents the other party to that transaction from acquiring material information, is subject to the same liability to the other party for pecuniary loss as though he or she had affirmatively represented the non-existence of the information that the other was thus prevented from discovering. See Restatement (2d) of Torts, § 550.

95.    Defendants, by their concealment and other fraudulent actions described above, intentionally prevented the plaintiff and other members of the Class from acquiring material information concerning the dangers and hazards associated with WHHPs and the mobile networks necessary for their use.

96.    Plaintiff and the Class have been damaged by defendants' fraudulent concealment.

97.    Defendants are subject to the same liability to plaintiff and the members of the Class for the damages and other relief as a result of defendants' concealment as though defendants had affirmatively stated that there were no risks or hazards associated with use of the WHHPs, thus preventing plaintiff and the Class from discovering the hazards and risks.

WHEREFORE, plaintiff respectfully requests that the Court grant the following relief:

    a.    enter an order pursuant to Rule 1710 of the Pennsylvania Rules of Civil Procedure permitting this Count to be maintained as a class action on behalf of the Class as specified herein, appointing plaintiff as the representative of the Class, and plaintiff's counsel as counsel for the Class;

    b.    enter judgment in favor of the plaintiff and the Class against defendants, jointly and severally, and/or as may be apportioned by the Court or finder of fact, for compensatory damages consisting, among other things, of the costs of headsets, as well as interest, attorneys' fees, expert fees and costs of suit;

    c.    providing each Class member who has not been so provided, a WHHP which can be used with a headset;

   d.    enter declaratory and injunctive relief against defendants,

          requiring written instructions for the use of the headset,

          including an explanation of the reasons why the headsets

          should be used; and

   e.    award such further relief as the Court deems just and proper.

## COUNT IV
### (STRICT LIABILITY – FAILURE TO WARN)

98.    Paragraphs 1 through 97 are incorporated herein by reference as though the same were fully set forth below at length.

99.    The WHHPs purchased by the plaintiff and the Class were placed in the stream of commerce and sold by the defendants in a defective and unreasonably dangerous condition in that the WHHP failed to include proper warnings regarding all possible adverse health effects associated with the use of WHHPs and the harmful effects of the radiation emitted from the WHHPs to plaintiff and the Class.

100.    The WHHPs manufactured and/or supplied by the defendants reached the plaintiff and other members of the Class without any substantial change in their condition and were in that same condition when used by plaintiff and the Class.

101.    Defendants also failed to warn plaintiff and other members of the Class that other methods for using WHHPs were available, such as, but not limited to, a headset and/or other protective devices, which would have prevented the

adverse health effects associated with the use of WHHPs.

102.    The WHHPs purchased by the plaintiff and other members of the Class were both defective and unreasonably dangerous due to inadequate warnings or instructions because, after defendants knew or should have known of the risks from their use, defendants failed to provide adequate warnings or instructions to consumers as herein alleged. Defendants continued to aggressively promote the WHHPs and failed to provide a protective device including, but not limited to, a headset.

103.    The failure to provide adequate warnings or instructions as herein alleged or to provide a protective device including, but not limited to, a headset, made the WHHPs unreasonably dangerous.

104.    The product warnings in effect during the period relevant to this Complaint were both substantively and graphically wholly inadequate to alert plaintiff and the Class as to the risks associated with WHHP use.

105.    Defendants have never adequately informed the public about the risks of biological injury which poses a health risk to WHHP users, or of the fact that the risk of injury can differ with the amount of use and the sensitivity of the user.

106.    As a direct and proximate result of the defective and unreasonably dangerous condition of the WHHPs as alleged above, plaintiff, and other members of the Class were and continue to be exposed to a health risks.

107.    At all times relevant hereto, defendants actually knew of the

defective nature of their products as herein set forth and continued to design, manufacture, market, sell and provide service for their products so as to maximize sales and profits at the expense of public health and safety. At all relevant times, defendants could have eliminated or significantly mitigated the health risks alleged herein by acknowledging their existence and providing purchasers such as the plaintiff and the Class with a headset with appropriate warnings and instructions for use. Defendants' abject refusal or failure to so act was motivated solely by their desire to maximize sales and profits at the expense of the users' health.

WHEREFORE, plaintiff respectfully requests that the Court grant the following relief:

    a.    enter an order pursuant to Rule 1710 of the Pennsylvania Rules of Civil Procedure permitting this Court to be maintained as a class action on behalf of the Class as specified herein, appointing plaintiff as the representative of the class, and plaintiff's counsel as counsel for the class;

    b.    enter judgment in favor of plaintiff and the class against defendants, jointly and severally, and/or as may be apportioned by the Court or finder of fact, for compensatory damages consisting, among other things, of the costs of a headset, as well as interest, attorneys' fees, expert fees and costs of suit;

    c.    providing each Class member who has not been so provided,

a WHHP which can be used with a headset;

d.     enter declaratory and injunctive relief against defendants, requiring written instructions for the use of the headset, including an explanation of the reasons why the headsets should be used; and

e.     award such further relief as the Court deems just and proper.

## COUNT V
### (STRICT LIABILITY – DESIGN OR MANUFACTURING DEFECT)

108.   Paragraphs 1 through 107 are incorporated herein by reference as though the same were fully set forth below at length.

109.   The WHHPs designed, manufactured and/or supplied by the defendants were placed in the stream of commerce in a defective and/or in an unreasonably dangerous condition in that defendants failed to incorporate adequate equipment, instructions, and/or warnings to protect plaintiff and other members of the Class from the health risks created by WHHPs and biological injury caused by same.

