**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| | **:** | |
| **IN RE WIRELESS TELEPHONE** | **:** | |
| **RADION FREQUENCY EMISSIONS** | **:** | **MDL NO. 1421** |
| | **:** | |
| This Memorandum relates to | **:** | **Civil Action No. 01-MD-1421** |
| *Farina v. Nokia, et al.,* (E.D. Pa.) CCB-06-1577 | | |

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION FOR REMAND**

**Preliminary Statement**

Defendants expend a great deal of effort trying hard to convince this Court that this second attempt at removing this case should be evaluated by the Class Action Fairness Act's ("CAFA") new rules for diversity jurisdiction. Even if that were the case, though, even under CAFA there is no diversity jurisdiction over the *Farina* complaint. This case falls squarely into the "local controversy" test that defines **_and limits_** class action diversity jurisdiction under CAFA. 28 U.S.C., § 1332(d)(4)(A).

One fact already decided by the Court of Appeals remains at the center of this case—there is no complete diversity of citizenship between the plaintiffs and defendants. Plaintiffs are one and all citizens of Pennsylvania, and as the Fourth Circuit already has accepted as fact that at least some of the defendants in this case are Pennsylvania citizens as well. The only reason that defendants even can try to justify diversity jurisdiction over the *Farina* case, now, is the passage of the CAFA, which expanded diversity jurisdiction under certain limited and specific circumstances. But CAFA only extended diversity jurisdiction to defendants in class actions in certain cases where defendants can claim minimal, but not complete, diversity—not all such circumstances. When most of the

plaintiffs are citizens of one state, and the injuries all occur in that one state, and there is no complete diversity, CAFA specifically instructs the courts **_not_** to exercise jurisdiction. 28 U.S.C. § 1332(4)(A).  In other words, under CAFA, if some of the defendants in a case do not share citizenship with the plaintiff there *might* be grounds for federal jurisdiction—but again, only where certain circumstances are met.  Otherwise, when the class action falls under the so-called "local controversy" test, see 28 U.S.C. § 1332(d)(4)(A), there still is no federal jurisdiction even under CAFA.   That is exactly the case here—the *Farina* complaint in all its incarnations is paradigmatically a local Pennsylvania controversy involving solely a Pennsylvania class alleging claims under Pennsylvania law, meeting and exceeding all the requirements to be defined as a CAFA "local controversy"  over which the federal courts expressly lack jurisdiction.

To argue otherwise, the defendants are forced to ignore the prior decision of the Fourth Circuit in this case expressly acknowledging the lack of diversity jurisdiction. Defendants further ignore the fact that all plaintiffs are citizens of Pennsylvania and that all of their injuries arise from and are defined by Pennsylvania law, making this a "local controversy" at its core under CAFA.  In attempting to avoid that fact, defendants can find so little authority that they are forced to rely on a slice of supposed "legislative history" for CAFA of the sort Justice Scalia once said "should not be taken seriously, not even in a footnote." *Sullivan v. Finkelstein,* 496 U.S. 617, 631-32 (1990).

Finally, beyond their mistaken arguments about the law, defendants simply have misrepresented the very *dates* of various filings in this case. Defendants have tried to convince this Court that plaintiff's motion for remand was not filed until November of 2006, even though defendants know full well that plaintiff first filed that motion *half a*

*year before* on April 7, 2006 when the case was first removed and transfer was pending

before the Judicial Panel for Multidistrict Litigation.

Given the obvious inability of defendants to meet their burden of justifying

removal (and the most recent law on this matter is that it is indeed defendants' burden)

this Court must decline to exercise jurisdiction over the *Farina* case, and immediately

remand it to Pennsylvania.

## I. CAFA Does Not Extend Diversity Jurisdiction To "Local Controversies"

When CAFA extended diversity jurisdiction, no longer requiring complete

diversity even though that has been a traditional bedrock principle of federal jurisdiction,

Congress was careful not to go too far in undermining more than two centuries of federal

jurisprudence.  Therefore, although a class action may be removed under some

circumstances when there is only minimal diversity, Congress did not extend jurisdiction

to all cases where such minimal diversity might be found.  Where Congress has not

extended that jurisdiction—that is, in cases just like this one—the courts must be

extremely careful not to claim that jurisdiction. After all, as the Fourth Circuit noted in its

earlier decision in this case, "We must strictly construe our removal jurisdiction because

removal 'raises significant federalism concerns.'"  *Pinney v. Nokia*, 402 F.3d 430, 441

(4th Cir. 2005).  This Court must be particularly careful not to go too far in extending

diversity jurisdiction when, after all, it goes against the longstanding rule that diversity

jurisdiction required complete diversity.  *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2

L.Ed. 435 (1806) (where the Supreme Court first enunciated the complete diversity

requirement).

