IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE WIRELESS TELEPHONE RADIO | : | |
| FREQUENCY EMISSIONS PRODUCTS | : | **MDL NO. 1421** |
| LIABILITY LITIGATION | : | |
| | : | |
| This Memorandum Relates To: | : | **Civil No. 01-MD-1421** |
| *Farina v. Nokia, Inc., et al.* (E.D. Pa.) | : | |
| *Louther v. ATT Corp.* (M.D. Fla.) | : | |
| | : | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO REFER QUESTIONS
REGARDING STATUTORY AND AGENCY PREEMPTION TO THE FCC
UNDER THE DOCTRINE OF PRIMARY JURISDICTION**

As Defendants explained in their opening brief, two post-*Pinney* developments warrant

this Court's referral to the FCC of seven specific technical and regulatory policy questions

relating to a critical component of the preemption inquiry presented in this case. (Defs.' Mem.

of Law in Supp. ("Defs.' Br.") 1). First, the FCC filed an *amicus curiae* brief in a similar case in

which the agency demonstrates that the Court of Appeals based its defensive preemption holding

in the *Naquin* case on incorrect assumptions regarding technical aspects of wireless phone

service, FCC regulations, and federal regulatory policy. Thereafter, the Supreme Court issued a

decision in *National Cable & Telecommunications Association v. Brand X Internet Services*, 125

S. Ct. 2688 (2005), which highlights the significance of the FCC's views on the technical and

regulatory issues underlying the preemption inquiry. Given these developments, a primary

jurisdiction referral in this case would allow this Court (and any reviewing court) to take

advantage of the FCC's specialized knowledge, expertise, and central position within the federal

telecommunications regulatory regime, to clarify the conflict between the views of the FCC and those of the *Pinney* panel and thus promote uniformity and consistency in the regulation of wireless telecommunications and RF emissions. (Defs.' Br. 7-16.)

In his response, Farina mischaracterizes Defendants' motion as asking this Court "to refuse to follow the directives given to it by the Fourth Circuit, ignore the law of the case, and 'reverse' the Court of Appeals." (Pl.'s Mem. in Opp'n ("Opp.") 1.)    Specifically, Plaintiff asserts four grounds for opposing Defendants' motion: (1) he denies the significance of the FCC's *amicus curiae* brief; (2) he asserts that the law of the case doctrine both "forbids Defendants' motion" (Opp. at 4) and would preclude this Court from deciding the defensive preemption issue; (3) he claims that *Brand X* is not a change in the law and, challenging an argument that Defendants have *not* made, argues that that decision does not permit the Court to defer to the views expressed in the FCC brief; and (4) he asserts that because the question of preemption is rooted in the Supremacy Clause, the FCC is incompetent to decide preemption-related issues. Each of these arguments lacks merit.

***First,*** the conflict between the FCC and the *Pinney* panel is manifest.    In the Commission's words: "[T]he FCC respectfully disagrees with . . . the Fourth Circuit's conclusion that the RF emissions from wireless phones that are sold in compliance with current FCC rules nevertheless may be deemed 'unreasonably dangerous' under state law . . . ." (Brief of the FCC as *Amicus Curiae* at 3, *Murray v. Motorola, Inc.*, Nos. 01-8479, 02-1368-72 (D.C. Super. Ct. Nov. 21, 2005) (Defs.' Br. Att. A) ("FCC Br.")). The agency's brief goes on to explain at length the source of its concerns with the assumptions in the *Pinney* decision. The Supreme Court has made clear that courts cannot simply disregard the agency views on preemption, *see, e.g.,*

-2-

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 496 (1996); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 883 (2000), when deciding the proper course of dealing with the kind of ambiguity that now exists in the state of RF regulation. The FCC is uniquely positioned to resolve this conflict by confirming the expert views expressed in its *amicus* brief in the form of a declaratory ruling.

