IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

---

**IN RE WIRELESS TELEPHONE RADIO
FREQUENCY EMISSIONS PRODUCTS
LIABILITY LITIGATION**

This Memorandum Relates To:
*Farina v. Nokia, Inc., et al.* (E.D. Pa.)
*Louther v. AT&T* (M.D.Fla.)

**MDL NO. 1421**

**Civil No. 01-MD-1421**

---

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' JOINT MOTION FOR
SUGGESTION OF REMAND**

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Doe v. Ortho-Clinical Diagnostics, Inc.,*
 440 F. Supp. 2d. 465 (M.D. N.C. 2006) ......................................................8, 10

*In re Air Crash Disaster,*
 461 F. Supp. 671 (J.P.M.L. 1978) ...........................................................................4

*In re Bridgestone/Firestone, Inc.,*
 128 F. Supp. 2d 1196 (S.D. Ind. 2001)..................................................................4

*In re CBS Color Tube Patent Litig.,*
 342 F. Supp. 1403 (J.P.M.L. 1972) .................................................................5, 12

*In re Ecuadorian Oil Concession Litig.,*
 487 F. Supp. 1364 (J.P.M.L. 1980) .....................................................................15

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.,*
 446 F. Supp. 242 (J.P.M.L. 1978) .......................................................................14

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.,*
 No. 991, 1998 WL 308013 (E.D. La. June 8, 1998).............................................15

*In re H & R Block Mortgage Corp. Prescreening Litig.,*
 435 F. Supp. 2d 1347 (J.P.M.L. 2006) ..................................................................4

*In re Heritage Bonds Litig.,*
 217 F. Supp. 2d 1369 (J.P. M.L. 2002) ...........................................................8, 13

*In re Highway Accident in Buffalo County, Nebraska,*
 305 F. Supp. 2d 1359 (J.P.M.L. 2004) ...........................................................14, 15

*In re Holiday Magic Secs. & Antitrust Litig.,*
 433 F. Supp. 1125 (J.P. M.L. 1977) .................................................................3, 12

*In re Integrated Res., Inc. Real Estate Ltd. P'ships. Secs. Litig.,*
 851 F. Supp. 556 (S.D.N.Y. 1994) ........................................................................3

*In re Integrated Res., Inc., Real Estate Ltd. P'ships. Secs. Litig.,*
 MDL No. 897, 1995 WL 234975 (S.D. N.Y. April 21, 1995) ......................4, 12

*In re Jamster Mktg. Litig.,*
 427 F. Supp. 2d 1366 (J.P.M.L. 2006) ..................................................................4

*In re JP Morgan Chase & Co. Sec. Litig.,*
 452 F. Supp. 2d 1350 (J.P.M.L. 2006) ..................................................................4

*In re Meridia*,
    328 F. Supp. 2d 791 (N.D. Ohio 2004) ........................................................8, 10

*In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*,
    No. 2:03-MC-1565, 2004 WL 882456 (S.D. Ohio 2004) .....................................3, 4, 8, 13

*In re Novartis Wage and Hour Litig.*,
    No. 1794, 2006 WL 3229957 (J.P.M.L. Oct. 30, 2006)........................................4

*In re Raymond Lee Org., Inc. Secs. Litig.*,
    446 F. Supp. 1266 (J.P.M.L. 1978) ...............................................................15

*In re Standard Auto. Corp. Retiree Benefits "Erisa" Litig.*,
    431 F. Supp. 2d 1357 (J.P.M.L. 2006) ..........................................................4

*In re USS Trenton Disaster Litig.*,
    383 F. Supp. 1406 (J.P.M.L. 1974) ...............................................................15

*In re Wireless Tel. Radio Frequency Emmissions Prod. Liab. Litig.*,
    170 F. Supp. 2d 1356 (J.P.M.L. 2001) ..........................................................5, 13

*Jack v. Glaxo Wellcome, Inc.*,
    239 F. Supp. 2d 1308 (N.D. Ga. 2002).........................................................8

*Leathers v. Pfizer*, 233 F.R.D.
    687 (N.D. Ga. 2006) ................................................................................8

*Newman v. Motorola, Inc.*,
    125 F. Supp. 2d 717 (D. Md. 2000)..............................................................8

*Schmerling v. Danek Med., Inc.*,
    No. 96-2749, 1999 WL 712591 (E.D. Pa. Sept. 10, 1999)..................................10

**Statutes**

28 U.S.C. § 1407) ..........................................................................................8

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' JOINT MOTION FOR
SUGGESTION OF REMAND**

