IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| IN RE WIRELESS TELEPHONE RADIO FREQUENCY EMISSIONS PRODUCTS LIABILITY LITIGATION | MDL NO. 1421 |
| This Memorandum Relates To: *Farina v. Nokia, Inc., et al.* (E.D. Pa.) | Civil No. 01-MD-1421 |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

ARGUMENT ....................................................................................................... 3

I.   Plaintiff Fails to State Any Viable Claim for Breach of Warranty
     Against Any Defendant ................................................................................ 3

     A.   Plaintiff's Express And Implied Warranty Claims Fail Because He
          Has Not Alleged Cognizable Damages ................................................ 3

     B.   Plaintiff Does Not State a Claim For Breach of Express Warranty ..... 7

          1.   Plaintiff Has Not Alleged That He Relied On The Purported
               Statements Upon Which He Bases His Claim ............................... 8

          2.   Plaintiff Has Not Alleged a Breach of Any Express Warranty .... 9

     C.   Plaintiff Does Not State a Claim For Breach of Implied Warranty ... 11

II.  Plaintiff's UTPCPL Claim Fails As a Matter of Law .............................. 13

     A.   Plaintiff Has Failed To Alleged Reliance And Is Wrong In
          Claiming That Reliance May Be Presumed ....................................... 13

     B.   Plaintiff Has Not Alleged Misrepresentations of Fraud ................... 16

     C.   Plaintiff's Amorphous Allegations Do Not Set Forth An
          "Ascertainable Loss" ........................................................................ 17

     D.   Plaintiff's UTPCPL Claim is Barred by the Economic Loss
          Doctrine ............................................................................................ 21

     E.   Trade Associations Are Not Subject to Liability Under the
          UTPCPL ............................................................................................ 23

III. Plaintiff's Claim for Civil Conspiracy Fails .......................................... 23

     A.   Civil Conspiracy Is Not a Stand-Alone Cause of Action ................. 24

     B.   Plaintiff's Complaint Does Not Plead An Unlawful "Agreement"
          As Required to State a Claim For Civil Conspiracy .......................... 25

     C.   A Claim for Civil Conspiracy Cannot Be Based on Defendants'
          Alleged Membership in a Trade Association ..................................... 26

CONCLUSION .................................................................................................. 29

## TABLE OF AUTHORITIES

### CASES

*Adams v. Copper Beach Townhome Cmtys., L.P.,*
  816 A.2d 301 (Pa. Super. 2003) ................................................................22

*In re Am. Honda Motor Co., Dealerships Realtors Litig.,*
  941 F. Supp. 528 (D. Md. 1996)................................................................21

*Amer. Structures v. Fid. & Deposit Co.,*
  545 F. Supp. 1021 (E.D. Pa. 1982)...........................................................26

*Arnold v. Stein Roe & Farnham,*
  No. Civ. A. 06-243, 2006 WL 851303 (E.D. Pa. March 30, 2006)............15

*Baker v. Family Credit Counseling Corp.,*
  440 F. Supp. 2d 392 (E.D. Pa. 2006) ............................................15, 28, 29

*In re Beef Indus. Antitrust Litig.,*
  713 F. Supp. 971 (N.D. Tex. 1988) ...........................................................26

*Berkebile v. Brantly Helicopter Corp.,*
  337 A.2d 893 (Pa. 1975).............................................................................17

*In re Bridgestone/Firestone Tires Prods. Liab. Litig,*
  288 F.3d 1012 (7th Cir. 2002) ...................................................................19

*Booze v. Allstate Ins. Co.,*
  750 A.2d 887, 880 (Pa. Super. 2000) .......................................................15

*Boyanowski v. Capital Area Intermediate Unit,*
  215 F.3d 396 (3d Cir. 2000) ......................................................................24

*Boyd v. Johnson & Johnson,*
  No. 120188, 2002 WL 372959 (Pa. Ct. Com. Pl. Jan. 22, 2002) ...............15

*Bristol Township v. Independence Blue Cross,*
  No. 01-4323, 2001 WL 1231708 (E.D. Pa. Oct. 11, 2001).........................25

*Burnside v. Abbott Labs.,*
  505 A.2d 973 (Pa. Super. 1985) ....................................................25, 27-28

*Cauthorn v. Owens Corning Fiberglas Corp.,*
  840 A.2d 1028 (Pa. Super. 2004) .........................................................4, 18

*Choice v. Option One Mtg. Corp.,*
  No. 02-6626, 2003 WL 22097455 (E.D. Pa. May 13, 2003) ...................................... 21

*Cipollone v. Liggett Group,*
  893 F.2d 541 (3d Cir. 1990), *overruled on other grounds,* 505 U.S.
  504 (1992)........................................................................................................... 8

*Clugston v. Nationwide Mut. Ins. Co.,*
  No. 3:05-CV-2680, 2006 WL 1290450 (M.D. Pa. May 10, 2006) ............................. 23

*Commonwealth by Creamer v. Monumental Props.,*
  329 A.2d 812 (Pa. 1974)........................................................................................ 23

*Cruz v. Roberts,*
  70 Pa. D. & C.4th 225, *Boyd v. Johnson & Johnson,* No. 965  2002
  WL 372959 (Pa. Ct. Com. Pl. Jan. 22, 2002) ............................................................ 15

*Debbs v. Chrysler Corp.,*
  810 A.2d 137 (Pa. Super. 2002) .................................................................. 14, 16, 21

*Ford Motor Co. v. Rice,*
  726 So. 2d 626 (Ala. 1998)..................................................................................... 19

*Frank v. DaimlerChrysler Corp.,*
  292 A.D.2d 118 (N.Y. App. Div. 2002) .................................................................... 19

*Gall v. Allegheny County Health Dep't,*
  555 A.2d 786 (Pa. 1989)......................................................................................... 12

*Giffear v. Johns-Manville Corp.,*
  632 A.2d 880 (Pa. Super. 1993) ........................................................................... 4, 18

*Goodman v. PPG Indus., Inc.,*
  849 A.2d 1239 (Pa. Super. 2004) ............................................................................. 8

*Grant v. Bridgestone/Firestone Inc.,*
  No. 01-08-1054, 2002 WL 372941 (Pa. Ct. Com. Pl. Jan. 10, 2002)......................... 5,6

*Griffith v. Mellon Bank, N.A.,*
  328 F. Supp. 2d 536 (E.D. Pa. 2004)........................................................................ 15

*Heindel v. Pfizer,*
  381 F. Supp. 2d 364 (D.N.J. 2004)........................................................................... 22

*Hogan v. The Maryland State Dental Ass'n.,*

843 A.2d 902 (Md. Ct. Spec. App. 2004)................................................16, 17

*Kane v. Motorola, Inc.*,
779 N.E.2d 302 (Ill. App. Ct. 2002) ...........................................................18

*Katlin v. Tremoglie*,
43 Pa. D. & C.4th 373 (Pa. Ct. Com. Pl. 1999)..........................................16

*Keirs v. Weber Nat'l Stores, Inc.*,
507 A.2d 406 (Pa. Super. 1986) ..................................................................12

*Keller v. Volkswagen of Am., Inc.*,
733 A.2d 642 (Pa. Super. 1999) ..................................................................23

*Kondratick v. Beneficial Consumer Disc. Co., No. Civ. A. 04-4895*,
2005 WL 2314042 (E.D. Pa. Sept. 21, 2005)..............................................15

*Kost v. Kozakiewicz*,
1 F.3d 176 (3d Cir. 1993) ..............................................................................3

*Lowe v. Tuff Jew Prods.*,
No. 04-01-1112, 2006 WL 1791351 (Pa. Ct. Com. Pl. June 7, 2006).........25

*McKeeman v. Corestates Bank, N.A.*,
751 A.2d 655 (Pa. Super. 2000) ..................................................................24

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
331 F.3d 406 (3d Cir. 2003) ........................................................................28

*Motorola, Inc. v. Ward*,
478 S.E.2d 465 (Ga. Ct. App. 1996).............................................................18

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982) ...............................................................................26, 27

*In re New England Mut. Life Ins. Co. Sales Practices Litig.*,
No. MDL-1105, 2003 U.S. Dist. LEXIS 25664 (D. Mass. May 20,
2003)..............................................................................................................22

*Newman v. Motorola, Inc.*,
218 F. Supp. 2d 769 (D. Md. 2002)..............................................................18

*Nix v. Temple Univ.*,
596 A.2d 1132 (Pa. Super. 1987) ................................................................24

*Nufeeds, Inc. v. Westmin Corp.*,

No. 3:CV-04-1071, 2006 U.S. Dist. LEXIS 21030 (M.D. Pa. Apr. 17, 2006) ....................................................................................................................... 22

*O'Keefe v. Mercedes-Benz USA,*
   214 F.R.D. 266 (E.D. Pa. 2003) ................................................................... 22

