25april07wireless

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF MARYLAND

 3

 4

 5   IN RE WIRELESS TELEPHONE
     RADIO FREQUENCY EMISSIONS      MDL-01-1421
 6   PRODUCTS LIABILITY LITIGATION

 7

 8

 9
                                April 25, 2007
10
                                Baltimore, Maryland
11

12

13       The above-entitled case came on for a motions

14   hearing before the Honorable Catherine C. Blake,

15   United States District Judge

16

17                   A P P E A R A N C E S

18

19   FOR PLAINTIFF FARINA:

20         Kenneth A. Jacobsen, Esquire
           Michael D. Donovan, Esquire
21         H. Russell Smouse, Esquire

22
     (NOTE:  Not all counsel who were present have been
23         listed.)

24

25   Gail A. Simpkins, RPR
     Official Court Reporter
```

2

```
 1
     FOR THE DEFENDANTS:
 2
```

25april07wireless

```
        Seamus C. Duffy, Esquire
3       Terrence J. Dee, Esquire
        Jane Fugate Thorpe, Esquire
4       John H. Beisner, Esquire
        M. King Hill, III, Esquire
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
1                   P R O C E E D I N G S
2           THE CLERK:  The matter now pending before this
3     Court is Civil Docket Number MDL-01-1421, In Re:
4     Wireless Telephone Litigation.
5           Counsel, please identify yourselves for the
6     record.  This matter now comes before the Court for
```

25april07wireless
```
 7   the purpose of oral argument.
 8          MR. DUFFY:  Good morning, Your Honor, Seamus
 9   Duffy for AT&T Mobility.
10          MR. BEISNER:  Good morning, Your Honor, John
11   Beisner for the Verizon units.
12          MR. DEE:  Good morning, Your Honor, Terry Dee on
13   behalf of Motorola.
14          MR. HILL:  Good morning, Your Honor, Chip Hill
15   for Verizon, and today, Your Honor, Mr. Beisner and
16   Mr. Dee will be doing the arguing for the defendants.
17          THE COURT:  Okay.
18          MR. JACOBSEN:  Good morning, Your Honor, Kenneth
19   Jacobsen on behalf of Plaintiff Farina in the Farina
20   matter.
21          MR. DONOVAN:  Good morning, Your Honor, Michael
22   Donovan on behalf of Plaintiff Farina as well.
23          THE COURT:  Okay.
24          MR. SMOUSE:  Good morning, Your Honor, Russell
25   Smouse on behalf of Plaintiff Farina, and arguing this
```

                                                     4

```
 1   morning for the plaintiff will be Mr. Jacobsen and Mr.
 2   Donovan, both from Philadelphia, members of the
 3   Pennsylvania Bar.
 4          THE COURT:  All right.  Thank you very much.
 5   Glad to have everybody here.
 6          I will apologize to the extent for which the
 7   Court is responsible for the difficulty getting going
 8   this morning.  We had some problems relating to people
 9   who wished to be heard or at least hear I guess the
10   proceedings by phone.
11          My understanding is that there are some people
```

25april07wireless

12      now listening by phone and that as long as we all keep
13      our voices up and speak into our respective
14      microphones as directly as possible, they will be able
15      to hear what's going on.  I hope that is correct.
16          We have a couple of motions to be heard on
17      today.  I thought that I would start by just briefly
18      running through kind of my tentative thoughts about
19      what the issues are, and then you all can tell me
20      whether I am right or wrong or what I have left out.
21          One set of motions relates to, I'll still call
22      it remand, but whether there should be a suggestion of
23      remand to the MDL Panel for the Farina action and for
24      the Louther action, which is still pending.
25          My understanding is that the class action, the

5

1       Naquin -- I'm never sure if I am pronouncing it
2       correctly -- the Naquin class action in Louisiana has
3       been dismissed voluntarily, although without
4       prejudice.
5           So that right now what is in front of me is
6       simply the Farina class action, which is a
7       Pennsylvania statewide class action asserting causes
8       of action under Pennsylvania law, and the individual
9       plaintiff's action from Florida.
10          They are distinct actions, kinds of actions.  It
11      seems to me that it's somewhat in the same position
12      that it was when I did a suggestion of remand for
13      Naquin and Louther, only, of course, to have Farina
14      reappear shortly after that.
15          Now on the other hand, I recognize that these

Page 4

25april07wireless

16    cases seem to come and go.  It's not entirely clear to
17    me why Naquin and I guess Pinney at an earlier point,
18    why they have been dismissed, what is the likelihood
19    of them being refiled.  Obviously one would not want
20    to send this back through the MDL system and then have
21    another class action pop up and sort of get back into
22    this kind of ping-pong mode that we seem to be in.
23        And there may be other issues that people want
24    to advance for why it should stay here or why it
25    should go back, but that's my first thoughts on the

6

1     first set of motions, if you will.
2         Of course, the plaintiffs have a motion to
3     remand to the state court in Pennsylvania.
4         There are a number of issues.  First, just in
5     order, I'll take what I call the timeliness issue.
6         Plaintiffs are contending that the defendants'
7     motion, the LG motion, excuse me, notice of removal
8     was too late, but the defendants counter that with
9     saying that the plaintiffs' motion for remand was too
10    late, and it does appear that it --
11        The motion to remand was filed April, I think
12    April 7, 2006, not November.  But April 7, 2006 would
13    be the operative date in front of the judge in
14    Pennsylvania.  That was more than 30 days after the
15    notice of removal, which I think was something like
16    February 17, 2006, if I'm remembering these dates
17    right.
18        I can understand that things may have been
19    somewhat confusing, but I think in fact it's fairly
20    clear that even the pendency of the conditional

25april07wireless

21    transfer order doesn't affect the pretrial
22    jurisdiction of the federal court in Pennsylvania, and
23    the judge there certainly could have ruled on the
24    remand motion.  It was not -- it doesn't appear to me
25    it was timely filed.  So that I think would preclude

7

1    me, if I were ruling on it, from even getting to the
2    question of whether the notice of removal was filed
3    late.
4        One would then come to the issues of removal and
5    jurisdiction under CAFA.  There's an initial question,
6    of course, whether it applies at all.  Was the action
7    commenced after February 18, 2005?  That would be as
8    to the new defendant, LG.
9        It seems to me from the circuits that have
10    looked at it, and I don't believe either the Fourth or
11    the Third have specifically yet, that there's pretty
12    much of a consensus that you look to state law for
13    your definition and your procedural rules on
14    commencement and relation back.
15        It seems to me that the Pennsylvania applicable
16    rule is 1033, I think, and relates to amendments.  It
17    seemed to me, again, the general consensus approach,
18    and what seems to be consistent with Pennsylvania, is
19    if you've got an amendment that's just correcting a
20    misnomer, the defendant knew or should have known that
21    they would have been named as a defendant, then you
22    may be able to have it relate back, have the amendment
23    relate back.
24        The difficulty here is, and assuming that that's

Page 6

25april07wireless
25      what happened with the third amended complaint, the

                                                          8

1       second amended complaint added LG.  As far as I can
2       see, LG was an entirely new defendant as of the second
3       amended complaint, which I think was December of 2005.
4       So it's after CAFA took effect.
5            The defendant has the initial burden to go
6       forward and show removal of jurisdiction under CAFA.
7       That I don't think anybody is actually challenging in
8       terms of -- I could be wrong -- minimal diversity and
9       the amount being over $5 million.  But the plaintiffs
10      then say that the local controversy exception applies.
11           Again it appears, I don't know that the Fourth
12      Circuit or the Third has spoken, but the circuits that
13      have addressed it seem to think that the burden is on
14      the plaintiff to show that that exception applies.
15           I'm not sure it wouldn't necessarily, depending
16      on the various factors, make a difference where the
17      burden was, but there are at least four things to look
18      at.
19           Are two-thirds, at least two-thirds of the
20      plaintiffs, members of the class from that state?  I'm
21      going to assume that they are.
22           My biggest question is, I guess it's the second
23      one, an in-state defendant, a Pennsylvania defendant
24      from whom some significant relief is sought.
25           It's not clear to me that there is an in-state

                                                          9

1       defendant.  It appears that Comcast Metrophone, which
2       had been identified as a Pennsylvania defendant, is no
                            Page 7

25april07wireless

3       longer there in the second or third amended complaint.

4       So I'm not sure that we have a Pennsylvania defendant.

5              If there is one, there are interesting questions

6       about how you define significant relief and principal

7       injuries, which we can get to.

8              There is also a question of whether prior to I

9       think it's April 19, 2001, the filing date in Farina,

10      whether there had been a similar class action filed.

11      There was some reference to the Dahlgren case, but I

12      don't have the date of filing.  So if we are going to

13      get to that issue, I'll need some more information.

14             Then there was the mandate rule.  It seems to me

15      that the mandate rule does not really apply.  It might

16      apply in terms of the citizenship of the plaintiffs,

17      but it seems to me there is, number one, changed law

18      since Pinney, which is we're now looking this under

19      CAFA jurisdiction, which is different from ordinary

20      diversity jurisdiction.

21             Again, with the dismissal of Comcast, unless I'm

22      missing something, I think that also, that's a

23      significant fact, if you will, or evidence that would

24      affect the operation of the mandate rule.  So I don't

25      see at this point that the mandate rule determines the

                                                              10

1       question of jurisdiction under CAFA.

2              So that's where I am tentatively.  I am more

3       than ready to have other things pointed out to me, be

4       persuaded one way or the other what's right or wrong,

5       but that's what I have gathered so far from your

6       papers and your briefing, which I appreciate.

25april07wireless

7          So I guess I'll start with the plaintiffs,

8     whoever wants to talk first on either issue.

9          MR. JACOBSEN:  I, Kenneth Jacobsen, will, Your

10    Honor.

11         Your Honor, just by way of clarification, there

12    also has been a motion to dismiss the third amended

13    complaint on the merits --

14         THE COURT:  Yes.

15         MR. JACOBSEN:  -- a substantive motion that was

16    filed, which I did not hear Your Honor mention and I

17    didn't know --

18         Mr. Donovan is prepared to address that today,

19    and we had understood that would be on the Court's

20    agenda for today.  But I just wanted to highlight that

21    to Your Honor, that that was among the motions that

22    had been filed that the parties, I believe defendants

23    and plaintiffs, were prepared to address today as

24    well, if Your Honor were inclined to hear argument on

25    that.

                                                        11

1          THE COURT:  Were defendants prepared to address

2     that?

3          MR. DEE:  No, Your Honor.  Our understanding was

4     just the remand issues were going to be addressed

5     today.

6          THE COURT:  Actually, my understanding is it was

7     just the remand.

8          MR. JACOBSEN:  We misunderstood, and Mr. Donovan

9     came down and will now be a spectator.

10         MR. DONOVAN:  I have to subtract my time, Your

11    Honor.

25april07wireless

12    THE COURT:  Okay.

13    MR. JACOBSEN:  Your Honor, thank you very much.

14    Your Honor, addressing the suggestion of remand

15    first, because that's the one that the Court mentioned

16    and that's the one that we believe has priority here,

17    Your Honor is absolutely correct in terms of where we

18    are now as compared to where we were more than a year

19    ago, on February 15, 2006, when Your Honor did in fact

20    enter a memorandum suggesting remand to the Panel of

21    the Naquin and the Louther case.

22    The Panel in fact accepted that suggestion and

23    the Panel in fact entered a conditional remand order

24    on the strength of that suggestion before the

25    additional removals took place and all of these cases

12

1    came back to you.  Of course, with that conditional

2    remand order, the defendants would have had an

3    opportunity had that not been vacated to have

4    challenged that and to raise the issues, some of which

5    I'm sure that they are going to be raising here this

6    morning.

7    But let's see what the Court said, and I'm sure

8    Your Honor is familiar with your decision in that

9    case.  Here's what the Court said in that decision.

10    Only one class action now remains.  That's the

11    situation now.  In fact, it's not a national class

12    action like Naquin.  It's a Pennsylvania local, state

13    class action brought under Pennsylvania law by a

14    Pennsylvania plaintiff asserting claims under

15    Pennsylvania law.  So it's a much narrower case than

25april07wireless

16     even the one that the Court had before it in February

17     when it issued its decision.

18          The Court went on to say while there is also a

19     single-plaintiff case, Louther, the issues it presents

20     are significantly narrower, narrower, I'm sorry, than

21     those in Naquin.  Louther claims that use of an AT&T

22     Model 3810 cell phone from 1995 to 1998 caused James

23     Louther to die of a brain tumor in 2001.  In Naquin, a

24     purported nationwide class sues multiple defendants

25     for exposing wireless cell phone users to various

13

1      alleged health dangers of radio frequency radiation

2      without providing headsets.

3           That is exactly the situation that we are in

4      today, and we certainly agree that the Louther case

5      and the issues in Louther are significantly narrower.

6           Your Honor went on to conclude, thus, much of

7      the work remaining to be done is case-specific.

8           A year ago, Your Honor, those were your

9      findings, and those findings apply with equal force

10     today.  In fact, I would suggest again, since we are

11     dealing with a Pennsylvania state case and not a

12     national class, it's even more case specific than it

13     was a year ago, certainly not less so.

14          Your Honor, based on those conclusions,

15     indicated that it was appropriate to suggest remand,

16     and Your Honor did that, citing the Baseball Bat

17     litigation.

18          Your Honor, the Baseball Bat litigation and the

19     citation was absolutely apropos because in the

20     Baseball Bat case there was I believe only one case

25april07wireless

21    left.  There was still discovery that was ongoing, but
22    that didn't matter.  There were still motions to
23    dismiss that were pending, and that didn't matter.
24         The Court then, and your citation to that case,
25    indicated that it nevertheless was appropriate to

14

1    refer those cases to the Panel on the suggestion of
2    remand because the remaining work to be done was case
3    specific, and that is exactly where we find ourselves
4    today.
5         Your Honor, in your decision you also pointed
6    out that Judge Lemelle, who had the Naquin case, is
7    perfectly capable of deciding the Naquin case and the
8    unique issues involved in the Naquin case.
9         Well, Your Honor, we would submit that whatever
10    court, respectfully, and this is not to suggest that
11    Your Honor is not competent to decide those issues at
12    all, but certainly, whatever court were to get this,
13    whether it would be the Eastern District of
14    Pennsylvania or, we suggest, the Pennsylvania state
15    court, they would be in the position to decide the
16    unique issues of Pennsylvania law.
17         As a matter of fact, Your Honor, this case was
18    removed from the Commerce Court Program in
19    Pennsylvania.  The Commerce Court Program is a
20    special, unique program established in the
21    Philadelphia County Court of Common Pleas which has
22    specific authority over complex litigation, class
23    actions and claims, such as the unfair trade practices
24    claims that we have here.

25april07wireless
25          So not only would we suggest that Pennsylvania

15

1     judges are in a better position to determine, or at
2     least an equal position to determine what Pennsylvania
3     law is, in Pennsylvania in general, and for this
4     Farina case in particular, we have the added benefit
5     that we have a specialized court that deals with these
6     matters, who deal with these daily, who deal with the
7     class certification issues daily, who deal with our
8     Unfair Trade Practices Act daily, and that Act is
9     under constant evolution and constant interpretation
10    by our courts.
11          In fact, Mr. Donovan, were he to address the
12    dismissal motion, has a case before the Supreme Court
13    of Pennsylvania that is going to weigh very heavily on
14    certain issues of reliance on some of those claims in
15    the future.
16          So, Your Honor, we would suggest that your
17    comment about Judge Lemelle having greater familiarity
18    with the Louisiana law than this Court applies with
19    equal force with respect to the Farina case and the
20    Pennsylvania courts, which are unique courts that
21    handle these kinds of claims.
22          Your Honor also went on to point out in the
23    footnote that while Your Honor has some experience
24    with the scientific issues, at least the likelihood of
25    RFR causing brain cancer, the relevant scientific

16

1     information will likely need to be updated in any
2     event, and the transferor court will be free to make

25april07wireless

3      whatever use they see fit of the opinion that Your
4      Honor issued in the Newman case.
5          We are familiar with the Newman case and with
6      Mr. Smouse's handling in that case, and that was in
7      fact part of these MDL proceedings, but ones which we,
8      as the class action attorneys, did not follow with a
9      great deal of interest because those issues really did
10     not bear on what our headset cases are all about.
11         That is a very important point to make now
12     because it links into the primary argument I read in
13     the papers of the defendants, and that is that there
14     are still common issues to be dealt with in this case,
15     and those common issues primarily are the issue of
16     general causation.
17         Well, Your Honor, the issue of general causation
18     really has little or no applicability with respect to
19     the Louther case.  The Louther case is a brain cancer
20     case.  There is going to have to be proof, evidence
21     and discovery of specific causation that the exposure
22     during that limited time period, with that one
23     isolated phone, AT&T phone, involving only that one
24     defendant, caused brain cancer in Mr. Louther and
25     caused him to pass away in 2001.

                                                        17

1          That's specific causation.  That's not general
2      causation.  That's what going to have to be proven in
3      that litigation.
4          THE COURT:  Well, except that if Louther were
5      handled the way I handled Newman, one would get to the
6      general causation issue first.
                        Page 14

25april07wireless
```
 7          MR. JACOBSEN:  One would get that way, and I
 8     would fully expect if Your Honor were to keep these
 9     cases, if Your Honor were to keep these cases, there
10     would be a similar Daubert motion made early in
11     Louther that says let's tee up the causation issue,
12     not just general causation, but specific causation,
13     and let's get to that issue.
14          I certainly have no idea what the outcome of
15     that would be, but if the outcome was similar to the
16     Newman case, then Your Honor would have one case
17     before it, and that's a Pennsylvania class action
18     brought under Pennsylvania law by a Pennsylvania
19     plaintiff.
20          Your Honor, we believe that your footnote is
21     absolutely correct in the decision that you issued a
22     year ago, and that is that the Court in Florida is
23     perfectly capable of addressing the issue of
24     causation.  While Your Honor certainly garnered
25     valuable experience on the brain cancer aspect of
```

18