110.   The WHHPs manufactured and/or supplied by the defendants were defective in design and/or manufacture because, when they were placed in the stream of commerce, they failed to contain or incorporate a headset or other protective device to eliminate or reduce the users' exposure to RFR.

111.   The WHHPs reached plaintiff and other members of the Class without substantial change in their condition and were in that same condition at

39

the time of the use alleged.

112.   The design or manufacturing defect alleged herein rendered the WHHPs manufactured or supplied by the defendants unreasonably dangerous when used in the manner intended by the defendants and, as a result, defendants are strictly liable to plaintiff and the other Class members.

113.   At the time that the WHHPs left the defendants' possession, the WHHPs were unreasonably dangerous to the plaintiff and other Class members and the defendants had safe alternatives or modifications which were economically feasible.

114.   As a direct and proximate result of the defective and unreasonably dangerous condition of WHHPs as manufactured and/or supplied by defendants, plaintiff and other Class members were exposed to health risks described herein.

115.   At all times relevant hereto, the defendants actually knew of the defective nature of their products as herein set forth and continued to design, manufacture, market, sell and provide service for their products so as to maximize sales and profits at the expense of public health and safety. At all relevant times, defendants could have eliminated or significantly mitigated the health risks alleged herein by acknowledging their existence and providing purchasers such as plaintiff and the Class with a headset with appropriate warnings and instructions for use. Defendants' abject refusal or failure to so act was motivated solely by their desire to maximize sales and profits at the expense of the users' health.

WHEREFORE, plaintiff respectfully requests that the Court grant the following relief:

a. enter an order pursuant to Rule 1710 of the Pennsylvania Rules of Civil Procedure permitting this Count to be maintained as a class action on behalf of the Class as specified herein, appointing plaintiff as the representative of the Class, and plaintiff's counsel as counsel for the Class;

b. enter judgment in favor of plaintiff and the Class against defendants, jointly and severally, and/or as may be apportioned by the Court or finder of fact, for compensatory damages consisting, among other things, of the costs of headsets, as well as interest, attorneys' fees, expert fees and costs of suit;

c. providing each Class members who has not been so provided, a WHHP which can be used with a headset;

d. enter declaratory and injunctive relief against defendants, requiring written instructions for the use of the headset, including an explanation of the reasons why the headsets should be used; and

e. award such further relief as the Court deems just and proper.

## COUNT VI
## (DECLARATORY RELIEF)

116.  Paragraphs 1 through 116 are incorporated herein by reference as though the same were fully set forth below at length.

117.  This claim is asserted on behalf of plaintiffs and the Class in accordance with the Pennsylvania Declaratory Judgments Act, 42 Pa.C.S.A. § 7531 et. seq., and Rules 1601 et. seq. of the Pennsylvania Rules of Civil Procedure.

118.  Plaintiff and the Class are entitled to a declaration that defendants' conduct described herein constitutes violations of applicable Pennsylvania statutory and common law.  The declaratory relief requested is an order declaring defendants' conduct, as alleged herein, to be unlawful, and requiring defendants to supply WHHP users with headsets for the WHHPs currently in use (and, if necessary, a new WHHP) and headsets for all WHHPs sold in the future, together with appropriate instructions as alleged herein.

WHEREFORE, plaintiff respectfully request that the Court grant the following relief:

> a.   enter an order pursuant to Rule 1701 of the Pennsylvania Rules of Civil Procedure permitting this Count to be maintained as a class action on behalf of the Class as specified herein, appointing plaintiff as the representative of the Class, and plaintiff's counsel as counsel for the Class;

b.    enter an order requiring defendants to furnish plaintiff and the Class with a headset and appropriate instructions;

c.    award plaintiff and the Class his attorneys' fees, litigation expenses and costs; and

d.    award such other and further relief as the Court deems just and proper.

## COUNT VII
### (PUNITIVE DAMAGES)

119.   Paragraphs 1 through 118 are incorporated herein by reference as though the same were fully set forth at length.

120.   Defendants' conduct was wanton, willful and so egregious as to warrant the award or exemplary or punitive damages.

WHEREFORE, plaintiff respectfully requests that the Court enter an order awarding plaintiff and the Class punitive or exemplary damages, together with attorneys' fees, litigation expenses and the costs of suit.

43

## JURY DEMAND

Plaintiff demands a trial by jury on all Courts so triable.

Dated: April 19, 2001

LAW OFFICES OF KENNETH A. JACOBSEN

Kenneth A. Jacobsen
I.D. No. 31208
Nancy B. Grogan
I.D. No. 49483
22 West Front Street
Media, PA 19063
(610) 566-7930

LAW OFFICES OF PETER G. ANGELOS
The John Wanamaker Building
100 Penn Square East
Suite 1050, 10th Floor
Philadelphia, PA 19107
(215) 963-9333

Joseph A. O'Keefe
O'KEEFE & SHER, P.C.
I.D. No. 77068
15019 Kutztown Road
Kutztown, PA
(610) 683-0771

LOWE, STEIN, HOFFMAN, ALLWEISS
& HAUVER, LLP.
701 Poydras Street
One Shell Square, Suite 3600
New Orleans, LA 70139
(504) 581-2450

44

## VERIFICATION

I, Francis J. Farina, hereby verify that the facts set forth in the foregoing Class Action Complaint are true and correct to the best of my knowledge, information and belief. This verification is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Dated: April 17, 2001

_____
Francis J. Farina