Specifically, Congress limited its extension of diversity jurisdiction by recognizing that there is no jurisdiction over what has come to be called "local controversies."  The relevant language from the original text of CAFA is as follows:

> (4) A district court shall decline to exercise jurisdiction under paragraph (2)--
> (A)(i) over a class action in which--
> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> (II) at least 1 defendant is a defendant--
> "(aa) from whom significant relief is sought by members of the plaintiff class;
> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> (cc) who is a citizen of the State in which the action was originally filed; and
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
> "(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 USCA § 1332(d).  There are, then, two situations which still fall outside of federal jurisdiction even when there is some diversity of citizenship, described in § 1332(4)(A) and (B)—the "local controversy" and "home state" situations.  And the language of the statute is mandatory, leaving no room for discretion. The most important fact about this case in general and this motion for remand in particular is that, as a matter of law, the requirements of Section 1332(d)(4)(A) are met here.  Therefore, this Court must decline to exercise jurisdiction over this case.

### A.  Defendants Have the Burden of Justifying Removal

As a removal petition must be "strictly construed," *Pinney v. Nokia,* 402 F.3d at 441, it has long been the rule that the removing party bears the burden of proving

diversity or other jurisdiction over the subject matter to justify rending jurisdiction from the state court.  *See Carson v. Dunham*, 121 U.S. 421, 425 (1887).  As the Fourth Circuit reiterated recently, "the burden of demonstrating jurisdiction resides with the party seeking removal."  *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2005). A*ccord Sonoco Products v. Physicians Health Plan, Inc.*, 338 F.3d 366, 380 (4th Cir. 2003).

That burden still rests with defendants under CAFA, too, and that burden includes showing that the case does not lie within the "local controversy" or "home state" tests. While many commentators have referred to these tests in Section 1332(d)(4) as "exceptions," that characterization is improper.  These are not exceptions at all.  In fact, Section 1332(d)(5) and (9) sets forth "exceptions" to CAFA's extension of jurisdiction— for securities actions and internal governance suits only.  On the other hand,

> "subsection (d)(4) seeks to explain that actions subject to its provisions were never covered by subsection (d)(2) provisions in the first instance. Subsections (d)(5) and (9) are therefore truly exceptions to (d)(2)'s removal provisions, while subsection (d)(4) forms a part and parcel of subsection (d)(2)'s definitional scope."

*Lao v. Wickes Furniture Co.*, 455 F. Supp.2d 1045, 1059 (C.D. Cal. 2006).  That is to say, "the rules found in subsection (d)(4) are part and parcel of the jurisdictional definition set forth in subsection (d)(2)."  *Id.* at 1058.  *Cf. Lowery v. Honeywell International, Inc.*, 2006 WL 3234197 (N.D. Ala. 2006) (under CAFA burden of establishing jurisdiction remains with removing party). Given that subsection (d)(4) is part and parcel of the jurisdictional definition of CAFA, "the burden of proving the elements outlined in subsection (d)(4) falls on the removing party."  *Lao*, 455 F. Supp.2d

at 1060.  Defendants have not met this burden.  To the contrary, all the elements of the

"local controversy" test are established in this case as a matter of law.

   While some courts have placed the burden on plaintiffs, the better reasoned

position in *Lao*—that it is up to the party asserting federal jurisdiction to show that it

exists—is not only more in keeping with general federal jurisprudence that emphasizes

the strict construction of removal jurisdiction, *see Pinney*, 402 F.3d at 441, but it is also

the latest decision on the topic.  Still, even if the burden did rest on plaintiff to "disprove"

federal jurisdiction—the exact opposite of the approach courts always have taken to

removal jurisdiction for decades—that burden necessarily would be met as a matter of

law.

   There are four criteria under § 1332(d)(4)(A) that limit federal jurisdiction.  First,

there is the citizenship of the plaintiffs; second, that of the defendants'; third, the locus of

injuries; and fourth, that the claim not be the same as another recently-pending case.  All

four criteria exist here.  Indeed, it is irrelevant who has the burden here, plaintiff or

defendants.  It is clear as a matter of law all the criteria are met.