**Second**, the "law of the case" doctrine has no application here. The "case" in which the Fourth Circuit established the "law" on which Plaintiff relies is *Naquin*, which has been voluntarily dismissed. With respect to *Farina*, the Court of Appeals held that removal of the complaint on federal question grounds was improper and ordered the action to be remanded. It did not decide—indeed, it lacked jurisdiction to decide—the merits of Defendants' preemption defense. And it made no determination at all with respect to *Louther*. Furthermore, even if *Naquin* were the law of the *Farina* and *Louther* cases, which it is not, this Court could still reconsider the defensive preemption issue with the benefit of the intervening FCC *amicus* brief in *Murray* and the Supreme Court's decision in *Brand X*.

**Third**, Plaintiff mischaracterizes *Brand X* and its relevance to Defendants' motion. *Brand X* represents an important post-*Pinney* change in the law of the Fourth Circuit. Circuit precedent interpreting a statute administered by a federal agency now no longer trumps a subsequent interpretation by the agency. Should the FCC issue a declaratory ruling that conflicts with the *Pinney* court's holding, *Brand X* teaches that the FCC's formal ruling would be entitled to deference notwithstanding *Pinney*. Contrary to Plaintiff's characterization, Defendants have not argued, and the Court need not decide, that *Brand X, Chevron* or other Supreme Court precedent requires deference to the FCC's *amicus* brief.

*Fourth*, the constitutional roots of preemption in no way disqualify the FCC from addressing the issue. To the contrary, as the Supreme Court has repeatedly observed, administrative agencies are often "uniquely qualified" to evaluate the impact of state requirements on federal regulatory schemes, and their views "should make a difference." *Geier*, 529 U.S. at 883; *see also Medtronic*, 518 U.S. at 496.

Accordingly, for the reasons set forth herein, as well as in Defendants' opening memorandum, this Court should stay all further proceedings in the *Farina* and *Louther* matters, and refer a set of specific questions, (*see* Defs.' Br. 19-23), under the doctrine of primary jurisdiction to the FCC for formal agency action.

## I.    PLAINTIFF HAS MISCHARACTERIZED THE SIGNIFICANCE OF THE FCC'S *AMICUS* BRIEF.

Given the FCC's clear pronouncement that "claims that handheld wireless telephones are 'unreasonably dangerous' conflict with [federal RF regulations] . . . [and] are therefore preempted," FCC Br. 16-17, it is not surprising that Plaintiff attempts to minimize the significance of the FCC's *amicus* brief. Dismissing the brief as one filed "in some other case somewhere" (Opp. 3), plaintiff contends that the brief "does not discuss the same sort of claims as alleged in the Complaint here." (*Id.*) Plaintiff also suggests that the brief does not create a conflict with the Fourth Circuit's ruling and that even if those views were expressed formally in a declaratory ruling issued after a primary jurisdiction referral, the Court could not act upon them. These claims are demonstrably incorrect.

Plaintiff points out that the FCC filed its *amicus* brief in the *Murray* cases, which involve personal injury claims, and that Farina does not seek personal injury damages. (Opp. 4.) But he ignores that the personal injury claims in *Murray* are identical to those in *Louther*. Plaintiff also

ignores that in its *amicus* brief the FCC directly addressed the Fourth Circuit's merits determination in *Pinney* regarding the *Naquin* case (which contained claims identical in all material respects to those in *Farina*) and identified several points upon which it disagreed with the Fourth Circuit.[1] The brief clearly reflects a conflict with *Pinney* and is instructive on how the FCC is likely to decide the questions set forth in Defendants' primary jurisdiction motion.