Plaintiff's request for this Court to remand the *Farina* and *Louther* cases back to the
federal districts to which they were originally removed ignores the reasons that the Judicial Panel
on MultiDistrict Litigation created this MDL in the first place. The central issue underlying *all*
of these cases -- those voluntarily dismissed by plaintiffs in an effort to dismantle this MDL, as
well as the cases still before this Court -- is the common issue of general causation. Each of
plaintiff's claims in these lawsuits requires resolution of common scientific questions relating to
general causation. The general causation question is not just common to *Farina* and *Louther*, as
well as the recently dismissed *Pinney* and *Naquin*, but was also central to this Court's decision in
*Newman*. The Panel transferred all of these cases to this Court to resolve that common question
in an efficient and uniform way. Because plaintiffs disagree with the Court's decision in
*Newman*, they are now engaging in an all-out effort to break up the MDL. The latest step in this
strategy is their Joint Motion for Suggestion of Remand. Plaintiffs cannot demonstrate, as they
must, that good cause for remand exists. For those reasons, as well as the impropriety of their
blatant effort to manipulate the MDL process, their motion for remand should be denied.

*First*, the fact that there are fewer cases in the MDL now (two) than when it was formed
(four) does not constitute "good cause" warranting remand. The MDL Panel and other federal
courts repeatedly have made clear that the mere fact that some constituent actions previously
transferred to an MDL proceeding are dismissed or terminated is not a sufficient basis to remand
*-- even when only one case remains before the transferee court*. Rather, the relevant inquiry is
whether the transferee court has completed consolidated pretrial proceedings and, if not, whether
continuing to proceed before the transferee court will serve the convenience of the parties and
witnesses and promote the just and efficient conduct of the litigation.

Indeed, the remand standard urged by plaintiffs, based simply on the number of actions remaining in an MDL, would encourage precisely the type of manipulation that plaintiffs have engaged in here. The procedural history of these cases demonstrates that plaintiffs' goal is to avoid litigating in this Court -- even if that means voluntarily dismissing cases so that they can argue that "there is nothing to 'coordinate'" in hopes of increasing their chance of remand. (Farina Br. 5) The pattern is unmistakeable. Shortly after their amended complaint was removed to federal court, the *Pinney* plaintiffs dismissed it when assigned to this Court. Plaintiffs' counsel in *Naquin* (who also represent Mr. Farina) then dismissed that case when it became clear, in light of the *Farina* removal, that three cases were pending in this MDL and would remain before this Court. Plaintiffs' attempt to break up this MDL by reducing the number of cases should not be rewarded.

***Second***, plaintiffs' claim that no efficiency will be achieved by continued consolidation is wrong. (*See* Farina Br. 4) Two cases exist in this MDL, not one. (*Id.*) (referring to "only one case -- *Farina* -- remaining in MDL No. 1421" and arguing that benefits of coordination are therefore "nonexistent"). Plaintiffs may not agree with the Panel's decision to transfer *Louther*, but the Panel has decided that issue and sent *Louther* to this MDL. Efficiency will be achieved by coordinating pre-trial proceedings in *Louther* and *Farina* because plaintiffs' claims in both cases depend upon proof of general causation. The general causation question in both cases involves the same body of scientific evidence -- scientific evidence that plaintiffs expect will cause this Court to rule as it did in *Newman*. Moreover, there have been no substantive merits proceedings in the transferor court in either case.

Plaintiffs bear the burden of demonstrating that good cause exists for dismantling the MDL. They have not met, and cannot meet, this burden. The motion should be denied.

2

## ARGUMENT

Plaintiffs' argument that "[t]here is a heavy burden on those requesting coordinated proceedings when only one case exists" is misplaced. (Farina Br. 4)[1]  The Panel has already coordinated these proceedings.  Where coordination already has occurred, the burden of demonstrating that remand is warranted is on the party seeking remand.  *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, No. 2:03-MC-1565, 2004 WL 882456, at *2 (S.D. Ohio 2004) ("[A] party seeking remand to the transferor court has the burden of establishing that such remand is warranted.") (quoting *In re Integrated Res., Inc. Real Estate Ltd. P'ships. Secs. Litig.*, 851 F. Supp. 556, 562 (S.D.N.Y. 1994) (citing *In re Holiday Magic Secs. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P. M.L. 1977)).

Plaintiffs cannot meet their burden.  Although plaintiffs acknowledge the *Louther* case in passing and attempt to distinguish it from *Farina,* they ignore it when arguing there is "only one case remaining" in this MDL.  Plaintiffs' also ignore the common issues of causation between these cases, as well as this Court's accrual of judicial expertise and familiarity with the science in light of *Newman* and the proceedings in this MDL.  This Court's continued retention of these cases for pre-trial proceedings would best serve the principle of judicial economy that is the basis of the multidistrict litigation system.