*Oppenheimer v. York Int'l,*
   No. 02-03-4348, 2002 WL 31409949 (Pa. Ct. Com. Pl. Oct. 25, 2002) ....................... 8

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
   193 F.3d 781 (3d Cir. 1999) ........................................................................ 24

*Ostroff v. Alterra Healthcare Corp.,*
   433 F. Supp. 2d 538 (E.D. Pa. 2006) (quoting *Choice v. Option One Mtg. Corp.,* No. 02-6626, 2003 WL 22097455, at 8 (E.D. Pa. May 13, 2003)) ................................................................................................................ 21

*Parkinson v. Guidant Corp.,*
   315 F. Supp. 2d 741 (W.D. Pa. 2004) ........................................................... 8

*Pelagatti v. Cohen,*
   536 A.2d 1337 (Pa. Super. 1987) ................................................................ 24

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.,*
   No. 86-0386, 1992 WL 212230 (M.D. Pa. July 31, 1992) ......................................... 26

*Pfizer Inc. v. Giles (In re Asbestos Sch. Litig.),*
   46 F.3d 1284 (3d Cir. 1994) ........................................................... 26, 27, 28

*Posel v. Home Depot USA,*
   No. 94-5787, 1995 WL 214454 (E.D. Pa. April 3, 1995) ..................................... 16-17

*REM Coal Co. v. Clark Equip. Co.,*
   563 A.2d 128 (Pa. Super. 1989) .................................................................. 22

*Reading Radio, Inc. v. Fink,*
   833 A.2d 199 (Pa. Super. 2003) ............................................................... 25-26

*Redland Soccer Club, Inc. v. Dep't of the Army,*
   696 A.2d 137 (Pa. 1997) ................................................................... 6, 19-20

*Reynard v. NEC Corp.,*
   887 F. Supp. 1500 (M.D. Fla. 1995) ............................................................. 18

*Rivera v. Wyeth-Ayerst Labs.,*
   283 F.3d 315 (5th Cir. 2002) ..................................................................... 19

*Samuel-Bassett v. Kia Motors America, Inc.*,
    No. 01-01-2199, 2004 WL 2173324 (Pa. Ct. Com. Pl. Nov. 10, 2004) ................ 15,16

*Santana Prods. v. Bobrick Washroom Equip.*,
    401 F.3d 123 (3d Cir. 2005) .................................................................................... 14

*Schwarzwaelder v. Fox*,
    895 A.2d 614 (Pa. Super. 2006) .............................................................................. 23

*Sessa v. Riegle*,
    427 F. Supp. 760 (E.D. Pa. 1977) ............................................................................. 8

*Seward v. Certo*,
    No. 05-6363, 2006 U.S. Dist. LEXIS 4038 (E.D. Pa. Feb. 2, 2006) .................... 21-22

*Solarz v. Daimler Chrysler Corp.*,
    No. 01-04-2003, 2002 WL 452218 (Pa. Ct. Com. Pl. March 13, 2002) ...................... 5

*Spitzer v. Abdelhak*,
    No. 98-6475, 1999 WL 1204352 (E.D. Pa. Dec. 15, 1999) ....................................... 25

*Thompson Coal Co. v. Pike Coal Co.*,
    412 A.2d 466 (Pa. 1979) .......................................................................................... 25

*Tose v. First Nat'l Bank*,
    648 F.2d 879 (3d Cir. 1981) ..................................................................................... 26

*Toy v. Metropolitan Life Ins. Co.*,
    863 A.2d 1 (Pa. Super. 2004) *appeal granted*, 882 A.2d 479 (Pa.
    2005) ......................................................................................................................... 14

*Tran v. Metro. Life Ins. Co.*,
    408 F.3d 130 (3d Cir. 2005) ..................................................................................... 14

*United States ex rel. Bartlett v. Tyrone Hosp., Inc.*,
    234 F.R.D. 113 (W.D. Pa. 2006) .............................................................................. 28

*Walter v. Magee-Womens Hosp. of UPMC Health Sys.*,
    876 A.2d 400 (Pa. Super.Ct. 2005) .......................................................................... 20

*Weaver v. Chrysler Corp.*,
    172 F.R.D. 96, 99 (S.D.N.Y. 1997) .......................................................................... 19

*Weinberg v. Sun Co.*,
    777 A.2d 442 (Pa. 2001) .......................................................................................... 13

vi

*Werwinski v. Ford Motor Co.*,
   286 F.3d 661 (3d Cir. 2002) ........................................................................21

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
   854 A.2d 425 (Pa. 2004)..............................................................................14

*Yu v. IBM*,
   732 N.E.2d 1173 (Ill. App. Ct. 2000) .........................................................19

*Yurcic v. Purdue Pharma, L.P.*,
   343 F. Supp. 2d 386 (M.D. Pa. 2004)...........................................................8

*Zaborowski v. Hospitality Care Ctr. of Hermitage, Inc.*,
   60 Pa. D. & C.4th 474 (Pa. Ct. Com. Pl. 2002).........................................17

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*,
   513 F. Supp. 1100 (E.D. Pa. 1981)..............................................................26

*Zwiercan v. General Motors Corp.*
   58 Pa. D. & C.4th 251 (Phila. Cnty. Sept 11, 2002)...................................22

*Zwiercan v. GMC*,
   No. 99-06-3235, 2002 WL 1472335 (Pa. Ct. Com. Pl. May 22, 2002).........6

## REGULATORY AUTHORITES

*In re Guidelines for Evaluating the Env'll Effects of Radiofrequency
   Radiation*,
   ET Docket No. 93-62, Release No. 96-326, 11 F.C.C.R. 15123 (1996)....................23

## STATUTES

73 Pa. Cons. Stat. §§ 201-1 - 201-9.2...............................................................16

73 Pa. Cons. Stat. § 201-3 ................................................................................23

13 Pa. Cons. Stat. § 2313(a)(1)-(2)......................................................................7

73 Pa. Cons. Stat.§ 2315....................................................................................12

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's response to Defendants' Joint Motion to Dismiss the *Farina* Complaint cannot by sheer force of its rhetoric overcome the inescapable reality that his Complaint does not allege any existing defect or legally cognizable, present injury. For all Plaintiff's hyperbole about the supposed "risks" of RF "irradiation," Plaintiff nowhere identifies any legally cognizable injury, relying instead on intentionally vague claims of "present biological effects" and allegations of "increased risk" of "adverse health effects." The lack of any allegation of legally cognizable injury dooms his claims, even under his theory of economic loss.

The inconsistencies in Plaintiff's response demonstrate that he lacks a coherent theory of defect or cognizable injury, let alone causation. Plaintiff argues both that RF emissions from wireless phones were a "known latent defect" and that Defendants' wireless phones "manifested a defect." Plaintiff contends on the one hand that this case is about "a product that is exposing its customers to radiation that causes *present* biological effects" (Opp. 3-4) but admits on the other hand that his claim centers on the allegation that cell phone use "unquestionably exposes users to *potentially harmful* radiation." (Opp. 1).

For all his attempts to muddy the water, Plaintiff's maneuvering demonstrates why each of his claims fails as a matter of law: "present biological effects" (Opp. 4) are not legally cognizable injuries under Pennsylvania law and, of course, the lack of a headset that is allegedly necessary to protect against a non-injury -- present biological effects -- does not become a compensable loss simply because Plaintiff asks for it. For this overriding reason, the *Farina* Complaint should be dismissed.

1

Plaintiff's individual claims fail for a number of additional reasons.  Plaintiff virtually ignores the allegations of his own complaint, criticizing Defendants for their "chatter of string citations" (Opp. 3) while choosing for his own part to rely on unsubstantiated rhetoric rather than actual decisional law.  As the case law demonstrates, however, each of the substantive counts of Plaintiff's Complaint suffers from critical deficiencies:

- **Breach of Warranty:**  It is black letter warranty law that a plaintiff cannot state a claim without actual loss.  Plaintiff has not shown any actual loss here, and his response identifies none.  Moreover, there can be no breach of express warranty when Plaintiff concedes that the manuals he contends form the "basis of the bargain" disclose precisely the RF emissions challenged by Plaintiff here.  In addition, even if the manuals did not contain these disclosures, Plaintiff has not alleged that he was even aware of these manuals -- which is necessary to constitute a "basis of the bargain" -- before buying the products.

- **UTPCPL:**  Plaintiff has not and cannot allege reasonable reliance, and Plaintiff is simply wrong in contending that reliance is not a required element of a claim under Pennsylvania's Unfair Trade Practice and Consumer Protection Law (UTPCPL).  In addition, Plaintiff has not alleged any ascertainable loss that could support a claim under the UTPCPL.  Plaintiff's only alleged loss – the money necessary to buy a headset – cannot fill this void because Plaintiff purposefully stops short of identifying any legally cognizable injury that having a headset would avoid.  "Present biological effects" are not legally cognizable injuries, and the lack of a headset necessary to avoid non-injuries is not an ascertainable loss.  Moreover, Plaintiff's alleged damages -- a "repair" to the product itself -- is nothing more than a claim for economic loss which cannot be brought under the UTPCPL.