```
 1     this, that science is evolving, and Your Honor
 2     specifically indicated in the footnote that any
 3     transferor court will be free to make whatever use
 4     they see fit of the opinion that this Court issued in
 5     the Newman litigation.
 6          Your Honor, the idea of matters being case
 7     specific, consistent with Your Honor's finding, have
 8     been addressed by other courts.  In the Silica case,
 9     which is at 398 F.Supp.2d, at page 668, the Court
10     specifically indicated --
11          Here, it was discussing the convenience aspect,
```
Page 15

25april07wireless

12    and it was requiring a plaintiff to prosecute a case

13    over a thousand miles from their residence, would be a

14    significant imposition and seemingly a needless one,

15    considering how case specific the remaining issues

16    are.

17        In that litigation, Your Honor, the Court was

18    referring one of many cases back to the transferor

19    jurisdiction because it found, as Your Honor did a

20    year ago, that the issues, the remaining issues in

21    that case really were case specific and that the

22    benefits of any kind of coordinated proceedings were

23    minimal at best.

24        Your Honor, in the Meridia Products Liability

25    action, which is at --

                                                      19

1        Pardon me, Your Honor.  Let me get my glasses.

2        THE COURT:  Sure.  They are very important.  I

3    agree with you.

4        MR. JACOBSEN:  The curse of age.

5        I didn't want to give Your Honor an incorrect

6    cite.

7        -- which is at 328 F.Supp.2d 791.  It's Northern

8    District of Ohio, 2004.

9        There, the Court again commented that by its

10    nature, specific causation is not common to all

11    plaintiffs.  Rather, it involves "a determination that

12    is highly individualistic and depends upon the

13    characteristics of individual plaintiffs."

14        The Court went on to comment, indeed, other MDL

15    cases have reserved specific causation questions to

25april07wireless

16    cases that are remanded, in other words, that the

17    specific causation issue for the brain cancer is

18    really reserved to the transferor court after remand.

19         Your Honor, we believe that while there may be

20    at least some science that may be common, the issues

21    that are presented in Louther have really little or

22    nothing to do with Mr. Farina.  You have one telephone

23    for one three-year period manufactured by AT&T, and a

24    causation issue is did this one telephone for a

25    three-year period issued by AT&T cause brain cancer?

                                                        20


1         The Farina case, Your Honor, involves 21

2    defendants.  It involves the disclosures in the

3    advertising material and the packaging material that

4    was issued by those defendants.  That's the discovery

5    that's going to go forward in the Farina case.

6    Whether it's in this court or another court, that's

7    the discovery, and that will be where an enormous

8    amount of effort and activity is going to be devoted.

9         That has absolutely nothing to do with what Mr.

10    Louther may be doing.  Perhaps for a three-year period

11    with the one phone on disclosures, but certainly not

12    with 21 defendants.

13         The focus of the Farina case also, Your Honor,

14    as Your Honor knows from reading the amended

15    complaint, the third amended complaint, and really all

16    the complaints, is on the concerted activity of the

17    defendants.  We have 21 defendants.  Two of them are

18    trade associations, and one of our fundamental claims,

19    Your Honor, is the coordinated effort and activity to

20    suppress information and to ensure that the

25april07wireless

21    disclosures that were given to consumers, and that's
22    what our case is, is consumers, were uniform and
23    uniformly misleading.
24         That is not a situation that you have in
25    Louther, and these are facts not only from the

21

1     complaint, but these are also observations and
2     descriptions of our case that were made by the Fourth
3     Circuit in connection with its decision.
4          Paragraph 114 of our complaint, Your Honor, has
5     an entire section dedicated to driver safety and the
6     failure to warn about the risks of operating vehicles
7     without a headset or other hands-free device, which
8     many of these companies are going to now, but that is
9     absolutely unrelated to any issue of brain cancer or
10    in fact any issue of even general causation in
11    connection with biological effects of radio frequency
12    emissions.
13         As the Court knows, because we read about it all
14    the time, there are states that are now adopting laws
15    preventing people from operating vehicles without the
16    use of hands-free devices, and this was something that
17    we were looking at and have formally alleged in our
18    complaint years before that became what the state
19    legislatures are focusing on.
20         Your Honor, the other criteria that one would
21    use, and what the courts tend to do when they look at
22    remand is to look at okay, what are the purposes and
23    what were the reasons that the case was transferred in
24    the first place for a coordinated proceedings?

25april07wireless
25          Your Honor, I submit that those reasons --

                                                         22

1          Discovery, we talked about discovery, and I
2     think that is certainly a fundamental one, and that's
3     really the only one that the defendants talked about,
4     but there are other issues, and that is the risk of
5     inconsistent rulings.  That is why the Panel decides
6     that all cases in an MDL should be in one location,
7     because you do not want courts from around different
8     jurisdictions issuing inconsistent rulings on
9     dismissal motions, on class certification, and on
10    other things.
11         Your Honor, we don't have any prospect of
12    inconsistent rulings in this case.  I searched when I
13    was preparing to find out what may be common between
14    the Farina case and the Louther case that would be
15    presented to Your Honor for disposition, and I am
16    unable to find any.
17         Class certification, there is only going to be
18    one decision on class certification, and that's in the
19    Farina case.
20         Dismissal motions, Mr. Louther does not have a
21    third amended complaint that Farina has that Mr.
22    Donovan was going to address today.  There is no
23    danger of inconsistent rulings with respect to
24    dismissal motions, and that's where we are.  We're
25    still at the pleading stage in this case, Your Honor.

                                                         23

1     Six years, this case was filed six years ago this
2     month.

25april07wireless

```
3              We don't have any discovery, so we're not -- and
4         I'm just making that as an observation, Your Honor.
5         Please, I do not want to communicate anything other
6         than the fact that we are still at the pleadings
7         stage.  We have had no discovery.  The motions that
8         are pending are not at all common between the two
9         cases.
10             There is no prospect that I can see for any
11        inconsistent rulings, and I suggest that that was the
12        case a year ago, and Your Honor didn't mention that,
13        but that may have been part of Your Honor's thinking
14        also when you issued the suggestion of remand.
15             Your Honor, the other item that I would like to
16        mention just briefly is convenience to the parties.
17        Your Honor, we would suggest that it's not convenient.
18             The defendants have elected to operate in every
19        state, to profit in every state, and to be in every
20        state.  The plaintiffs have not.  We chose our forum,
21        and we chose Pennsylvania.  Mr. Louther chose Florida.
22        That's where we elected to be with our cases.  That's
23        where we are.  That's where our clients are.  That's
24        where we as lawyers are.  We do not do business all
25        over the country like these defendants do and,
```

24

```
1         therefore, cannot complain to be litigating in the
2         courts of any state, including Pennsylvania and
3         Florida.  We didn't have that option, Your Honor.
4              So with respect to the convenience of the
5         parties and the convenience of counsel, and those are
6         factors that are weighed on the initial transfer
```

Page 20

25april07wireless

```
7    determination, they, we suggest, weigh very heavily in
8    favor of doing what Your Honor did last year and
9    allowing us to go back to our respective courts.
10        The transferor courts should have the
11   opportunity to gain the familiarity with these cases,
12   and it is not a waste of Your Honor's effort in Newman
13   to allow the court in Florida to do that with respect
14   to Louther, and certainly, we haven't even gotten that
15   far in the Farina case.  We would suggest that
16   particularly with the unique Pennsylvania law issues
17   that are in this litigation, that that weighs very,
18   very heavily, as Your Honor pointed out with the
19   Naquin case in Your Honor's order of last year, in
20   sending the cases back where, respectfully, we believe
21   they belong.
22        With that, unless Your Honor has any questions,
23   that's the suggestion of remand part of the
24   presentation.
25        THE COURT:  Thank you very much.  I'll hear
```

                                                        25


```
1    from the defendants on that.
2        MR. DEE:  Good morning, Your Honor.
3        THE COURT:  Good morning.
4        MR. DEE:  Terry Dee on behalf of Motorola, and
5    speaking on behalf of the defendants.
6        I would like to frame my argument this morning
7    in the context of the issue Your Honor raised, which
8    is are we in the same situation that we were in
9    February of 2006, when Your Honor ruled on the Naquin
10   and Louther motion for suggestion of remand?  I think
11   one obvious difference since then is that we are
```
                              Page 21

25april07wireless

12    dealing with Farina and not Naquin.

13         As Your Honor may recall, one of the primary

14    arguments the plaintiffs made is that the next step in

15    the Naquin case was the motion to dismiss, and that

16    the motion to dismiss had already been briefed, had

17    been fully argued, and in fact, Judge Lemelle was

18    ready to rule on that motion.

19         They made the argument that in fact it would be

20    less efficient to have Your Honor reinvent the wheel

21    on all of those issues that Judge Lemelle already had

22    a handle on, particularly when the key issue in Naquin

23    dealt with the issue of redhibition, a unique

24    Louisiana law creature that Judge Lemelle obviously

25    was familiar with.

                                                      26

1          So there was another aspect of their argument,

2     that they said that with Judge Lemelle, you had the

3     additional benefit of accrued judicial expertise in

4     the preemption argument, because Judge Lemelle had

5     dealt with the briefing and oral argument and issued a

6     ruling on preemption.  So you had a situation where

7     you had this accrued judicial expertise with Judge

8     Lemelle, as you did with Your Honor, and that all

9     things being equal, it would be sent back to Judge

10    Lemelle rather than stay here.

11         That's clearly not the case with Farina.  There

12    has been no substantive briefing or oral argument or

13    rulings in front of any of the judges that these cases

14    would be sent back to, either in Florida or in

15    Pennsylvania.  So on that standpoint, we're in a

25april07wireless

16    different situation than we were before.

17         Also, since then, we have had the filing of the

18    plaintiffs' third amended complaint in Farina, and

19    what that complaint confirms is that the same

20    allegations that lead to general causation, that they

21    are going to have to prove general causation, it's

22    even more apparent now than what it was before, and

23    those are same issues of general causation that are

24    going to have to be made by, the proof made by the

25    Louther plaintiff.

27

1          We've also had since then -- well, before then

2     Your Honor was made aware --

3          THE COURT:  Let me interrupt you a minute.

4          MR. DEE:  Sure.

5          THE COURT:  I guess maybe two steps back, in

6     terms of the motions to dismiss, they have been

7     briefed.  They haven't been argued because I thought

8     it made more sense to hear the remand ones first.

9          But I guess I don't see why it wouldn't be,

10    assuming for the moment it were Judge Padova in the

11    Eastern District --

12         MR. DEE:

13         THE COURT:  -- why he wouldn't be just as ready

14    to rule on motions to dismiss as I would be.

15         MR. DEE:  Sure.  Judge Padova could rule on the

16    motions to dismiss just as you could, and I guess the

17    efficiencies here aren't gained by having Your Honor

18    rule on the motion to dismiss rather than Judge Padova

19    rule on the motion to dismiss in Farina.  The

20    efficiencies here are in the common overlapping issues

25april07wireless

21        that exist between Farina and Louther.

22            The case law is clear that you don't have to

23        have a complete identity of cases to either put cases

24        into an MDL or to keep cases into an MDL.  In fact,

25        there don't even have to be a majority of common

28

1        issues.  There just has to be some common issues, and

2        the standard is will keeping those cases in the MDL,

3        will those cases benefit from further coordinated

4        proceedings?

5            In this case, the suggestion of remand should be

6        denied because there are common overlapping issues.

7        The cases will benefit.

8            Two of the common overlapping issues, the first

9        one is the general causation issue.  You know, as Your

10       Honor pointed out, Mrs. Louther is going to have to

11       prove that wireless telephone use causes brain cancer.

12           Now Mr. Farina has alleged, and seeks money for

13       a headset, for exposure to RF, emissions from wireless

14       phones allegedly cause biological effects that lead to

15       an increased risk to a person's health.

16           Now putting aside for a moment whether it

17       actually even states a claim, assuming it does, Mr.

18       Farina has identified what those alleged biological

19       effects are.   In paragraph two of the complaint he

20       cites calcium and ion distribution, melatonin

21       production, DNA breaks, both single and double strand,

22       enzyme effects, genetic changes, and permeability of

23       the blood brain barrier.

24           Now Your Honor may be familiar with those

                              25april07wireless
25          because those are the precise biological effects that

                                                                    29

1           Mr. Newman claimed led to his brain cancer, and that
2           he spent an enormous amount of time trying to prove up
3           in his case.
4                   In essence, Your Honor, while Mr. Farina calls
5           them alleged biological effects, they are just another
6           name for alleging brain cancer.  In fact, Mr. Farina
7           has to come clean later on in the complaint when he
8           actually does allege that the defendants failed to
9           disclose studies showing that cell phones cause brain
10          cancer.
11                  That in and of itself is a direct overlapping
12          issue with the Louther complaint.  In fact, it's not
13          just a coincidence that the exact same studies that
14          Mr. Farina has cited in his complaint, the exact same
15          scientists that are at issue are the exact same
16          studies and the exact same science that were at issue
17          in the Newman case.
18                  The reason I mention and focus so heavily on
19          Newman here is because I think it is fair to use
20          Newman as a proxy for what Ms. Louther is going to
21          have to prove.
22                  So, you know, in both the Farina complaint and
23          in Newman, you had studies by Henry Lai, Leonard
24          Hardell, Michael Repacholi, Ray Tice, Ross Adey, Leif
25          Salford and others, and you had the same studies by

                                                                    30

1           those authors.  Those are scientific issues that Your
2           Honor has addressed previously in Newman.  They are
                              Page 25

25april07wireless

3    common.  They are studies that the plaintiffs in
4    Farina are relying on that Mrs. Louther is going to
5    rely on.  So there is one common overlapping issue of
6    general causation.
7          There's no question that both the Farina
8    plaintiffs and Mrs. Louther are going to have to prove
9    general causation.  To do that, they are going to need
10   expert testimony and they are trying to prove the
11   exact same science.
12         Going back to your February 2006 opinion, we
13   agree that the original cases, had they continued on
14   in the MDL, there would be overlapping expert
15   discovery that would, and an eventual Daubert hearing
16   that would warrant keeping the MDL together.
17         I submit to you that you have an exact same
18   position here with Farina and Louther, and whether
19   it's in the context of class certification for the
20   Farina plaintiffs or in the context of just causation
21   itself and proving liability in the Louther case, they
22   both can be done together and there will be
23   efficiencies gathered there that warrant this Court
24   keeping those cases together.
25         I think there's a second issue, a common

                                                      31

1    overlapping issue that has come up since your February
2    2006 opinion, and that is the primary jurisdiction
3    motion that is currently pending before Your Honor.
4          Now we have the amicus brief now from the FCC in
5    the Morganroth cases that states the FCC's position
6    that any claim -- that its federal regulatory scheme

25april07wireless
```
 7    and its regulations preempt any claims that wireless
 8    phones cause any adverse health effects.
 9         You have that in combination with the Brand X
10    decision by the Supreme Court holding that a federal
11    regulatory agency's interpretation of its empowering
12    statute is entitled to deference even over conflicting
13    circuit level precedent.
14         The combination of those two, of those two
15    events since February of 2006 led the defendants to
16    file their motion for primary jurisdiction, suggesting
17    that the FCC initiate a formal rule-making proceeding
18    to answer specific questions that relate to the
19    preemption issue.  That motion goes to both Louther
20    and to Farina, and there is no judge in the country, I
21    submit, that is more qualified, that should answer
22    that question than Your Honor.
23         THE COURT:  Hasn't the Fourth Circuit already
24    kind of answered that question?
25         MR. DEE:  Well, the issue here with the primary
```

                                                      32