   **B.  All Class Members Are Citizens of Pennsylvania**

   Under 28 U.S.C. § 1332(4)(A)(i)(I), a court must decline jurisdiction if

"greater than two-thirds of the members of all proposed plaintiff classes in the aggregate

are citizens of the State in which the action was originally filed."  In the *Farina*

complaint, the class allegations specifically state that each and every member of the class

"is a person in the Commonwealth of Pennsylvania who purchased or leased WHHPs."

(Complaint ¶ 115).    That is to say, not just two-thirds or an even higher percentage but,

by definition, *all* class members are Pennsylvania citizens.  Therefore, the first criterion
for finding this case to be a local controversy is clearly and indubitably met.

In addition, there is no dispute that 28 U.S.C. §1332(4)(A)(ii) is met as well—
there is no other action in the last three years that purports to seek remedies for
Pennsylvania residents who have been damaged by defendants' actions in Pennsylvania
that constitute unfair trade practices as those acts are defined in Pennsylvania law.

### C.  The Mandate of the Fourth Circuit Requires this Court to Recognize that at Least One Defendant is a Citizen of Pennsylvania

At least one of the defendants in this case was a Pennsylvania citizen at the time
this suit was filed, which is why the Fourth Circuit already has ruled that there was no
diversity jurisdiction in this case. Therefore, the criteria stated in 28 U.S.C. §
1332(4)(A)(i)(II)("at least 1 defendant… is a citizen of the State in which the action was
originally filed.") also is met.

There were, as this Court will recall, five cases originally joined in this multi-
district litigation, and the Fourth Circuit dealt with all five in its opinion.   The disposition
of the appeal in the Fourth Circuit depended on that court's ruling that three of those
cases, including the *Farina* action—this one—had to be remanded to state courts because
there was no basis for federal jurisdiction.  The court held there was no federal question
jurisdiction over any of the cases, but also explained that in one of the five cases
(*Naquin*) *but not the others,* there was diversity jurisdiction.  Only in that one case,
*Naquin*, therefore, did the court have jurisdiction to reach the merits of defendants'
motion to dismiss (and of course, found that motion had no merit).  The rest of the cases
were remanded because *there was no federal jurisdiction, and that included no diversity
jurisdiction.  Pinney*, 403 F.3d at 439 ("Because federal subject matter jurisdiction is

lacking in four of the cases [including *Farina*], we reverse the district court's order denying the motion to remand those cases.  There is diversity jurisdiction over the fifth case…"), and 451 ("Because the district court lacked subject matter jurisdiction over the four cases brought by the *Pinney* plaintiffs [including the *Farina* complaint], the district court had no power to dismiss them.").  This ruling is binding no matter what may have changed since then, because, as the United States Supreme Court has said, "It is well settled, for example, that federal-diversity jurisdiction depends on the citizenship of the parties at the time suit is filed."  *Dole Food Co. v. Patrikcson*, 538 U.S. 468, 478 (2003), *citing Anderson v. Watt*, 138 U.S. 694, 702-703 (1891).

If there was no complete diversity before, that can only mean at least one of the defendants was not diverse as to plaintiff—or stated another way, that at least one was a Pennsylvania citizen.  This is a necessary ruling of the Fourth Circuit's opinion that led to its order to remand this and three other cases; it is part of its mandate.

The mandate of the Fourth Circuit in this case was to remand *Farina* to the courts of the Commonwealth of Pennsylvania.  That mandate was predicated on there being no issue concerning diversity—meaning that at least some of the defendants are citizens of Pennsylvania.  As the Fourth Circuit itself admonished only a short time ago, "the mandate rule forecloses relitigation on issues expressly or *impliedly* decided by the appellate court."  *South Atlantic Ltd. Partnership of Tennessee, LP v. Riese*, 356 F.3d 576, 583 n. 4 (4th Cir. 2004), *quoting United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (emphasis in original).  The mandate to remand this action and three of the others originally misjoined with it in this court—but not the one case where there was complete diversity—necessarily includes the finding that there was no complete diversity of

citizenship in this case.  In turn, that means at least some of the defendants are or could be Pennsylvania citizens.