Plaintiff claims that the FCC's *amicus* brief cannot create a conflict with the Fourth Circuit's decision in *Pinney* because the brief is not the product of a formal rulemaking and therefore is not entitled to *Chevron* deference. This argument is both wrong and beside the point. It is wrong because deference to agency expertise is not limited to determinations made in rulemakings. To the contrary, the Supreme Court and the Courts of Appeals routinely defer to agency positions set forth in briefs. *See Geier*, 529 U.S. at 883; *Auer v. Robbins*, 519 U.S. 452 (1997). Indeed, Plaintiff's own citations confirm this. *See Belt v. EmCare, Inc.*, 444 F.3d 403, 415 (5th Cir. 2006) (recognizing that the Supreme Court gave "controlling weight" to an agency *amicus* brief in *Auer*). Plaintiff's argument is beside the point because Defendants have ***not*** argued, as Plaintiff incorrectly contends, that the FCC's brief warrants *Chevron* deference such

---

1    *First*, the FCC disagreed with the *Pinney* court's application of principles of agency preemption. FCC Br. 13. *Second*, the FCC disapproved of the *Pinney* court's condoning of a "back door challenge" to the FCC's regulations by allowing Plaintiff to claim, contrary to the FCC's specific holding, that phones that meet FCC requirements are unreasonably dangerous. FCC Br. 16. *Third*, the FCC stated that the *Pinney* court failed to recognize that in promulgating rules that require federal approval for sale of wireless handsets, the FCC had struck a risk/utility balance. FCC Br. 17. *Fourth*, the FCC concluded that the *Pinney* court erred in applying a "presumption against preemption," because regulation of radio service is an area where federal presence "is not just significant, it is exclusive." FCC Br. 20. *Last*, while the Commission reserved judgment on the specific issue of whether Section 332(c)(7)(B)(iv) itself has preemptive effect, the Commission concluded that even if the *Pinney* court's reading of that statute is correct, the *Pinney* court erred because it neglected to take into account the preemptive force of other portions of Title III and agency regulations. FCC Br. 14 n.6.

that this Court should "'reverse' the Court of Appeals." (Opp. 1.)  To the contrary, as

Defendants explained in their opening memorandum, the *amicus* brief identifies a clear conflict

between the FCC and the Fourth Circuit on the assumptions underlying the preemption question,

which "has created an ambiguity in the federal law that threatens to disrupt the parties'

reasonable expectations regarding the FCC's RF emissions standards." (Defs.' Br. 8).

Defendants have demonstrated that this is precisely the type of problem that a primary

jurisdiction referral is meant to address (*id.* at 9).

The FCC has made clear that it disagrees with the Fourth Circuit. Allowing that agency

to express its views on questions that bear on issues addressed by the Fourth Circuit is not only

good common sense but also procedurally and substantively warranted.

**II.   THE LAW OF THE CASE DOCTRINE DOES NOT PREVENT THIS COURT FROM GRANTING THE PENDING MOTION OR ACTING UPON THE FCC'S RESPONSE TO A PRIMARY JURISDICTION REFERRAL.**

The law of the case doctrine does not bar a primary jurisdiction referral here.  The

doctrine is simply inapplicable because the *Pinney* decision did not reach the merits of any case

pending before this Court.  Moreover, even if the *Pinney* decision had reached the merits of the

present cases, this prudential doctrine would not require blind adherence to that decision here.

*Arizona v. California*, 460 U.S. 605, 618 (1983) ("Law of the case directs a court's discretion, it

does not limit the tribunal's power."). Courts have the discretion to look past what might

otherwise be the law of the case where, as here, there has been an intervening change in the law.

**A.   The Fourth Circuit's Decision in *Pinney* Did Not and Could Not Establish the Law of the Case in *Farina or Louther*.**

The law of the case doctrine does not apply here because the *Pinney* court addressed the

substantive issue of federal preemption only in the *Naquin* case. *See Harbor Ins. Co. v. Essman*,

918 F.2d 734, 738 (8th Cir. 1990) ("Because the instant case is not the same case as the [related] 'Harbor Insurance action,' the law of the case doctrine does not apply."); *see also Arizona*, 460 U.S. at 618 ("[T]he doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *in the same case*." (emphasis added)). *Naquin* has been voluntarily dismissed and is not the subject of this motion. Plaintiff's claim that law of the case precludes this Court from considering a primary jurisdiction referral cannot apply to Defendants' motion in *Louther* as that case has never been before the Fourth Circuit. Notably, Plaintiff Louther has failed to provide any substantive opposition to Defendants' motion for referral.