## I.    THE LITIGATION'S PROCEDURAL HISTORY SUPPORTS RETENTION OF THIS MDL PROCEEDING.

### A.    Counting The Number Of Cases Is Not The Test For Whether Good Cause For Remand Exists.

Under the approach urged by plaintiffs, the standard for remand to the transferor court is the number of cases pending in the MDL; every time the number of cases in multidistrict

---

[1] Plaintiff Louther also filed papers in support of suggestion of remand.  Because these papers simply adopted the arguments set forth in plaintiff Farina's motion and brief, this response cites only to the *Farina* pleadings.

litigation is reduced to two or one, the MDL should automatically be dismantled and the cases in it remanded. Plaintiffs are wrong. The number of actions is not the litmus test for whether remand is warranted. Rather, the appropriate analysis "generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL." *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001) (citing *In re Air Crash Disaster*, 461 F. Supp. 671, 672-73 (J.P.M.L. 1978)). A central factor in that determination is whether further coordinated proceedings will promote judicial economy. *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, No. 2:03-MC-1565, 2004 WL 882456, at *5 (S.D. Ohio 2004) (denying remand motions when "consolidated discovery and pretrial proceedings will promote judicial economy and conserve the resources of the parties.").

Applying this standard (rather than simply counting the number of cases), the Panel has routinely found it appropriate to transfer and consolidate pretrial proceedings even where only two actions were involved in the first instance. *See, e.g.*, *In re Novartis Wage and Hour Litig.*, No. 1794, 2006 WL 3229957 (J.P.M.L. Oct. 30, 2006) (centralizing two actions pending in two districts); *In re JP Morgan Chase & Co. Sec. Litig.*, 452 F. Supp. 2d 1350 (J.P.M.L. 2006) (same); *In re Standard Auto. Corp. Retiree Benefits "Erisa" Litig.*, 431 F. Supp. 2d 1357 (J.P.M.L. 2006) (same).[2] Even when only a *single case* remains in an already constituted MDL, continued coordination before the MDL court is warranted to benefit from accrued judicial expertise, a core premise of the MDL scheme. *In re Integrated Res., Inc., Real Estate Ltd. P'ships. Secs. Litig.*, MDL No. 897, 1995 WL 234975, at *4 (S.D. N.Y. April 21, 1995) ("a key

---

[2] *See also In re Air Crash Near Athens, Greece, on Aug. 14, 2005*, 435 F. Supp. 2d 1340 (J.P.M.L. 2006) (centralizing three actions pending in two districts); *In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366 (J.P.M.L. 2006) (same); *In re H & R Block Mortgage Corp. Prescreening Litig.*, 435 F. Supp. 2d 1347 (J.P.M.L. 2006) (centralizing three actions pending in three districts). Indeed, when this MDL was initially formed, there were only four cases -- *Pinney, Naquin, Farina*, and *Gilliam*.

principle of the multi-district scheme involves the accrual of judicial expertise"); *In re CBS
Color Tube Patent Litig.*, 342 F. Supp. 1403, 1405 (J.P.M.L. 1972) ("[W]e are not convinced by
defendants' arguments that an action, in which discovery is not yet completed, should be
remanded simply because all other consolidated cases in the transferee court have been
dismissed or terminated in some way.").

Continuation of the MDL proceeding is clearly warranted here.  The Panel transferred
these cases to this Court in light of this Court's experience in *Newman.  In re Wireless Tel. Radio
Frequency Emmissions Prod. Liab. Litig.*, 170 F. Supp. 2d 1356, 1358 (J.P.M.L. 2001) ("[t]he
District of Maryland is the *most appropriate transferee forum* for this litigation.  We note that an
action is pending there before Judge Catherine C. Blake, who already has relevant experience
with some issues likely involved in this litigation.") (emphasis added).  And, having ruled on
numerous motions in the MDL, this Court has acquired even more experience since then.
Regardless of differences between these actions and *Newman*, both complaints require
assessment of specific scientific evidence necessary to prove general causation.  To now send
*Farina* and *Louther* to two separate judges with no experience in the scientific issues common to
both cases (as discussed in Part II, below), which are relevant to every aspect of pre-trial
proceedings in these cases, would be inefficient and contravene a central purpose of this MDL.