- **Conspiracy:**  Despite Plaintiff's efforts to use this as a catch-all claim that encompasses all Defendants, Plaintiff has failed to allege the existence of an "agreement" to commit a crime or tort -- the *sine qua non* of any conspiracy claim -- or any viable underlying claim that would support this wholly derivative cause of action.

Contrary to Plaintiff's assertions (Opp. 1), Defendants understand and acknowledge that Plaintiff need not "prove" his claim at this stage of the proceedings. But where, as here, Plaintiff fails to make *any* coherent allegations as to the *necessary*

2

elements of the claims alleged, this Court can and should dismiss the claims. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). As explained below, Plaintiff has not pleaded the essential elements of any of the substantive claims asserted in his Complaint. Therefore, the Court should grant Defendants' Motion to Dismiss the *Farina* action.

## ARGUMENT

**I.** **Plaintiff Fails to State Any Viable Claim for Breach of Warranty Against Any Defendant.**

### A. Plaintiff's Express And Implied Warranty Claims Fail Because He Has Not Alleged Cognizable Damages.

Plaintiff has not stated a viable claim for breach of warranty because he has not pled any legally cognizable injury or damages. The central allegation of Plaintiff's Complaint is that using a wireless phone causes "adverse biological effects" and/or "biological injury" that, Plaintiff claims, "in turn, give[] rise to risks to the users' health." (Compl. ¶¶ 46, 56). Tellingly, Plaintiff's response fails to address the numerous cases, cited in Defendants' opening memorandum, demonstrating that "biological effects" or an "increased risk" of such effects is not a cognizable legal injury sufficient to support a warranty -- or any other -- claim. (Mem. 9-11).

Plaintiff cannot end run this flaw by asserting economic damages because he has failed to plead a manifest defect. In his complaint, Plaintiff alleges that wireless phones contain a "uniform *latent* design, materials and workmanship defect" because they present "health and safety risks" in the absence of headsets. (Compl. ¶ 151) (emphasis added). Recognizing that tying his alleged "defect" too closely to *potential* harm dooms his warranty claims, Plaintiff tries to backpedal from his reliance on the "risk of future injury" allegations in his opposition brief:

3

> Here, the defect manifests itself every single time a user
> holds the phone to his or her ear. That exposure to RFR
> causes present biological effects, whether or not those
> effects ultimately manifest themselves in any disease.
> (Opp. 26)

But this definition of "defect" amounts to nothing more than an allegation that

Plaintiff has been injured by the alleged "biological effects" from using his phone, and it

ignores the established Pennsylvania law holding that biological effects are not

compensable, cognizable injuries. *See, e.g., Cauthorn v. Owens Corning Fiberglas*

*Corp.*, 840 A.2d 1028, 1029 (Pa. Super. 2004) (holding that recovery is not permitted

where the "injuries" complained of by Plaintiffs are "unaccompanied by discernible

physical symptoms or functional impairment"); *Giffear v. Johns-Manville Corp.*, 632

A.2d 880 (Pa. Super. 1993) (holding that "pleural thickening, absent disabling

consequences or manifest physical symptoms, is a non-compensable injury and is

therefore not a cognizable claim in the Commonwealth."). Thus, because Plaintiff could

not state a claim based on the potential "injury" he seeks to avoid, Plaintiff certainly

cannot state a claim based entirely on the cost of a device that is supposedly necessary to

prevent that potential non-injury from happening.

In addition, the three Pennsylvania cases Plaintiff cites to support his claim that he

suffered "ascertainable loss" for purposes of the UTPCPL unquestionably require the

dismissal of his warranty claim.[1]   Contrary to Plaintiff's contention, each of these cases

demonstrates that a plaintiff cannot state a claim for breach of warranty on the basis of an

alleged defect unless the defect has manifested and resulted in harm to the plaintiff.  In

---

[1] As discussed in Section II.A, two of those cases (*Grant* and *Zwiercan*) incorrectly hold that reliance is not
a required element of all claims under the UTPCPL.  In addition, none of those cases supports Plaintiff's
claim that a headset allegedly necessary to protect against a future non-injury ("biological effects") is an
ascertainable loss under the UTPCPL.

each, the court dismissed plaintiffs' breach of warranty claim for lack of damages where the plaintiffs had not alleged or shown any manifested defect that resulted in legally cognizable injury.

Plaintiff relies on *Solarz* as the linchpin for his argument that he has adequately alleged cognizable manifest injury and damages. According to Plaintiff, "i[t] did not matter that the unsafe condition of the SUV had not yet caused an accident." (Opp. 29). In fact, the court held precisely the opposite. The court in *Solarz* dismissed the warranty claims of those plaintiffs who claimed a risk of future injury due to the lack of a park-brake interlock but had not experienced harm as a result of the absence of that desired feature. Only the claim of the plaintiffs who alleged a "manifestation of the unsafeness" when their infant daughter "inadvertently shifted the gear from 'park' to 'drive,'" causing the minivan "to roll down the street toward a four way intersection, sideswiping a stop sign" survived. *Solarz v. Daimler Chrysler Corp.*, No. 01-04-2003, 2002 WL 452218, at *1, *5 (Pa. Ct. Com. Pl. March 13, 2002); *see also id.* n.4 (collecting cases, including many cases cited in the Defendants' opening memorandum, stating that "the manifestation requirement" is "the majority position in the United States").

Similarly, in *Grant v. Bridgestone/Firestone Inc.*, No. 01-08-1054, 2002 WL 372941 (Pa. Ct. Com. Pl. Jan. 10, 2002), the court dismissed plaintiffs' warranty claims because the plaintiffs had not themselves experienced a failure of the allegedly "defective" tires (tread separation). *Grant*, 2002 WL 372941, at *1, *5. In rejecting the warranty claim, the court held that "[b]ecause the Plaintiffs [had] not suffered a failure of the allegedly defective tires on their vehicles, their claim for breach of the implied warranty of merchantability is legally insufficient and must be dismissed." *Id.* at *1; *see*

*also id.* at *4 (discussing the "requirement," under Pennsylvania law, "that the defect manifest itself"). And in *Zwiercan v. GMC*, No. 99-06-3235, 2002 WL 1472335 (Pa. Ct. Com. Pl. May 22, 2002), the court dismissed plaintiffs' warranty claim where they claimed their vehicles were unsafe as a result of "defective" front seat design, but had not experienced the future harm they feared -- a rear-end collision and "accompanying harm." *Id.* at *1, *3-4.   Noting that "Pennsylvania is hardly alone in requiring a manifestation of a defect before a breach of warranty claim can be permitted," the court held that "the fact that no defect in the Plaintiff's Vehicle has manifested itself precludes the Plaintiff from proceeding on her breach of warranty claim." *Id.* at *4.

The same reasoning requires dismissal of Plaintiff's warranty claims here. A purported risk of adverse biological effects or an unspecified future harm is not a manifest defect and has not resulted in legally cognizable harm. Pennsylvania law recognizes a specific tort-based cause of action ("medical monitoring") for plaintiffs who claim that exposure to an allegedly toxic substance has increased their risk of adverse health effects in the future. *See Redland Soccer Club, Inc. v. Dep't of the Army*, 696 A.2d 137, 144-47 (Pa. 1997) (discussing requirements of a claim for medical monitoring). As noted in Defendants' opening memorandum, under Pennsylvania law, a plaintiff's exclusive remedy in such cases is to sue for medical monitoring. (*See* Mem. 13). In this case, however, Plaintiff does not and could not, plead the essential elements of that cause of action. *See Redland Soccer Club*, 696 A.2d at 145-46 (setting forth seven essential elements of a claim for "medical monitoring," including exposure to a "proven hazardous substance" that results in a "significantly increased risk of contracting a

6

serious latent disease"). There is no "manifest defect" and no cognizable injury or economic loss to Plaintiff. All of Plaintiff's breach of warranty claims thus fail.

**B.    Plaintiff Does Not State a Claim For Breach of Express Warranty.**

To state a claim for breach of express warranty under Pennsylvania law, a plaintiff must identify an "affirmation of fact or promise" or "description of the goods" made by the seller forming the "basis of the bargain," and must demonstrate that the goods did not conform to the promise or description. 13 Pa. Cons. Stat. § 2313(a)(1)-(2) (2006). Plaintiff's claim for breach of express warranty fails because he has not alleged that he was aware of, let alone relied on, any specific representations or that the product failed to conform to those representations.