```
 1    jurisdiction motion, Your Honor, is that if the FCC in
 2    a formal rule-making proceeding were to disagree, then
 3    that would be entitled to deference over the Fourth
 4    Circuit's opinion.
 5         So I submit to Your Honor that whether that is
 6    your position or not, it seems to us that the primary
 7    jurisdiction motion is another overlapping issue that
 8    goes to both cases that should remain before Your
 9    Honor and a reason to keep the cases hear in this
10    case.
11         I think the other issue that guides this Court
```
                              Page 27

25april07wireless

12      to keep the cases or should guide the Court to keep

13      the cases is even if coordination wasn't necessary,

14      there is your accrued judicial expertise in the

15      science issues and in the regulatory issues that is

16      going to permeate I think every issue that comes up

17      both in Farina and in Louther.

18          As we point out in our briefing, one of the core

19      purposes of an MDL is to take advantage of the

20      efficiency created from accrued judicial expertise.

21      You clearly have expertise here that neither Judge

22      Padova nor the judge that would hear this case in the

23      Middle District of Florida have had the opportunity to

24      address yet.  That expertise in science and regulatory

25      issues will permeate general causation, class

                                                        33

1       certification, summary judgment, and discovery issues.

2       So there are efficiencies from your experience and

3       your expertise that would lead to keeping these cases

4       together.

5           You know, the Integrated Resources case is a

6       perfect example and provides the reason why the Court

7       should do that.  In that case, where there was just

8       one case remaining, the Court held onto the case,

9       denied a motion for suggestion of remand, reasoning

10      that remand would require another court to make its

11      way up this same learning curve, resulting in just

12      that duplication of efforts that the multidistrict

13      system is designed to avoid.

14          THE COURT:  What can you tell me -- I'll get

15      back to Mr. Jacobsen -- about the Naquin dismissal?

25april07wireless

16    What, if anything, can you tell me about that and/or

17    the Pinney case or the likelihood of, as I asked at

18    the beginning, a class action reappearing at some

19    point?

20          MR. DEE:  Your Honor, all I can tell you is that

21    what I understand is that they dismissed those cases.

22    Those cases I believe were dismissed without

23    prejudice.  So I guess theoretically there is always

24    the possibility they could come back.  Theoretically,

25    there is always the possibility that the plaintiffs,

34

1    if they were to be remanded to state court in Farina,

2    could reassert a nationwide class and that case could

3    come back up.

4          So I'm not sure what the possibility is of them

5    coming back, but I do think that what we said in our

6    brief, what I think is important here, is that the

7    dismissal of Pinney and the dismissal of Naquin are

8    not just mere coincidences.  But I think the fact that

9    they were dismissed undercuts the plaintiffs'

10   credibility in arguing that they are moving to remand

11   because of some efficiency here.

12         I mean the fact is that the Pinney plaintiffs

13   won the remand at the Fourth Circuit, got back into

14   state court, were ready to proceed, amended the

15   complaint.  It gets removed up to this court and

16   assigned to Your Honor, and then it's dismissed.

17         Then the Naquin case, they fight and get the

18   suggestion of remand, and then once Pinney is added

19   and Your Honor withdraws the suggestion of remand, and

20   the J.P.M.L. withdraws or vacates the conditional

25april07wireless

21    remand order, and it looks like you are going to have

22    an MDL with Naquin and Farina and Louther, that all of

23    a sudden they dismiss Naquin.

24         I would suggest to you that that would undercut

25    any argument they make that their motive here is

                                                           35

1     really because of the inconvenience to the parties and

2     because of the inefficiencies of maintaining this MDL.

3          A couple other points I just want to mention in

4     response to what Mr. Jacobsen said.  You know, again

5     he mentioned the driver safety allegations.

6     Admittedly, those aren't contained in the Louther

7     complaint, but it doesn't make any difference because,

8     again, you don't have to have a complete identity of

9     issues in order to keep the MDL together.  As long as

10    they are common issues such that continuing the MDL

11    would benefit the cases, then Your Honor should keep

12    the cases.

13         The other factors, the risk of inconsistent

14    rulings, of course, there is a risk of inconsistent

15    rulings here on the general causation issues.  And to

16    the extent that Farina has science built into the

17    class certification hearing, which, of course, it

18    will, there will be inconsistent rulings on general

19    causation in Farina in the classification context and

20    Louther in the liability context.

21         So I think it's just wrong to say there isn't a

22    risk of inconsistent rulings just because there's one

23    class action and one individual action.

24         Then the convenience to the parties, Your Honor,

25april07wireless
25      I guess the J.P.M.L. has already addressed that and

36

1       found that the benefits of the MDL outweigh any
2       inconvenience there might be to the parties.  Frankly,
3       here we have the Farina plaintiffs not far away in
4       Pennsylvania at all and Mrs. Louther who lives in
5       Pennsylvania, who has D.C., District of Columbia
6       attorneys representing her.  Of course, Farina has the
7       Angelos law firm, who has been involved in these cases
8       and in this litigation since day one.  So I can't, I
9       really can't understand what the burden is here, and
10      the cases they cite simply don't support it.
11          So in conclusion, I guess, Your Honor, there are
12      still significant efficiencies with the general
13      causation and the primary jurisdiction motion and by
14      Your Honor's judicial expertise that warrant
15      coordinating these cases, continued coordination
16      through the pretrial proceedings in this case.
17          The J.P.M.L. transferred these cases and
18      typically, the only basis for remand is if there is
19      good cause.  Good cause only real exists when all the
20      pretrial proceedings have been completed.  They
21      haven't been completed here in either of the cases,
22      and this Court should keep them through the pretrial
23      proceedings phase.  Thank you, Your Honor.
24          THE COURT:  Thank you, Mr. Dee.
25          Mr. Jacobsen.

37

1           MR. JACOBSEN:  Your Honor, briefly may I?
2           THE COURT:  Yes.
                                Page 31

25april07wireless

```
 3          MR. JACOBSEN:  Your Honor, actually you
 4    anticipated in your question of Mr. Dee a point that I
 5    had written down when Your Honor first opened up, and
 6    that is the other litigations, the Pinney litigation,
 7    the other litigation.  I am counsel of record in all
 8    of those cases.  I believe I formally entered my
 9    appearance.  I'm certainly authorized by Mr. Smouse to
10    speak on behalf of Pinney.
11          We will represent to the Court that there is no
12    intention now, and I will say for the indefinite
13    future, to refile those cases at all.
14          They are dismissed.  The defendants agreed to
15    the dismissal.  Frankly, I think they should be
16    complimenting themselves on accomplishing that for
17    their clients rather than criticizing plaintiffs for
18    doing that, and more to the point, that there is an
19    agreement that if those cases were to be refiled, they
20    would be refiled in federal court so we didn't have
21    the whole removal and transfer process.  But the main
22    point is, Your Honor, that there is no intention to
23    refile those cases.
24          Your Honor, we have been down this road now
25    twice in terms of filing the cases, having them
```

                                                          38

```
 1    removed and having them transferred.  I think that the
 2    defendants should give us a little credit for
 3    recognizing that we are not going to do anything, if
 4    this Court were to suggest remand and to allow these
 5    cases to go back now after six years to where they
 6    were originally filed to be litigated, we are not
```

Page 32

25april07wireless

7      going to do anything to jeopardize that, and you have

8      my representation about that.

9          On the convenience issue, the Panel made its

10     determination of convenience when the landscape of

11     these cases were a lot different.   Your Honor had

12     several brain cancer cases.   Your Honor had I believe

13     seven, eight, nine class actions.   You had one from

14     New York.   You had one from Georgia.   You had one from

15     Maryland.   You had many, many, many different -- the

16     landscape was completely different.

17         It's different.   It was different a year ago

18     when Your Honor suggested remand.   Your Honor did that

19     for a good reason, and that was because the landscape

20     had changed and because the issues, as Your Honor

21     determined then, which applies now, were case

22     specific.

23         The accrued expertise, Your Honor, I'm not

24     quarreling that this Court has not expended time on

25     the Newman case with respect to accrued expertise with

                                                        39

1      respect to brain cancer and some of the science.   But

2      these cases at the end of the day will have to go back

3      to their transferor jurisdiction.   Under the Lexicon

4      case and under the statute, these cases have to go

5      back.

6          Your Honor, I would suggest that it is no less

7      efficient to allow courts who will be trying these

8      cases to develop their own technical expertise in the

9      areas where they will be deciding the ultimate, these

10     cases, unless something were to happen in the interim

11     were they are terminated.

25april07wireless

12          In terms of when the Court can and should remand

13   cases, there is no absolute rule and in fact, the

14   statute specifically doesn't say at the conclusion of

15   such pretrial procedures.  It says in Section 1407, at

16   or before the conclusion of such pretrial proceedings,

17   which is exactly what happened in the Baseball case

18   that Your Honor cited in your decision a year ago.

19          There, we were in the middle of discovery, and

20   in that case, the Court nevertheless determined that

21   remand was appropriate.  Here, we haven't even started

22   discovery, and we would suggest that it is better to

23   have the court, the transferor court supervise that

24   process.

25          Your Honor, let me close with just one

40

1    observation, and that is in every case that I have

2    read where the Panel has denied transfer and

3    consolidation, where they have decided at the end of

4    the day we shouldn't send these cases to one MDL court

5    for consideration, in every single citation you will

6    find a reference to the Manual for Complex Litigation,

7    Section 20.14, and that's the fourth edition.

8          In fact, the older cases, they cite the third

9    edition and the older cases before that, they cite the

10   second edition.

11         Every single case that I have found where they

12   decline to transfer, and that is because that section

13   of the Manual addresses coordination between courts.

14   Even when related case pending in different districts

15   cannot be transferred to a single district, judges can

25april07wireless

16    coordinate proceedings in their respective courts to

17    avoid or minimize duplicative activity and conflicts,

18    and the Panel recognizes that.

19         The Panel observes that there may be some of the

20    overlapping issues that Mr. Dee addresses, but that

21    these can be handled efficiently through coordination,

22    and the Panel itself cites that provision of the

23    Manual for Complex Litigation.

24         Your Honor, we would certainly be prepared to

25    coordinate with the defendants, with Louther, with any

                                                        41

1     of the, what we submit are few common issues that may

2     exist in this case.

3          Thank you very much, Your Honor.

4          THE COURT:   Thank you.

5          Okay.  You may be standing up again.

6          MR. JACOBSEN:  I'll grab a new file, Your Honor.

7          THE COURT:   If we are ready, why don't we move

8     on to the other remand issues relating to the request

9     to go back to state court.

10         MR. JACOBSEN:   Thank you, Your Honor.

11         Your Honor, let me dispense at the outset with

12    actually the comment that I heard the Court make about

13    the timeliness of the remand motion, and we all agree

14    that the remand motion was not filed in November.

15         Our November motion is deliberately couched as

16    an amended motion for remand because frankly, I made

17    that decision because I didn't want this Court to wade

18    through all of the papers in the MDL to try and pull

19    it out.  I wanted a self-sustaining, stand-alone

20    document before the Court.

25april07wireless

21          The real reason it was called an amended remand
22     motion was that at the time we challenged the order,
23     the conditional transfer order, we had asked for
24     remand.  In fact, the Panel, in its order transferring
25     this case, specifically and affirmatively said in its

                                                          42

1      June order that the issue of remand could be decided
2      by this Court.  So the timing issue, we hope that has
3      been clarified by the briefing.
4          But more importantly, Your Honor, there is an
5      absolute misdescription in the defendants' papers
6      about when that time period runs.  When you are
7      challenging procedural issues with respect to a
8      removal petition, purely procedural, technical issues,
9      then the statute requires that there be a remand
10     motion filed within 30 days.
11          But on its face, the motion to remand the case
12     on the basis of any defect other than lack of subject
13     matter jurisdiction -- Your Honor, this is Section
14     1447(c) -- other than lack of subject matter
15     jurisdiction, must be made within 30 days after the
16     filing of the notice of removal.
17          A remand motion attacking subject matter
18     jurisdiction can be made anytime right through the
19     trial of the case because if the Court lacks subject
20     matter jurisdiction over the case, then it can't
21     decide it, and that 30-day rule doesn't apply.  The
22     remand motion that we filed with the Panel and that we
23     filed again with Your Honor goes to the subject matter
24     jurisdiction of this Court.

25april07wireless
25          THE COURT:  But you're not challenging that the

43

1    removal was too late?

2          MR. JACOBSEN:  No, no.  Your Honor, no.  If I

3    could walk --

4          THE COURT:  I thought that was the procedural

5    issue.  I agree with you.  This 30-day rule just

6    applies to procedural defects, such as what I thought

7    you were arguing, that LG's removal was too late.

8          MR. JACOBSEN:  Let me clarify that because, Your

9    Honor, in reading the papers, perhaps we weren't

10   clear.  Let me go through the dates and what our

11   argument is, and I hope that can put it in proper

12   context for the Court.

13         Your Honor, we filed our second amended

14   complaint on December 23, 2007 (sic.) undisputed.  The

15   deadline for removal in defendants' own papers, at

16   page nine, they say their deadline for removal was

17   January 3, 2007.  We don't quarrel with that either.

18         So if the LG defendants or, Your Honor, in fact

19   any of the other defendants, because as our papers

20   demonstrate, Your Honor, the thrust of the argument is

21   that we have added new parties and, therefore, there

22   is a new action commenced and, therefore, there is

23   jurisdiction under the Class Action Fairness Act.

24         As Your Honor can see from all of the exhibits

25   that were to my papers, we negotiated with defendants,

44

1    setting LG aside.  We added, subtracted, deleted,

2    changed parties throughout the entire month of
                        Page 37

25april07wireless

```
 3    December because we were -- and we thought we were
 4    doing a good thing -- because we were told by the
 5    defendants, you know what, you don't have the right
 6    people.  Let us tell you who the right subsidiaries
 7    are.  Let us tell you who the right affiliates are.
 8    This holding company is a holding company that is not
 9    involved in that.  Let us tell you who the right
10    defendants are.
11         So do you know what I said?  I said fine, send
12    me a letter, let me list who they are, and we'll
13    change the complaint and we will put all of those
14    parties.  We'll change all of them.  I thought I was
15    doing the responsible thing and the cooperative thing
16    and the right thing, frankly.
17         We did add LG, two LG entities as a defendant in
18    the second amended complaint, and that was filed on
19    December 23, 2007 (sic.).
20         THE COURT:  It was served I think December 27th?
21         MR. JACOBSEN:  The 27th.  But timing-wise, it
22    doesn't matter in terms of the argument, and their
23    papers, their own papers, on page nine of their
24    memorandum said that their day, their absolute 30-day
25    period to remove the second amended complaint expired
```

45