The Fourth Circuit further cautioned that "[f]ew legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.' "  356 F.3d at 583, *quoting United States v. Bell,* 5 F.3d 64, 66 (4th Cir.1993), which in turn quoted *Sprague v. Ticonic National Bank*, 307 U.S. 161, 168 (1939).  If, then, defendants want to have this Court ignore the mandate given to it by the Fourth Circuit, they at least have the burden of establishing some changed circumstances which might have affected the diversity analysis.  They have made no attempt to do so.

There are a number of different defendants in this case, including many John Doe defendants who dealt directly with Pennsylvania residents.  Determining the citizenship of such corporate defendants is sometimes a complex matter, as the Court must look to not only their states of incorporation but where they have their principal places of business.  Still further, different corporations' business styles require the use of differing tests for determining their principal places of business. For instance, when a corporation engages primarily in the ownership and management of geographically diverse investment assets, the Fourth Circuit applies the "nerve center test," which establishes the corporation's principal place of business as that place where the corporation "makes the 'home office,' or place where the corporation's officers direct, control, and coordinate its activities." *Peterson v. Cooley,* 142 F.3d 181, 184 (4th Cir.1998).  But when the corporation has "multiple centers of manufacturing, purchasing, or sales," the courts are to apply the "place of operations test," focusing on "the place where the bulk of corporate activity takes place." *Id.*  Moreover, neither of these tests is mechanical.  Rather,

"determinations of a corporation's principal place of business must be made on a case by case basis. And a court must analyze the facts of each case to determine as of the date the action was commenced whether a corporation's business activity was sufficient to make it a citizen of the state of such activity." *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 291 (4th Cir. 1999).

Although defendants bear the burden of establishing a right to removal, which includes the burden of showing that citizenship is diverse, and although defendants are asking this Court to ignore the Fourth Circuit's mandate and its necessary finding that at least some of the defendants in this case are Pennsylvania residents, defendants have made no effort to establish that none of the defendants named in the *Farina* Complaint have their principal places of business in Pennsylvania. Therefore, this Court remains bound by the prior rulings in this very case by a higher court—there is no complete diversity; at least one defendant has Pennsylvania citizenship, and the test of 28 U.S.C. § 1332(d)(4)(i)(II) is met.

**D. The Injuries Principally Were Suffered in Pennsylvania**

As a matter of common sense, given that the members of the class are all citizens of Pennsylvania who purchased and used their cell phones primarily in Pennsylvania and who are pursuing claims under Pennsylvania law, their injuries must have occurred here. Therefore, the *Farina* Complaint meets the criteria stated in 28 U.S.C. § 1332(d)(4)(A)(i)(III). This is not a situation where large numbers of class members happen to be in one state but the injuries are widespread, since the injuries by definition in this case are acts that violate *Pennsylvania* law that protects *Pennsylvania* citizens.

To support their attempt to have this Court read the "local controversy" test out of existence, defendants cite to the Senate Report reprinted at 2005 U.S.C.C.A.N. 3 (February 28, 2005).  *See* Defendants' Memorandum at 17, 19.  The citation to a committee report is never a very good idea, for as the Supreme Court cautioned,

> "judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members--or, worse yet, unelected staffers and lobbyists--both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text."

*Allapattah Services,* 125 S.Ct. at 2626.   In this case, however, this Senate Report is not just something to be careful in using—it is in fact useless.  What defendants fail to point out is that, apart from the universal problems with cherry-picking legislative history from committee reports, is that this Senate Report is *not legislative history* at all!

This Senate Report was issued on February 28, 2005.  CAFA, however, was enacted ten days earlier, on February 18, 2005—when the House of Representatives finally passed a bill that had already been passed in the Senate.   This Report is what the Supreme Court has called a "contradiction in terms."  As Justice Scalia explained:

> "The legislative history of a statute is the history of its consideration and enactment. 'Subsequent legislative history'--which presumably means the post-enactment history of a statute's consideration and enactment--is a contradiction in terms. The phrase is used to smuggle into judicial consideration legislators' expressions not of what a bill currently under consideration means (which, the theory goes, reflects what their colleagues understood they were voting for), but of what a law previously enacted means.  Arguments based on subsequent legislative history, like arguments based on antecedent futurity, should not be taken seriously, not even in a footnote."

*Sullivan v. Finkelstein,* 496 U.S. 617, 631-32 (1990) (Scalia, J., concurring).  *See also Public Employees Retirement Sys. of Ohio v. Betts,* 492 U.S. 158, 168 (1989)("the

interpretation given by one Congress (or a committee or Member thereof) to an earlier

statute is of little assistance in discerning the meaning of that statute").