As to *Farina*, which was before the Fourth Circuit, the only holding of the *Pinney* court was a lack of subject matter jurisdiction. It is black letter law that once a federal court finds a lack of subject matter jurisdiction it is without authority to address any aspect of the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle,* 74 U.S. 506, 514 (1868))). It is also clear that a remand based upon a determination that "complete preemption" is lacking has no legal effect on the question of defensive preemption. Thus, Plaintiff's improper attempts to draw substantive conclusions from the purely jurisdictional mandate issued by the Fourth Circuit in *Farina* must be rejected. The Fourth Circuit's ruling as to the *Naquin* case is "law of the case" only as to that case, and does not determine the distinct set of issues raised by Defendant's primary jurisdiction motion in these cases.

**B.     In Any Event, Law Of The Case Does Not Preclude Referral In These Cases.**

Plaintiff reluctantly acknowledges that the Fourth Circuit did not address the merits of defensive preemption in *Farina* but argues that the merits decision in *Naquin* applies to *Farina* nonetheless.  Plaintiff attempts to support that argument by citing cases that purportedly require this court to apply "the spirit of the mandate" in the Fourth Circuit decision.  (Opp. 7.)  However, Plaintiff's citations provide no such support and stand merely for the unremarkable proposition that a district court is generally bound by the law of the case doctrine and any mandate in the same case.

Despite his references to the "spirit of the mandate" (Opp. 8), Plaintiff cites no case applying the law of the case doctrine to bind parties in one case to a merits holding in another.  Plaintiff offers no support for the idea that the "spirit" of the Fourth Circuit's mandate could reach across jurisdictional lines and apply to cases that the Fourth Circuit previously decided were not properly before it.  The *Scott* case, upon which Plaintiff relies, is inapposite.  In that case, the Fourth Circuit overturned an ALJ's decision where the ALJ had dismissed as not well-reasoned an opinion of a doctor *that the Fourth Circuit had previously directed the ALJ to consider* as a "reasoned medical opinion."  *Scott v. Mason Coal Co.*, 289 F.3d 263, 264 (4th Cir. 2002).

Moreover, Plaintiff's citations show that the law of the case doctrine is not an inexorable command.  Rather, the doctrine is a prudential one that permits a district court not to follow the circuit court decision where there has been a change in the controlling law.  *See S. Atl. Ltd. P'ship of Tenn. v. Riese*, 356 F.3d 576 (4th Cir. 2004); *United States v. Bell*, 5 F.3d 64 (4th Cir. 1993); *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988) (the law of the case

doctrine is not binding where, as here, "controlling authority has since made a contrary decision of law applicable to the issue."). As indicated below, *see infra* Part III, *Brand X* marked a change in Fourth Circuit law,[2] and the FCC's brief in the *Murray* cases further changed the legal landscape. As this Court has observed, "It is unfortunate that the Fourth Circuit did not have an opportunity to consider the FCC's [expert] position" on these issues. *In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation,* No. 01-MD-1421 (D. Md. Feb. 15, 2006) (memorandum opinion regarding remand). Thus, this Court would have the discretion not to follow this prudential doctrine even if it were applicable.

And, perhaps most importantly, the Fourth Circuit has made clear that "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). Reaching the correct judgment here requires referral of the questions posed by Defendants to the FCC for confirmation of the views expressed in its *amicus* brief, and then application of the FCC's teachings to the claims asserted in *Farina* and *Louther*.