**B.     Plaintiffs' Count-The-Cases Approach Encourages The Type Of Strategic
         Maneuvering That Has Occurred Here.**

*Farina*'s "relevant" Procedural Background section is misleading because it ignores the
most relevant facts:  Plaintiffs have been strategically dismissing cases in an attempt to break up
this MDL and avoid this Court.  A suggestion of remand would reward this gamesmanship.

This MDL initially consisted of four cases:  *Naquin, Gilliam, Pinney,* and *Farina.*  Other
cases were subsequently added as "tag-along" matters, but, after the Fourth Circuit's ruling, only

5

three cases remained in the MDL: *Brower*, *Naquin* and *Louther*. In late January and early

February 2006, plaintiffs in *Pinney* and *Farina* filed amended complaints adding new defendants

in state court. On February 15, 2006 this Court then remanded *Brower* in light of the Fourth

Circuit's *Pinney* decision, and recommended to the MDL Panel that it remand *Naquin* and

*Louther* to their original federal jurisdictions. Shortly thereafter, plaintiffs in *Gilliam* and

*Gimpelson* voluntarily dismissed their cases. On February 17 Defendants removed both cases --

*Pinney* to this Court and *Farina* to the Eastern District of Pennsylvania -- and on February 22

requested this Court to reconsider its remand suggestion of *Naquin* and *Louther*.

On March 9, 2006 this Court granted Defendants' motion and withdrew its Suggestion of

Remand. On June 4, 2006, Plaintiffs voluntarily dismissed *Pinney* (which had been sent back to

this Court) without prejudice. Two weeks later the MDL Panel transferred the amended *Farina*

action into this MDL. Plaintiffs then dismissed the *Naquin* case. Considering that they had just

filed an amended complaint in *Pinney* and had strenuously argued that *Naquin* should proceed in

Louisiana, plaintiffs must have dismissed those actions to enhance the chances that at least *some*

case would proceed someplace other than before this Court. Thus, although there would be four

cases in this MDL with *Pinney* and *Naquin*, plaintiffs have attempted to manipulate the system to

maximize their chances to argue for a break up of the MDL and to avoid this Court by

voluntarily dismissing those two cases.

Even aside from illustrating plaintiffs' gamesmanship, the recent procedural history of

these cases demonstrates why remanding to the transferor courts is premature. As recent events

demonstrate, the status of these cases is in a constant state of flux. Significantly, both *Pinney*

and *Naquin* were dismissed *without prejudice*. There is no guarantee that plaintiffs will not

come back and re-file at a later point in time. Other new cases may be filed or pending state

6

cases amended to create federal jurisdiction. Nor has Mr. Farina ruled out the possibility that if he loses his motion to remand to state court, he might amend to expand the class beyond Pennsylvania such that his case would no longer be limited to "a Pennsylvania class under exclusively Pennsylvania state statutory and common law." (*Farina* Br. 3) It would be inefficient to keep litigating whether the MDL should or should not be maintained. The more prudent course is to keep the MDL together for the purposes of pretrial activities so that if additional cases are filed (or re-filed), or existing state-law cases are amended to create federal jurisdiction, the MDL is still available to manage the cases efficiently. There is no "good cause" to dismantle this MDL based simply on the number of pending cases.

## II.    THE *LOUTHER* AND *FARINA* LAWSUITS RAISE THE SAME ISSUE OF GENERAL CAUSATION.

Coordinated proceedings will serve judicial economy because the general causation question involves the same scientific evidence this Court addressed in *Newman*. In its February 15, 2006 Memorandum, this Court noted that if the original cases in the MDL "had [ ] continued toward trial, there would have been substantial overlapping expert discovery to be coordinated and resulting *Daubert* motions to be heard." (Feb. 15, 2006 Mem. at 2) The Court suggested remand, however, because only one class action remained and the issues in *Louther* "are significantly narrower" than in the class action. Specifically, the Court noted that Louther's claim is limited to whether a single phone model caused James Louther to die of a brain tumor in 2001, while the *Naquin* plaintiffs sought headsets for a purported nation-wide class based on claims that without headsets defendants were exposing users to various alleged health dangers from wireless phone RF emissions.

Defendants do not dispute that *Louther* and *Farina* seek different relief. Both cases, however, require resolution of the same underlying issue of general causation that is a threshold

7

requirement for liability regardless of the "case specific" relief either plaintiff seeks. The general

causation question involves the same scientific evidence, and a highly specific area of expertise

with which this Court is familiar and knowledgeable in light of *Newman*. "Remand is

inappropriate when continued consolidation will 'eliminate duplicative discovery, prevent

inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the

judiciary.'" *In re Nat'l Century Fin. Enters.*, 2004 WL 882456, at *2 (*quoting In re Heritage

Bonds Litig.*, 217 F. Supp. 2d 1369, 1370 (J.P. M.L. 2002) (citing 28 U.S.C. § 1407)).