In his opposition, Plaintiff characterizes the so-called express warranty as follows:

> The sum total of defendants' express statements that form a warranty include statements that its phones are safe for their intended use, that they meet all applicable standards, and that those standards were based on good science. (Opp. 31)

According to Plaintiff, the statements forming the basis of the bargain "include their manuals and all the materials to which the manuals referred and on which they relied to create the impression that their products were safe for the user." (*Id.* at 32). Aside from the fact that Plaintiff does not identify specific statements constituting the express warranty, Plaintiff's claim fails because he has not alleged that he relied on the amorphous "statements" to which he refers in buying the product. Even more fundamentally, Plaintiff does not allege that the product failed to conform to these representations. To the contrary, Plaintiff concedes that the wireless phones comply with applicable standards.

7

1.    **Plaintiff Has Not Alleged That He Relied On The Purported
Statements Upon Which He Bases His Claim.**

The "basis of the bargain" element of an express warranty claims is "essentially a

reliance requirement." *Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 741, 752 (W.D. Pa.

2004) (quoting *Sessa v. Riegle*, 427 F. Supp. 760, 766 (E.D. Pa. 1977)). "A successful

claim for breach of express warranty must plead [ ] statements [by the seller], ***reliance on***

***behalf of the consumer***, which presumes an ***awareness*** of the warranty, and, finally,

damages." *Yurcic v. Purdue Pharma, L.P.*, 343 F. Supp. 2d 386, 394 (M.D. Pa. 2004)

(emphasis added); *Oppenheimer v. York Int'l,* No. 02-03-4348, 2002 WL 31409949, at *3

(Pa. Ct. Com. Pl. Oct. 25, 2002) (same); *see also Cipollone v. Liggett Group*, 893 F.2d

541 (3d Cir. 1990), *overruled on other grounds*, 505 U.S. 504 (1992).  At a minimum, the

buyer "must have been aware of a seller's statement" for it to become "part of the basis

of the bargain" within the meaning of the UCC. *Parkinson*, 315 F. Supp. 2d at 752

(because there was no evidence that the plaintiffs or anyone else "read, heard, saw or

knew of" the alleged statements, they could not have become part of the "basis of the

bargain"); *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1246 (Pa. Super. 2004)(

appellants could not maintain an express warranty claim where they "were not ***aware of***

the specific . . . warranty that they now seek to enforce . . . when they purchased [the

product].")(emphasis added).

Here, Plaintiff does not allege that he (or any other class member) was aware of

the alleged "statements" referenced in Paragraphs 57 through 60 of the Complaint at the

time of the transactions described in Paragraphs 137 through 140 of the Complaint. (*See*

Compl. ¶¶ 57-60.)    Plaintiff has not pled any facts demonstrating that such "statements"

were part of the "basis of the bargain" in connection with the transactions alleged in the

8

Complaint. Therefore, these alleged "statements" cannot provide the basis for a claim for breach of express warranty against any Defendant.

### 2.   Plaintiff Has Not Alleged a Breach of Any Express Warranty.

In addition to the failure to allege reliance, the Complaint does not allege any "statement" made by any Defendant to which his phones allegedly failed to conform. Plaintiff contends that "the sellers' statements include their manuals *and all the materials to which the manuals referred and on which they relied* to create the impression that their products were safe for the user." (Opp. 32) (emphasis added). The "manual" attached as Exhibit A includes a section entitled "Exposure to Radiofrequency Signals." *See* Exhibit A; (*see also* Compl. ¶ 141). The manual states: "Your wireless handheld portable telephone is a low-power radio transmitter and receiver. When it is ON, it receives and also sends out radiofrequency ("RF") signals." *Id.* The manual then "refers to" the RF exposure limits formally adopted by the FCC in August 1996. *Id.* The manual states that the FCC "guidelines are consistent with the safety standards previously set by both U.S. and international standards bodies." *Id.* The manual then specifically references three specific RF standards developed by national and international standards-setting and/or standards-publishing bodies: (1) ANSI's 1992 standard; (2) NCRP Report 86; and (3) ICNIRP's 1996 statement. *See id.; see also* Report and Order, *In re Guidelines for Evaluating the Environmental Effects of Radiofrequency Radiation*, ET Docket No. 93-62, Release No. 96-326, 11 F.C.C.R. 15123, at ¶¶ 1-2 & n.2 (1996) (explaining that the FCC's RF guidelines are "based on those recommended by ANSI/IEEE and NCRP").

Rather than suggesting that these standards imply the complete absence of scientific debate, the manual explains that "[t]hose standards were based on comprehensive and periodic evaluations of the relevant scientific literature." Ex. A.; (Compl. ¶ 141) (stating that ANSI's 1992 standard, for example, was developed following a review of the "available body of research" by "over 120 scientists, engineers, and physicians from universities, government agencies, and industry"). The manual then "warrants" that "[t]he design of your phones complies with the FCC guidelines (and those standards)." *Id.* The manual does not say anything else about RF exposure or RF safety standards. *See id.*

Indeed, the standards referred to in the manuals that Plaintiff contends are "part of the basis of the bargain" (Opp. 32) identify scientific studies that discuss the asserted "biological effects" Plaintiff alleges Defendants "failed adequately to disclose." (Compl. ¶ 3). For example, in his complaint, Plaintiff identifies alleged "adverse biological effects through: calcium and ion distribution across the cell membrane; melatonin production; neurological function; DNA single and double strand breaks and chromosome damage; enzyme activities; cell stress and gene transcription; and the permeability of the blood brain barrier." (*Id.* ¶ 2). The ICNIRP 1996 statement[2] specifically discusses studies involving exposure to RF: (1) where "there is a suggestion that RF fields may affect DNA directly" including "breaks in brain DNA" (Ex. 1 at p. 589); (2) showing an increase in the activity of ODC, an "enzyme, levels of which are often elevated during cell growth and tumor promotion" (*id.*); (3) suggesting RF may alter the "electrical activity of the brain" (*id.* at 590); (4) may affect "calcium ion

---

[2] *See* International Commission on Non-Ionizing Radiation Protection (ICNIRP), *Health Issues Related to the Use of Hand-Held Radiotelephones and Base Transmitters* (1996), attached as Ex. 1.

mobility in brain tissue" (*id.*); and (5) the "possible genetic effects" of RF exposure (*id.* at 592).   The NCRP 1986 standard[3] devotes an entire chapter to "Interactions with the Blood-Brain Barrier."   (*See* Ex. 2).   ICNIRP noted that "the weight of evidence suggest[s] the RF fields are not genotoxic" (Ex. 1 at p. 589) and NCRP concluded that "there is virtually no warrant for the proposition that [the blood brain barrier] is affected adversely" by RF fields.  (Ex. 2 at 142).  The point is, however, that the "manuals and all the materials to which the manuals referred," such as the standards, refute his claims. (Opp. 32).  Those documents confirm that Defendants disclosed the alleged biological effects from RF exposure discussed in the scientific literature.

Given this, it is not surprising that Plaintiff does not claim that any of the affirmative "statements" in the Defendants' "manuals" were untrue.  The most Plaintiff can come up with is the claim that "[t]hese descriptions" are merely "illustrative of the sorts of promises of safety made by all defendants."  (Opp. 23-24).  But Plaintiff concedes that the industry "has done all that is necessary to comply with the current guidelines." (*See* Compl. ¶ 87).  Nowhere does Plaintiff identify any specific, express representations that Defendants allegedly have breached.

Faced with the lack of any express representations, Plaintiff ultimately contends in his Opposition that his warranty claim is based on *implied* statements in their manuals "that these standards were good science."  (Opp. 32).  Plaintiff's allegations about the "quality of the science" and/or what the Defendants allegedly "knew" about the "quality of the science" do not state a claim for breach of any express warranty.  Simply put,

---

[3] *See* National Council on Radiation Protection and Measurements (NCRP) Report No. 86, *Biological Effects and Exposure Criteria for Radiofrequency Electromagnetic Fields* (NCRP 1986) ["NCRP Report No. 86"], attached as Exhibit 2.

Plaintiff cannot pursue a claim for breach of express or implied warranty based on what Defendants allegedly somehow "implied" about "the science."

### C.     Plaintiff Does Not State a Claim For Breach of Implied Warranty.

Plaintiff's claims for breach of implied warranty likewise fail. As to the claim for breach of implied warranty of fitness for a particular purpose, Plaintiff has not alleged a specific purpose for the cellular telephones apart from their ordinary purpose. To the contrary, Plaintiff admits that he and "the other class members all bought cell phones for the obvious and intended purpose, to make and receive calls." (Opp. 31). Using a product for an ordinary purpose does not give rise to a claim for breach of the implied warranty of fitness for a particular purpose. *See Gall v. Allegheny County Health Dep't*, 555 A.2d 786, 790 (Pa. 1989) (distinguishing "ordinary" from "particular" purpose, noting that a particular purpose "envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.") (quoting 13 Pa. Cons. Stat. § 2315, cmt. 2). Plaintiff does not identify anywhere in his Complaint where he alleged that he planned to use his phone for a particular purpose, notified Defendants of that particular purpose or relied on the seller's recommendation that the product would fit this particular purpose. *Id.* ("A warranty of fitness for a particular purpose is based upon a special reliance by the buyer on the seller to provide goods that will perform a specific use envisaged and communicated by the buyer."); *see also Keirs v. Weber Nat'l Stores, Inc.*, 507 A.2d 406, 410 (Pa. Super. 1986) ("[T]he seller can only be liable under this theory if he knew of the specific purpose the buyer would make of the product and recommended that particular good for such purpose, with the buyer relying on the seller's expertise in making that

12

particular choice.   Nowhere in the pleadings is there any indication that appellant made known explicitly or implicitly a desire to purchase a fire proof jacket.").