```
 1    on January 23, 2007, and that is because the notice of
 2    removal has to be removed within that time period.
 3         Well, they didn't do that, Your Honor.  None of
 4    the defendants, either the LG defendants or any of the
 5    other defendants whose new subsidiaries were added,
 6    parties were changed, new affiliates were brought in,
```

25april07wireless

7    none of them filed a motion for removal, a notice of

8    removal and said you know what, we have new parties in

9    this case.  We have new parties in this case.

10    Therefore, under the law, that's a new, the

11    commencement of a new action under the Class Action

12    Fairness Act.  Therefore, we can remove.  They didn't

13    do that.

14         What happened was, Your Honor, and for 30

15    days --

16         So as of January 23, 2007, there was no

17    possibility, even with the addition of LG, after the

18    adoption of the Class Action Fairness Act, even with

19    the addition of two LG entities, there was no

20    opportunity to remove after January 23, 2007.  They

21    had blown the deadline.  It was gone.

22         So what happened?  I get a call, like I have

23    from the lawyers, and it's all in the record, Your

24    Honor, from lawyers for all of the other defendants,

25    and it's in there, and they say you know what, you

46

1    named the wrong LG subsidiary.  You named the wrong LG

2    companies.  Let's get the right company in there.

3         So what I did was, I did what I had done with at

4    least 15 defendants in December.  I said okay, let's

5    do it.  I just filed a new second amended complaint.

6    I don't want to amend that complaint.  So let's do it

7    by way of a stipulation or a praecipe, because we were

8    still in state court at that time.

9         We exchanged language, and we exchanged drafts,

10    and we got to this looks pretty good.  Then all of a

11    sudden it became you know what, we don't want to do it

25april07wireless

12      by way of praecipe.  We want you to serve a third

13      amended complaint anyway.

14           I resisted that, and I specifically and

15      affirmatively said, you know, all we're going to do is

16      change the subsidiaries, like we did with all of the

17      other changes that we made.  Specifically, that's it.

18      That's all we're going to do.

19           So I corrected the subsidiary of LG in the third

20      amended complaint.  That third amended complaint was

21      not send down to the Court until January 27th.  This

22      is a state court judge.

23           That stipulation, a stipulation, we sent that

24      complaint down with a stipulation to amend, which we

25      cited why it was that we were doing this.  All we were

47

1       doing was correcting what I viewed as a misnomer.  We

2       were doing what had been done extensively with other

3       defendants in all of December, when we did the second

4       amended complaint.

5            The letter to the Court and the stipulation

6       indicated what we were accomplishing.  That

7       stipulation was approved by the Court on February 3,

8       2007.  The third amended complaint was filed on

9       February 9, 2007.

10           So the argument, Your Honor, is not that LG

11      didn't timely remove the complaint by the date that

12      they say is the January 23rd deadline.  The argument

13      is that the correction in the third amended complaint

14      was a misnomer correction, as Your Honor has read from

15      the cases and from our briefs, and that it should

25april07wireless

16    relate back to the second amended complaint.

17    Therefore, they didn't remove that within the time

18    period mandated by the statute, and the case doesn't

19    belong in federal court.

20         So I hope I have clarified and not confused.

21         THE COURT:   That's what I thought you were

22    arguing.  You were arguing, and perhaps it was my

23    shorthand that confused you, but I thought you were

24    arguing that LG didn't remove in time, and that seems

25    to be what you are still arguing.

                                                    48


1          MR. JACOBSEN:   Absolutely.

2          THE COURT:   My point is -- you tell me why I am

3     wrong -- you did not file a motion to remand within 30

4     days of the removal.  Challenging LG's lack of

5     timeliness in filing its notice of removal,

6     challenging that is a procedural defect.  I mean

7     challenging that is on the basis of a procedural

8     defect.  You didn't do that within 30 days.  Why

9     haven't you given up the right to make that particular

10    argument?

11         MR. JACOBSEN:   Because, respectfully, it's not a

12    procedural defect.  It is when they invoked the

13    Court's jurisdiction.  When they removed and when they

14    invoked the Court's jurisdiction under the Class

15    Action Fairness Act, they invoked jurisdiction that we

16    say do not exist.  They invoked --

17         THE COURT:   I'm sorry.  To the extent that your

18    argument is based on they didn't do it in time,

19    setting aside CAFA jurisdiction --

20         I mean supposing they had filed their notice of
                              Page 41

25april07wireless

21    removal by January 23rd.  You would not be arguing

22    that it was too late.  You might still have CAFA

23    jurisdictional arguments, but you wouldn't be arguing

24    the procedural basis that they filed the notice of

25    removal too late.

49

1         MR. JACOBSEN:  And I'm not really, I'm not

2    really arguing that it's too late.  I'm arguing as to

3    why it was that they insisted on a third amended

4    complaint and why that should refer back.  I guess I'm

5    not being as articulate as I should be.

6         It is really not a procedural argument that it's

7    too late.  It's the fact that whenever they did that,

8    even within the time period or certainly, 45 days

9    later, that there's no jurisdiction.  It's just not a

10    procedural argument at all, Your Honor.

11         We are certainly making the argument that the

12    reason that they insisted on the filing of a third

13    amended complaint instead of doing it by way of

14    praecipe, like we had suggested, instead of doing it

15    by way of an application, which is a permitted

16    procedure under Rule 2232, and the Hercules case cited

17    in our papers, Your Honor, specifically addresses the

18    fact that if you file an application and change

19    parties by way of 2232, it's not an amended complaint.

20    It's not an amendment to the complaint.

21         The reason why they insisted on a third amended

22    complaint was that the time period had gone.  The time

23    period had gone.  The time period had passed.

24         I'm sorry.  I really want to be on the same

Page 42

25april07wireless
25    page, Your Honor, and I get a sense that I am not

50

1    explaining myself properly.
2        THE COURT:  Well, maybe we'll get there when we
3    get to the rest of the argument.
4        So backing up for a moment, if I get to this
5    aspect or some other judge gets to this aspect, this
6    aspect of your argument, I guess I'm not really sure
7    that the difference between its being by amended
8    complaint or by stipulation or by praecipe is
9    necessarily controlling in any event.
10        The LG that's added, whether it's by amended
11    complaint or stipulation or praecipe, is to correct a
12    misnomer.  I'm not sure why your argument would really
13    be any different, better or worse.
14        MR. JACOBSEN:  Well, whatever was done, whether
15    it was a third amended complaint, whether beyond 30
16    days after the second amended complaint was filed we
17    had done a praecipe, whatever was done, you are
18    absolutely right.  If it was after that 30-day period,
19    it would not have mattered, and they would not have
20    had the opportunity to remove because they would not
21    have done so within the 30 days that were required by
22    the rules.
23        So you are right.  It doesn't matter how that
24    change was made, but we're playing the hands that we
25    have right now, and that is a third amended complaint

51

1    was filed to correct a misnomer, and it was seized
2    upon by the defendants in order -- and by the way, to

25april07wireless

3      correct a misnomer, which had been done repeatedly

4      before -- and it was seized upon by the defendants to

5      remove this entire case and to have this case then

6      sent back to you for a second time.  That is the

7      argument that we have.

8            It was a misnomer, Your Honor.  The courts, the

9      courts that address this, and in particular, in New

10     Century decision, which is cited in our brief, we

11     respectfully suggest is directly on point.

12           Just to quote from that decision briefly, Your

13     Honor, because it dovetails with what Your Honor was

14     just saying.

15           The parties do not argue that Ingenix would be

16     prejudiced in maintaining a defense on the merits,

17     rather the issue is whether Ingenix knew or should

18     have known that but for the mistake the action would

19     have been brought against it before the effective date

20     of CAFA.  Further, the parties seemingly agree that

21     the terms of CAFA do not apply to all other

22     defendants, excluding Ingenix.  The Court believes

23     that it did have notice.  The "misnomer principle" is

24     often applied in the context of relation back when a

25     plaintiff has sued a corporation, but misnamed it,

52

1      such as naming a parent corporation instead of a

2      subsidiary.

3            It cites the Roberts versus Michaels case, which

4      is the Eighth Circuit decision at 219 F.3d 775.

5            Your Honor, the New Century case is squarely on

6      all fours with this.  In that case, there was a

Page 44

25april07wireless

 7     subsidiary of a subsidiary, and they named the wrong
 8     party, and they changed to name the subsidiary of the
 9     subsidiary as the right party.  The Court ruled that
10     under the misnomer theory and the misnomer principle,
11     that that really is a correction of the name of the
12     defendant if in fact the defendant who is being
13     brought in had notice.
14          Your Honor, there can be no dispute in this case
15     about the notice that LG had about the correction of
16     the misnomer because it was LG's counsel who brought
17     that to my attention.  It was LG's counsel who asked
18     me to name the correct subsidiary.  It was LG's
19     counsel who pointed out that we needed to name the
20     right party.  So the notice issue is really established.
21          Your Honor, certainly the relation back of Rule
22     15, which is cited by most of the courts, expressly
23     addresses the relation back of amendments and when
24     that relation back should apply.
25          Your Honor, the Pennsylvania rules are very

                                                        53

 1     liberal.  Rule, as you pointed out, Your Honor, Rule
 2     1033 of the Pennsylvania Rules of Civil Procedure
 3     specifically address the amendments to a complaint,
 4     and those rules are very liberal and allow the
 5     amendments not only to change parties, but to
 6     amendments to even add new causes of action.
 7          Rule 2232 is captioned Defective Joinder, Change
 8     in Parties.  It specifically is a provision which
 9     allows the amendment and a change of parties and it
10     says at any stage of an action, the Court may order
11     the joinder of any additional person who could have

25april07wireless

12    been joined or who could have been joined -- who could

13    have joined or could have been joined in the action.

14    It doesn't say you are starting a new action.

15         Your Honor, it says the Court may order.  Well,

16    the Court ordered the joinder of LG in this case

17    because it signed a stipulation.  That stipulation

18    that was signed by the parties was also entered by the

19    Court.

20         THE COURT:  Let me make sure I'm following.  At

21    this point, this point in your argument I should take

22    as relating to the substantive issue under CAFA.

23         You are telling me that setting aside the timing

24    and the correction of the name, that joining LG -- and

25    let's assume it had been done correctly from the

54

1    beginning.  The right name was there from the

2    beginning in December of 2005.  You're saying that

3    does not amount to commencing a new action under CAFA.

4         MR. JACOBSEN:  Absolutely right, Your Honor,

5    absolutely right.

6         THE COURT:  Why.

7         MR. JACOBSEN:  Because we are not joining a new

8    party.  We are correcting, we are correcting a

9    misnomer.

10         THE COURT:  Let me give you a hypothetical.

11         MR. JACOBSEN:  Okay.

12         THE COURT:  You filed the second amended

13    complaint and you correctly named LG Electronics

14    MobileComm, whatever it is.  You correctly named it.

15         LG Electronics MobileComm was not in the case

25april07wireless

16    until December of 2005.

17        MR. JACOBSEN:   Correct.

18        THE COURT:   CAFA was enacted February 2005.   Why

19    isn't LG MobileComm a new defendant?   Why isn't this

20    appropriate for CAFA jurisdiction?

21        MR. JACOBSEN:   It would be a new defendant if it

22    timely removed the case within 30 days under the

23    statute.

24        THE COURT:   What does the removal have to do

25    with whether a new action is commenced for CAFA

55

1    purposes?   What does this have to do with the line of

2    case out of the Seventh Circuit and all the other ones

3    about what it means to commence a new action?

4        MR. JACOBSEN:   Well, the procedural context is

5    that if you are commencing, if you commence a new

6    action, then that confers federal court jurisdiction,

7    but it's not automatic.   You have to invoke that

8    jurisdiction.   You have to do something in order to

9    get the federal courts to have that jurisdiction.

10        That doing something is the removal of the case

11    to federal court, and that's when the 30-day period of

12    the statute kicks in.   If you don't do that, then you

13    don't have CAFA jurisdiction and the case stays in

14    state court.   So just because there's CAFA

15    jurisdiction --

16        All of these cases, if you look at them, Your

17    Honor, they are all removal case and remand cases, and

18    sometimes it's the plaintiffs who are trying to get

19    the cases removed and sometimes it's the defendant.

20        Let's follow up on your hypothetical.   If LG, if

25april07wireless

21          LG or any of these other defendants where we had

22          changed parties, and those are the Seventh Circuit

23          cases Your Honor is talking about, if we filed an

24          amended complaint and we had all new parties in there,

25          and we added subsidiaries, as we did at Mr. Duffy's

                                                          56

1           request, and we changed others, as we changed other

2           affiliations, that arguably confers CAFA jurisdiction

3           under those lines of cases that say if you add new

4           defendants, it's a new cause of action.

5                   We would argue no, it was a misnomer.  We would

6           argue the misnomer cases, but let's stay with that

7           hypothetical.

8                   It doesn't mean that the case goes to federal

9           court.  You have to invoke that jurisdiction.  One

10          only invokes that jurisdiction by removing that case

11          under the statute, and one has to invoke that

12          jurisdiction by removing that case under the statute

13          within 30 days.  It's no different than a diversity

14          case or anything else.  If you file a case and you

15          don't invoke that jurisdiction within 30 days, you're

16          out of court.

17                  THE COURT:  Okay.  Let me ask you this

18          hypothetical.  Just regular diversity jurisdiction and

19          the defendant was too late, failed the notice of

20          removal 32 days instead of 30 days.  Comes up to

21          federal court.  Plaintiff does not file the motion to

22          remand for 40 days.

23                  Isn't that the kind of thing that has been

24          considered a procedural defect that the Fourth Circuit

25april07wireless
25    in the Kades case, I think it was, talked about?

                                                        57

1     MR. JACOBSEN:  That would be a procedural

2     defect.

3         THE COURT:  Why is it different for CAFA?

4     MR. JACOBSEN:  Because there you have, because

5     there, the Court has jurisdiction, assuming there was

6     complete diversity, and assuming there was the amount

7     of controversy that was met.  What was done wrong,

8     what was done wrong was it was removed on an untimely

9     basis and it had to be remanded to the Court on a

10    timely basis.

11        THE COURT:  Could you point to me the part of

12    CAFA that you think -- I recognize this is a new law,

13    so I may have missed something.  Where in CAFA does it

14    explain this or suggest this?  Does it?

15    MR. JACOBSEN:  It's not in CAFA itself, Your

16    Honor.  Well, CAFA is 1453, which is the removal and

17    it says 1453(b), a class action --

18        THE COURT:  Right.

19    MR. JACOBSEN:  The statute says the class action

20    may be removed to the District Court of the United

21    States in accordance with Section 1446, except that

22    the one-year limitation under Section 1446 shall not

23    apply, without regard to whether a defendant is a

24    citizen of the state in which the action is brought.

25    So what they have done is they have changed the

                                                        58

1     diversity requirements.

2         Section 1446, which is specifically referred to,
                        Page 49

25april07wireless

3      and which is incorporated, and which says in

4      accordance with 1446, it says that you have to do that

5      removal within 30 days.  You have to accomplish that

6      removal within 30 days.  If you do not, the case stays

7      in state court.

8           There is the potential for CAFA jurisdiction,

9      but that CAFA jurisdiction has to be invoked in order

10     to take advantage of that CAFA jurisdiction.

11          THE COURT:  Okay.

12          MR. JACOBSEN:  And what I --

13          THE COURT:  I understand your argument at this

14     point.

15          MR. JACOBSEN:  Okay.  What I am saying is, the

16     other timeliness argument, Your Honor, is that if the

17     case is improperly removed because there is no CAFA

18     jurisdiction, not because of timely, but because what

19     triggered the event was not the addition of a party,

20     but what triggered the event and the defendant's

21     removal was a correction of a misnomer so that there

22     is no jurisdiction at all, then the plaintiffs are

23     allowed to challenge and file a motion for remand at

24     anytime, not within the 30 days, because that goes

25     squarely to the subject matter jurisdiction.  The

                                                    59

1      30-day provision does not apply.

2           Our argument is there is no CAFA jurisdiction

3      because what was done was merely to correct a

4      misnomer, and when you remove the case now that could

5      not have been removed before, and we've corrected a

6      misnomer, and that hasn't triggered a new action.

                         Page 50

25april07wireless

```
 7        Therefore, there is not CAFA jurisdiction under the
 8        statute.
 9            THE COURT:  Okay.  Just looking at the time
10        here, why don't you move ahead to the local
11        controversy exception.
12            MR. JACOBSEN:  The local controversy exception,
13        Your Honor, is --
14            And, Your Honor, there are many cases that are
15        cited in the defendants' brief and in fact, the local
16        controversy exception that is relied on, the
17        defendants rely almost entirely on what they call
18        legislative history, which is a Senate Report.  In
19        fact, that's what's quoted in the defendants' brief,
20        is a Senate Report, and the cases that cite that
21        Senate Report also, respectfully to those courts, are
22        misled as to the import of that report.
23            THE COURT:  Who is your Pennsylvania defendant
24        in the third amended complaint?  Where is the
25        Pennsylvania defendant?
```

                                                        60