        As a court interpreting CAFA said a little over two months ago, the post-

enactment Senate Report on CAFA cannot be relied upon as it "runs afoul of the canon

that legislative history unconnected to the enactment of a specific statute is given little

interpretive weight." *Lao v. Wickes Furniture Co.*, 455 F. Supp.2d 1045, 1051 (C.D. Cal.

2006).  Further:

> "The fact that the committee report was issued *after* CAFA had already been
> enacted into law should give pause as to whether the legislative history truly
> reflects the views of the enacting Congress, or whether the issuance of the
> report was meant to declare the intent of particular members, their staff, or
> lobbyists seeking to achieve what they could not through passage of the
> statutory text itself."

*Id.*

Defendants' reliance on this dubious authority shows the strained nature of their

interpretation of the requirement that injuries be local.

        The more common-sense meaning of that requirement is the one adopted by the

court a few weeks ago in *Kitson v. Bank of Edwardsville*, 2006 WL 3392752 (S.D. Ill.,

Nov. 22, 2006).  The *Kitson* court observed that "courts 'frequently look to dictionaries to

determine the plain meaning of words.'" *Id.*, *quoting Sanders v. Jackson*, 209 F.3d 998,

1000 (7th Cir. 2000).  Thus, it looked to Black's Law Dictionary to define "principal" as

"chief, primary, most important," while an "injury" is "[t]he violation of another's legal

right, for which the law provides a remedy; a wrong or injustice." *Id.*  In other words,

injury at law is not any grievance a person may have; injury only exists where the law

specifies a right and a remedy.  The existence of any injury depends on the remedy

provided for it.  Here, the remedy, and the source of the right protected, arise exclusively from Pennsylvania statutory and common law.

In this Complaint, the legal rights are rights created by Pennsylvania law, protecting Pennsylvania citizens.  Defendants' attempt to slide past this fact by claiming the *Farina* seeks a remedy for personal injuries.  This case, however, does not allege personal injuries.  Rather, it seeks remedies for "unfair trade practices" as that term is defined in Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and related injuries arising under state law for conspiring to commit those unfair trade practices.  *Farina* is not only about a class restricted to Pennsylvania; it is focused on injuries that exist specifically under Pennsylvania law and only exist to the extent defined by Pennsylvania law.

The central claim of the *Farina* Complaint is that defendants' joint and individual actions in suppressing and manipulation of information about wireless telephone radio frequency emissions are unfair trade practices under the Pennsylvania UTPCPL.  Pennsylvania law defines unfair trade practices in a way that is specific to Pennsylvania and, indeed, differently than other states might do under their regulation of trade practices.  For example, while in Maryland only "merchants" can be charged with such unfair trade practices, *see Newman v. Motorola, Inc.,* 125 F. Supp.2d 717 (D. Md. 2000), the Pennsylvania statute allows consumers to obtain relief against "any person" who commits a deceptive trade practice:

> "(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment *by any person* of a method, act or practice declared unlawful by section 3 of this act, may bring a private action …."

73 Pa. Stat. § 201-9.2 (emphasis supplied). This is in stark contrast with other states, like Maryland, which only allows claims to be brought against "a person who directly or indirectly either offers or makes available to consumers any consumer goods, consumer services, consumer realty or consumer credit." Md. Code Ann. Com. Law § 13-101.

In other contexts, these same defendants have argued (incorrectly) that the "merchant" definition drawn from Maryland law applies to the Pennsylvania UTPCPL. (*See* Defendant's Memorandum in Support of their Motion to Dismiss the Third Amended Complaint, at 6, 24). The response to that attempt to conflate one state's law with another is, of course, that in *this* case, *Farina*, we are talking about a right that exists under Pennsylvania law; for practices that took place to mislead Pennsylvania residents. Perhaps some or even all of those practices would not violate Maryland law, or some other states' law; but that fact is entirely besides the point and is irrelevant to this *Pennsylvania* case.

And that is why this case belongs in Pennsylvania court. It is not just that only Pennsylvanians are in the class of plaintiffs. The more important reason is that the rights being protected, and therefore being interpreted, are a creation of Pennsylvania law. It is properly up to the Pennsylvania courts to interpret and apply those rights under their statutory and common law.