## III. PLAINTIFF MISCONSTRUES *BRAND X.*

*Brand X* is an intervening and significant change in Fourth Circuit law that prohibits blind adherence to circuit precedent in the face of a contrary agency interpretation of law. The Supreme Court's opinion illuminates the way in which courts must strike the balance between two fundamental principles—*stare decisis* and deference to agency determinations in matters

---

[2]     Indeed, *Brand X* itself illustrates that the law of the case doctrine must yield here. *Brand X* requires courts to apply *Chevron* deference to agency determinations even when the agency views are precisely the opposite as binding circuit-court authority. There is absolutely no reason why, given the Supreme Court's view that *Chevron* governs over *stare decisis*, the same would not be true of the law of the case doctrine.

conferred to their jurisdiction—and demonstrates the need for and propriety of a referral to the FCC in this case.

*Brand X* did not, as Plaintiff contends, merely "reiterate" the *Chevron* doctrine. *See* Opp. 2, 11. Rather, *Brand X* announced an independent principle of administrative law that found its source in *Chevron*. The Supreme Court was called upon to resolve a circuit split over whether a federal court should apply circuit precedent under normal rules of *stare decisis* in the face of an intervening and contrary agency pronouncement of law. Extending the logic underlying *Chevron*, *Brand X* held that the federal courts must heed agency interpretations of statutes even where those interpretations are directly contrary to otherwise binding circuit precedent. *Chevron* established "a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." 125 S. Ct. at 2700 (quoting *Smiley v. Citibank*, 517 U.S. 735, 740-741 (1996)) (internal quotation marks omitted).

Contrary to Plaintiff's assertions, *Brand X* constitutes a post-*Pinney* change in Fourth Circuit precedent. The Fourth Circuit's pre-*Brand X* position was that *stare decisis* demanded the application of circuit precedent in the face of an intervening and contrary agency pronouncement. *See Indus. TurnAround Corp. v. NLRB*, 115 F.3d 248, 254 (4th Cir. 1997) ("We are precluded from adopting [the NLRB's recent decision in] *Deklewa* as the law of the Circuit because it stands in conflict with *Clark v. Ryan*, 818 F.2d 1102 (4th Cir. 1987), a prior panel opinion of this court."). *See also* Petition for Writ of Certiorari, *FCC v. Brand X Internet Servs.*, 04-281, 2004 WL 1943678, at *20 n.5 (Aug. 27, 2004) (Att. A) (highlighting the Fourth

Circuit's position in the circuit split). *Brand X* rejected the Fourth Circuit's reasoning and held that courts must heed agency interpretations of statutes even when directly contrary to circuit precedent.

*Brand X* has two practical implications for this case. *First*, as a general matter, *Brand X* teaches, contrary to the prior rule in the Fourth Circuit, that circuit precedent does not trump an agency's interpretive authority under *Chevron*. Whether Congress has endowed the agency with interpretative authority is determined based on the presence or absence of ambiguity in the agency's governing statute, not by the presence or absence of previous judicial interpretation of that statute. *Brand X* thus stands for the proposition that courts may not simply ignore the views of the expert agency simply because the Circuit has already spoken on a subject.

*Second*, despite Plaintiff's argument to the contrary (*see* Opp. 13), the method by which the FCC might choose to formally express its views in response to a referral in this case is irrelevant. It is well-settled that the FCC may define the preemptive effect of its regulations via declaratory ruling; the FCC has broad discretion to choose rulemaking or adjudication.[3] *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947); *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974); *Columbia Broad. Sys. v. United States*, 316 U.S. 407 (1942). This remains so even where the "decision may affect agency policy and have general prospective application." *Chisholm v. FCC*, 538 F.2d 349, 365 (D.C. Cir. 1976). "Preemption decisions by the FCC are no exception." *State Corp. Comm'n of Kansas v. FCC*, 787 F.2d 1421, 1428 (10th Cir. 1986)

---

[3]    Adjudication is the "agency process for the formulation of an order." 5 U.S.C. § 551(7). "[O]rder" is defined to include declaratory rulings. *See id.* § 551(6) ("'order' means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or *declaratory* in form, of an agency in a matter other than rule making.") (emphasis added).