A.     **Regardless Of The Specific Legal Theories Alleged, Both *Farina* And
*Louther* Turn On The Issue Of General Causation.**

In *Farina* and *Louther,* the core issue of general causation is an essential element of each

claim.[3] *See Newman v. Motorola, Inc.*, 125 F. Supp. 2d 717, 725 (D. Md. 2000) (in case

involving product liability ***and consumer fraud claims*** court held that: "causation is an essential

element of all claims brought by" plaintiffs).[4] Plaintiffs' burden of proving general causation is

the same regardless of the specific legal theory alleged, and regardless of whether plaintiff has

alleged a brain tumor, the aggravation of an underlying medical condition, or some risk of

adverse biological effects. In other words, Mr. Farina cannot prevail on a consumer fraud claim

based on defendants' failure to disclose that RF emitted from wireless phones allegedly causes

"an increased risk for developing brain cancer" without proving that RF emitted from wireless

---

[3] *See In re Meridia*, 328 F. Supp. 2d 791, 798 (N.D. Ohio 2004) ("General causation is the capacity of a product to
cause injury") (quoting *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1320-21 (N.D. Ga. 2002); *Leathers
v. Pfizer*, 233 F.R.D. 687, 691 n.2 (N.D. Ga. 2006) ("General causation is concerned with whether an agent
increases the incidence of disease in a group and not whether the agent caused any given individual's disease.")
(quotations omitted).

[4] *See also, e.g., Leathers*, 233 F.R.D. at 700-01 (recognizing that "[g]eneral causation is an essential element of
Plaintiff's prima facie case for each claim asserted in this litigation," including defective design, failure to warn,
negligence, breach of express and implied warranties, and unjust enrichment, and granting summary judgment
to defendants on all claims for failure to prove general causation); *Doe v. Ortho-Clinical Diagnostics, Inc.*, 440
F. Supp. 2d. 465, 468 (M.D. N.C. 2006) (granting summary judgment in favor of defendant because "all of
Plaintiffs' claims" -- which included, among others, breach of warranty, failure to warn, negligent
misrepresentation and product liability -- hinged on allegation that defendant's product caused child's autism).

8

phones does in fact cause "an increased risk for developing brain cancer." (Complt. ¶ 96)  In

light of that requirement, Mr. Farina repeatedly alleges that RF emissions from wireless phones

are capable of causing personal injury:

- "Scientific and medical research, published in peer reviewed journals, has demonstrated *adverse biological effects from exposure to RFR . . .*" (Complt. ¶ 45) (emphasis added)

- "Decades of research have demonstrated that *adverse biological effects result from exposure to varying levels of RFR.*" (*Id.* ¶ 47) (emphasis added)

- "During this same period of time, research was also developed regarding the *risk to human health posed by exposure to RFR and those adverse biological effects.*" (*Id.* at 48) (emphasis added)

- The defendants "market[ed] defective WHHPPs [wireless phones] . . . while failing to warn plaintiff and the public of the *biological effects and risks to health from RFR emissions* from WHHPS." (*Id.* ¶ 125) (emphasis added)

- "At all relevant times hereto, notwithstanding their knowledge of the *adverse biological effects of RFR emissions from WHHPs and the potential risks to health therefrom*, defendants continued, and continued to this very day, to place into the stream of commerce these WHHPs." (*Id.* ¶ 134) (emphasis added)

- "As a direct and proximate result of defendants' conspiratorial conduct, plaintiff and the Class have been *damaged.*" (*Id.* ¶ 135) (emphasis added)

Although Farina frames his claims as warranty and consumer fraud theories, his own allegations

demonstrate that his claims turn on purported health risks of RF emissions from wireless phones.

Ms. Louther acknowledges (as she must) that her claims also pivot on the general

causation question.  The summons accompanying the *Louther* complaint, for example, states that

the case involves a "failure to properly warn concerning *the dangers of radiation and*

*electromagnetic energy from cell phone use.*" (Louther, summons and service of process, Aug.

27, 2003).  In the complaint itself, Ms. Louther alleges that:

- The cell phone "was defective and inherently *dangerous due to the amount of radiation and electromagnetic energy produced by cell phone use.*" (Complt. ¶ 7) (emphasis added)

9

- The cell phone "failed to have proper warnings concerning *the dangers of radiation and electromagnetic energy from cell phone use*." (*Id.* ¶ 8) (emphasis added)

- The "cell phone was defective and *unreasonably dangerous* in the condition in which it was sold and marketed to the Plaintiff's decedent." (*Id.* ¶ 10) (emphasis added)

Thus, *Louther*, like *Farina*, is premised on whether RF exposure at the level emitted by wireless phones is unreasonably dangerous.