Nor does Plaintiff adequately allege a breach of the warranty of fitness for ordinary purposes.   Plaintiff concedes that the cell phones satisfied FCC standards. (Compl. ¶ 87).   Merchantability requires only that products are free from significant defects, that they perform in the way that goods of that kind should perform, and that they are of reasonable quality within expected variations and for the ordinary purpose for which such products are used.   As shown above, Plaintiff has not alleged any existing defect and has not even alleged that the products fail to perform in the way that goods of that kind should perform.

**II.**      **Plaintiff's UTPCPL Claim Fails As a Matter of Law.**

Plaintiff's response makes clear that Plaintiff has not stated a claim under the UTPCPL for four independent reasons.   First, as a threshold matter, because he did not and cannot plead reliance, Plaintiff contends that reliance may be presumed.   Numerous decisions applying Pennsylvania law demonstrate otherwise.      Nor has Plaintiff adequately alleged the other elements of his UTPCPL claim.   Second, Plaintiff has failed to identify any actionable "misrepresentations."   Third, Plaintiff fails to satisfy the requirement of ascertainable loss under the UTPCPL because the alleged "defect" has not resulted in any legally cognizable injury.   Finally, to the extent Plaintiff claims to have suffered "economic" harm -- *i.e.*, the cost of a headset -- the Third Circuit has squarely held that the economic loss doctrine bars claims for purely economic loss under the UTPCPL.   For all these reasons, Plaintiff's UTPCPL claim fails.

13

### A.   Plaintiff Has Failed To Allege Reliance And Is Wrong In Claiming That Reliance May Be Presumed.

Conceding that he has failed to allege actual reliance, Plaintiff argues that "Pennsylvania law presumes reliance." (Opp. 20). Plaintiff is wrong. The Pennsylvania Supreme Court clearly held in *Weinberg v. Sun Company* that all UTPCPL plaintiffs must plead and prove both reliance and causation.   *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001). Although the trial court in *Zwiercan* sought to create an exception for certain non-fraud based claims under the Act, after *Zwiercan*, the Pennsylvania appeals court and federal courts applying Pennsylvania law have continued to recognize that reliance is a requirement for a UTPCPL claim: "The Courts of [Pennsylvania] have consistently held that, to establish a private right of action under the UTPCPL, a plaintiff must demonstrate that he/she detrimentally relied upon the deceptive practice of the defendant and that the plaintiff suffered harm as a result of this reliance." *Toy v. Metropolitan Life Ins. Co.*, 863 A.2d 1, 9 (Pa. Super. 2004), *appeal granted*, 882 A.2d 479 (Pa. 2005).

As the appeals court in *Toy* admonished, "*every plaintiff* asserting a private cause of action under the UTPCPL must demonstrate his/her justifiable reliance on the misrepresentation or wrongful conduct," regardless of which subsection of the statute forms the basis of the plaintiff's claim. *Toy*, 863 A.2d at 11 (citing *Weinberg* and *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425 (Pa. 2004)).   The court in *Toy* specifically rejected appellant's argument that the "level of reliance" that a plaintiff must show "depends upon the specific violations of the UTPCPL alleged in the complaint." *Id.* at 9.[4]

---

[4] *See also Debbs v. Chrysler Corp.*, 810 A.2d 137, 157-58 (Pa. Super. 2002) (reversing trial court's certification of a class of UTPCPL claimants and rejecting argument that "courts may presume reliance" in

Since *Toy,* the Third Circuit also has repeatedly recognized that *all* UTPCPL plaintiffs must plead reliance in order to state a claim under *any* of the statute's various subsections. *Tran v. Metro. Life Ins. Co.,* 408 F.3d 130, 140-41 (3d Cir. 2005) (discussing *Toy* and surveying recent developments in Pennsylvania law); *Santana Prods. v. Bobrick Washroom Equip.,* 401 F.3d 123, 136 (3d Cir. 2005) ("The Supreme Court of Pennsylvania has held that a plaintiff bringing an action under the UTPCPL must prove the common law fraud elements of reliance and causation with respect to *all subsections of the UTPCPL.*") (citing *Weinberg*) (emphasis added).   The published decisions of lower federal courts in Pennsylvania are in accord.   *See Baker v. Family Credit Counseling Corp.,* 440 F. Supp. 2d 392, 412 (E.D. Pa. 2006) ("[I]n order to state a cause of action under *any provision* of the UTPCPL . . . plaintiffs must allege both reliance and causation.") (emphasis added) (citing *Tran* and *Yocca*); *Griffith v. Mellon Bank, N.A.,* 328 F. Supp. 2d 536, 539 n.11 (E.D. Pa. 2004) ("[I]t is well settled that a plaintiff bringing a private cause of action under [the UTPCPL] must establish the elements of common-law fraud.").[5]

Indeed, even the Philadelphia Court of Common Pleas -- the court that issued the *Zwiercan* opinion -- has recognized post-*Zwiercan* that *all* claims under the UTPCPL require plaintiffs to plead and prove reliance. *See Samuel-Bassett v. Kia Motors America, Inc.,* No. 01-01-2199, 2004 WL 2173324, at *6-8 (Pa. Ct. Com. Pl. Nov. 10, 2004) (Bernstein, J.); *see also Cruz v. Roberts,* 70 Pa. D. & C.4th 225, 238-39 [2005 WL

---

nondisclosure cases "where the fraud involves omissions of objectively material information," holding that "[w]e decline to [adopt such a rule] in light of our precedent").

[5] *See also Arnold v. Stein Roe & Farnham,* No. Civ. A. 06-243, 2006 WL 851303 (E.D. Pa. March 30, 2006); *Kondratick v. Beneficial Consumer Disc. Co.,* No. Civ. A. 04-4895, 2005 WL 2314042 (E.D. Pa. Sept. 21, 2005).

1349615] (Pa. Ct. Com. Pl. 2005) (sustaining preliminary objections to UTPCPL and other counts of complaint) (holding that "in order to state a claim under the catchall provision . . . . a plaintiff must prove the elements of common-law fraud") (quoting *Booze v. Allstate Ins. Co.*, 750 A.2d 887, 880 (Pa. Super. 2000)); *Boyd v. Johnson & Johnson*, No. 965 (Control No. 120188), 2002 WL 372959, at *3 (Pa. Ct. Com. Pl. Jan. 22, 2002) (finding plaintiff's UTPCPL claim "legally insufficient" where "it is unclear that the Plaintiff saw or heard any misrepresentation, precluding a finding of reliance, whether justifiable or otherwise"). As the court in *Kia Motors* explained after surveying the Superior Court decisions, "our Appellate Courts have clearly and uniformly defined the law as requiring individualized proof of reliance even under the "catch-all" clause of the UTPCPL unless there exists a 'fiduciary' relationship between the parties." *Kia Motors*, 2004 WL 2173324, at *8. Plaintiff's failure to allege reliance, in itself, requires dismissal of the UTPCPL claims.[6]

**B.    Plaintiff Has Not Alleged Misrepresentation or Fraud.**

Although Plaintiff insists that his UTPCPL claim need not satisfy the pleading requirements applicable to fraud claims, he nevertheless argues that the "core" of his UTPCPL claim is grounded in fraud.  (Opp. 16).  As shown in Section I.B above, however, Plaintiff does not claim that any of the affirmative "statements" in the Defendants' "manuals" was untrue.  To the extent Plaintiff's argument hinges on what

---

[6] Given that the UTPCPL was enacted in 1968, *see* Act of December 17, 1968, P.L. 1224, No. 387, § 9, as amended, 73 Pa. Cons. Stat. §§ 201-1 – 201-9.2, Plaintiff's reliance on cases from the 1930s and 1950s is misplaced. (*See* Opp. 20).  Likewise, Plaintiff's reliance on *Katlin v. Tremoglie*, 43 Pa. D. & C.4th 373 (Pa. Ct. Com. Pl. 1999), is misplaced given the Superior Court's holding in *Debbs*. *See Debbs v. Chrysler Corp.*, 810 A.2d 137, 157-58 (Pa. Super. 2002) (reversing trial court's certification of a class of UTPCPL claimants and rejecting argument that "courts may presume reliance" in nondisclosure cases "where the fraud involves omissions of objectively material information") ("declin[ing] to [adopt such a rule] in light of our precedent").