```
 1            MR. JACOBSEN:  We do not have a Pennsylvania
 2        defendant identified by name, Your Honor, and we say
 3        that the burden is on the defendants.  If I could
 4        address that, I would like to address that.
 5            THE COURT:  Okay.
 6            MR. JACOBSEN:  CAFA, as we point out in our
 7        brief, Your Honor, when CAFA was adopted, the local
 8        controversy is not an exception to CAFA.  The local
 9        controversy is not here's CAFA, and oh, by the way,
10        these are exceptions to the rule.  The Lao case in the
11        Northern District of California cited in our brief
```

25april07wireless

12      goes into an extensive discussion of why the local

13      controversy is not an exception.  It's part and parcel

14      of the jurisdictional recognition in the first place.

15          THE COURT:  Hasn't the Ninth Circuit effectively

16      overruled the Lao decision?  Haven't they?  I could be

17      wrong.  I thought there was a Serrano perhaps?  I

18      thought there was a Ninth Circuit case after Lao that

19      may not have --

20          I don't know if it directly overruled it but --

21          MR. JACOBSEN:  Well, there are cases, there are

22      cases --

23          I don't know if it directly overrules it, and I

24      apologize, Your Honor, for not being familiar with

25      that case.  I thought I read that.  What I read in the

                                                        61

 1      papers that have been filed --

 2          THE COURT:  I could have it wrong.

 3          MR. JACOBSEN:  -- it did not, in my view,

 4      address that and overrule it.

 5          But, Your Honor, the statutory framework, and

 6      one has to look, you start from the proposition that

 7      removal of jurisdiction has to be narrowly construed

 8      and any doubts have to be in favor of remand and the

 9      refusal of jurisdiction.  In fact, the Fourth Circuit

10      in this case articulated that, and that has been a

11      long-standing principle.

12          The fact is that the local controversy

13      provisions of the statute of CAFA are part and parcel

14      of the scope of the statute itself, and the burden is

15      on the party invoking the jurisdiction to insure that

25april07wireless

16    it is in compliance with those standards.

17          Now the legislative history that is cited by the

18    defendants and by some courts is the senate bill that

19    was Senate Bill 14 in the 109th Congress.  Your Honor,

20    the Seventh Circuit has addressed that Senate Report.

21          THE COURT:  I can tell you, I probably don't

22    need to hear that much about that Senate Report.  I

23    mean after adopted legislative history is not what I

24    am going to find most persuasive.

25          But let me go back to this question of an in

62

1    state defendant.  And assume you're right, that the

2    burden should be on the defendants to show that this

3    local controversy exception does not apply.  Why

4    haven't they done that essentially if you just look at

5    the complaint and look who the defendants are and

6    where they are organized, incorporated and so forth?

7    I think the defendants had gone and looked at the

8    local state assessment, taxation, and incorporation

9    offices.

10         I just don't see any indication whatsoever that

11    there is a Pennsylvania defendant in this case.

12         MR. JACOBSEN:  Your Honor, the complaint, by the

13    way, the complaint, which was prepared with the input

14    of defendants, we also have defendants who in their

15    papers say they are incorrectly identified in that

16    complaint.  So it's our complaint, and we stand by it.

17         On the other hand, the recitation of principal

18    place of business and corporation is not

19    determinative, as this Court knows, of what actually

20    the principal place of business is.  In different

25april07wireless

21    contexts, the principal place of business could be
22    different locations.
23        For example, if you have a financial services
24    company with operations in different parts of the
25    United States, our courts, in determining principal

63

1    place of business, usually apply the nerve center
2    test.  Where is the nerve center of this activity?
3        If you have a manufacturing business, the
4    analysis is where is the place of operations or the
5    place of the principal operations, not just where the
6    headquarters were, not just the headquarters as we
7    have identified that in our complaint.
8        So in the analysis of what a principal place of
9    business is -- and this is not unique to CAFA.  It's
10    certainly not unique to the local controversy.  This
11    has been the jurisprudence under principal place of
12    business for diversity jurisdiction for decades.
13        It's not as cut and dry as saying well, the
14    headquarters are here, so that's your principal place
15    of business.
16        There, I would suggest, if Your Honor said well,
17    what should they have done, they should have come in
18    with proof to this Court as to where their operations
19    are, where their operations are located, where they
20    have manufacturing facilities, where they have
21    executive offices, and submitted that instead of just
22    a search of the records of Pennsylvania, which reveal
23    none of that.
24        The records of the Secretary of State of

25april07wireless

25    Pennsylvania are not determinative of this Court's

64

1    jurisdiction and certainly not of where the principal

2    place of business is traditionally under the analysis

3    that has been employed in diversity jurisdiction.

4        Our courts have recognized that the headquarters

5    may not be it and it depends a lot -- it's very case

6    specific, in fact, specific and business specific on

7    what kind of business it is.  As I said, if it's a

8    financial services business, they may look at what

9    they call the nerve center.

10        So, you know, the argument is, Your Honor, that

11    the burden is on the defendants, and you don't meet

12    that burden by looking just at the complaint and

13    pulling some data out from the Secretary of State's

14    Office.  They have to come forward with more

15    information and a more affirmative showing because at

16    the end of the day, removal jurisdiction is to be

17    narrowly construed.  Those courts that put the burden

18    on the plaintiffs, according to the Brill case, are

19    doing so improperly and incorrectly.

20        I know courts do that.  I acknowledge that, and

21    we've acknowledged that in our papers, and we've tried

22    to explain why we think that's inappropriate.  The

23    party seeking the jurisdiction has the burden of

24    meeting it in the first instance, whether it's the

25    general provision of the local provisions, as well as

65

1    the Brill court held in the Seventh Circuit, even on

2    remand.

Page 55

25april07wireless

3              Thank you, Your Honor.

4              THE COURT:   Thank you.

5              MR. JACOBSEN:   Unless you have more questions,

6    Your Honor.

7              THE COURT:   Why don't we, actually, why don't we

8    just take a ten-minute break before I hear from the

9    defendants.

10             (A recess was taken.)

11             THE COURT:   Yes.

12             MR. BEISNER:   I guess it's almost good

13   afternoon, Your Honor.   John Beisner on behalf of the

14   defendants.

15             Let me first address the timeliness issue that

16   was raised, because I think we may be making a

17   mountain out of a molehill on this one.

18             As counsel read, the Class Action Fairness Act

19   does not change the basic provisions of Section 1446,

20   except in some irrelevant respects.   I think the

21   language that counsel read indicates the procedure

22   here is the same.   Under the cases that we cited, it's

23   well established the 30-day time limit for removal in

24   the first paragraph of 1446(b) is procedural, and that

25   a case may not be remanded for failure to comply with

                                                          66

1    the 30-day time limit, absent a timely motion.

2              I'm reading their direct quote from the Area

3    Landowners case of the Third Circuit.

4              The Kades case, Your Honor, that you referenced

5    earlier is to the same effect.   That's a Fourth

6    Circuit case saying that a motion to remand the case

                            Page 56

25april07wireless

7    because of a defect in the removal procedure must be

8    made within 30 days after filing the notice of

9    removal.  An untimely removal is a defect in removal

10   procedure.

11        I believe that's what counsel is arguing here.

12   The motion was not made within 30 days.  So any

13   arguments about the timeliness of the removal I think

14   are waived in this instance.

15        The one point I did want to make to the Court in

16   that regard, I don't think it is of any decisional

17   significance, but I did want to note that the motion

18   for remand in this case was 263 days late, not just

19   the several days late or the two weeks late that

20   counsel has is indicating.

21        There is reference -- counsel claims in his

22   reply brief that the motion for remand was filed on

23   April 7th.  But if you look to see what counsel is

24   referencing, that is a filing that was made with the

25   Judicial Panel on Multidistrict Litigation, not with

67

1    this Court.  It was not a motion to remand.  It was a

2    statement to the J.P.M.L. that it should disband this

3    proceeding because there was a lack of federal

4    jurisdiction over one of the class actions in the

5    group.

6        That is not a motion for remand.  The J.P.M.L.

7    is without --

8        THE COURT:  Could you tell me where that is, or

9    tell me where that is on the docket?  I was assuming

10   that it was a motion to remand like the motion to

11   remand.

25april07wireless

12          MR. BEISNER:  No.  It was not filed with this

13     Court.  It was filed with the Judicial Panel on

14     Multidistrict Litigation.

15          THE COURT:  And it was not filed in front of

16     Padova?

17          MR. BEISNER:  No.  I have it in front of me.  It

18     was a transmittal to Michael J. Beck, Clerk of the

19     Panel, Judicial Panel on Multidistrict Litigation.

20     There is no filing with Judge Padova.  It was with the

21     J.P.M.L., and counsel has not cited anything else or

22     attached anything else that was a motion to Judge

23     Padova.

24          THE COURT:  What you are referring to, is that

25     an exhibit to any of these papers?

                                                        68


1          MR. BEISNER:  We can certainly submit it to the

2     Court, Your Honor.

3          THE COURT:  Just get me a copy.

4          MR. BEISNER:  I don't believe it's an exhibit to

5     any of the filings that we have made.

6          THE COURT:  Okay.

7          MR. BEISNER:  But that's what counsel identified

8     in the brief as the filing, and that's what it is.

9          So there is no motion to remand until November

10     6th.  So it was 263 days late.

11          Admittedly, there was the suggestion to the

12     J.P.M.L. that counsel believed that they were lacking

13     jurisdiction, but that's not a motion for remand for

14     statutory purposes since that Panel is without

15     authority to take any action on that subject.

Page 58

25april07wireless

16          So I think, Your Honor, all of this concern

17     about the parties and the various LG entities and so

18     on I think are just not relevant here.   The basic

19     facts are LG MobileComm filed its notice of removal on

20     February 17th.   Thirty days later there was no remand

21     motion pending anywhere and, therefore, those

22     arguments are waived.

23          If I'm understanding counsel correctly in

24     responding to your question, I don't think we have a

25     debate here about the fact that LG MobileComm is a new

                                                         69

1     defendant and that that new defendant gives rise to

2     the commencement of a new action for CAFA purposes.   I

3     don't think that we have a debate that.

4          The one thing I did want to note to the Court,

5     however, is that these cases, Brown, Schorsch,

6     Knudsen, that I think you referenced, some of which

7     are from the Seventh Circuit, I think are finding that

8     the new action notion, the new commencement also comes

9     directly from, comes primarily directly from the

10     statute, not necessarily from the relation back

11     doctrines of the states in which they were filed.   I

12     don't think it matters in this case because, as Your

13     Honor said, the relation back doctrine in Pennsylvania

14     supports our position.

15          But I did want to note that one change that CAFA

16     did make in removal procedure is that before CAFA was

17     passed, case law said that if you removed a case to

18     federal court, diversity jurisdiction grounds, all the

19     defendants had to join.   That wasn't in the statute,

20     but that was case law that the courts had developed.

25april07wireless

21          One of the things that Congress was concerned
22    about was there was an abuse that had been observed
23    that on occasion counsel would serve a friendly
24    defendant only.  They would let the 30-day period pass
25    and then they would serve everyone else, and it would

                                                            70

1     effectively deprive the defendants, some of the
2     defendants of having a removal right.
3           So one of the things that Congress changed in
4     1453(b), which counsel read from earlier, was to add
5     the provision that such action may be removed by any
6     defendant, without consent of all defendants.
7     Congress overruled that case law, saying that you had
8     to have a collected removal and in essence, it handed
9     to every defendant in the case the right to remove, no
10    matter where it came in the case, because Congress
11    also got rid of the one-year limitation.
12          So there's an independent basis for saying that
13    there is a rightful removal here, independent of any
14    relation back doctrine, because otherwise you would be
15    going against the purpose of the statute on its face
16    saying every defendant has a right to remove.
17          So when LG was brought in, they got their 30
18    days to remove under the statute.  They had their
19    removal right, even though they were brought in late
20    in the proceeding, on the face of the statute.
21          So whether you analyze this under a relation
22    back doctrine or under the statutory doctrine, you get
23    to the same result in this case.  But I did want to
24    note there was that additional ground for saying that

                            Page 60

25april07wireless
25      there was a commencement of a new action here in this

                                                                        71

1       case.
2           THE COURT:  Do any, and I recognize there is
3       some broad language in some of the cases, that any new
4       defendant can remove, but do any of them that you can
5       cite me to involve this situation of a new defendant
6       coming in, correction of a misnomer within a
7       relatively short time period, but then removal after
8       the 30 days from the first?
9           MR. BEISNER:  I don't think directly those
10      facts, Your Honor, but the misnomer part it seems to
11      me is just irrelevant to this because of the waiver of
12      the time period to start with.  That's the only --
13          THE COURT:  Right.
14          MR. BEISNER:  I mean there was no communication
15      here with plaintiff about adding an LG entity.  That
16      was a decision counsel made all by themselves, no
17      dispute about that.  So they are the ones who made
18      that decision.
19          So whatever happened thereafter, and we've laid
20      out in the papers a completely different view of those
21      facts, whatever happened thereafter is really
22      irrelevant to this because there was a waiver of the
23      right to contest timing by the fact that the remand
24      motion was filed too late.  That's really our position
25      on that.

                                                                        72

1           THE COURT:  Right, right.
2           MR. BEISNER:  All I was offering was an
                            Page 61

25april07wireless

3      alternative basis for saying that this is a
4      commencement of a new action, the second issue that
5      Your Honor identified there.  So that I think gets us
6      through the point that there is a commencement of a
7      new action here.
8           Your Honor was correct in your analysis.  There
9      is no contest among the parties about whether or not
10     jurisdiction under the fundamental provisions of CAFA
11     exist.  There is no debate about minimal diversity, no
12     debate about jurisdictional amount.
13          The only issue that has been raised here by
14     plaintiffs is whether the local controversy exception
15     should be invoked, and the way that provision works,
16     the statute says that where that exception exists, the
17     Court shall not exercise the jurisdiction that is
18     otherwise present.
19          Your Honor is correct that the only case that
20     plaintiff cited that the burden is on the plaintiff in
21     this circumstance was the Lao case, and I believe Your
22     Honor is correct that that was overruled, at least as
23     to the analysis in that case, by the Serrano case from
24     the Ninth Circuit, 478 F.3d 1018, which came down
25     recently, which says that the structure of the statute

73

1      and the long-standing rule of proof on exceptions to
2      removal dictate that the party seeking remand bears
3      the burden of proof as to any exception under CAFA.
4           So that means that four circuits, all four
5      circuits have addressed this issue, the Eleventh, the
6      Fifth, the Seventh, and now the Ninth.  They have come

25april07wireless

7     out the same way, that plaintiff has the burden on

8     this issue.

9         That being the case, Your Honor, I think the

10    analysis going thereafter is quite simple.  I think

11    counsel during argument acknowledged that plaintiff

12    has not identified any defendant in Pennsylvania,

13    simply saying that's our burden.

14        I think we have, I won't say accepted that

15    burden, but tried to indicate to the Court that there

16    isn't a basis for argument to the contrary with

17    respect to there being any Pennsylvania corporation

18    involved in this.

19        I would also note, Your Honor, that I don't

20    think really any of the other criteria hear are met in

21    this circumstance.  You need to step back and look at

22    here what Congress was doing with the local

23    controversy exception.

24        One of the primary purposes of the statute

25    overall was to deal with the situation where federal

74

1     courts and state courts and multiple state courts were

2     all dealing with the same class action, where you had

3     overlaps or similar subject matter of class actions in

4     federal courts and in state courts, where you couldn't

5     bring them together for coordinated treatment.  So a

6     purpose of this exception was to deal, was to carve

7     out from this cases that were not going to be ending

8     up in multiple courts at the same time.

9         So that's why you have the case needs to have a

10    defendant in the case from the state in which it was

11    filed.  Two-thirds of the class members need to be

25april07wireless

12       from that state.

13             Then you have these provisions where Congress's

14       purpose, if you look at the legislative history, was

15       to figure out is the injury alleged here something

16       that was fundamentally in the state where it was

17       filed, or are these allegations a much broader set of

18       alleged injury, such that you expect you are going to

19       have more class actions filed?

20             Then you have the explicit provision that says

21       have some other class actions been filed in the

22       three-year period?

23             So they are trying to say look, if we're going

24       to have a bunch of these class actions, we're going to

25       have these be in federal court so the MDL Panel can

                                                           75

1        create an MDL proceeding to deal with these class

2        actions.  There is no mystery about that here because

3        we've had it.

4              So, you know, I think that it is clear that this

5        exception was not intended to apply to this case

6        because we know that this has been a case in which

7        multiple class actions have been filed involving

8        jurisdictions other than just Pennsylvania.

9              THE COURT:  Do you know what the dates of filing

10       those class actions were in relation to the April 19,

11       2001 filing date of this class action?

12             MR. BEISNER:  Well, Your Honor, I think that the

13       operative date, since we are talking about the

14       commencement of a new class action -- that's the

15       beginning of our analysis -- is the date on which LG

                              Page 64

25april07wireless

16    is added to this.  Within the three-year period, as we

17    noted in our complaint, we do have the class action

18    that was filed in the District of Columbia which is on

19    this same subject, and that was within three years of

20    the date of the new commencement of this class action.

21        THE COURT:  So you are relying on the December

22    2005 new defendant?

23        MR. BEISNER:  Yes, the Dahlgren case.

24        THE COURT:  Okay.  If I disagreed with you --

25        MR. BEISNER:  Right.

76

1        THE COURT:  -- about the language of the statute

2    and thought that I had to look at whether there were

3    class actions filed before Farina, were there?  Do you

4    know?

5        MR. BEISNER:  I believe, Your Honor, that there

6    were class actions.  Naquin I think was pending.  It

7    was filed within the three-year period before Farina.

8    So that if you looked at it that way, I think that

9    that would qualify.

10        THE COURT:  You think Naquin had been filed

11    prior to Farina?

12        MR. BEISNER:  Yes.  I don't think it had been

13    pending for three years by the time this later group

14    were filed.

15        Counsel reminds me that Naquin was filed in

16    2000.  So that would be within the three-year period.

17        THE COURT:  Okay.

18        MR. BEISNER:  Your Honor, I would note two other

19    things in this regard.  Your Honor referenced

20    legislative history concerns earlier and the reference

25april07wireless

21          to the Senate Report, and I would note that much of

22          what has been referred to in the Senate Report also

23          exists on the House side in the form of pre-passage

24          legislative history.

25                  You had the rather unusual circumstance in this

77

1           bill because of the way CAFA moved through the House

2           very quickly after it was passed by the Senate, where

3           you had a floor debate, where, believe it or not,

4           unlike what you normally see on C-SPAN, most of the

5           members were there and ready to vote.

6                   There was a debate with most of the members

7           present where there was a question-and-answer period,

8           which is in the congressional record, and where the

9           sponsors of the bill answered a series of questions

10          about what these provisions meant.  Then within an

11          hour or so later, the members of the House voted on

12          the bill.

13                  So far better than anything that's a House or

14          Senate Report, you had the members sitting there

15          hearing what the intent of the framers of the bill

16          was, and then they voted on it.  If they didn't like

17          what they heard, they voted against it.  If they liked

18          what they heard, they voted for it.  So it's sort of

19          the most compelling legislative history that you could

20          have, and it was pre-passage.

21                  I would note that, to skip back for a second

22          with respect to the burden issue on the local

23          controversy exception, if the Court has any doubt

24          about that, Congressman Goodlatte of Virginia, who was

25april07wireless
25      a chief sponsor of the bill, was asked a question on

78

1       burden.  He said, and I quote, and this is in the
2       congressional record, page H732 -- this is the
3       congressional record for February 17, 2005, which was
4       the date of house passage, "It is the sponsor's
5       intention with respect to each of these exceptions
6       that the party opposing federal jurisdiction shall
7       have the burden of demonstrating the applicability of
8       the exception."
9           An hour later the members of the House voted to
10      enact the bill, having heard this statement from
11      Congressman Goodlatte.
12          Then with respect to this question about where
13      injury occurs, the exception, and we are talking about
14      here the local controversy exception, Congressman
15      Sensenbrenner, then the Chairman of the House
16      Judiciary Committee, who was another chief sponsor of
17      the bill, in the same setting on the House floor, the
18      same page, congressional record, H731, was asked about
19      what this criterion meant.
20          He said, "This criterion means that all or
21      almost all of the damage caused by defendants' conduct
22      occurred in the state where the suit was brought.  If
23      defendants engaged in conduct that allegedly injured
24      consumers throughout the country, the case would not
25      qualify for the local controversy exception even if it

79

1       was only brought as a single state class action."
2           He could not have been addressing a clearer
                        Page 67

25april07wireless

3      circumstance than this.  As counsel said earlier,
4      these defendants operate in all states, and the
5      allegations that are made here, if they have any
6      merit, would implicate injury in all states.
7           Again, this was part of the idea of trying to
8      figure out are there going to be multiple class
9      actions that we want to bring into federal court to
10     insure that they may be handled on a coordinate basis
11     by the Multidistrict Litigation Panel?
12          So that provision, I think very clearly from
13     this pre-enactment legislative history, indicates that
14     this case doesn't work.  The courts had before it a
15     nationwide class action with very much the same
16     allegations.
17          The one last piece of legislative history I
18     would note, Your Honor, which is on the three-year
19     issue that Your Honor mentioned earlier, again, this
20     is from Congressman Sensenbrenner, same colloquy on
21     the House floor.  He says, "I would like to stress
22     that the inquiry under this criterion" -- again, I'm
23     referencing here was there any action filed within
24     three years prior to the filing of this lawsuit?
25          "I would like to stress that the inquiry under

                                                      80

1      this criterion should not be whether identical or
2      nearly identical class actions have been filed.
3      Rather, the inquiry is whether similar factual
4      allegations have been made against the defendant in
5      multiple class actions."
6           So again, meant to be not an overly exacting
                        Page 68

25april07wireless

7    inquiry.  Again, the idea is are these allegations

8    enough alike that the MDL Panel likely would want to

9    put these together?  Of course, with the hindsight of

10   history, we know that's exactly what occurred in this

11   case.

12        So with that, Your Honor, unless there are some

13   questions, I think that sets forth our position on why

14   we believe CAFA jurisdictions exists over this case.

15        Thank you.

16        THE COURT:  Okay.  Thank you.

17        Mr. Jacobsen, any --

18        MR. JACOBSEN:  Your Honor, may I respond just

19   briefly?

20        THE COURT:  Sure.

21        MR. JACOBSEN:  Your Honor, with respect to the

22   submission to the Court that was in the MDL papers

23   about when the request for remand was made by

24   plaintiffs, we would also request that with that

25   submission we be allowed to provide the Court with a

                                                        81

1    copy of the Panel's actual order, because having

2    prepared those papers, we requested -- we argued to

3    the Panel that there was improper removal and that

4    there was no jurisdiction.

5        The Panel, in its order of June 15, 2006, in the

6    middle of the order explicitly says the pending motion

7    to remand.  Those are the Panel's words, not mine.

8        THE COURT:  I actually --

9        MR. JACOBSEN:  The pending motion to remand to

10   state court can be presented to and decided by the

11   transferee judge, with the citation.

25april07wireless

12              So the temporal issue aside, which, again, when

13       you are challenging jurisdiction, as the statute has

14       expressly said, you can do that whenever you want, at

15       least the Panel interpreted what our request was the

16       same way we did.

17              There was no application for remand made to

18       Judge Padova.  A judge could have also stayed this

19       case at the request of LG pending a decision by the

20       Panel on transfer.

21              So I just thought the Court -- and that's in the

22       defendants' papers.  As a matter of fact, they point

23       out in a footnote, addressing the temporal time

24       period.

25              With that, I appreciate the Court's time and

                                                          82


1        attention.

2              THE COURT:  Okay.  Thank you.  You don't need to

3        submit that.  I do have the transfer order, and I see

4        the phrase that you are referring to.  So I guess all

5        I would need is if you can just send me in a copy of

6        what you were referring to on what was presented to

7        the Multidistrict Panel.

8              As I say, I'm not at all sure that it is

9        dispositive in any event, but we might as well have

10       that, have that in the record.

11              Well, I thank you all very much, and I will try

12       to get out a decision soon.  This has been helpful.  I

13       appreciate it.

14              MR. JACOBSEN:  Thank you, Your Honor.

15              THE COURT:  I appreciate your time.  Thank you.

                            Page 70

25april07wireless
16        (The proceedings concluded.)
17
18
19
20
21
22
23
24
25

                                                        83

1                    REPORTER'S CERTIFICATE
2         I hereby certify that the foregoing transcript of
3    the proceedings in the matter of In Re: Wireless
4    Telephone Radio Frequency Emissions Products Liability
5    Litigation, Civil No. MDL-01-1421, before the
6    Honorable Catherine C. Blake, United States District
7    Judge, on April 25, 2007 is true and accurate.
8
9
10                    Gail A. Simpkins
11                    Official Court Reporter
12
13
14
15
16
17
18
19
20
                            Page 71

25april07wireless

21

22

23

24

25

1
1018 - 72:24
109th - 61:1953:2
14 - 61:19
1446 - 57:21,  57:22,
1446(b - 65:24:19
1453 - 57:1614
15 - 11:19,  46:4,  :4
17 - 6:16,  78:3
18 - 7:78:20
1995 - 12:22:10
1998 - 12:22
2
2000 - 76:16
16:25,  75:1112:23,
2005 - 7:7,  8:3,  54:2,
78:36,  54:18,  75:22,
11:19,  25:9,  30:12,
2007 - 1:9,  43:14,
45:16,  45:20,  47:8,
21 - 20:1,  20:12,
219 - 52:4
53:7 - 49:16,  49:19,
45:1,  45:16,  45:20
25 - 1:9,  83:748:21
27th - 44:20,  44:21,
46:21
3
30 - 6:14,  42:10,
48:8,  50:15,  50:21,
56:20,  58:5,  58:6,  ,
70:17,  71:8,  66:12,
43:5,  44:24,  50:18,
66:1,  69:24,  65:23,
328 - 19:7
398 - 18:922
4
40 - 56:22
478 - 72:24
5


5 - 8:9
6
668 - 18:9
6th - 68:10
7

25april07wireless

775 - 52:4
7th - 66:23
      9
9 - 47:9
     A
able - 4:14, 7:22
1:13e-entitled -
absolute - 39:13,
Absolutely - 48:1,
absolutely - 11:17,
21:9, 50:18, 54:59,
accepted - 11:22,
accomplish - 58:5
37:16, 47:6ng -
58:4rdance - 57:21,
accrued - 26:3, 8
38:23, 38:25 32:20,
acknowledge - 7
acknowledged -
Act - 15:8, 43:23,
65:18, 45:18, 48:15,
4:25, 5:2, 5:6, 5:7,
9:10, 12:10, 12:12,
18:25, 33:18, 35:23,
53:6, 53:10, 53:13,
55:3, 55:6, 56:4, ,
59:6, 68:15, 69:2, ,
72:4, 72:7, 74:2,
75:20, 79:1, 79:15,
Action - 43:23,
65:18, 45:18, 48:15,
14:23, 38:13, 67:4,
74:24, 75:2, 75:7,
79:9, 80:2, 80:56,
20:16, 20:19, 40:17,

actual - 81:1
56:3, 70:47, 53:6,
34:18, 43:21, 44:1,
75:16 50:10, 55:25,
addition - 45:17,
additional - 11:25,
address - 10:18, 4
22:22, 32:24, 51:9,
65:15 60:4, 61:4,
11:4, 18:8, 30:2,
addresses - 40:13,
addressing - 11:14,
Adey - 29:24 81:23
68:11tedly - 35:6,
61:23ed - 60:7,
adoption - 45:18
advantage - 32:19,
adverse - 31:8
affect - 6:21, 9:24
45:6liates - 44:7,
affirmatively - 6:2
afternoon - 65:13
agency's - 31:11
ago - 11:19, 13:8,

25april07wireless