## II.  Removal Was Untimely

The Court may be excused, after reading Defendants' Memorandum opposing remand, if it has difficulty following the chronology relating to this remand motion and their removal petition, as defendants' have certainly confused

that question of timing a great deal.  The matter of timing is definitely simpler than it has been made to appear.

###### A.  The LG Defendants Were Parties to this Case for Months Before Untimely Removing It

On December 23, 2005, plaintiff filed a Second Amended Complaint which, among other things, named LG Electronics, Inc. and LG Electronics U.S.A., Inc. as defendants.  These entities were served, and their counsel requested that a different corporate entity, LG MobileComm, be substituted as defendant.  The same counsel represented all the LG defendants, and so had permission from LG MobileComm to accept service.  Certainly, LG MobileComm had notice of the Second Amended Complaint, and the fact that plaintiff had filed and served it.  (Thus, defendants' reference to *Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) is completely beside the point—that case noted the thirty day deadline for filing a removal petition began to run when formal service had been made, and that took place in December 2005 in this case).

Although the Second Amended Complaint was served on the LG defendants in December of 2005, none them chose to petition for removal.  Instead, they negotiated with plaintiff's counsel to correct their names.  Plaintiff's counsel proposed doing so by way of stipulation, and the LG defendants initially agreed with plaintiff's proposal. However, counsel for *other defendants* in the case for more than five years eventually asked plaintiffs to file another amended complaint—a request in which LG joined.  Whatever their motivation, the critical point is that this correction of names of the LG defendants could have been done by

way of simple stipulation.  It had been done that way already in this case—repeatedly—as evidenced by the exhibits making similar changes to parties' names and addresses in these cases.

Had the changes been made by stipulation, it would be quite clear that LG had been in the case since the service of the Second Amended Complaint.  The fact that instead a new amended complaint was filed need not obscure that fact—since the change could have been made by stipulation with LG's counsel, and since even before the filing of the Third Amended Complaint LG's counsel had agreed to waive service of any new pleading. It would be disingenuous at best to pretend that the LG defendants were not in this case sufficiently to require them to file a petition for removal within thirty days of the December 23, 2005 complaint.  After all, amendments that only correct the names of parties relate back to the prior filing, *Fredericks v. Sophocles*, 831 A.2d 147 (Pa. Super. 2003), and would be effective even after the end of the relevant statute of limitations. Instead, LG – whose counsel had been negotiating pleadings in this case with plaintiff's counsel for months--waited until February 17, 2006, well over thirty days later, to file LG's removal petition.

Given that it would have been possible for LG to agree through its counsel (already active in the case on its behalf) to correct its name in the pleadings, it is not surprising it has a hard time finding authority for the proposition that the service of the complaint in December was not effective to start the clock running. In fact, at page 8 of their Memorandum, they miscite *Cabelli v. Resorts International*, 26 Pa. D. & C.3d 64 (Pa. Common Pleas 1982) as supposedly holding that serving one corporation could not "invoke personal jurisdiction" over a

sister corporation.  In fact, that was not what the case concerned at all.  *Cabelli* held

that the Pennsylvania rules provide several alternatives under Pa. R. Civ. P. Rules

2079 and 2180 for serving nonresident foreign corporations, and service on a sister

corporation is not one of those alternatives.  The case concerned methods of

service, not jurisdiction.  Here, of course, LG's attorney, who negotiated the name

changes, also waived formal service of process; so even if it were necessary to

perfect service before the thirty day deadline began to run, LG waived that need.

**B.  Defendants Have Misrepresented When the Motion to Remand was Filed**

Those are the facts about when the petition for removal was filed--late.  To

blunt the effect of that untimely filing, defendants turn to one of their key

arguments—that supposedly plaintiff waived the right to object to LG's untimely

petition because plaintiff supposedly filed his motion to remand late. Defendants

simply misrepresent the chronology.

At page 5 of their Memorandum, defendants write: "Over eight months

after LG MobileComm filed its notice of removal, Plaintiff filed this motion

seeking a remand to state court."  Two pages later, they repeat this same

misstatement by claiming the motion to remand was filed on November 6, 2006.

Yet they know differently—the docket in this case shows differently.

Plaintiff did indeed file his *Amended* Motion for Remand on November 6, 200, in

this Court.  That filing was called "amended" because it was NOT the original

motion, nor was this the original court in which that motion was filed.