(affirming FCC declaratory order preempting state utility commissions from altering FCC's method of allocating revenues between interstate and intrastate services). Thus, Plaintiff's argument that *Chevron* deference would not apply if the FCC proceeded via adjudication rather than notice-and-comment rulemaking is simply incorrect. Indeed, in *Brand X* itself, where the Court applied *Chevron* deference, the FCC interpretation at issue was expressed in a declaratory ruling rather than through notice-and-comment rulemaking. *See Brand X*, 125 S. Ct. at 2695. The Supreme Court's pronouncement that an agency retains final authority to interpret its governing statute—irrespective of whether a court has already interpreted that statute—strongly militates for referral to the FCC of the specific technical and policy issues set out at the conclusion of Defendants' opening memorandum.

## IV.    PLAINTIFF'S "CONSTITUTIONAL" OBJECTIONS ARE MERITLESS.

Plaintiff asserts that a referral would be meaningless because the Court "has unique competence to resolve questions of constitutional law," and therefore, the preemption question is unfit for agency review. (Opp. 16.) This argument is without merit for several reasons.

*First*, the questions Defendants propose for referral to the FCC are all technical and regulatory questions within the FCC's expertise that are critical to the conflict preemption inquiry. Where, as here, "Congress has delegated to [the agency] authority to implement the statute; the subject matter is technical; and the relevant history and background are complex and extensive," *Geier*, 529 U.S. at 883, "[t]he agency is likely to have a thorough understanding of its own regulation and its objectives and is 'uniquely qualified' to comprehend the likely impact

of state requirements." *Id*; *see also* FCC Br. 2.[4]  Tapping that agency's expert views is a compelling rationale for a primary jurisdiction referral given that, as this Court has recognized, "agencies are often better equipped than courts to resolve certain issues because of specialization and insight gained through experience." *Mulberry Hills Dev. Corp. v. United States*, 772 F. Supp. 1553, 1561 (D. Md. 1991) (emphasis added); *see also Transrisk Corp. v. Goodyear Tire & Rubber*, 839 F. Supp. 1162, 1168 (D. Md. 1992).

The technical and regulatory questions proposed for primary jurisdiction referral need consistent, uniform answers, and they are "within the special competence" of the FCC. *Reiter v. Cooper*, 507 U.S. 258, 268 (1993); *see also Mulberry Hills*, 772 F. Supp. at 1561.  Plaintiff does not, and cannot, dispute that such questions not only are within the competence of the FCC, but also are routinely the subject of federal agency determination.  As Defendants explained at length in their opening memorandum, each of those questions is critical to the ultimate preemption question under either implied or express preemption. (Defs.' Br. 19-23.)  Only a referral to the FCC can provide this Court with the tools it needs to properly render a decision on preemption that takes into account both the views of the FCC and the *Pinney* decision.

---

[4]    This includes the ultimate question of whether express or conflict preemption exists.  As to express preemption, *Brand X* teaches that the agency's interpretation of a statute it is charged with administering is entitled to greater weight than judicial precedent.  Here, the agency could disagree with the *Pinney* court's narrow interpretation of the two statutory provisions it examined or identify other statutory provisions that are preemptive in this case.  With regard to conflict preemption, as the Supreme Court has noted, who better to decide whether state action frustrates the goals of a regulatory scheme than the expert agency that authored the regulations? *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000).  Thus, referral to the FCC would show respect for Supreme Court precedent, *see Medtronic, Inc. v. Lohr*, 518 U.S. 470, 496 (1996); *Geier*, 529 U.S. at 883, and respect for the FCC's primary jurisdiction, *Mulberry Hills Dev. Corp. v. United States*, 772 F. Supp. 1553, 1561 (D. Md. 1991).