In the MDL context, transferee courts typically decide the general causation inquiry. Only then, if general causation is proven, do they remand (in appropriate circumstances) for the case-specific determination of specific causation. *See Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 471 (M.D.N.C. 2006) ("Where a plaintiff is not able to establish general causation, it is unnecessary to consider whether the plaintiff can establish specific causation.") (quotation omitted); *In re Meridia,* 328 F. Supp. 2d at 799 (limiting initial "inquiry to general causation, *i.e.*, whether the plaintiff shows sufficient evidence that the substance in question has the capacity to cause harm." and noting that "other MDL cases have reserved specific causation questions to cases that are remanded.") (citing *Schmerling v. Danek Med., Inc.*, No. 96-2749, 1999 WL 712591 (E.D. Pa. Sept. 10, 1999) (on remand from MDL, the court found insufficient evidence of specific causation to survive summary judgment)). Regardless of whether any case-specific issues may remain (such as plaintiffs' requests for different relief), at a minimum, the threshold issue of general causation warrants retention of jurisdiction by this Court.

### B.    Given This Court's Expertise From *Newman*, Keeping *Farina* and *Louther* Together Promotes Judicial Economy.

The evidence of general causation at issue in *Louther* and *Farina* will draw upon, if not mirror, the evidence that was before this Court in *Newman*. As did plaintiffs in *Newman*, Farina identifies the alleged "adverse biological effects" caused by RF emissions from wireless phones

as "calcium and ion distribution across the cell membrane; melatonin production, neurological function, DNA single and double strand breaks and chromosome damage, enzyme activities, cell stress and gene transcription and the permeability of the blood brain barrier." (*Farina* Compl ¶ 2) Mr. Farina relies on studies by Henry Lai and N.P. Singh (*id.* ¶ 79), Leif Salford  (*id.* ¶ 81), Ross Adey (*id.* ¶ 83), Michael Repacholi (*id.* ¶ 84) and Ray Tice and Graham Hook (*id.* ¶ 86).

The *Newman* plaintiffs relied on nearly identical "adverse biological effects" in their complaint. (Newman 3d Am. Compl. ¶¶ 1,70 (genetic effects); 59, 128, 130 (DNA breaks); 99 (calcium efflux); 117, 125 (chromosomal aberrations); 129 (enzyme activities); and 195 (blood brain barrier)) (cited pages attached as Ex. A). And more importantly, the *Newman* plaintiffs relied on these same alleged biological effects and the same studies when briefing the general causation issue.  In their brief opposing defendants' *Daubert* motion, the *Newman* plaintiffs pointed to, among other things, biological effects such as "chromosome aberrations," "DNA damage," "micronuclei," "DNA single and double strand breaks" "alteration of calcium distribution," "alterations of gene expression," and "changes in blood-brain barrier" to support their general causation theory.  (Plaintiffs' Amended Opposition to Defendants' Motion To Exclude Plaintiffs' Expert Witness Testimony, filed February 6, 2002 in *Newman* at 28, 53) (cited pages attached as Ex. B)[5] And plaintiffs in *Newman*, like plaintiff Farina, also relied on studies by Lai & Singh (*id.* at 34, 46), Salford (*id.* at 53), Adey (*id.* at 35),  Repacholi (*id.* at 35) and Tice (*id.* at 33).

Mr. Farina also specifically cites to epidemiological studies he contends show "increased risks for various tumor types and/or cancer" (*Farina* Compl. ¶¶ 95-99) that are likely the same

_____

[5] Although initially filed under seal, plaintiffs' counsel in *Newman* confirmed in subsequent correspondence with the Court that only certain pages referencing Dr. Hardell's peer review comments still remained under seal. Exhibit B does not include any of the pages identified by plaintiffs' Counsel in that correspondence.

studies plaintiffs presented to this Court in *Newman*, and presumably are what Ms. Louther will

rely upon as well. And the purported need for headsets raised in *Farina* likewise was alleged in

*Newman*. (*Newman* Compl. at ¶ 150) ("Defendants also failed to effectively warn users that

numerous other methods of WHHPs were available, such as but not limited to, a headset or

speaker phone adapter . . .").