Defendants "implied" about the science based on the manuals and alleged "statements," that does not state a claim for misrepresentation. Defendants' assessment of the scientific studies and what the science demonstrates cannot form the basis of an actionable misrepresentation. *Hogan v. The Maryland State Dental Ass'n.*, 843 A.2d 902, 908 (Md. Ct. Spec. App. 2004) (dismissing plaintiff's fraud claim because dispute existed as to safety of product and defendant's "assessment of an issue debated in medical, scientific, or technical literature does not give rise to" actionable fraud); *See also Posel v. Home Depot USA*, No. 94-5787, 1995 WL 214454, at *4 (E.D. Pa. April 3, 1995) ("[T]he fraud cause of action does not encompass representations involving individual judgment or opinion, such that 'even though made absolutely, the hearer must know that they can be based only on the speaker's opinion.'").

Given Plaintiff's allegations that all the evidence has not yet been gathered (Compl. ¶ 89) and his repeated references only to the "potential" or "possible" health risks (Compl. ¶¶ 54, 89, 118(e), 128-30, 132, 134), Plaintiff cannot alleged that Defendants' statements on the state of the science are false. *See Hogan*, 843 A.2d at 908 ("The fact that [defendant] has taken the position that such studies have not shown the danger and that the fillings do not pose a significant health risk does not constitute" actionable fraud.); *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 903 (Pa. 1975) (noting that defendant's alleged statements that "you are assured of a safe, dependable helicopter" constituted mere "puffing," not "misrepresentations of material fact"); *Zaborowski v. Hospitality Care Ctr. of Hermitage, Inc.*, 60 Pa. D. & C.4th 474, 487 (Pa. Ct. Com. Pl. 2002) (sustaining preliminary objections to fraud claim where statement consisted of alleged written promise "to provide a safe and comfortable environment for

our residents," finding it "so indefinite and elusive in meaning that the statement does not constitute a representation, but instead is mere puffery"). Nor has Plaintiff pled facts supporting a theory of nondisclosure, since the fact that wireless phones emit RF energy was fully disclosed in the "manuals" referenced in Plaintiff's Complaint. (*See* Section II, *infra*; *see also* Compl., Ex. A).

### C. Plaintiff's Amorphous Allegations Do Not Set Forth An "Ascertainable Loss."

Plaintiff concedes that he must allege "ascertainable loss" to state a claim under the UTPCPL. (Opp. 21). Plaintiff's claim that the cost of a headset constitutes an ascertainable loss is flawed, however, because it ignores the fundamental pleading deficiencies as to the underlying *reason* that Plaintiff claims a headset should have been provided. No doubt well aware of the exclusion, in *Newman* and other decisions,[7] of the scientific evidence allegedly linking wireless phone use and brain cancer, Plaintiff painstakingly avoids alleging that a headset is necessary because he and other users of wireless phones are at an increased risk of developing brain cancer or some other diagnosable disease. Instead, Plaintiff argues in his Opposition that the safety benefit allegedly offered by a headset is the elimination of "biological effects":

> Plaintiff and other cell phone users also have ascertainable losses that include the cost of purchasing a headset that makes the phones as safe as represented by defendants (*eliminating any possible exposures to RFR and adverse and potentially harmful biological effects*) and the difference between cell phones with and without such headsets.

(Opp. 22) (emphasis added). In trying to avoid the causation issues that would arise if this were a personal injury case, Plaintiff is faced with the fact that he has alleged *no*

---

[7] *See Newman v. Motorola, Inc.*, 218 F. Supp. 2d 769 (D. Md. 2002); *Kane v. Motorola, Inc.*, 779 N.E.2d 302, 309 (Ill. App. Ct. 2002); *Motorola, Inc. v. Ward*, 478 S.E.2d 465 (Ga. Ct. App. 1996); *Reynard v. NEC Corp.*, 887 F. Supp. 1500, 1508 (M.D. Fla. 1995).

legally cognizable injury. Even if the "*possible* exposures to RFR and adverse and *potentially* harmful potential biological effects" occurred and could be proven, they are too far removed from actual diseases or other manifest health conditions to constitute legally cognizable injuries. *See, e.g., Cauthorn*, 840 A.2d at 1029 (injuries "unaccompanied by discernible physical symptoms or functional impairment" are not compensable); *Giffear*, 632 A.2d at 884 ("pleural thickening, absent disabling consequences or manifest physical symptoms, is a non-compensable injury"). The law does not provide a remedy to those who seek to avoid unspecified "biological effects."

Given this, even assuming that *Zwiercan, Solarz* and *Grant* correctly apply Pennsylvania's UTPCPL (which they do not), Plaintiff's reliance on those cases is misplaced. The underlying potential injury in each of those cases -- damage to person or property from a car wreck -- is unquestionably a legally cognizable injury. The Pennsylvania cases that *do* resemble Plaintiff's claims -- cases involving alleged exposure to toxic substances -- set forth important policy reasons for distinguishing Plaintiff's claims from the claims in cases such as *Zwiercan, Solarz* and *Grant*.[8]

---

[8] Citing three unpublished trial court decisions, Plaintiff argues that the UTPCPL's "ascertainable loss" requirement permits plaintiffs to recover for a potentially defective product even where the product has not actually failed or caused actual physical injury. However, numerous state and federal courts around the country have consistently declined to adopt this theory of injury, holding that economic "losses" caused by products that may not perform properly in the future are insufficient to support a consumer fraud claim. *See, e.g., Ford Motor Co. v. Rice*, 726 So. 2d 626, 628 (Ala. 1998) (dismissing a statutory suppression claim and noting that "[i]t is well established that 'purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own.'") (quoting *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y. 1997)); *Yu v. IBM*, 732 N.E.2d 1173, 1177 (Ill. App. Ct. 2000) ("As plaintiff's claims of consumer fraud, deceptive trade practices and negligence [for potential future computer failure] require actual injury or damage, we hold that plaintiff's claims constitute conjecture and speculation."); *Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 128 (N.Y. App. Div. 2002) (dismissing consumer fraud claim when plaintiffs "have not been involved in any accidents and have not suffered any personal injuries or property damage"); *see also In re Bridgestone/Firestone Tires Prods. Liab. Litig*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("Plaintiffs describe the injury as financial rather than physical and seek to move the suit out of the tort domain and into that of contract . . . and consumer fraud . . . . [M]ost states would not entertain the sort of theory that plaintiffs press."); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) ("Similarly, the plaintiffs claim

This case is fundamentally one involving exposure to an allegedly toxic substance -- RF emissions from wireless phones -- that allegedly increases Plaintiff's future risk of "adverse health effects." Pennsylvania, like many other jurisdictions, recognizes the inherently speculative nature of such claims. Thus, "Pennsylvania courts traditionally have been reluctant to permit remedies in tort actions absent actual injury, particularly where the plaintiff sought damages for increased risk of future harm." *Redland Soccer Club*, 696 A.2d at 143. Accordingly, Pennsylvania has adopted stringent pleading and proof requirements for this situation in the form of a claim for medical monitoring. Thus, in *Redland Soccer Club* the Pennsylvania Supreme Court held that a medical monitoring plaintiff must demonstrate, *inter alia*, exposure to a "proven hazardous substance" that results in a "significantly increased risk of contracting a serious latent disease." *Id.* at 145. These requirements are unquestionably pleading requirements. *See Walter v. Magee-Womens Hosp. of UPMC Health Sys.*, 876 A.2d 400, 406 (affirming dismissal for failing to allege facts necessitated by *Redland*).

Although Plaintiff does not seek medical monitoring as his damages, the underlying theory of this Complaint -- exposure to an allegedly toxic substance and an increased risk of future adverse health effects -- is not distinguishable from the allegations that led to adoption of the stringent pleading and proof requirements in *Redland*. Yet Plaintiff only alleges exposure to a ***potentially*** hazardous substance rather than to a "***proven*** hazardous substance," and he alleges potential "harmful ***biological effects***" rather than a potential "serious ***latent disease***." Allowing Plaintiff to state a

Wyeth violated the [Texas Deceptive Trade Practices Act] by failing to issue warnings sufficient to advise injured users, but then concede they were not among the injured. Such wrongs cannot constitute an injury in fact.").

claim under these circumstances simply cannot be squared with the limitations placed on the toxic exposure claim in *Redland*. Plaintiff, in other words, cannot properly allege an ascertainable loss in this context without, at a minimum, alleging that he and the class members have been exposed to a proven hazardous substance and are at significantly increased risk of contracting a serious latent disease. Plaintiff cannot evade his burden by labeling his claim for increased risk as one of unidentified, unmanifested present "biological effects," and then calling the cost of a headset allegedly necessary to avoid those effects an "ascertainable loss." There is no known defect, no ascertainable loss, and no claim under the UTPCPL.