```
23:1,  23:12,  38:17,
agree - 13:4,  19:3,
51:20,  41:13,  43:5,
agreement - 37:19
alike - 80:80
35:5,  74:17,  79:5,  ,
allege - 29:880:7
21:17,  28:12,  28:18,
allegedly - 28:14,
alleging - 29:6
39:7,  53:4:13,  38:4,
80:25ed - 58:23,
allows - 53:9:9
65:12,  78:2117,
alternative - 72:3
amended - 7:25,  :24
```

```
20:14,  20:15,  22:21,
41:21,  43:13,  44:18,
46:20,  47:4,  47:8,
49:13,  49:19,  49:21,
50:16,  50:25,  54:12,
amendment - 7:19,
amendments - 53:9
53:5,  53:63,  53:3,
amount - 8:9,  20:8,
72:12 54:3,  57:6,
63:8,  64:2,  72:8,
analyze - 70:215:15
answer - 31:18,
answered - 31:24,
anticipated - 37:4
58:24me - 42:18,
apologize - 4:6,
apparent - 26:22
appearance - 37:924
16:18,  78:7ty -
application - 49:15,
applied - 51:24
8:14,  15:18,  38:21,
apply - 9:15,  9:16,
52:24,  57:23,  59:1,
appreciate - 10:6,
approach - 7:172:15
13:25,  39:21,  54:20,
April - 1:9,  6:11,
75:10,  83:766:23,
Area - 66:23:19
arguably - 56:2
56:6e - 51:15,  56:5,
27:7,  81:25:17,
3:25,  34:10,  43:7,
48:21,  48:23,  49:2,
argument - 3:7,
25:19,  26:1,  26:4,
43:11,  43:20,  44:22,
48:18,  49:6,  49:10,
```

1

25april07wireless

50:12, 51:7, 53:21,
64:10, 73:11, 73:16
48:23, 66:13, 68:22
articulated - 61:10
48:19, 53:23, 81:12,
18:11, 26:1, 50:5,
asserting - 5:7,
assessment - 62:8
associations - 6
assume - 8:21,
assuming - 7:24,
57:6, 67:917, 57:5,
16:23, 19:23, 19:25
attacking - 42:17
82:1ntion - 52:17,
36:6rneys - 16:8,
68:15rity - 14:22,
authors - 30:17:9
avoid - 33:13, 40:17
aware - 27:2
        B
Baltimore - 1:10
barrier - 28:23
13:18, 13:20, 39:17
48:18 - 13:14,
basis - 36:18, 68:18
57:9, 57:10, 70:12,
Bat - 13:16, 13:18,
bear - 16:10
became - 21:18,
Beck - 67:18
54:1, 54:2, 75:15,
3:22, 3:25, 25:4, 25:5,
Beisner - 2:4, 3:10,
65:13, 67:12, 67:17,
71:14, 72:2, 75:12, :9,
76:12, 76:18, 76:5,
belong - 24:21,
benefit - 15:4, 26:3,
benefits - 18:22,


best - 18:23
50:13, 77:131, 39:22,
23:8, 27:21, 40:13,
beyond - 50:15
bill - 61:18, 77:1,
77:25, 78:10, 78:17
biological - 21:11,
29:54, 28:18, 28:25,
blood - 28:23 83:6
brain - 12:23, 15:25,
19:17, 19:25, 21:9,
29:6, 29:9, 38:12,
Brand - 31:9
breaks - 28:21
51:10, 59:15, 59:19,
68:8, 60:11, 66:22,
briefing - 10:6, 27:7
42:3, 26:12, 32:18,

25april07wireless

37:1, 51:12, 80:19:16,
Brill - 64:18, 65:1
broad - 71:3, 79:9
brought - 12:13,
52:13, 52:16, 57:24,
79:17, 70:19, 78:22,
built - 35:16
burden - 8:5, 8:13,
61:14, 62:2, 64:11,
72:20, 73:3, 73:7,   ,
78:1, 78:715, 77:22,
62:18, 62:20, 62:21,
63:12, 63:15, 64:2,
64:6, 64:7, 64:8
        C
Cafa - 7:5, 8:4, 8:6,
48:22, 51:20, 51:21,
54:20, 54:25, 55:13,
57:12, 57:13, 57:15,
58:10, 58:17, 59:2,
60:9, 61:13, 63:9, 0:8,
72:10, 73:3, 77:1,


calcium - 28:20
cancer - 15:25, 11
19:17, 19:25, 21:9,
29:10, 38:12, 39:1
capable - 14:7, 0:15
captioned - 53:7
case - 1:13, 9:11,
12:19, 13:4, 13:7,
13:24, 14:2, 14:6,   ,
15:4, 15:12, 15:19,
16:14, 16:19, 16:20,
18:12, 18:15, 18:21,
20:22, 21:2, 21:23,
22:25, 23:1, 23:12,
26:11, 27:22, 28:5,
32:10, 32:22, 33:5,
34:2, 34:17, 36:16,
39:17, 39:20, 40:1,
41:25, 42:11, 42:19,
49:16, 51:5, 52:3,
53:16, 54:15, 54:22,
55:17, 56:8, 56:10,
58:6, 58:17, 59:4,   ,
61:10, 62:11, 64:5,
66:4, 66:6, 66:18,
70:7, 70:9, 70:10,   ,
72:21, 72:23, 73:9,
75:6, 75:23, 78:24,
81:19, 80:11, 80:14,
cases - 5:16, 11:25,
18:18, 19:15, 19:16,
24:11, 24:20, 26:13,
28:3, 28:7, 30:13,
32:9, 32:12, 32:13,
35:11, 35:12, 36:7,
36:21, 37:8, 37:13,
38:5, 38:11, 38:12,

25april07wireless

39:10, 39:13, 40:4,
55:16, 55:17, 55:19,
59:14, 59:20, 60:21,


71:3, 74:722, 69:5,
83:6erine - 1:14,
16:17, 16:21, 17:1,
17:12, 17:24, 19:10,
21:10, 26:20, 26:21,
30:9, 30:20, 32:25,
caused - 12:22, :13
causes - 5:7, 28:11,
causing - 15:25
29:9 - 12:22, 12:25,
64:9er - 63:1, 63:2,
52:5ury - 51:10,
certainly - 6:23,
17:14, 17:24, 20:11,
40:24, 49:8, 49:11,
68:11, 63:10, 64:1,
certification - 15:7,
30:19, 33:1, 35:17,
Chairman - 78:15
challenged - 12:4,
challenging - 8:7,
48:7, 81:13, 48:6,
change - 44:13, :4
50:24, 53:5, 53:9,  ,
Change - 53:7
38:20, 44:2, 45:6,
57:25, 70:3, 56:1,
46:17es - 28:22,
19:13cteristics -
Chip - 3:1425, 78:16
23:21 - 23:20,
Circuit - 8:12, 21:3,
55:2, 55:22, 56:24,
61:20, 65:1, 66:3,
Circuit's - 32:44
73:4, 73:5 7:9, 8:12,
72:21, 73:21, 76:25,
citation - 13:19,
cite - 19:6, 36:10,
71:5, 40:9, 59:20,


46:25, 49:16, 51:10,
61:17, 65:22, 67:21,
cites - 28:20, 40:22,
citing - 13:16
citizenship - 9:16
claim - 28:17, 31:683:5
claims - 12:14,
15:14, 15:21, 20:18,
clarification - 10:11
47:20fied - 42:3,
class - 4:25, 5:2,
9:10, 12:10, 12:11,  ,

25april07wireless

14:22,  15:7,  16:8,  ,
30:19,  32:25,  33:18,
38:13,  57:17,  57:19,
74:11,  74:19,  74:21,
75:10,  75:11,  75:14,
76:6,  79:1,  79:8,  ,
Class - 22:17,  43:23,
65:18,  45:18,  48:14,
35:19ification -
clear - 5:16,  6:20,
75:4,  27:22,  43:10,
clearly - 26:11,
Clerk - 3:2,  67:18
37:17ts - 23:23,
coincidence - 29:13
collected - 70:84:8
Columbia - 36:5,
combination - 31:9,
Comcast - 9:1,  9:21
commence - 55:3,  :6
commenced - 7:7,
commencement -
69:8,  70:25,  72:4,
commencing - 75:20
comment - 15:17,
commented - 19:9
14:19rce - 14:18,
Common - 14:21:16


                2

16:15,  19:10,  19:20,
27:25,  28:1,  28:6,
30:25,  35:10,  41:1
23:5unicate -
71:14nication -
46:2anies - 21:8,
46:2,  62:244:8,
compelling - 77:19
complain - 24:111
8:1,  8:3,  9:3,  10:13,
21:18,  22:21,  26:18,
29:12,  29:14,  29:22,
44:13,  44:18,  44:25,
46:20,  46:24,  47:4,
47:16,  49:4,  49:13,
50:8,  50:11,  50:15,
54:13,  55:24,  59:24,
62:16,  63:7,  64:12,
complaints - 20:16
35:8,  57:6 27:23,
36:21eted - 36:20,
71:20etely - 38:16,
40:23ex - 40:6,
compliance - 61:16
37:16imenting -
concern - 68:16
concerns - 76:201
conclude - 13:616
conclusion - 36:11,
conclusions -
conditional - 6:20,

Page 78

25april07wireless

41:23, 12:1, 34:20,
78:23ct - 78:21,
confirms - 26:1956:2
conflicts - 40:1712
47:23sed - 47:20,
Congress - 61:19,
70:10, 73:22 70:7,
congressional - 13
78:18 78:2, 78:3,


77:24, 78:11, 78:14,
connection - 21:3,
consensus - 7:12,
consent - 70:6
40:5ideration -
considering - 18:15
18:7istent - 7:18,
40:3olidation -
construed - 61:7,
consumers - 20:21,
contained - 35:6
contest - 71:23,
context - 25:7,
35:20, 43:12, 51:24,
contexts - 62:21
36:15nued - 30:13,
contrary - 73:1610
controversy - 8:10,
59:16, 60:8, 60:9,
63:10, 72:14, 73:23,
convenience - 78:25
24:5, 35:24, 38:9,
convenient - 23:17
coordinate - 40:16,
coordinated -
28:3, 74:519, 21:24,
36:15inating -
32:13, 36:15, 40:13,
copy - 68:3, 81:1,
core - 32:18
52:1, 62:18, 73:175,
11:17, 17:21, 50:11,
59:3, 72:8, 72:19,
Correct - 54:17
59:5ected - 46:19,
47:1, 54:8 - 7:19,
47:14, 52:11, 52:15,
correctly - 5:2, 6
68:23, 54:13, 54:14,
counsel - 1:22,


52:17, 52:19, 65:18,
66:21, 66:23, 67:21,
69:23, 70:4, 71:16,
Counsel - 3:5, 76:15
country - 23:25,
County - 14:21

25april07wireless

course - 5:13, 6:2,
35:17, 36:6, 80:9
3:3, 3:6, 3:17, 3:23,
11:6, 11:12, 11:15, 1,
12:18, 13:24, 14:18,
15:18, 17:4, 17:22,
19:2, 19:9, 19:14,
27:3, 27:5, 27:13,
32:11, 32:12, 33:6,
36:24, 37:2, 37:11,
39:20, 41:4, 41:7,
42:2, 42:19, 42:24,
44:20, 46:21, 47:5,
48:17, 50:2, 51:22,
53:16, 53:19, 53:20,
54:18, 54:24, 56:17,
57:11, 57:18, 57:20,
59:23, 60:5, 60:15,
63:18, 65:4, 65:7,
67:8, 67:13, 67:15,
68:6, 69:4, 71:2,
73:15, 75:9, 75:21,
76:17, 77:23, 80:16,
81:8, 81:21, 82:2, ,
court - 6:3, 6:22,
15:5, 16:2, 18:3, 5,
33:10, 34:1, 34:14,
40:4, 41:9, 46:8, 3,
55:11, 55:14, 56:9,
65:1, 69:18, 74:25,
Court's - 10:19,
81:25, 48:14, 63:25,
15:20, 18:8, 21:21,
24:10, 39:7, 40:13,

52:22, 55:9, 59:21,
64:17, 64:20, 69:20,
79:14 74:4, 74:8,
created - 32:20
credibility - 34:10
criteria - 21:20,
criterion - 78:19,
criticizing - 37:17
curve - 33:11
cut - 63:13
     D
75:23ren - 9:11,
15:8y - 15:6, 15:7,
danger - 22:23
data - 64:13:1
9:12, 47:11, 51:19,
75:20, 78:43, 75:15,
75:9s - 6:16, 43:10,
30:15rt - 17:10,
42:15, 45:15, 48:4,
50:21, 54:22, 56:13,
58:5, 58:6, 58:24, ,
66:19, 68:10, 68:20,
Dc - 36:5:8
43:16, 45:21, 47:12

25april07wireless

16:9, 73:25, 74:6,
dealing - 13:11,
deals - 15:5
26:5t - 16:14, 25:23,
69:3, 72:11, 72:12,
decades - 63:12
43:14, 44:3, 44:19,
54:2, 54:16, 75:21
14:15, 42:2111,
42:1, 81:100:3,
deciding - 14:7,
decision - 12:8,
17:21, 21:3, 22:18,
51:10, 51:12, 52:4,
81:19, 82:12, 71:18,


decline - 40:12:16
Dee - 2:3, 3:12,
27:4, 27:12, 27:15, :4,
37:4, 40:200, 36:24,
48:8, 48:12, 56:24, ,
Defective - 53:7
defendant - 7:8,
8:23, 9:1, 9:2, 9:4,
54:19, 54:21, 55:19,
59:25, 60:2, 62:1, ,
70:6, 70:9, 70:16,
74:10, 75:22, 80:4
defendants - 3:16,
12:24, 16:13, 20:2, :2,
22:3, 23:18, 23:25,
31:15, 37:14, 38:2,
43:25, 44:5, 44:10,
46:4, 47:3, 51:2, 51:4,
59:17, 60:3, 61:18,
62:14, 64:11, 65:9,
70:2, 70:6, 78:23,
Defendants - 2:1
42:5, 43:15, 59:15,
defense - 51:161:22
32:3rence - 31:12,
definition - 7:13
deliberately - 41:15
43:20strate -
78:7nstrating -
40:2ed - 28:6, 33:9,
descriptions - 21:2
determination -
determinative - 10
determine - 15:1,
determined - 38:21,
determines - 9:25
develop - 39:862:25
device - 21:79:20
devoted - 20:86
die - 12:233:2

3

25april07wireless