When defendant LG filed its petition for removal on February 17, 2006 in

the Eastern District of Pennsylvania, at the same time it filed a notice of a "tag-

along" action with the Judicial Panel for Multidistrict Litigation. That Notice, of course, put the case in a sort of limbo, until the Panel entered a Conditional Transfer Order on March 13, 2006. Before that date it was unclear what court would even be willing to hear plaintiff's remand motion.

When the Panel entered its Conditional Transfer Order on March 13, 2006, plaintiff promptly filed a timely motion on April 7, 2006 to vacate the Conditional Transfer Order and, most relevant to this case, a motion to remand this case to Pennsylvania state court because there still was no federal jurisdiction over this matter. Plaintiff, therefore, met his obligation under 28 U.S.C. § 1447 to move to remand in a timely fashion.

On June 15, 2006, the Panel issued an Order denying plaintiff's motion to vacate the Conditional Transfer Order. But significantly for purposes of this motion, the Panel expressly stated in its Order: "The pending motion to remand to state court can be presented to and decided by the transferee judge."

As this Court is fully aware, after transfer of this case, and following a teleconference with this Court, the parties negotiated a Stipulated Scheduling Order (amended at defendants' request to give them more time), setting by consent a schedule for various motions to be filed by the parties as discussed with the Court during the teleconference (*e.g.*, motions to dismiss, motion for remand, motion for suggestion of remand, etc.). Pursuant to that Stipulated Scheduling Order, agreed to by defendants and approved by the Court, plaintiff filed an *amended* motion for remand as a "stand alone" document to spare this Court from having to wade

through and locate plaintiff's April 7, 2006 motion for remand among the voluminous MDL filings.

In short, plaintiff was not late in moving for remand; but LG was late in removing this case from Pennsylvania state court.  And even if LG's removal petition was timely, removal was improper because the federal courts have no jurisdiction over this dispute under CAFA.

Enough is enough.  This case has been through years of delays.  It is time for the case to return to Pennsylvania so that the citizens of Pennsylvania may pursue their rights under Pennsylvania law for the unfair trade practices in which defendants have engaged there.

## CONCLUSION

This case, which arises and is brought under Pennsylvania law to protect Pennsylvania citizens, should be remanded to the court from which it was improperly removed and transferred a second time.

Dated: January 16, 2007                    Respectfully submitted,

H. Russell Smouse
Glenn E. Mintzer                           **JACOBSEN LAW OFFICES LLC**
**LAW OFFICES OF**
**PETER G. ANGELOS, P.C.**                 By: /s/ Kenneth A. Jacobsen
 Charles Center                            Kenneth A. Jacobsen
100 North Charles Street                   12 Orchard Lane
Baltimore, Maryland  21201                 Wallingford, Pennsylvania  19086
(410) 649-2000                              (610) 566-7930

Michael R. Allweis
**LOWE, STEIN, HOFFMAN,**
**ALLWEIS & HAUVER, L.L.P.**
701 Poydas Street
One Shell Square
Suite 3600
New Orleans, Louisiana 70139
(504) 581-2450

Joseph A. O'Keefe
**O'KEEFE & SHER, P.C.**
15019 Kutztown Road
Kutztown, Pennsylvania 19530
(610) 683-0771

Michael D. Donovan
**DONOVAN SEARLES, LLC**
1845 Walnut Street
Suite 1100
Philadelphia, Pennsylvania 19103
(215) 732-6067

Attorneys for Plaintiff and the Pennsylvania Class

## CERTIFICATE OF SERVICE

I, Kenneth A. Jacobsen, hereby certify that on January 16, 2007, I caused a true and correct copy of the foregoing Plaintiff's Reply Brief in Support of Plaintiff's Motion for Remand to be served on designated liaison counsel for defendants by depositing same in the Unites States Mail, postage prepaid, addressed as follows:

Paul F. Strain, Esquire
**VENABLE LLP**
Two Hopkins Plaza
Suite 1800
Baltimore, MD 21201

Michael E. Yaggy, Esquire
**DLA PIPER RUDNICK GRAY CARY US LLP**
6225 Smith Avenue
Baltimore, MD 21209

I further certify that the foregoing Reply Brief was sent via e-mail on this same date to Terry Dee, Esquire, of Kirkland & Ellis for forwarding to all other defense counsel of record.

Dated: January 16, 2007                    /s/ Kenneth A. Jacobsen
                                           Kenneth A. Jacobsen