*Second*, Defendants are merely asking the Court to allow the FCC to interpret its governing statute, as well as the rules that the FCC has promulgated thereunder—a task in which the agency has been engaged for 70-plus years—and to use that experience to determine whether this particular application of state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"—a determination which the agency is "uniquely qualified" to make. *Geier*, 529 U.S. at 883. Should the FCC's determinations, as set forth in a declaratory ruling, differ from those of the Fourth Circuit in *Pinney*, *Brand X* makes it clear that the contrary circuit precedent will not trump the agency's ruling before this Court. As discussed above, *Brand X* makes it clear that the agency has the final say on construing statutes unless Congress expressly proscribes the agency interpretation.

*Third*, although federal preemption is grounded in the Supremacy Clause, U.S. Const. art VI, cl. 2, the basic question involved in any form of preemption is whether federal and state law conflict, *see Swift & Co. v. Wickham,* 382 U.S. 111, 120 (1965), and thus the preemption inquiry focuses on the construction of state and federal law, *not* the meaning of the Constitution. This is precisely why preemption questions do not trigger the doctrine of constitutional avoidance. *See Douglas v. Seacoast Products, Inc.,* 431 U.S. 265, 272 (1977). Indeed, in *Geier*, the Supreme Court not only considered the agency's views on the preemption question then at issue, it noted that the agency's views "should make a difference." 529 U.S. at 883. *See also Medtronic*, 518 U.S. at 496 (recognizing that "the agency is uniquely qualified to determine whether a particular form of state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress and, therefore, whether it should be pre-empted.") (internal citations and quotation marks omitted).

-14-

## CONCLUSION

For the reasons set forth above and in Defendants' Memorandum in Support of Defendants' Motion to Refer Questions Regarding Statutory and Agency Preemption to the FCC Under the Doctrine of Primary Jurisdiction, the Court should grant Defendants' motion.

Dated:        January 17, 2007

Respectfully submitted,

_____/s/_____

Paul F. Strain, Esquire
VENABLE LLP
Two Hopkins Plaza
Suite 1800
Baltimore, MD 21201
(410) 244-7400

_____/s/_____

Michael E. Yaggy, Esquire
DLA PIPER RUDNICK GRAY CARY US LLP
6225 Smith Avenue
Baltimore, MD 21209

*On Behalf of All Properly-Served Defendants*

-15-

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January 2007, a copy of the foregoing was served on Plaintiffs' counsel via first-class mail, postage prepaid, and electronic mail as follows:

Kenneth A. Jacobsen
Jacobsen Law Offices LLC
12 Orchard Lane
Wallingford, PA 19086

Michael R. Allweiss
Lowe, Stein, Hoffman, Allweiss & Hauver, LLP
701 Poydas Street
One Shell Square
Suite 3600
New Orleans, LA 70139

William P. Lightfoot
Koonz, McKenney, Johnson, DePaolis & Lightfoot
James Monroe Building
2001 Pennsylvania Avenue, N.W.
Suite 450
Washington, DC 20006

on Plaintiffs' counsel via first-class mail, postage prepaid, as follows

H. Russell Smouse
Glenn E. Mintzer
Law Offices of Peter G. Angelos, P.C.
One Charles Center
100 North Charles Street
Baltimore, MD 21201

Joseph A. O'Keefe
O'Keefe & Sher, P.C.
15019 Kutztown Road
Kutztown, PA 19530

Michael D. Donovan
Donovan Searles, LLC
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103

and on all Defense counsel of record via electronic mail.


        /s/

Paul F. Strain, Esquire
VENABLE LLP
Two Hopkins Plaza
Suite 1800
Baltimore, MD 21201
(410) 244-7400

        /s/

Michael E. Yaggy, Esquire
DLA PIPER RUDNICK GRAY CARY US LLP
6225 Smith Avenue
Baltimore, MD 21209

*On Behalf of All Properly-Served
Defendants*