Plaintiffs cannot deny that this Court has experience and expertise in these common

science issues from its work in *Newman*. To the extent Plaintiff Farina relies on more recent

studies, there is no better court than this to recognize the relevance and significance of those

studies to the general causation issue. This alone provides a basis for maintaining this MDL

because the use of accrued judicial expertise is a bedrock principle underlying the MDL scheme:

> In their renewed request for a suggestion of remand, Plaintiffs point out
> that virtually all the actions with which this case was consolidated have now been
> settled. They make the formalistic argument that there can be no "common"
> issues if there are no longer any cases with which to have issues in common.
>
> However, *a key principle of the multi-district scheme involves the
> accrual of judicial expertise*. It is a fundamental assumption of the multidistrict
> system that having only one court sort out the facts of complex and multi-faceted
> transactions and occurrences which have given rise to many competing legal
> claims well serves the goal of judicial economy. *See In re Holiday Magic Secs. &
> Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977). The Integrated cases
> have indeed presented a complex set of facts and theories. This factual context
> forms the backdrop, if not the very substance, of Plaintiffs' remaining claims and
> *to remand them at this point would require another court to make its own way
> up this same learning curve, resulting in just that duplication of efforts that the
> multidistrict system is designed to avoid*.
>
> The mere fact that all other cases in a consolidated litigation have been
> terminated *does not* constitute "good cause" as required by the prior decisions of
> the Panel. *See In re CBS Color Tube Patent Litig.*, 342 F. Supp. 1403, 1405
> (J.P.M.L. 1972).

*In re Integrated Res., Inc.*, 1995 WL 234975, at *4 (emphasis added).

The Panel recognized and applied this principle when it formed this MDL and

periodically added cases to it. Significantly, the MDL Panel did not distinguish between cases

alleging brain cancer and headset cases alleging adverse biological effects. Although plaintiffs

argue that *Farina* and *Louther* are "dissimilar" because *Farina* is a "consumer protection class

action" and *Louther* is a "personal injury case," the Panel already has concluded otherwise. The

Panel ordered transfer of the class action cases -- including *Farina* -- to this Court because of its

experience with the scientific evidence in *Newman*. *In re Wireless Tel. Radio Frequency*

*Emissions Prods. Liab. Litig.*, 170 F. Supp. 2d 1356, 1357 (J.P.M.L. Oct. 31, 2001)). It then

added a number of cases -- *Louther* and *Brower*, among others -- that specifically allege a brain

tumor injury. And rightly so. There is no requirement that there be complete identity, or even a

majority, of common issues for coordinated proceedings to serve judicial economy and avoid

wasteful duplication. *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, No. 2:03-MC-1565,

2004 WL 882456, at *4 (S.D. Ohio 2004) ( "Despite the differences between the Florida actions

and the other cases, '[a] complete identity or even majority of common factual issues' is not

required for cases to be consolidated for pretrial purposes. The key concern is whether the

Florida actions will benefit from being part of the MDL, and the Court concludes that judicial

economy will best be served by keeping them consolidated with the NCFE litigation.") (quoting

*In re Heritage Bonds Litig.*, 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002)).

C.    **Unlike *Naquin*, Neither *Farina* Nor *Louther* Present Issues Of A Unique
        State Law And The Transferor Courts Have Not Engaged In Any
        Substantive Work.**

In urging remand of *Naquin*, plaintiffs focused heavily on Judge Lemelle's familiarity

with both the *Naquin* action and with a unique Louisiana law that was at issue in that case.

Plaintiffs pointed out that "defendants' pending Motion to Dismiss plaintiffs' redhibition claim, a

law peculiar to Louisiana, had been fully briefed and argued before Judge Lemelle." (Alweiss

Ltr., June 21, 2005, at 1) They also stressed that "Judge Lemelle has performed substantial work

on this case while addressing preemption and as a result he has familiarized himself with issues

13

involved in the case." (*Id.* at 2)  This Court noted Judge Lemelle's "greater familiarity with Louisiana law" in its Memorandum.  (Feb. 15, 2006 Mem. at 2)

Such facts do not exist with respect to *Farina*.  For all of plaintiff Farina's rhetoric about "the unique provisions of Pennsylvania state statutory law at issue in this case" (Farina Br. at 4), plaintiff nowhere identifies any specific "unique" provisions.  This omission is not merely an oversight.  The *Farina* case does not involve the type of unique, state-specific cause of action that was at issue with the redhibition claim in *Naquin*.  Moreover, as explained in the motion to dismiss, the core failure of Farina's claims -- his absence of legally cognizable injury -- is common across jurisdictions.

Moreover, unlike *Naquin*, the transferor courts in neither *Farina* nor *Louther* have invested time in the cases.  No merits issues have been briefed before the transferor courts in either matter, and the transferor judges have no substantive familiarity with the issues presented in these cases.  Judicial economy would be achieved by retention of these cases in this Court, not by remand.