**D.     Plaintiff's UTPCPL Claim is Barred by the Economic Loss Doctrine.**

In arguing that he has adequately pled an "ascertainable loss" under the UTPCPL, Plaintiff relies on portions of *Zwiercan* and *Grant*, in which the court refused to apply the economic loss doctrine to bar plaintiffs' UTPCPL claims. Plaintiff ignores the fact that the portions of those opinions concerning the application of the economic loss doctrine to UTPCPL claims were inconsistent with the Third Circuit's decision in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), which predicted that the Pennsylvania Supreme Court would apply the doctrine to *bar* claims under the UTPCPL for purely economic loss. Because there has been no conflicting decision by the Pennsylvania Supreme Court and because the Fourth Circuit has not held to the contrary, this Court should follow *Werwinski*. *See In re Am. Honda Motor Co., Dealerships Realtors Litig.*, 941 F. Supp. 528, 536-37 (D. Md. 1996) the court would be bound to follow the Fourth Circuit in the event of a conflict with the law of another circuit); *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 547 (E.D. Pa. 2006) ("[A] federal district court is bound by Third Circuit precedent on state law issues unless the Pennsylvania Supreme Court

subsequently says otherwise.") (applying Third Circuit's holding even though state superior court disagreed with that holding) (quoting *Choice v. Option One Mtg. Corp.*, No. 02-6626, 2003 WL 22097455, at *8 (E.D. Pa. May 13, 2003)).

Moreover, the *Werwinski* decision has been cited favorably by a Pennsylvania appellate court. *See Debbs v. Chrysler Corp.*, 810 A.2d 137, 164 n.32 (Pa. Super. 2002).[9] Pennsylvania courts have also relied on *Werwinski* to apply the economic loss doctrine in non-UTPCL cases. A Pennsylvania appellate court used the *Werwinski* decision to apply the economic loss doctrine to block a "no-injury" auto claim under the Storm Water Management Act. *See Adams v. Copper Beach Townhome Cmtys., L.P.*, 816 A.2d 301, 305 (Pa. Super. 2003). In addition, many Pennsylvania courts have relied on the economic loss doctrine to bar negligence claims in breach of contract actions. *See Nufeeds, Inc. v. Westmin Corp.*, No. 3:CV-04-1071, 2006 U.S. Dist. LEXIS 21030, at *25-26 (M.D. Pa. Apr. 17, 2006) (collecting cases).

Indeed, Pennsylvania courts strongly adhere to the economic loss rule, requiring plaintiffs to bring actions for purely economic loss in contract and warranty only. *See REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 132-33 (Pa. Super. 1989) (en banc) (adopting the economic loss doctrine analysis established by the United States Supreme Court in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986) and holding that "Pennsylvania's breach of warranty law supplies a suitable framework for regulating and enforcing the expectations and obligations of the parties as to product

---

[9] The decision has been questioned by district courts and was not followed in the unpublished *Zwiercan* case on which Plaintiff relies. *See Seward v. Certo*, No. 05-6363, 2006 U.S. Dist. LEXIS 4038 (E.D. Pa. Feb. 2, 2006); *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, MDL-1105, 2003 U.S. Dist. LEXIS 25664 (D. Mass. May 20, 2003) (interpreting Pa. law); *O'Keefe v. Mercedes-Benz USA*, 214 F.R.D. 266 (E.D. Pa. 2003); *Zwiercan*, 2002 WL 31053838, at *7. *But see Heindel v. Pfizer*, 381 F. Supp. 2d 364, 384-85 (D.N.J. 2004) (following *Werwinski*). These cases did not address, however, the binding nature of the Third Circuit's decision.

performance."). Imposing tort liability in an action for economic loss would inappropriately "erode the important distinctions between tort and contractual theories." *Id.* The *Werwinski* decision is consistent with these policy rationales. The economic loss rule bars Plaintiffs' claims under the UTPCL for purely economic loss.

### E.   Trade Associations Are Not Subject to Liability Under the UTPCPL

Finally, even if the Court finds that Plaintiff has stated a claim under the UTPCPL against one or more Defendants, Plaintiff cannot sue the trade associations under the UTPCPL. Claims under the UTPCPL are limited to transactions in "trade or commerce." 73 Pa. Cons. Stat. § 201-3 (2006); *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646-47 (Pa. Super. 1999) (stating that "[i]n order to prevail under the UTPCPL," a plaintiff must prove, *inter alia*, that "the transaction between plaintiff and defendant constituted 'trade or commerce' within the meaning of the UTPCPL"). The two cases cited by Plaintiffs involve not trade associations, but entities with direct involvement in the transaction in trade or commerce with the plaintiffs. *See Commonwealth by Creamer v. Monumental Props.*, 329 A.2d 812 (Pa. 1974) (landlords renting property to plaintiffs); *Clugston v. Nationwide Mut. Ins. Co.*, No. 3:05-CV-2680, 2006 WL 1290450 (M.D. Pa. May 10, 2006) (insurers who decline insurance coverage). Therefore, as argued in the opening memorandum, Plaintiff cannot, as a matter of law, state a UTPCPL claim against the trade association Defendants. *Schwarzwaelder v. Fox*, 895 A.2d 614, 620 (Pa. Super. 2006) (upholding dismissal of UTPCPL claim on defendant's preliminary objections).

## III.   Plaintiff's Claim for Civil Conspiracy Fails.

Plaintiff admits that his standing against the majority of the Defendants named in the Complaint is entirely dependent upon his civil conspiracy claim. (Opp. 4-5). Plaintiff further admits that his conspiracy claim is based on the alleged conduct of the

Defendant trade associations. (Opp. 5-8). A claim for civil conspiracy, however, cannot stand alone, and Plaintiff has failed to state a claim for any underlying tort on which his putative claim for civil conspiracy might be based. Moreover, membership in a trade association is an insufficient basis on which to predicate a claim for civil conspiracy. Finally, Plaintiff has failed to plead any agreement between the parties.

### A. Civil Conspiracy Is Not a Stand-Alone Cause of Action.

Under Pennsylvania law, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Pelagatti v. Cohen*, 536 A.2d 1337, 1341-42 (Pa. Super. 1987). "The rule that civil conspiracy may not exist without an underlying tort is a common one." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405 (3d Cir. 2000). As the Third Circuit has noted, "we are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct.'" *Id.* at 405-06 (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 & n.7 (3d Cir. 1999)). In fact, the rule that a civil conspiracy cannot stand alone is so strong in Pennsylvania that in *Boyanowski*, the Third Circuit applied it to *vacate* a jury verdict in favor of the plaintiffs on their conspiracy claim where the jury had found against the plaintiffs on the underlying tort. *See Boyanowski*, 215 F.3d at 405-07 ("It is sensible that the rule requiring the existence of an underlying tort at the pleading stage similarly requires that the tort be proven if a civil conspiracy claim is to prevail."). As a result, Pennsylvania courts have routinely granted motions to dismiss claims for civil conspiracy at the pleadings stage where the underlying claims fail to survive a threshold motion to dismiss. *See, e.g., McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000); *Pelagatti v. Cohen*, 536 A.2d at 1341-42; *Nix v. Temple Univ.*, 596 A.2d 1132, 1137 (Pa. Super. 1987). Because each of

24

Plaintiff's underlying claims in this litigation fails, this Court should also dismiss Plaintiff's claim for civil conspiracy.

**B.      Plaintiff's Complaint Does Not Plead An Unlawful "Agreement" As Required to State a Claim For Civil Conspiracy.**

A cause of action for civil conspiracy requires, *inter alia*, that two or more persons enter an agreement to commit an unlawful act or to perform an otherwise lawful act by unlawful means. *Burnside v. Abbott Labs.*, 505 A.2d 973, 980 (Pa. Super. 1985); *Lowe v. Tuff Jew Prods.*, No. 04-01-1112, 2006 WL 1791351, at *5 (Pa. Ct. Com. Pl. June 7, 2006) ("To properly present a claim of conspiracy, Plaintiff must demonstrate that each Defendant entered into an unlawful agreement for the express purpose of committing either a criminal act or an intentional tort.") (citing *Burnside* and dismissing conspiracy claim on grounds that "[b]ald, conclusory allegations are insufficient to support a claim for conspiracy"). Here, Plaintiff's complaint does not contain allegations of any agreement to commit an unlawful act or to perform any otherwise lawful act by unlawful means. In fact, Plaintiff utterly fails to allege any facts from which a court could reasonably infer that the Defendants entered an agreement to suppress information about the alleged risks of WHHPs for the purpose of inducing consumers into purchasing WHHPs without headsets. Therefore, the Court must dismiss Plaintiff's claim for civil conspiracy.[10]

---

[10] The Complaint also fails to plead malice, which is an essential element of a claim for civil conspiracy. (*See* Mem. 26-28). Under Pennsylvania law, an action for conspiracy "will lie only where the *sole* purpose of the conspiracy is to cause harm to the party who claims to be injured." *Spitzer v. Abdelhak*, No. 98-6475, 1999 WL 1204352, at *9 (E.D. Pa. Dec. 15, 1999) (emphasis added) (applying Pennsylvania law). Thus, "malice requires an allegation that the sole purpose of the conspiracy was to injure the Plaintiffs." *Id.* Although Plaintiff devotes three pages to trying to convince this Court that he has adequately alleged malice (Opp. 9-10), his opposition brief ignores the fact that his own allegations that Defendants acted in their economic interests (Compl. ¶ 133) defeats a finding that they have adequately alleged malice under Pennsylvania law. *See Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472-73 (Pa. 1979); *Bristol Township v. Independence Blue Cross*, No. 01-4323, 2001 WL 1231708, at *6 (E.D. Pa. Oct. 11, 2001).