```
25:11, 35:7, 50:7,
22:7, 26:16, 38:11,
40:14, 50:13, 56:13,
62:24, 71:20 62:22,
direct - 29:11, 66:224
51:11, 60:20, 60:23,
disagree - 32:2
disband - 67:2:24
disclosures - 20:2,
Discovery - 22:1
16:21, 20:4, 20:7,
30:15, 33:1, 39:19,
discussing - 18:11
dismiss - 10:12, 2
27:6, 27:14, 27:16,
Dismissal - 22:2023
15:12, 22:9, 22:24,
dismissed - 5:3, 5
34:9, 34:16, 37:14,
disposition - 22:15
dispute - 52:14, 9
distinct - 5:10
District - 1:1, 1:2,
27:11, 32:23, 36:5,
83:60, 60:11, 75:18,
districts - 40:14
56:13, 56:18, 57:6, 0,
69:18, 72:11 64:3,
docket - 67:9
doctrine - 69:13,
doctrines - 69:11
done - 13:7, 14:2,
50:14, 50:17, 50:21,
57:8, 57:25, 59:3,
Donovan - 1:20,
11:8, 11:10, 15:11, 18,
double - 28:21
doubts - 61:8
down - 11:9, 37:5,
72:24, 46:21, 46:24,


driver - 21:5, 35:5
Duffy - 2:2, 3:8, 3:9
duplication - 33:12
during - 16:22, :17
73:11
      E
Eastern - 14:13,
edition - 40:7, 40:9,
effect - 8:4, 66:5
effectively - 60:15,
effects - 21:11,
28:25, 29:5, 31:822,
27:20, 30:23, 33:2, ,
efficiency - 32:20,
efficient - 25:20,
efficiently - 40:21
24:12t - 20:8, 20:19,
eight - 38:1312
either - 7:10, 10:8,
```

25april07wireless

43:17, 45:43, 36:21,
23:22ed - 23:18,
54:15ronics - 54:13,
Emissions - 1:5,
emissions - 21:12,
employed - 64:3
31:11ering -
enacted - 54:18
end - 39:2, 40:3,
ending - 74:7
enormous - 20:7,
ensure - 20:20
entered - 11:23,
entire - 21:5, 44:2,
entirely - 5:16, 8:2,
entities - 44:17,
entitled - 1:13,
entity - 71:15
equal - 13:9, 15:2,
Esquire - 1:20, 1:21,
essence - 29:4,



essentially - 62:4
52:20, 65:23- 14:20,
58:19, 58:20, 82:9,
eventual - 30:15
16:20nce - 9:23,
evolving - 18:19
29:14, 29:15, 29:16,
exacting - 80:6
39:17, 80:10:3, 14:3,
62:23le - 33:6,
57:21, 65:204,
8:14, 59:11, 59:12,
62:3, 72:14, 72:16,
75:5, 77:23, 78:8,
exceptions - 60:10,
exchanged - 46:9
excuse - 6:751:22
exercise - 72:171
exhibits - 43:24 68:4
48:16, 72:111, 41:2,
72:16, 76:23, 80:14
expended - 38:244:18
17:25, 33:2- 15:23,
30:14t - 30:10,
26:7, 32:14, 32:20,
36:14, 38:23, 38:25,
expired - 44:25
64:22in - 57:14,
explicit - 74:201
exposing - 12:256
28:13ure - 16:21,
81:14ssly - 52:22,
extensively - 47:2
48:17t - 4:6, 35:16,
          F
F.3d - 52:4, 72:24
19:7pp.2d - 18:9,
70:20- 42:11, 70:15,

25april07wireless

fact - 6:19, 9:23,
12:11, 13:10, 14:17,

23:6, 25:17, 25:19,
34:8, 34:12, 39:13,
49:7, 49:18, 52:12,
61:12, 64:6, 68:25,
factors - 8:16, 24:6,
facts - 20:25, 68:19,
factual - 80:3
failure - 21:6, 65:25
fairly - 6:19
45:12, 45:18, 48:15,
familiar - 12:8, 16:5,
familiarity - 15:17,
far - 8:1, 10:5,
Farina - 1:19, 3:19,
5:13, 9:9, 15:4, 15:19,
20:13, 22:14, 22:19,
26:11, 26:18, 27:19,
29:4, 29:6, 29:14, ,
30:18, 30:20, 31:20,
35:16, 35:19, 36:3,
76:11 76:3, 76:7,
Fcc - 31:4, 31:17,
Fcc's - 31:5
11:19, 12:16, 25:9, ,
47:7, 47:9, 54:18,
federal - 6:22, 31:6,
55:6, 55:9, 55:11, ,
69:18, 73:25, 74:4,
few - 41:16, 79:9
fight - 34:17
file - 31:16, 41:6,
56:21, 58:23 56:14,
7:2, 9:10, 10:16, ,
41:14, 42:10, 42:22,
45:7, 46:5, 47:8, 8,
51:1, 54:12, 55:23,
67:13, 67:15, 68:19,
74:17, 74:19, 74:21,
76:7, 76:10, 76:14,
filing - 9:9, 9:12,

48:5, 49:12, 66:8, ,
75:9, 75:11, 79:24,
financial - 62:23,
findings - 13:9
firm - 36:71
10:8, 11:15, 17:6,
37:5, 60:14, 64:24,
First - 6:44, 71:8
floor - 77:3, 78:17,
Florida - 5:9, 17:22,
26:14, 32:23 24:13,
focusing - 21:199:18
following - 53:20:20

25april07wireless

17:20, 18:2, 81:23
foregoing - 83:2:19
formal - 31:17, 32:2
37:8ally - 21:17,
forum - 23:20 80:13
64:14rd - 8:6, 20:5,
fours - 52:6 73:4
Fourth - 7:10, 8:11,
34:13, 56:24, 61:9,
frame - 25:6
framework - 61:5
44:16ly - 41:16,
free - 16:2, 18:3, 15
Frequency - 1:5,
frequency - 13:1,
friendly - 69:23
26:13, 67:15, 67:17
fully - 17:8, 25:17
20:18, 22:2, 72:10
74:16mentally -
37:13e - 15:15,
       G
Gail - 1:25, 83:10
gained - 27:17
gathered - 10:5,
general - 7:17, 15:3,
17:6, 17:12, 21:10,


               4

28:9, 30:6, 30:9, 3,
36:12, 64:25, 35:18,
Georgia - 38:14
Glad - 4:5:21, 48:9
Goodlatte - 77:24,
grab - 41:6
greater - 15:17
grounds - 69:18
guess - 4:9, 5:17,
27:16, 33:23, 35:25, 9,
65:12, 82:4, 50:6,
guides - 32:11
       H
H731 - 78:18
hand - 5:15, 62:17
handle - 15:21,
handled - 17:5,
handling - 16:6
50:24 - 21:7, 21:16,
21:16-free - 21:7,
headquarters -
headset - 16:10,
headsets - 13:2
31:8th - 13:1, 28:15,
10:16, 10:24, 24:25,
61:22, 65:8, 73:20
41:12, 77:17, 77:18,
hearing - 1:14,
heavily - 15:13, 15
held - 33:8, 65:18
Henry - 29:2312
hereby - 83:2:16

25april07wireless

```
highly - 19:12:20
hindsight - 80:9
61:17,  61:23,  74:14,
79:13,  79:17,  80:10,
44:8ing - 31:10,
3:12,  3:14,  3:15,  3:18,
10:11,  10:16,  10:21,
11:13,  11:14,  11:17,



13:8,  13:14,  13:16,
14:11,  14:17,  15:16,
16:17,  17:8,  17:9,
18:1,  18:6,  18:17,  ,
19:5,  19:19,  20:1,
21:4,  21:20,  21:25,
23:4,  23:12,  23:15,
24:18,  24:22,  25:2,
25:20,  26:8,  27:2,
29:4,  30:2,  31:3,  4,
32:9,  33:20,  34:16,
36:11,  36:23,  37:1,
37:24,  38:11,  38:12,
39:6,  39:18,  39:25,
41:10,  41:11,  42:4,
43:9,  43:13,  43:18,
45:14,  45:24,  47:10,
49:25,  51:8,  51:13,
52:25,  53:1,  53:15,
57:16,  58:16,  59:13,
60:24,  61:5,  61:19,
65:3,  65:6,  65:13,  ,
69:13,  71:10,  72:5,
73:9,  73:19,  75:12,
79:18,  79:19,  80:12,
Honor's - 18:7,  :14
36:14,  24:12,  24:19,
83:6rable - 1:14,
43:11,  47:20 42:2,
House - 76:23,  77:1,
78:15,  78:17,  79:21
hypothetical -
56:18,  55:20,  56:7,
        I
idea - 17:14,  18:6,
identical - 80:1,
identified - 9:2,
63:7,  68:7,  72:5,  ,
identify - 3:5
35:8tity - 27:23,



implicate - 79:6
important - 16:11,
importantly - 42:4
improper - 81:3:14
64:19perly - 58:17,
inappropriate -   8:25
inclined - 10:24
```

25april07wireless

inconsistent - 22:5,
23:11, 35:13, 35:14,
inconvenience -
incorporated - 58:3,
incorporation -
incorrect - 19:5
64:19rectly - 62:15,
indeed - 19:14:15
independent - 7:12
indicate - 73:15
13:25, 18:2, 18:10,
indicates - 65:21,
indicating - 66:20
individual - 5:8,
individualistic -
inefficiencies - 35:2
16:1, 20:20, 64:15,
51:17, 51:22:15,
24:6ial - 7:5, 8:5,
injured - 78:237
injury - 74:15,
input - 62:13 79:6
79:25, 80:3, 80:7
49:12, 49:219:3,
66:14nce - 64:24,
49:14, 52:1, 56:20,
insure - 61:15,
Integrated - 33:5
intent - 77:155
37:22, 78:5 37:12,
interesting - 9:5
interpretation -
interpreted - 81:15


invoke - 55:7, 56:9,
invoked - 48:12,
58:9, 72:155, 48:16,
invoking - 61:15
involved - 14:8,
involves - 19:11,
involving - 16:23,
ion - 28:20
71:11, 71:22 65:20,
issue - 6:5, 9:13,
17:6, 17:11, 17:13,
21:9, 21:10, 25:7, ,
29:12, 29:15, 29:16,
31:19, 31:25, 32:7,
42:1, 42:2, 43:5, ,
65:15, 72:4, 72:13,
79:19, 81:1277:22,
16:4, 17:21, 18:4,
26:55, 20:4, 23:14,
6:4, 7:4, 11:4, 12:4,
14:11, 14:16, 15:7,
16:14, 16:15, 18:15,
24:16, 25:21, 26:23,
28:8, 30:1, 32:15,
35:10, 35:15, 38:20,
42:7, 42:81, 41:8,

25april07wireless

item - 23:15:8
40:22, 57:15, 61:1421,
        J
Jacobsen - 1:20,
10:15, 11:8, 11:13, 9,
35:4, 36:25, 37:1,
43:2, 43:8, 44:21,
50:14, 54:4, 54:7,
55:4, 57:1, 57:4, 1,
58:15, 59:12, 60:1,
62:12, 65:5, 80:17,
82:14, 80:21, 81:9,
Jane - 2:3:22
45:1, 45:16, 45:20,


jeopardize - 38:721
65:13- 2:4, 3:10,
Joinder - 53:7
53:16er - 53:11,
53:13d - 53:12,
Jpml - 34:20, 35:25,
67:21, 68:12 67:6,
31:20, 32:22, 46:22,
Judge - 1:15, 14:6,
25:24, 26:2, 26:4, ,
27:15, 27:18, 32:21,
83:70, 67:22, 81:18,
26:13, 40:151,
Judicial - 66:25,
judicial - 26:3, 26:7,
Judiciary - 78:1614
jurisdiction - 6:22,
10:1, 18:19, 31:2, 0,
36:13, 39:3, 42:13,
42:24, 43:23, 48:13,
49:9, 54:20, 55:6, ,
55:15, 56:2, 56:9,
56:18, 57:5, 58:8, ,
58:22, 58:25, 59:2,
61:15, 63:12, 64:1,
67:4, 68:13, 69:18,
81:4, 81:137, 78:6,
48:23, 60:14, 72:12
75:8, 80:14ns - 22:8,
63:11prudence -
        K
Kades - 56:25, 66:4
17:9, 27:24, 32:9,
36:22, 35:9, 35:11,
30:16, 30:24, 33:3
3:18, 10:91:20,
kicks - 55:12
18:22, 31:24, 56:23,
kinds - 5:10, 15:21
known - 7:20, 51:18


        5

21:13, 62:194,

25april07wireless

Knudsen - 69:6
　　　　L
48:4, 67:312, 42:14,
lacks - 42:1912
laid - 71:19
landscape - 38:10,
language - 46:9,
Lao - 60:10, 60:16,
last - 24:8, 24:19,
late - 6:8, 6:10, 7:3,
48:25, 49:2, 49:7,
68:10, 70:19, 71:24,
12:13, 12:15, 14:16,  ,
24:16, 25:24, 27:22,
69:17, 69:20, 70:7,
lawsuit - 79:24
45:23, 45:24:24,
33:3 - 26:20, 28:14,
least - 4:9, 8:17,
19:20, 46:4, 72:22,
led - 29:1, 31:15
legislative - 59:18,
76:20, 76:24, 77:19,
legislatures - 21:19
Lemelle - 14:6,
25:24, 26:2, 26:4,  ,
Leonard - 29:23
39:6 - 13:13, 25:20,
level - 31:132, 47:5
Lg - 6:7, 7:8, 8:1,
44:17, 45:4, 45:17,
47:10, 47:24, 50:10,
54:13, 54:15, 54:19,
68:19, 68:25, 70:17,
Lg's - 43:7, 48:4,
Liability - 1:6, 18:24,
liability - 30:21,
liberal - 53:1, 53:4
15:24, 33:17 5:18,


limit - 65:23, 66:1
70:11ation - 57:22,
line - 55:16:22
links - 16:12
listed - 1:23
litigated - 38:6
Litigation - 1:6, 3:4,
67:14, 67:19, 79:11,
litigation - 13:17,
18:5, 18:17, 24:17,
litigations - 37:6
local - 8:10, 12:12,
60:7, 60:8, 60:12,  ,
63:10, 64:25, 72:14,
78:25, 77:22, 78:14,
location - 22:6
long-standing - 2
look - 7:12, 8:17,
61:6, 62:4, 62:5, 64:8,
74:23, 76:21, 74:14,

25april07wireless

76:8ed - 7:10, 62:7,
21:17, 59:9, 64:12
Louisiana - 5:2, :10
Louther - 4:24, 5:13,
12:23, 13:4, 13:5, ,
17:11, 19:21, 20:10,
23:21, 24:14, 25:10,
29:12, 29:20, 30:4,
31:19, 32:17, 34:22,
40:25 35:20, 36:4,
      M
main - 37:21
51:16aining - 35:2,
mandate - 9:14,
mandated - 47:18
40:13, 40:236,
19:23actured -
63:3, 63:20ng -
1:10, 38:151:2,
matter - 3:2, 3:6,


14:17, 42:13, 42:14,
44:22, 50:23, 58:25,
83:30, 74:3, 81:22,
matters - 15:6, 18:6,
Mdl - 4:23, 5:20,
27:24, 28:2, 30:14,
35:2, 35:9, 35:10, ,
74:25, 75:1, 80:8,
Mdl-01-1421 - 1:5,
mean - 34:12, 48:6,
71:14, 56:8, 61:23,
78:20 - 55:3, 73:4,
78:19, 80:610,
meeting - 64:24
members - 4:2, 20
77:6, 77:11, 77:14,
memorandum -
mention - 10:16,
35:32, 23:16, 29:18,
35:5, 79:19 11:15,
merely - 59:3
merit - 79:6:24
51:16s - 10:13,
Metrophone - 9:10
3:21, 29:24, 67:18
microphones - 4:14
Middle - 32:23, 81:6
48:22, 82:95, 36:2,
million - 8:9
minimal - 8:8,
minimize - 40:17
misdescription - :8
misleading - 20:23
misnamed - 51:25
47:1, 47:14, 50:12,
51:23, 52:10, 52:16,
58:21, 59:4, 59:6,
missed - 57:13
mistake - 51:18

25april07wireless

11: 8nderstood -


54:14, 54:15, 54:19,
Mobility - 3:9
Model - 12:22
moment - 27:10,
money - 28:12
Morganroth - 31:52
3:12, 3:14, 3:18, 3:21,
25:2, 25:3, 25:612:6,
77:4, 77:6, 77:1924,
6:9, 6:11, 6:24, 10:12,
25:10, 25:15, 25:16,
31:3, 31:16, 31:19,
36:13, 41:13, 41:14,
42:10, 42:11, 42:17,
56:21, 58:23, 66:1,
66:22, 67:1, 67:6,
68:13, 68:21, 71:24,
motions - 1:13,
13:22, 22:9, 22:20, 21,
27:14, 27:16 27:6,
Motorola - 3:13,
mountain - 65:17
moved - 77:1 59:10
Multidistrict -
79:11, 82:74, 67:19,
multiple - 12:24, :12
80:5, 74:8, 75:7, 79:8,
mystery - 75:266:7
       N
name - 29:6, 52:8,
53:24, 54:1, 60:219,
52:7, 54:13, 54:14,
Naquin - 5:1, 5:2,
12:12, 12:21, 12:23,
24:19, 25:9, 25:12,
34:7, 34:17, 34:22,
76:15, 76:6, 76:10,
12:20, 13:512:15,
64:17wly - 61:7,
13:12nal - 12:11,



34:2, 79:15- 12:24,
nearly - 80:20
50:9, 69:10 - 8:15,
need - 9:13, 16:1,
74:11, 82:2, 82:51,
needless - 18:14
negotiated - 43:25
64:9e - 63:1, 63:2,
nevertheless -
New - 38:14, 51:9,
new - 7:8, 8:2, 41:6,
45:6, 45:8, 45:9, ,
53:6, 53:14, 54:3,
54:25, 55:3, 55:5,

25april07wireless

57:12, 59:6, 68:25,
70:25, 71:3, 71:5,
75:20, 75:2275:14,
16:5, 17:5, 17:16,
29:17, 29:19, 29:20,
next - 25:14 38:25
44:23- 38:13, 43:16,
72:24, 73:615, 60:18,
none - 45:7, 63:23
Northern - 19:7,
Note - 1:22
69:15, 70:24, 73:19,
79:18, 76:21, 77:21,
nothing - 19:22,
notice - 6:7, 6:15,
48:5, 48:20, 48:24, :7,
52:20, 56:19, 66:8,
notion - 69:8
41:14, 41:15, 68:9
Number - 3:3, 9:17
     O
observation - 23:4,
observations - 21:1
observes - 40:19
Obviously - 5:19
occasion - 69:234


       6

80:10red - 78:22,
offering - 72:2
offices - 62:9, 63:21
often - 51:2425, 83:11
older - 40:8, 40:9
One - 4:21, 7:4,
73:24 56:9, 69:21,
9:5, 9:17, 10:4, 11:15,
13:20, 16:22, 16:23,
18:18, 19:22, 19:23,
21:20, 22:2, 22:3, ,
25:13, 28:9, 30:5,
35:23, 36:8, 38:13,
56:11, 57:22, 61:6,
69:4, 69:15, 70:3,
one-year - 57:22,
ones - 16:7, 27:8,
ongoing - 13:21
operate - 23:18,
operating - 21:6,
operation - 9:24
63:4, 63:5, 63:18,
operative - 6:13,
opinion - 16:3,
32:4, 30:12, 31:2,
24:11, 32:23, 45:20,
opposing - 78:6
oral - 3:7, 26:5,
order - 6:5, 6:21,
34:21, 35:9, 41:22,
51:2, 53:10, 53:15,
81:6, 82:3, 81:1, 81:5,
ordinary - 9:19

25april07wireless

original - 30:13
otherwise - 70:14,
ourselves - 14:3
17:15me - 17:14,
outweigh - 36:1
overlapping - 5
29:11, 30:5, 30:14,

overlaps - 74:320
overrule - 61:4
60:20, 70:7, 72:22
own - 39:8, 43:15,
44:23
        P
Padova - 27:10,
67:16, 67:20, 67:23,
page - 18:9, 43:16,
78:18, 49:25, 78:2,
11:22, 11:23, 14:1,
40:18, 40:19, 40:22,
67:13, 67:19, 68:14,
81:3, 81:5, 81:15,
Panel's - 81:1, 81:7
16:13, 41:18, 42:5,
43:25, 44:23, 49:17,
67:25, 71:20, 80:22,
paragraph - 28:19,
Paragraph - 21:4
61:13l - 60:13,
parent - 52:1
24:23, 57:11, 60:13,
particular - 15:4,
particularly - 24:16,
Parties - 53:8
23:16, 24:5, 35:1,
44:2, 44:14, 45:6,
51:15, 51:20, 53:5,
55:24, 68:17, 72:9,
party - 52:8, 52:9,
61:15, 64:23, 73:2,
pass - 16:25, 69:24
77:20, 78:46:23,
69:17, 77:2:23,
pending - 3:2, 4:24,
40:14, 68:21, 76:6,
81:19, 81:6, 81:9,
5:7, 5:8, 6:3, 6:14,
9:2, 9:4, 12:12, 12:13,

14:14, 14:16, 14:19,
15:13, 15:20, 17:17,
24:16, 26:15, 36:4,
59:23, 59:25, 60:1,
69:13, 73:12, 73:17,
people - 4:8, 4:11,
perfect - 33:64:6
17:23ctly - 14:7,

25april07wireless

47:22, 60:17:9,
period - 16:22,
42:6, 44:25, 45:2, ,
49:23, 50:18, 55:11,
74:22, 75:16, 76:7,
permeability - :24
permeate - 32:16,
permitted - 49:15
person's - 28:15
persuasive - 61:24
phase - 36:23:8
14:21delphia - 4:2,
12:22, 12:25, 16:23,
phones - 28:14,
phrase - 82:4
ping - 5:2217
Pinney - 5:17, 9:18,
34:18, 37:6, 37:10,
21:24, 60:14, 62:18,
63:4, 63:5, 63:8, ,
plaintiff - 4:1, 8:14,
18:12, 26:25, 51:25,
73:11, 72:20, 73:7,
3:19, 3:22, 3:25,
plaintiff's - 5:9
plaintiffs - 6:2, 8:9,
10:23, 19:11, 19:13,
30:8, 30:20, 33:25,
55:18, 58:22, 64:18,
plaintiffs' - 6:9,
playing - 50:24
pleadings - 23:6


point - 5:17, 9:25,
33:19, 37:4, 37:18,
53:21, 57:11, 58:14,
81:22 66:15, 72:6,
14:5, 24:18, 28:10,
points - 35:3
pop - 5:212
14:15, 15:1, 15:2,
69:14, 71:24, 80:13
33:25, 34:4, 45:174,
potential - 58:8
Practices - 15:83
46:12, 49:14, 50:8,
pre - 76:23, 77:20,
pre-enactment -
pre-passage -
precedent - 31:13
preclude - 6:25
preemption - 26:4,
prejudice - 5:4,
prejudiced - 51:16
10:23, 11:1, 40:24,
preparing - 22:13
72:18, 77:7:22,
24:24ntation -
22:15, 81:10, 82:6
pretrial - 6:21,

25april07wireless

39:15, 39:16, 36:22,
preventing - 21:1510
primarily - 16:15,
primary - 16:12,
31:25, 32:6, 36:13,
principal - 9:6,
62:25, 63:5, 63:8,  ,
principle - 51:23,
priority - 11:16
procedural - 7:13,
48:6, 48:7, 48:12, 3:6,
55:4, 56:24, 57:1,
procedure - 49:16,


69:16, 66:7, 66:10,
procedures - 39:15
proceeding - 31:17,
75:1, 67:3, 70:20,
16:7, 18:22, 21:24,
36:23, 39:16, 40:16,
process - 37:21,
production - 28:21
18:24, 83:41:6,
Program - 14:18,
program - 14:20
proof - 16:20, :1
73:34, 63:18, 73:1,
properly - 50:1
prosecute - 18:126
23:10ect - 22:11,
28:11, 29:2, 29:21,
proven - 17:2
provides - 33:6
proving - 30:212
53:8, 59:1, 64:25,
79:12 72:15, 74:20,
64:25, 65:19, 72:10,
proxy - 29:20
pulling - 64:13
purported - 12:24
70:15, 74:6, 74:14
32:19, 55:1, 68:14,
put - 27:23, 43:11,
putting - 28:160:9
     Q
qualified - 31:21
quarrel - 43:17 78:25
question-and-38:24
questions - 9:5,
65:5, 77:9, 80:1318,
quite - 73:102
78:1e - 51:12, 66:2,
quoted - 59:19
     R


     7

Radio - 1:5, 83:4
raise - 12:4, 21:11

25april07wireless