### D.    Plaintiffs' Cases Are Distinguishable.

The cases plaintiffs rely on to urge a suggestion of remand are inapposite because they involved initial requests to consolidate, not attempts to dismantle existing MDLs.  *See, e.g., In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) (rejecting requests for transfer and consolidation); *In re Highway Accident in Buffalo County,*

14

*Nebraska*, 305 F. Supp. 2d 1359, 1360 (J.P.M.L. 2004) (same).[6] Here, the JPML already has concluded that these cases are sufficiently complex and similar to warrant transfer, and specifically transferred the *Louther* case to the MDL along with the other headset cases.

## CONCLUSION

Plaintiffs are wrong in asserting that justification for coordinated multidistrict proceedings no longer exists. The cases will benefit from further coordination, and the role of this Court has not ended. *See In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, No. 991, 1998 WL 308013 (E.D. La. June 8, 1998) (suggestion of remand serves interests of justice if judge perceives his or her role in the case has ended or completes pretrial function). Given this Court's experience in *Newman*, and the overlap in general causation issues in *Louther* and *Farina*, remand of these cases would impede, not promote, the just and efficient conduct of this litigation. There is no good cause for remand. Accordingly, the Motion for Suggestion of Remand should be denied.

---

[6] *See also In re USS Trenton Disaster Litig.*, 383 F. Supp. 1406 (J.P.M.L. 1974) (declining to transfer under Section 1407 where eight of the actions already were consolidated in New York and the parties in the other jurisdiction, South Carolina, favored transfer and were also parties to New York action and therefore coordination of discovery could easily be achieved by cooperative efforts); *In re Raymond Lee Org., Inc. Secs. Litig.*, 446 F. Supp. 1266, 1268 (J.P.M.L. 1978) (declining to transfer under Section 1407 where litigation involved two actions and discovery already was completed in one of them, thereby "diminish[ing] any benefits that could be gained by" transfer); *In re Ecuadorian Oil Concession Litig.*, 487 F. Supp. 1364, 1368 (J.P.M.L. 1980) (declining to transfer where the two actions at issue had been pending for almost three and one half years, extensive document discovery was virtually complete in both actions, and centralization "could delay the termination of the Delaware action without producing any overriding benefits.").

Date:  January 17, 2007

Respectfully submitted,

/s/
_____
Paul F. Strain, Esquire
VENABLE LLP
Two Hopkins Plaza
Suite 1800
Baltimore, MD 21201
(410) 244-7400

/s/
_____
Michael E. Yaggy, Esquire
DLA PIPER RUDNICK GRAY CARY US LLP
6225 Smith Avenue
Baltimore, MD 21209

*On Behalf of All Properly-Served Defendants*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January 2007, a copy of the foregoing **DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' JOINT MOTION FOR SUGGESTION OF REMAND** was served on Plaintiffs' counsel via first-class mail, postage prepaid, and electronic mail as follows:

> Kenneth A. Jacobsen
> Jacobsen Law Offices LLC
> 12 Orchard Lane
> Wallingford, PA 19086

> Michael R. Allweiss
> Lowe, Stein, Hoffman, Allweiss & Hauver, LLP
> 701 Poydas Street
> One Shell Square
> Suite 3600
> New Orleans, LA 70139

> William P. Lightfoot
> Koonz, McKenney, Johnson, DePaolis & Lightfoot
> James Monroe Building
> 2001 Pennsylvania Avenue, .W.
> Suite 450
> Washington, DC 20006

on Plaintiffs' counsel via first-class mail, postage prepaid, as follows:

> H. Russell Smouse
> Glenn E. Mintzer
> Law Offices of Peter G. Angelos, P.C.
> One Charles Center
> 100 North Charles Street
> Baltimore, MD 21201

> Joseph A. O'Keefe
> O'Keefe & Sher, P.C.
> 15019 Kutztown Road
> Kutztown, PA 19530

> Michael D. Donovan
> Donovan Searles, LLC
> 1845 Walnut Street
> Suite 1100
> Philadelphia, PA 19103

and on all Defense counsel of record via electronic mail.

_____/s/_____
Paul F. Strain, Esquire
VENABLE LLP
Two Hopkins Plaza
Suite 1800
Baltimore, MD 21201
(410) 244-7400

_____/s/_____
Michael E. Yaggy, Esquire
DLA PIPER RUDNICK GRAY CARY US LLP
6225 Smith Avenue
Baltimore, MD 21209

*On Behalf of All Properly-Served Defendants*