## C.     A Claim for Civil Conspiracy Cannot Be Based on Defendants'
##        Alleged Membership in a Trade Association.

Plaintiff does not dispute that he bases his civil conspiracy claim almost entirely

on allegations that the two trade association Defendants, of which some corporate

Defendants are allegedly members and through which those corporate Defendants

allegedly acted, made false and misleading statements about the safety of WHHPs and

concealed evidence that allegedly showed the risks of WHHPs.  Yet, even when a trade

association or some of its members have participated in a conspiracy, alleged mere

membership in the trade association is insufficient to establish that any member was

involved in the conspiracy. *Pfizer Inc. v. Giles (In re Asbestos Sch. Litig.)*, 46 F.3d 1284,

1290 (3d Cir. 1994); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 513 F.

Supp. 1100, 1149 (E.D. Pa. 1981) (citations omitted).  If the trade association has a

legitimate purpose, courts will not assume that the meetings the association held involved

activities related to the alleged conspiracy.[11]  *Petruzzi's IGA Supermarkets, Inc. v.

Darling-Delaware Co., Inc.*, No. 86-0386, 1992 WL 212230, at *12 (M.D. Pa. July 31,

1992) (citing *Tose v. First Nat'l Bank*, 648 F.2d 879, 894 (3d Cir. 1981); *Amer.

Structures v. Fid. & Deposit Co.*, 545 F. Supp. 1021, 1026 (E.D. Pa. 1982); *In re Beef*

---

The cases cited by Plaintiff are also inapposite; neither supports the proposition for which they are cited.  In *Burnside v. Abbott Labs.*, the Court dismissed plaintiff's civil conspiracy claim for failure to adequately plead an "agreement."  *See* 505 A.2d at 980-81.  Thus, the Court did not address the sufficiency of plaintiff's allegations of malice.  *See id.*  In *Reading Radio, Inc. v. Fink*, 833 A.2d 199 (Pa. Super. 2003), the Court entered judgment for the plaintiff on two underlying intentional torts (breach of fiduciary duty and intentional inference with contractual relations) and also awarded punitive damages for the defendant's "outrageous" conduct.  *See id.* at 211-12 & 214.  *Reading Radio* therefore undoubtedly involved allegations sufficient to establish the essential element of malice.

[11] Even if an association exists solely for illegal purposes, a court will not impose liability on a mere member.  *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982) ("For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims.").

*Indus. Antitrust Litig.*, 713 F. Supp. 971, 976 (N.D. Tex. 1988)).   Instead, the plaintiff must make specific allegations that the alleged co-conspirators entered an ***agreement*** that involved ***knowing participation in wrongful conduct*** via, for example, "written agreements, meetings, and other communications." *In re Asbestos Sch. Litig.*, 46 F.3d at 1292.   Absent allegations of such an agreement, imposing liability based on membership in an association violates the First Amendment. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 931 (1982).

Here, Plaintiff's assertion in his response that "[t]here would be no chance for any single cell phone company to perpetuate this deception individually" is a microcosm for his complaint generally: rife with unsupported assumptions such as this one, devoid of facts.   Taking this naked assumption as fact, Plaintiff proceeds to list alleged acts of the trade association Defendants that Plaintiff claims were tortious or criminal and asserts that the mere membership of some corporate Defendants in the trade associations makes the corporate Defendants liable in conspiracy for the statements.[12]   Even ifPlaintiff's allegations about the trade association Defendants' statements were true, Plaintiff's complaint is devoid anyrequisite allegations that the corporate Defendants entered into agreements with the trade association Defendants or one another to commit the underlying acts.   The complaint lacks any allegations that the corporate Defendants entered any written agreements with the trade associations or one another, or engaged in other communications with the trade associations or one another as part of a conspiracy to "conceal their knowledge of the dangers of [WHHPs] from the public." *In re Asbestos Sch. Litig.*, 46 F.3d at 1292.

---

[12] (*See* Compl. ¶ 67) (conclusorily alleging that "many of the defendants" are members of "CTIA and TIA, as well as, [sic] the CDMA Development Group, and the Mobile Manufacturers Forum").

Plaintiff's allegations that Defendants' business practices are similar is irrelevant. Under Pennsylvania law, allegations of "conscious parallelism [are] not sufficient to establish [] a civil conspiracy." *In re Asbestos Sch. Litig.*, 46 F.3d at 1292; *see Burnside*, 505 A.2d at 981-82 (dismissing conspiracy claim where the "complaint contain[ed] no averments of meetings, conferences, telephone calls, joint filings, cooperation, consolidation, or joint licensing) ("The plaintiffs have alleged no more than a contemporaneous and negligent failure to act.").[13]

Finally, Plaintiff's reliance on *Baker v. Family Credit Counseling Corp.*, 440 F.Supp. 2d 392, 416-17 (E.D. Pa. 2006), to support his concept of industry-wide conspiracy is misplaced. (Opp. 8). In *Baker*, plaintiffs were consumers who had enrolled in debt management plans with either of two of the defendants. These two defendants would encourage plaintiffs to sign up for debt management plans, whereby they would charge fees and then fail to actually assist consumers with their debts, among other allegedly fraudulent practices. The court allowed plaintiffs to pursue fiduciary duty claims against other defendants (corporations and two individuals) based on civil

---

[13] Plaintiff's citations to *United States ex rel. Tyrone Hospital, Inc.* and *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.* for the proposition that acts of one co-conspirator may be imputed to other co-conspirators are irrelevant here. First, Pennsylvania law did not apply to the conspiracy claims in either case. *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) (applying New Jersey law); *United States ex rel. Bartlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113, 123 (W.D. Pa. 2006) (applying federal law). Even assuming that *Morganroth* and *Tyrone Hospital* reflect Pennsylvania's law, both cases make clear that the plaintiff must first establish that the alleged co-conspirators entered an agreement. *Morganroth*, 331 F.3d at 414-15 (noting that a necessary element of civil conspiracy is that the alleged co-conspirators reached an agreement) ("*[I]f* the defendants and DeLorean *agreed* to the conspiracy but all the overt acts in furtherance of the conspiracy were committed by DeLorean himself, defendants would still be liable for civil conspiracy.") (emphasis added); *Tyrone Hosp.*, 234 F.R.D. at 124 (holding that plaintiff's conspiracy claim failed because plaintiff failed to establish the "essence" of a conspiracy claim, an agreement between the alleged co-conspirators). As noted earlier, an agreement is an essential element of civil conspiracy under Pennsylvania law. *Burnside v. Abbott Labs.*, 505 A.2d 973, 980 (Pa. Super. 1985). Consequently, unless Plaintiff first presents sufficient evidence of an agreement, which Plaintiff has not, the court need not determine whether to impute the overt acts of one alleged co-conspirator to another alleged co-conspirator.

conspiracy, despite plaintiffs' failure to allege a direct relationship with any of the other defendants. Unlike here, plaintiffs in *Baker* did not seek standing against the entire debt management services industry based on the purchase of services from certain members of that industry. Rather, plaintiffs challenged only the illegal practices of a single interrelated subset of the larger industry. *See id.* at 399-400. Moreover, the defendants in *Baker* were alleged to have shared administrative services, commingled and received money obtained by each other, shared office space and addresses, and were even founded and run by one or both of the two individual defendants. *Id.* at 399-400, 417-18. Here, in contrast, Defendants are separate and distinct corporate entities, who not only do not share administrative services, profits, office space or overlapping founders or directors, but who have wholly separate business models and directly compete against each other within the industry. Thus, the *Baker* case offers little, if any, support for Plaintiff's industry-wide conspiracy theory.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Defendants' opening memorandum, Defendants respectfully request that their motion to dismiss be granted and that the *Farina* action be dismissed with prejudice.

Respectfully submitted,

_____/s/_____
Paul F. Strain, Esquire
VENABLE LLP
Two Hopkins Plaza
Suite 1800
Baltimore, MD  21201
(410) 244-7400

_____/s/_____
Michael E. Yaggy, Esquire
DLA PIPER RUDNICK GRAY CARY US LLP
6225 Smith Avenue
Baltimore, MD  21209

*On Behalf of All Properly-Served
Defendants except LG Electronics
MobileComm U.S.A., Inc.*