```
72:13d - 25:7, 65:16,
Rather - 19:11, 80:3
27:18, 37:17, 51:17,
Ray - 29:24
read - 16:12, 21:13,
65:18, 65:21, 70:4,
43:9, 66:220:14,
27:13, 34:14, 41:7,
real - 36:19, 41:21
16:18, 18:21, 19:18,
35:1, 36:9, 49:1, 49:2,
50:12, 52:11, 52:20,
reappear - 5:143:20
reason - 29:18, :18
41:21, 49:12, 49:21
reasons - 21:23,
reassert - 34:2
recess - 65:1025
recognition - 60:14
57:12, 71:2 5:15,
recognizes - 40:18
record - 3:6, 37:7,
78:3, 78:18, 82:10
63:24ds - 63:22,
refer - 14:1, 49:43
40:6, 66:21, 76:20
69:6, 76:19- 66:4,
79:23encing - 66:24,
76:22red - 58:2,
67:24, 82:4, 82:6,
refiled - 5:19, 37:19,
refusal - 61:9
66:16, 76:1923,
regulations - 31:7
31:11, 32:15, 32:24
relate - 7:22, 7:23,
related - 40:14
relating - 4:8, 41:8,
```

```
relation - 7:14,
52:24, 69:10, 69:13,
relatively - 71:710
68:18ant - 15:25,
relied - 59:1614
rely - 30:5, 59:17
remain - 32:84, 75:21
14:2, 18:15, 18:20,
remains - 12:10
5:12, 6:3, 6:9, 6:11,
11:14, 11:20, 11:23,
19:18, 21:22, 23:14,
28:5, 33:9, 33:10,
34:19, 34:21, 36:18,
39:21, 41:8, 41:13,
41:24, 42:1, 42:9, ,
48:3, 55:17, 56:22,
66:6, 66:18, 66:22,
67:11, 68:9, 68:13,
80:23, 81:7, 81:9,
remanded - 19:16,
```

25april07wireless

remembering - 6:16
removal - 6:7, 6:15,
42:8, 42:16, 43:1, 1,
45:2, 45:7, 45:8, 48:4,
54:24, 55:10, 55:17,
58:6, 58:21, 61:7,
66:9, 66:13, 68:19,
70:13, 70:19, 71:7,
removals - 11:25
45:12, 45:20, 47:11,
51:5, 59:4, 70:9, 0,
removed - 14:18, 4
48:13, 54:22, 55:19,
59:5, 69:17, 70:57,
56:12ing - 56:10,
repeatedly - 51:3
Report - 59:18,
61:22, 76:21, 76:22,
report - 59:22


83:11ter - 1:25,
represent - 37:11
38:8esentation -
request - 41:8, 56:1,
81:19, 80:24, 81:15,
require - 33:102
requirements - 58:1
requiring - 18:12
19:18ved - 19:15,
resisted - 46:143
respect - 15:19,
24:13, 38:25, 39:1,
78:5, 78:12, 80:21,
14:10, 24:20, 48:11,
respective - 4:13,
respects - 65:20
responding - 68:24
responsible - 4:7,
rest - 50:3
resulting - 33:11
Rf - 28:133:22
rid - 70:11
rise - 69:170:13
35:13, 35:14, 35:22
road - 37:24
Ross - 29:24:3
Rule - 49:16, 52:21,
rule - 7:16, 9:14,
25:18, 27:14, 27:15,
32:2, 39:13, 42:21,
rule-making - 3:1
ruled - 6:23, 25:9,
Rules - 53:2
52:25, 53:43, 50:22,
rulings - 22:5, 22:8,
26:13, 35:14, 35:15,
running - 4:18
Russell - 1:21, 3:24
        S
safety - 21:5, 35:5

25april07wireless

```
scheme - 31:625
science - 18:1,
32:15,  32:24,  35:16,
scientific - 15:24,
scientists - 29:15
Seamus - 2:2,  3:8
searched - 22:12
8:22,  9:3,  30:25,
44:25,  46:5,  47:3,  ,
54:12,  72:4,  77:21,
64:13tary - 63:24,
40:7,  42:13,  57:21,
section - 21:5,  19
see - 8:2,  9:25,  12:7,
27:9,  43:24,  62:10,
seeking - 64:23,
seeks - 28:12
8:13 - 5:16,  5:22,
51:20ngly - 18:14,
self - 41:191,  51:4
41:19sustaining -
59:20,  59:21,  61:19,
76:22,  77:2,  77:141,
send - 5:20,  40:4,
sending - 24:202:5
Sensenbrenner - :25
sent - 26:9,  26:14,
series - 77:9
72:23no - 60:17,
69:23,  69:252,
services - 62:23,
set - 4:21,  6:1,
sets - 80:13
48:19,  53:23,  78:17
Seventh - 55:2,
69:7,  73:620,  65:1,
66:19al - 38:12,
78:6l - 57:22,  72:17,
shorthand - 47:23
show - 8:6,  8:14,


showing - 29:9,
sic - 43:14,  44:19
signed - 53:17,
significance - 66:17
9:6,  9:23,  18:14,  ,
significantly -
Silica - 18:8
17:10,  17:15,  74:3,
Simpkins - 1:25,
simple - 73:10
73:13y - 5:6,  36:10,
28:21,  40:5,  40:11,
single-plaintiff -
sitting - 77:14
13:3,  20:24,  25:8,
```

25april07wireless

73:25 26:16, 71:5,
six - 23:1, 38:5
Smouse - 1:21,
Smouse's - 16:69
55:19imes - 55:18,
6:19what - 5:11,
sorry - 12:20, 48:17,
sort - 5:21, 77:18
span - 77:424
special - 14:20
specific - 13:7, 5
16:21, 17:1, 17:12,
19:10, 19:15, 19:17,
specifically - 7:11,
41:25, 46:14, 49:17,
Specifically - 46:17
spent - 29:211:9
sponsor - 77:25,
sponsor's - 78:4
squarely - 52:5,
stage - 22:25, 23:7,
stand - 41:19, 62:16
standard - 28:21:19
standing - 41:5,
standpoint - 26:15


                8

61:6, 71:127, 10:7,
starting - 53:14
state - 6:3, 7:12,
12:12, 13:11, 14:14,
24:2, 34:1, 34:14,  ,
55:14, 57:24, 58:7,
74:10, 74:12, 74:16, 4,
State's - 64:13:10
78:10ment - 67:2,
57:21, 62:25, 83:6,
28:17, 31:5, 69:11,
statewide - 5:7
39:4, 39:14, 42:9,
56:11, 56:12, 57:19,
69:10, 69:19, 70:15,
72:25, 73:24, 76:1,
statutory - 61:5,
stay - 5:24, 26:10,
stayed - 81:18
step - 25:14, 73:21
still - 4:21, 4:24,
22:25, 23:6, 36:12,
stipulation - 46:7,
47:7, 50:8, 50:11,
strand - 28:21
stress - 79:21,
structure - 72:25
29:13, 29:16, 29:23,
subject - 42:12,
42:23, 58:25, 68:15,
submission -
submit - 14:9,
32:5, 41:1, 68:1, 82:3
subsidiaries - 44:6,

25april07wireless

subsidiary - 46:1,
52:8, 52:9, 52:18,
26:12, 53:22- 10:15,
subtracted - 44:1
46:11n - 34:23,
sues - 12:24

13:15, 14:10, 14:14,
23:17, 24:7, 24:15,
39:22, 51:11, 57:14,
suggested - 38:18,
suggesting - 11:20,
suggestion - 4:22,
11:24, 14:1, 23:14,
33:9, 34:18, 34:19,
suit - 78:22
supervise - 39:23
supports - 69:14
suppress - 20:200
31:10me - 15:12,
system - 5:20, :19
33:13
        T
technical - 39:8,
tee - 17:11
19:24, 28:1119:22,
3:4, 83:4 - 1:5,
81:23ral - 81:12,
ten-minute - 65:8
tentative - 4:18
terminated - 39:11
11:17, 27:6, 37:25,
Terrence - 2:351:21
test - 63:22, 25:4
themselves - 37:16,
theoretically -
Theoretically -
theory - 52:10
71:21, 73:10 71:19,
43:21, 43:22, 68:21
45:12, 47:17, 59:7
third - 7:25, 9:3,
26:18, 40:8, 46:12,
47:13, 49:3, 49:12,
59:24, 50:15, 50:25,
66:3d - 7:11, 8:12,
Thirty - 68:20 74:11

thoughts - 4:18,
thousand - 18:13
20:10, 74:22, 75:16,
76:16, 79:18, 79:24
19:25, 20:10, 74:22,
79:18, 76:7, 76:16,
78:24ghout - 44:2,
Tice - 29:2420
41:13, 48:5, 58:16,

25april07wireless

timely - 6:25, 47:11,
66:12, 57:10, 58:18,
53:23, 71:232, 44:21,
today - 3:15, 4:17,
11:5, 13:4, 13:10, ,
together - 30:16,
35:9, 74:5, 80:9:4,
trade - 14:23, 20:18
traditionally - 64:2
transfer - 6:21,
40:12, 41:23, 81:20,
transferee - 81:11
18:3, 18:18, 19:18,
transferred - 21:23,
transferring - 41:24
treatment - 74:5:18
tried - 64:21, 73:15
58:20, 59:6 58:19,
try - 41:18, 82:11
39:7, 55:18, 74:23, ,
tumor - 12:23
Two - 20:17, 28:8,
two - 8:19, 23:8,
44:17, 45:19, 66:19,
Two-thirds - 74:11
typically - 36:18
        U
ultimate - 39:9
under - 5:8, 7:5,
12:14, 15:9, 17:18, 13,
45:11, 48:14, 49:16,

9

54:22, 56:3, 56:11,
63:11, 64:2, 70:18,
73:3, 79:22, 79:250,
undercut - 34:24:22
understood - 10:19
unfair - 14:233:14
uniform - 20:22
unique - 14:8, 23
24:16, 25:23, 63:9,
United - 1:1, 1:15,
units - 3:11, 83:6
unless - 9:21,
unlike - 77:4 80:12
untimely - 57:8,
unusual - 76:25
17:11, 29:2, 31:1,
34:15, 37:5, 41:5,
56:20, 74:8 55:20,
users - 12:251
        V
vacated - 12:3
valuable - 17:25
12:25, 68:1716,
21:15les - 21:6,
versus - 52:31, 3:15
viewed - 47:171:20
voices - 4:13:24
vote - 77:5 - 5:3

25april07wireless

77:16,  77:17,  77:18,
78:9
        W
waived - 66:14,
waiver - 71:11,
walk - 43:3
warn - 21:68
30:23,  36:14 16,
weeks - 66:19
weighed - 24:6 24:7
whatsoever - 62:10
whole - 37:21


                        9

28:11,  28:13,  31:7
83:3less - 1:5,  3:4,
wished - 4:9
34:20raws - 34:19,
words - 19:16,  81:7
worse - 50:13
written - 37:5
        Y
13:13,  17:22,  18:20,
23:12,  24:8,  24:19,
70:11,  74:22,  75:16,
years - 21:18,  23:1,
79:24 75:19,  76:13,
yourselves - 3:5